UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V.,<br><br>Plaintiff,<br><br>v.<br><br>ADVENT INTERNATIONAL CORPORATION,<br><br>Defendant,<br><br>and<br><br>ADVENT INTERNATIONAL CORPORATION,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>SERVICIOS FUNERARIOS GG, S.A. DE C.V.,<br><br>Counterclaim-Defendant. | Civil Action No. 23-cv-10684 |

**MEMORANDUM OF LAW IN SUPPORT OF
AIC'S MOTION FOR THE ISSUANCE OF LETTERS ROGATORY
<u>PURSUANT TO THE HAGUE EVIDENCE CONVENTION</u>**

In accordance with Chapter 1 of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (23 UST 2555, TIAS No. 7444 [1970]) ("Hague Convention") and Federal Rule of Civil Procedure 28(b), Defendant and Counterclaim-Plaintiff Advent International Corp. ("AIC") respectfully requests that the Court issue the Letters of Request (the "Letters") in the form attached as Exhibits 1–6 to the Declaration of Gabriel F. Soledad dated June 23, 2023, addressed to the Central Authority in the United Mexican States ("Mexico"), to compel documents and testimony from relevant non-parties located in Mexico.

## BACKGROUND

Per the Parties' Joint Motion for the Issuance of Letters Rogatory Pursuant to the Hague Evidence Convention (the "Joint Motion") (Dkt. No. 45), the Parties have agreed that the issuance of letters rogatory under the Hague Evidence Convention is necessary for adequate discovery for both Parties. However, despite the Parties' good faith engagement to arrive at an agreement regarding each of their discovery requests, the Parties disagree as to whether certain requests are permissible under Federal Rule of Civil Procedure 26 on the grounds that they seek information that is irrelevant and/or protected by privilege.

AIC incorporates here by reference the Background and Section I of the Joint Motion and moves the Court to issue the requested Letters.

## ARGUMENT

Under federal law, a United States District Court may issue a letter rogatory requesting the deposition of a witness or the production of documents located in a foreign jurisdiction. *See* 28 U.S.C. § 1781; Fed. R. Civ. P. 28(b). Such a request may be made pursuant to any relevant treaty or convention between the United States and the foreign state. *See* Fed. R. Civ. P. 28(b)(1)(A)-(B); *Société Nationale Industrielle Aérospatiale v. United States District Court*, 482 U.S. 522, 544–46 (1987); *see also Brown v. State St. Corp.*, 2006 WL 8458183, at *2 (D. Mass. Mar. 20,

2006); *Fid. Int'l Currency Advisor A Fund, LLC v. United States*, 2007 WL 9412764, at *1 (D. Mass. May 23, 2007). The Hague Convention authorizes courts to seek assistance from a judicial authority abroad to compel testimony and documents from individuals and entities outside the United States. *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, art. 1, 23 U.S.T., 2557.

Courts take a "permissive" approach to motions for letters rogatory under the Hague Convention and typically grant such motions "unless there is a good reason not to." *Brown*, 2006 WL 8458183, at *2; *see also Crosby Legacy Co., LLC v. TechnipFMC PLC*, C.A. No. 1:18-cv-10814-MLW, at 5 (D. Mass. Dec. 22, 2022), ECF No. 125. "A letter of request is properly granted 'where there is compliance with the requirements of the [Hague] Convention and the information sought is within the scope of discovery as set forth in Rule 26 of the Federal Rules of Civil Procedure.'" *Crosby Legacy Co.*, C.A. No. 1:18-cv-10814-MLW, ECF No. 125 at 5 (quoting *Crouch v. Liberty Pride Corp.*, 2016 WL 4718431 at *2 (E.D.N.Y. Sept. 9, 2016)).

**I.     AIC's Requested Letters Comply with the Federal Rule of Civil Procedure 26**

The Court should issue AIC's requested Letters because the information sought is within the scope of discovery as set forth in Rule 26 of the Federal Rules of Civil Procedure. "In considering the issuance of letters rogatory, U.S. courts apply the discovery principles contained in Rule 26." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012); *Crosby Legacy Co.*, C.A. No. 1:18-cv-10814-MLW, at 5, ECF No. 125. Under Rule 26(b), "[p]arties may obtain discovery regarding a nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Here, AIC seeks evidence from non-parties that indisputably have information concerning issues in this case: Gayosso's practices alleged in the Complaint, including accounting and financial reporting practices, the disclosure of such information to Servicios Funerarios during its

3

due diligence, the Mexican Criminal Proceeding, arrest warrants, and asset embargoes, the Interpol Red Notices, and both parties' damages. *See Netherby Ltd. v. Jones Apparel Gp., Inc.*, 2005 WL 1214345, at * (S.D.N.Y. May 18, 2005) ("Courts routinely issue [letters rogatory] where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence."). The non-parties for whom AIC seeks the issuance of Letters Rogatory are either named in Servicios Funerarios' initial disclosures as persons it might rely upon "to support its claims or defenses" or putative experts Servicios Funerarios hired and expressly referenced in support of its claims against AIC in Mexico. The relevance of each non-party and basis for each request is expressed below:

### A. Persons Servicios Funerarios Included In Its Initial Disclosures

Servicios Funerarios disclosed Roberto Carlos Chagoya Hernández and Gloria del Carmen Lerin Revueltas in its initial disclosures as persons it might rely upon "to support its claims or defenses." Servicios Funerarios indicated that Mr. Chagoya and Ms. Lerin are "Persons to be contacted through counsel for Servicios Funerarios." Yet, when AIC requested that Mr. Chagoya and Ms. Lerin be made document custodians, Servicios Funerarios refused, taking the contradictory position that it does not have control over Mr. Chagoya's or Ms. Lerin's documents. Servicios Funerarios claims that neither was ever an employee, such that their documents would not reside on "MexCap's servers." This is not true. Mr. Chagoya was not only an employee of MexCap—but a partner—and used a MexCap email address: i.e., chagoya@mexcap.mx. In any event, Servicios Funerarios has legal control over Mr. Chagoya's and Ms. Lerin's documents.

**Roberto Carlos Chagoya Hernández (Ex. 1).** There is no dispute that Mr. Chagoya has relevant information as Servicios Funerarios disclosed Mr. Chagoya as being knowledgeable about Gayosso's financial statements, financial reporting and accounting practices. Mr. Chagoya's documents and testimony are relevant to this matter because he was a partner at MexCap during

4

the Gayosso Transaction (and up until the month prior to Servicios Funerarios' filing this lawsuit) and prepared a report on Gayosso's accounting and financial practices that Servicios Funerarios indisputably furnished to the Mexico City prosecutor.

Despite having first denied any control of Mr. Chagoya's documents, Servicios Funerarios seems to now be arguing that Mr. Chagoya's documents are protected by privilege. It is unclear on what basis Mr. Chagoya's documents would be protected by privilege. Mr. Chagoya is not a lawyer. He prepared and presented a report, as a putative expert, to a Mexico City prosecutor. He is also a fact witness to the Gayosso Transaction as a partner at Servicios Funerarios' precursor entity. And the reports and analysis that he prepared are within the scope of his employment. Lest there be any doubt about his relevance, Servicios Funerarios itself indicated that it may rely on Mr. Chagoya in its initial disclosures, which places Mr. Chagoya at or near the center of this dispute. *See Valentin v. Town of Natick*, 343 F.R.D. 452, 457 (D. Mass. 2023) (granting discovery of attorney where attorney "is clearly at or near the center of this dispute and was identified by Plaintiffs as a potential fact-witness in their initial disclosures.").

**Gloria del Carmen Lerin Revueltas (Ex. 2).** Similar to Mr. Chagoya, there is no dispute that Ms. Lerin has relevant information. Servicios Funerarios disclosed Ms. Lerin in its initial disclosures as being knowledgeable about Gayosso's financial statements, financial reporting and accounting practices. Ms. Lerin was also disclosed in the Mexican Civil Proceeding as an accounting expert who would provide an expert opinion on the accounting and financial information that Gayosso disclosed to Servicios Funerarios.

Servicios Funerarios argues that all of Ms. Lerin's documents and testimony are protected by privilege. AIC disagrees. Ms. Lerin is not a lawyer. She is being held out as a putative expert who intends to submit a report in a legal proceeding. Finally, like Mr. Chagoya, Servicios

5

Funerarios put Ms. Lerin's knowledge directly in dispute by adding her to its initial disclosures. *See Valentin v. Town of Natick*, 343 F.R.D. 452, 457 (D. Mass. 2023) (granting discovery of attorney where attorney "is clearly at or near the center of this dispute and was identified by Plaintiffs as a potential fact-witness in their initial disclosures.").

In any event, AIC is not seeking privileged information. AIC is seeking information about her report, which is presumptively discoverable, *see, e.g.*, Rule 26(a)(2)(B), and information concerning the status and her involvement in the Mexican Civil and Criminal Proceedings.

### B.  Experts Providing Relevant Opinions In the Mexican Civil Proceeding

AIC also seeks information related to putative experts that Servicios Funerarios identified in the Mexican Civil Proceeding concerning at-issue topics. Their relevance is identified below:

- **Marco Antonio Ramos Rivera (Ex. 3):** Mr. Ramos Rivera was designated by Servicios Funerarios as a computer forensics expert in the Mexican Civil Proceeding. Servicios Funerarios retained Mr. Ramos Rivera to provide an expert opinion on whether there was manipulation of Gayosso's SAP system in connection with the purported removal of invoices from SAP or modifications to information entered in SAP, as well as whether information was entered reliably in SAP. Such information is directly related to Servicios Funerarios' claims before this Court. Mr. Ramos Rivera's opinions regarding Gayosso's SAP system, and the evidence he relied on in forming the same, are critical to AIC's ability to respond to Servicios Funerarios' allegations that AIC fraudulently misrepresented Gayosso's financial health by manipulating Gayosso's SAP system.

- **José Alfredo Chávez Carrera (Ex. 4):** Mr. Chávez Carrera was designated by Servicios Funerarios in the Mexican Civil Proceeding to provide expert opinions quantifying Servicios Funerarios' purported damages related to undisclosed liabilities and contractual obligations. These damages are sought in this action.

- **Luis Ignacio Hernández Vivar (Ex. 5):** Mr. Hernández Vivar was designated by Servicios Funerarios in the Mexican Civil Proceeding to provide expert opinions quantifying Servicios Funerarios' purported damages related to real estate valuation. Servicios Funerarios retained Mr. Hernández Vivar to provide an expert opinion on the construction costs Gayosso incurred to comply with its outstanding contractual obligations. These damages are sought in this action.

Servicios Funerarios' objection concerning privilege should be rejected because AIC is not seeking privileged information. AIC is seeking information that must be disclosed for any expert

6

that will submit a written report, *see, e.g.*, Rule 26(a)(2)(B), and information concerning the status and the involvement of each expert in the Mexican Civil and Criminal Proceedings.

        **C.**        **Expert Who Provided Opinions In The Mexican Criminal Proceeding**

AIC is seeking information from Luis Eduardo Lambarri Boladera (Ex. 6). Mr. Lombarri Boladera has already provided an expert opinion in the Mexican Criminal Proceeding on the accounting and financial information that Gayosso disclosed to Servicios Funerarios, the profit AIC purportedly obtained in connection with the sale of Gayosso, and Servicios Funerarios' purported damages. The accounting and financial information Gayosso shared with Servicios Funerarios, including its completeness and accuracy, are directly relevant to Servicios Funerarios' allegations of fraudulent misrepresentation of Gayosso's financials, and are necessary to AIC's defense. This expert opinion is also relevant to Servicios Funerarios' claimed damages in the present case. And, any errors in such opinions go toward the legitimacy of the Mexican Criminal Proceeding.

Servicios Funerarios' objection concerning privilege should be rejected because AIC is not seeking privileged information. AIC is seeking information that must be disclosed for any expert that has already submitted a written report, *see, e.g.*, 26(a)(2)(B), and information concerning the status of and his the involvement in the Mexican Civil and Criminal Proceedings.

**II.**        **AIC Reserves Rights To Move To Compel Servicios Funerarios To Produce Documents From Any Of the Aforementioned Persons**

AIC reserves its right to seek documents and testimony from each of the aforementioned persons directly from Servicios Funerarios because they are all within its control. All experts hired by Servicios Funerarios are under its control. *See Alper v. United States,* 190 F.R.D. 281, 283 (D. Mass. 2000) ("Given the fact that Dr. Becker is Defendant's expert, the documents which Plaintiff seeks from him may be considered to be within Defendant's control."). And specifically as to Mr.

Chagoya, Servicios Funerarios controls Mr. Chagoya's MexCap email address. Mr. Chagoya was under MexCap's control as a partner and did not leave MexCap until just one month prior to the filing of this lawsuit.

To preserve its ability to seek third-party documents and deposition in the event this Court does not agree, AIC requests that the Letters be issued.

## CONCLUSION

For the reasons stated herein, AIC respectfully requests that the Court grant this motion for issuance of the Letters submitted herewith and approve, date, and sign the Letters, and that the Clerk of the Court affix the seal of this Court to the Letters, attached as Exhibits 1–6. AIC further requests leave to update the Letters to arrange for their translation into Spanish upon their execution by the Court and prior to their transmission to the appropriate Mexican authorities.

Dated: June 23, 2023  Respectfully submitted,

  /s/ *Gabriel F. Soledad*
Andrew J. Rossman (admitted *pro hac vice*)
Nicholas A. S. Hoy (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com

Peter L. Welsh (No. 643261)
Daniel V. Ward (No. 667158)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com

*Attorneys for Defendant and Counterclaim-Plaintiff Advent International Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June, 2023, I caused to be served a copy of the foregoing document via the CM/ECF system on all counsel of record.

      /s/ *Gabriel F. Soledad*
*Counsel for Defendant and Counterclaim-Plaintiff*
*Advent International Corporation*