# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Plaintiff, | |
| v. | |
| ADVENT INTERNATIONAL CORPORATION, | |
| Defendant, | |
| and | Civil Action No. 23-cv-10684-IT |
| ADVENT INTERNATIONAL CORPORATION, | |
| Counterclaim-Plaintiff, | |
| v. | |
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Counterclaim-Defendant. | |

## DEFENDANT AND COUNTERCLAIM-PLAINTIFF'S MEMORANDUM OF LAW IN <u>SUPPORT OF ITS MOTION TO COMPEL</u>

Defendant and Counterclaim-Plaintiff Advent International Corporation ("AIC") respectfully requests an order compelling Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V. ("SF") to provide discovery as provided below.

## PRELIMINARY STATEMENT

SF is a shell corporation that does not have ordinary course operations. As such, AIC has made clear from the outset of this action that SF must produce discovery from its affiliates. SF initially acknowledged this obligation, representing at the Rule 16 conference that it would "take the responsibility for getting document production for any of [its] affiliates or related entities." This commitment was consistent with the Federal Rules of Civil Procedure, which require parties to produce discoverable documents that they have the practical ability to obtain. But SF has refused to fulfill its commitment and its obligations. AIC brings this motion to compel SF to comply with its discovery obligations by producing the following four categories of discovery material.

*First*, SF should be required to identify the entities that own and control it. SF's own allegations describe it as an acquisition vehicle whose sole purpose is to own Gayosso shares. Without day-to-day operations or even an e-mail server, SF acts and communicates only through affiliated persons and entities, including the lawyers and advisors who have targeted AIC in sham criminal proceedings in Mexico. Nonetheless, SF has repeatedly dodged answering a basic interrogatory seeking the identity of its ultimate beneficial owner.

*Second*, SF should be required to produce discovery from the El-Mann family's real estate investment trust, Fibra Uno Administración S.A. de C.V. ("Fibra Uno"). Because the El-Manns were involved in the Gayosso transaction from the outset, Fibra Uno acquired Gayosso's real estate assets as part of the transaction, and Fibra Uno shares key personnel with SF, they indisputably

possess documents relevant to SF's knowledge of the alleged "fraud" and the damages SF seeks in this case.  Indeed, SF appears to be seeking damages in this action on Fibra Uno's behalf.  And it was the El-Manns' longtime representative (and SF's current principal)—Pablo Peña—who approached AIC's Mexican affiliate about buying Gayosso on the El-Manns' behalf and signed the initial term sheet for the deal on behalf of the El-Manns' family office, and the El-Manns' company Fibra Uno that effectively financed the transaction by acquiring Gayosso's real estate assets and leasing them back to SF.  They are, in other words, precisely the sort of "affiliates or related entities" from which SF has committed to produce documents and for which the applicable "control" test is satisfied for party production under the Federal Rules.

*Third*, SF should be required to produce discovery from its Mexican counsel responsible for the abuse of process described in AIC's Counterclaims, including the Mexican prosecutor's investigative file compiled following SF's improper criminal complaint.  Since AIC filed its Counterclaims, a prominent Mexican journalist published a bestselling book ***identifying SF's criminal counsel as being at the center of systemic corruption*** in the Mexican criminal justice system—***and implicating the exact same prosecutor and judges*** who requested and issued the unlawful arrest warrants and embargoes at issue in AIC's Counterclaims.

*Fourth*, SF should be required to produce certain materials from the experts who have submitted (or will submit) affidavits on its behalf in the Mexican civil and criminal proceedings.  These experts' analyses, which concern precisely the same conduct at issue in this action, are plainly relevant to the parties' claims and defenses here.

SF's refusal to fulfill its obligations deprives AIC of critical discovery it needs to defend against SF's fraud claims and prove its own Counterclaims.  The Court should grant AIC's motion.

## BACKGROUND

SF's claims relate to its 2021 purchase of Gayosso, a Mexican funeral services company, from affiliates of AIC-managed funds.  AIC Counterclaims (Dkt. No. 14) ¶ 4; SF Answer (Dkt. No. 34) ¶ 4.  AIC's Counterclaims arise out of SF's abuse of the Mexican judicial system to extort AIC, including by (1) causing the issuance of baseless arrest warrants and Interpol Red Notices against employees of AIC and its affiliates and (2) improperly obtaining embargoes to freeze assets that have nothing to do with the Gayosso transaction and are owned by unrelated AIC-managed funds.

### A.      The Role of The El-Mann Family And Fibra Uno In The Gayosso Transaction

Members of the wealthy and influential El-Mann family are the founders, largest shareholders, and operators of Fibra Uno, Latin America's largest real estate investment trust.  AIC Counterclaims ¶¶ 63, 94; SF Answer  ¶ 94.  In early 2019, the El-Mann family—through its long-time banker, Pablo Peña—approached AIC's Mexican affiliate, Advent International PE Advisors, S.C. ("Advent Mexico"), about acquiring Gayosso.  AIC Counterclaims ¶ 72; SF Answer ¶ 72.

Within a few months, the El-Mann family met with Advent Mexico concerning the potential acquisition of Gayosso and ultimately made a proposal to acquire Gayosso.  AIC Counterclaims ¶ 94; SF Answer ¶ 94.  On June 3, 2019, the El-Manns' family office, Grupo E S.A. de C.V. ("Grupo E"), entered into a non-binding term sheet with Advent Mexico to "further explore and analyze the potential acquisition of" Gayosso.  AIC Counterclaims ¶ 97; SF Answer ¶ 97.  Pablo Peña signed the term sheet as Grupo E's "Legal Representative."  *Id.*  AIC Counterclaims ¶ 97; SF Answer ¶ 97.  Shortly thereafter, Pablo Peña told Advent Mexico that the El-Mann family's designated buyer would be a special purpose vehicle—and formed SF to

complete the sale.  AIC Counterclaims ¶¶ 72, 98; SF Answer ¶¶ 72, 98.  Pablo Peña also explained

that in order to finance the deal, SF would spin off Gayosso's real estate assets to Fibra Uno, the

El-Manns' company.  AIC Counterclaims ¶ 63, 144; SF Answer ¶ 144.  The parties to the final

SPA were Gayosso, certain AIC affiliates (as the "Sellers"), SF (as "Purchaser"), and Fibra Uno

(as "Acquirer of the Real Estate Assets").  Dkt. No. 53 Ex. A, SPA.

The transaction closed in January 2021 after nearly a year and a half of due diligence.  AIC

Counterclaims ¶¶ 99–108; SF Answer ¶¶ 99-102, 104, 107.  The purchase price at closing reflected

an enterprise value of MXN 4.076 billion (approximately USD 201 million at the time).  AIC

Counterclaims ¶ 141; SF Answer ¶ 141.  Fibra Uno was responsible for USD 108 million of the

USD 201 million purchase price, while SF itself contributed just USD 50.7 million (largely

financed by HSBC).  AIC Counterclaims ¶¶ 141-45; SF Answer ¶ 141-45.  Pursuant to the terms

of the SPA, after acquiring Gayosso's real estate, Fibra Uno leased it back to Gayosso, now owned

by SF.  AIC Counterclaims ¶ 144; SF Answer ¶ 144.

## B.  The Mexican And U.S. Proceedings

Soon after it acquired Gayosso, SF began a campaign to extort AIC by asserting meritless

civil and criminal claims.  First, SF sued AIC and its affiliates in Mexican civil court and sought

to freeze hundreds of millions of dollars in assets owned by unrelated AIC-managed funds.  AIC

Counterclaims ¶ 152; SF Answer ¶ 152.  When Mexican civil courts denied this relief, SF turned

to the criminal courts, where it obtained improper arrest warrants targeting current and former AIC

affiliate employees, as well as the same asset embargoes the civil courts had rejected.  AIC

Counterclaims ¶¶ 180, 182, 185, 187, 196, 208; SF Answer ¶¶ 180, 182, 185, 187, 196, 208.

As alleged in AIC's Counterclaims, SF was able to secure these illegitimate criminal orders

by retaining the services of Mexican criminal counsel, Garcia Gonzalez y Barradas Abogados

("GGB"), a firm that is notorious for its corrupt abuse of the Mexican criminal justice system and which has used this same playbook to extort its clients' adversaries in previous cases.   AIC Counterclaims ¶¶ 54–57.  Those abuses have been widely documented in the Mexican press, *id.*, and since AIC's Counterclaims were filed, feature in a new book published by a highly respected Mexican journalist, Hernán Gómez Bruera.  HERNÁN GÓMEZ BRUERA, TRAICIÓN EN PALACIO: EL NEGOCIO DE LA JUSTICIA EN LA 4T (Grijalbo 2023) (*see* Soledad Decl., Ex. J).[1]   The book, titled "Treason in the Palace," explains that SF's criminal counsel guarantees its clients results by exerting illegitimate influence with a network of prosecutors and judges, and specifically identifies as corrupt participants in SF's criminal counsel's scheme the exact prosecutor and judges, by name, who requested, issued, and then extended the unlawful arrest warrants and embargoes at issue in AIC's Counterclaims.  Soledad Decl. Ex. J at pdf 8, 11, 14–16, 23–26, 30–33.

SF filed this action as the latest step in its extortion campaign.  Notably, SF's alleged damages include the full purchase price of the Gayosso transaction, *see* Dkt. No. 1, Compl. ¶ 10, meaning that SF is seeking to recover Fibra Uno's contribution to the deal price in addition to its own.  SF's initial disclosures further confirm that it seeks damages based on alleged "undisclosed contractual obligations" associated with the real estate assets acquired by Fibra Uno—such as damages attributable to the "construction of fences and associated costs" and "[r]ehabilitation of spaces."  Declaration of Gabriel F. Soledad ("Soledad Decl."), Ex. A at 9.

---

[1] AIC has excerpted chapters 8 and 13 from a machine translation of this book for the Court's convenience. AIC would happily provide a certified translation of the book in its entirety and/or send to Chambers a hard copy of the book in its original language (Spanish) should the Court so request.

### C. SF Fails To Abide By Its Commitment To Provide Discovery From Its Affiliates

At the parties' Rule 26(f) conference, SF represented that, as an acquisition vehicle with no daily operations, it has neither an e-mail server nor a central document repository, and that all relevant documents are maintained by its affiliates—including Gayosso and Pablo Peña's companies MexCap and ExeFin. Soledad Decl. ¶ 1. Accordingly, at the May 23, 2023 Rule 16 conference, AIC asked for explicit confirmation that SF would review and produce all relevant documents within its possession, custody, or control, including those held by its affiliates. At the time, SF categorically agreed that it would ***"take the responsibility for getting document production for any of [its] affiliates or related entities . . . ."*** Soledad Decl., Ex. B at 30:1–31:23.[2]

But SF now even refuses to fully respond to an interrogatory asking it to identify its controller or ultimate beneficial owner. On May 3, 2023, AIC propounded an interrogatory requesting that SF detail (among other things) its "ownership structure," including its "ultimate beneficial owner(s)."[3] Soledad Decl., Ex. C. SF responded a month later with an opaque non-response, stating only that its shares are owned by Pablo Peña and a numbered trust, "Trust 682."

---

[2]   The only condition that Servicios Funerarios put on its commitment to collecting and producing documents from its "affiliates [and] related entities" was that AIC do the same. AIC has done so.

[3]   The full interrogatory No. 4 reads as follows:

Describe in detail, with reference to supporting documents, Servicios Funerarios' ownership structure, and to the extent it has changed over time, any prior ownership structure, including without limitation its current or former ultimate beneficial owner(s); any agreements or understandings concerning profit sharing, stock options, phantom interests, deferred compensation, or any other economic entitlements or benefits of any kind; any current or former relationship with Banco Ve Por Más, SA Institución de Banca Múltiple, Grupo Financiero Ve Por Más, and the Trust Fideicomiso 666; and any other equity, ownership, or economic interests in Servicios Funerarios of any kind.

Soledad Decl., Ex. C.

*Id.*, Ex. D.  Public records indicate that this trust owns 99.998% of the Company.  *Id.*, Ex. E.  After AIC noted that this non-answer was insufficient, SF agreed to provide a supplemental response that "identifies the relative share ownership and the shareholders of SF."  *Id.* ¶ 2.  But when SF supplemented its response more than three months later on August 11, 2023, it provided another non-answer, stating only that "[SF's] shares have at all times been owned by [Trust 682] and by Pablo Peña.  The sole beneficiary under the trust is Pablo Peña."  *Id.*, Ex. F.  This carefully-worded response, which at best only identifies the beneficiary as of the moment the interrogatory was answered, once again fails to provide the requested information, by omitting (among other things) (1) whether there have been any prior beneficiaries of Trust 682, and if so, when the beneficiaries were changed; (2) the identities of Trust 682's settlor(s) and trustee(s); and (3) any side agreement or other arrangement relevant to SF's ownership.

SF also refuses to produce documents from the El-Manns and their company Fibra Uno, an entity that is inextricably intertwined with SF in the Gayosso Transaction at issue.  To date, in an attempt to pursue targeted discovery, AIC has only sought discovery from one Fibra Uno custodian—Jhovany Alfan, a Fibra Uno employee who had extensive involvement in the Gayosso transaction.[4]  SF does not dispute that Mr. Alfan and other Fibra Uno employees or agents possess

---

[4]   To preserve its ability to seek third-party discovery abroad, AIC has also requested the Court issue letters rogatory for Fibra Uno and Fibra Uno's CEO and Deputy CEO, André El-Mann and Gonzalo Pedro Robina Ibarra.  But letters rogatory are not a substitute for obtaining this information through party discovery.  *See Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 21 (1st Cir. 2004) ("While letters rogatory are among the discovery devices available in a federal court, parties are not required to resort to them" because "letters rogatory are burdensome, costly, and time-consuming."); *In re Flag Telecom Hldgs., Ltd. Sec. Litig.*, 236 F.R.D. 177, 182 (S.D.N.Y. 2006) ("The discovery procedures provided by the Hague Convention, however, are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure.") (quotation omitted).  Indeed, for reasons outside of the Court's control, the letters rogatory may never be issued by Mexican authorities, or responded to by the recipients.

relevant information, but rejected AIC's request that it include Fibra Uno custodians on the basis that Mr. Alfan and Fibra Uno's documents are not located on its own servers.  Soledad Decl., ¶ 3.

There is no dispute that SF controls its own experts, but it is withholding relevant information from them as well.  Gloria Lerin Revueltas, Marco Antonio Ramos Rivera, José Alfredo Chávez Carrera, Luis Eduardo Lambarri Boladera, and Luis Ignacio Hernández Vivar have all offered, or will offer, expert reports in the Mexican actions.  *See* Dkt. 48 at 5–7.  SF even identified Ms. Lerin in its initial disclosures as a person having "[k]nowledge concerning Gayosso's financial statements, financial reporting, and accounting practices," and instructed AIC to contact her through SF.  Soledad Decl., Ex. A at 4.  But when AIC requested that SF produced the reports these purported experts have written, along with limited discoverable supporting documents, SF refused, claiming it is all privileged. *See* Dkt. 62 at 5–6.

Finally, AIC has, from the outset of this action, requested discovery from SF's Mexican counsel, including its Mexican criminal counsel.  AIC's first set of document requests sought such discovery, including specifically requesting any documents or communications SF provided to or received from the prosecutor in the Mexican criminal action.  Soledad Decl., Ex. G, at 12.  While SF ostensibly agreed to produce documents from its criminal counsel, it carved out documents "protected from disclosure by Mexican law." *Id.*, Ex. H at 3–5.  For months, AIC sought clarification on what SF intended to withhold on this basis. *Id.* ¶ 4.  Finally, on August 3, 2023, SF stated, without elaboration, that it intended to withhold documents "pursuant to Article 218 of the Mexican National Criminal Procedures Code." *Id.*  But when AIC requested clarity on *what* documents SF intended to withhold under Article 218—which concerns a *prosecutor's* right to publicly disseminate investigative files—SF declined to answer.  *Id*.

### D.    The Parties Meet and Confers

Pursuant to Local Rule 37.1, counsel for AIC conferred telephonically in good faith with counsel for SF on three occasions to discuss the issues raised in AIC's motion.[5]  AIC brings this motion as a last resort after the parties failed to reach a resolution of the disputes herein.

## LEGAL STANDARD

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." "Rule 26 is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Katz v. Liberty Power Corp.*, 2020 WL 3492469, at *1 (D. Mass. June 26, 2020) (quotation omitted). Once the moving party makes a minimal showing of relevance, the "party resisting discovery bears the burden of establishing that compliance with the request is unduly burdensome." *Aronstein v. Mass. Mut. Life Ins. Co.*, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017) (quotation omitted)*.*

---

[5]  Each meet-and-confer involved counsel from Quinn Emanuel Urquhart & Sullivan and Ropes & Gray (representing AIC) and Boies Schiller Flexner and Lesser, Newman, Aleo & Nasser (representing SF).  On June 1, the parties conferred for approximately an hour.  During that conference, the parties agreed that: (1) SF would collect and produce documents from certain, identified custodians; (2) SF would run search terms over MexCap and Gayosso servers; and (3) that SF would be collecting and producing documents from personal devices held by two custodians.  At that conference SF informed AIC that it would revert regarding: (1) whether it would collect and produce documents from Fibra Uno; (2) the search terms it would run, as well as the date range it would apply to document searches; and (3) whether it would identify SF's ultimate beneficial owner.  On July 3, the parties conferred for approximately fifteen minutes. During that conference the parties reached an impasse regarding SF's refusal to produce discovery from its experts in the Mexican proceedings, identified below, and Fibra Uno.  On July 26, the parties conferred for approximately an hour.  During that conference SF confirmed it was collecting documents from its Mexican civil counsel, but noted it may withhold documents under Mexican law.  The parties also discussed SF's failure to provide a hit report and its failure to provide a complete response to AIC's interrogatory regarding SF's ultimate beneficial owners.

## ARGUMENT

### I.        SF Must Provide Complete Information Regarding Its Ownership Structure

SF's initial response to AIC's interrogatory seeking information about its ownership was plainly insufficient, identifying only Pablo Peña and a numbered trust, "Trust 682," which public records reveal owns 99.998% of the company.  Soledad Decl., Ex. E.  SF agreed this was the case, but took three months to supplement it—and then disclosed only that "[SF's] shares have at all times been owned by [Trust 682] and by Pablo Peña.  The sole beneficiary under the trust is Pablo Peña."  *Id.*, Ex. F.

This amended response is equally insufficient.  While stating that SF's shares "have at all times" been owned by Trust 682, SF discloses only the ***current*** beneficiary of the Trust.  This provides information about (among other things): (1) whether there have been any ***prior*** beneficiaries of the trust, and if so, when the beneficiaries were changed; (2) the identities of Trust 682's settlor(s) and trustee(s); and (3) any side agreement(s) or other arrangement(s) relevant to SF's ownership.  All of those questions were within the scope of Interrogatory No. 4, but SF has provided none of the answers.

Providing information on ownership structure is "standard" in discovery and "entrenched in practice."  *Philips Med. Sys. Puerto Rico, Inc. v. Alpha Biomedical and Diagnostic Corp.*, 2021 WL 150411, at *7 (D.P.R. Jan. 15, 2021) (granting motion to compel information on ownership structure as a "standard discovery request seeking basic information"); *see also* Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes, 2000 Amendment ("Information about organizational arrangements . . . of a party could be discoverable if likely to yield or lead to the discovery of admissible information").  Here, a complete response is especially important because determining the identity of SF's owners is critical to obtaining discovery central to SF's fraud claims (*e.g.*, concerning knowledge and reliance) and AIC's Counterclaims (*e.g.*, concerning who orchestrated

and participated in abuses of the Mexican judicial system).  There is no burden involved with answering this interrogatory, and SF has offered to reason why it should not be compelled to provide a complete answer.

## II.      SF Should Be Compelled To Provide Discovery From Fibra Uno

SF does not dispute that Fibra Uno, the company owned by the El-Manns, possesses relevant information due to their role in the transaction from outset and as purchaser of Gayosso's real estate assets.  And AIC's initial request for documents from a single Fibra Uno custodian is not unduly burdensome.  Thus, SF has refused to produce any discovery from Fibra Uno only on the basis that Fibra Uno's documents are not located on its own servers.  Soledad Decl., ¶ 3.  But SF's obligation to produce relevant documents is not limited to those that it "personally maintain[s]." *Fernandes v. Bouley*, 2022 WL 2915702, at *5 (D. Mass. July 25, 2022).  Rather, SF is required to produce documents in its "control," meaning documents it has "the legal right, authority or ability to obtain [] on demand." *Id*. (quotation omitted); *see also FM Generator, Inc. v. MTU Onsite Energy Corp*., 2016 WL 8902603, at *3 (D. Mass. Aug. 25, 2016) ("[C]ourts have expanded the 'control' test to include not only a legal right, but also the actual ability . . . to access and obtain the requested documents.") (quotation omitted).

Under the applicable "control" test, SF must produce relevant documents maintained by Fibra Uno—at the very least, SF's close affiliate—and possible prior or current owners.  Courts in this district "have regularly permitted discovery of information from one corporation based on its relationship with, and ability to obtain documents from, a related corporate entity." *LSI Corp. v. Vizio, Inc*., 2012 WL 1926924, at *5 (D. Mass. May 24, 2012); *see also FM Generator*, 2016 WL 8902603, at *3 ("actual ability" to obtain documents upon request sufficient); *In re Gen. Elec. Co.*, 2022 WL 16720425, at *9 (D. Mass. Nov. 4, 2022) (same).

Discovery from Fibra Uno is especially warranted here because there is an "intermingling of directors, officers, or employees of the two corporations, . . . [a] benefit or involvement by the non-party corporation in the transaction, and . . . involvement of the non-party corporation in the litigation." *FM Generator*, 2016 WL 8902603, at *3. *First*, Gayosso's post-sale board of directors includes Fibra Uno's former CFO, Gerardo Vargas Ateca, as well as its financial advisor—and SF's principal—Pablo Peña. *Second*, Fibra Uno signed the operative SPA alongside SF, directly funded a majority of the acquisition, and maintains ownership of all of Gayosso's real estate assets. *Supra* at p. 4-5. *Third*, the El-Mann family previously used SF's Mexican criminal counsel (Ex. J, pdf 15) and SF used Fibra Uno's long-time deal counsel. *Finally*, SF's assertion of damages includes Fibra Uno's share of the purchase price (*supra* p. 6). *See also QC Labs v. Green Leaf Lab*, LLC, 2019 WL 6797250, at *7 (C.D. Cal. July 19, 2019) ("Entities with common ownership . . . may be required to produce documents held by the commonly owned entities, even if only one is a party to the litigation."); *Mantha v. QuoteWizard.com,* LLC, 2021 WL 981815, at *4 (D. Mass. Mar. 16, 2021) (agency relationship between defendant and third-party demonstrated defendant had control over documents at issue).

Accordingly, this Court should hold that SF has "control" over Fibra Uno and require SF to produce documents from a Fibra Uno representative.[6]

---

[6] AIC initially sought discovery from Jhovany Alfan, counsel to Fibra Uno who was involved in communications concerning the deal. However, AIC has since discovered that André El-Mann and Gonzalo Robina, Fibra Uno representatives, may be more appropriate sources of information because they are not counsel to Fibra Uno and had direct interactions with AIC Mexico concerning the Gayosso Transaction.

**III.    SF Should Be Compelled To Produce Documents From Its Criminal Counsel, Including The Mexican Criminal Investigative File**

AIC has alleged that SF used the improper influence of its Mexican criminal counsel to improperly obtain arrest warrants targeting current and former AIC affiliate employees, as well as to obtain illegal embargoes on certain assets owned by AIC-managed funds.   Counterclaims ¶¶ 1–40.  These allegations are corroborated in detail by a new book published by a highly respected Mexican journalist identifying by name SF's Mexican criminal counsel—**and** the exact prosecutor and judges responsible for the arrest warrants and embargoes—as being at the center of system corruption in the Mexican legal system.  *See supra* at p. 6.  SF does not deny its Mexican criminal counsel exchanged communications with the Mexican prosecutor (and others) that are central players in AIC's Counterclaims.  But while SF previously indicated it would produce discovery from its Mexican criminal counsel, it now claims that it will withhold documents "pursuant to Article 218 of the Mexican National Criminal Procedures Code."  Soledad Decl., ¶ 4.  And when pressed for clarification as to what types of documents SF intends to withhold under Article 218, SF replied only that it "will be guided by Mexican counsel on which documents fall within Article 218's ambit."  *Id*.

Under Federal Rule of Civil Procedure 34(b)(2), SF is required to respond to AIC in a manner that adequately describes what it is refusing to produce and on what basis.  Instead, SF's shifting positions and vague reliance on Mexican law have improperly turned discovery into "a game of hide and seek."  *Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*, 626 F. Supp. 3d 478, 508 (D. Mass. 2022); *see also Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) ("[D]iscovery must not be allowed to degenerate into a game of cat and mouse.").  SF's failure to provide a specific response to straightforward document requests alone results in a waiver of its objections.  *See, e.g.*, *Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006) ("Under Rule 34,

failure to make particularized objections to document requests constitutes a waiver of those objections.").

In any event, the Mexican law SF invokes is inapplicable. *First*, Article 218 of the Mexican National Code of Criminal Procedure limits public dissemination of investigative files by Mexican *prosecutors*, not private parties. Soledad Decl. Ex. I ¶¶ 13-14, 16, 23-24. *Second*, Article 218 does not prohibit SF from providing copies of the criminal file to third parties or authorities, including for use in a foreign proceeding, such as this action. *Id*.

At bottom, SF cannot repeatedly tout the independence of the Mexican prosecutor as a defense against AIC's Counterclaims while preventing AIC from testing the facts supporting that defense in discovery. SF calls AIC's allegation that "its counsel influenced the prosecutor's and criminal court's actions by use of illegitimate means" "totally without support." SF Answer ¶ 1. It claims that "neither Servicios Funerarios nor its Mexican criminal counsel had any say at all in the selection of the prosecutor." *Id.* ¶ 2. And it asserts that AIC's allegation that SF presented "'false and misleading information' to the prosecutor [is] itself false." *Id.* ¶ 205. In response to AIC's interrogatories, meanwhile, SF stated that "upon conducting an independent investigation of the fraud perpetrated by AIC, the Public Prosecutor's Office made the independent decision to proceed against AIC." Soledad Decl., Ex. D at 4. AIC strongly believes that the evidence will show that all of these assertions are untrue, but in any case, these are core contested issues in this case that should be resolved on the basis of a full discovery record—and not the undefined and cherrypicked record SF apparently intends to produce.

Accordingly, SF should be required to produce any relevant nonprivileged information in the possession of its Mexican counsel.

IV.    **SF Should Be Compelled To Produce Discovery From Its Experts In The Mexican Proceedings**

The Court should also compel SF to produce a targeted set of documents from Gloria Lerin Revueltas, Marco Antonio Ramos Rivera, José Alfredo Chávez Carrera, Luis Eduardo Lambarri Boladera, and Luis Ignacio Hernández Vivar—its retained experts who have submitted (or plan to submit) expert opinions in the Mexican proceedings, which arise from nearly identical allegations as this matter.[7] Because SF has clearly relied on these same experts as the basis for its allegations in this matter, AIC seeks production of: (1) the experts' opinions; (2) the facts and data considered by the experts; (3) the assumptions provided by counsel that the experts relied upon; (4) a list of other cases during the previous four years in which the expert testified; (5) a statement of the expert's compensation; and (6) communications related to these topics.

The relevance of this evidence is beyond dispute.  Because SF's allegations here closely mirror its allegations in Mexico, the expert materials touch on precisely the same topics at issue in this litigation:

- Ms. Lerin has been retained to offer expert opinion regarding the accounting and financial reporting at the heart of SF's fraud claims.  Indeed, SF ***identified Ms. Lerin in its initial disclosures*** as someone having "[k]nowledge concerning Gayosso's financial statements, financial reporting, and accounting practices."  Soledad Decl., Ex. A at 4; *see, e.g.*, *Valentin v. Town of Natick*, 343 F.R.D. 452, 457 (D. Mass. 2023) (granting discovery of attorney who "was identified by Plaintiffs . . . in their initial disclosures.").

- Mr. Ramos has been retained to offer opinions regarding Gayosso's SAP system, the exact system SF alleges AIC fraudulently manipulated.  Dkt. 1 (Compl.) ¶ 21.

- Messrs. Hernandez and Chávez have been retained to offer opinions on the damages SF is seeking in Mexico—which overlap substantially with the damages SF seeks here.

- Mr. Lambarri has been retained to offer forensic accounting analysis—an issue at the heart of SF's fraud claims.  Dkt. 1 (Compl.) ¶¶ 21–33.  Moreover, Mr. Lambarri submitted a

---

[7]    Mr. Lambarri has already submitted an expert report to the Mexican prosecutor in support of SF's criminal complaint; the remaining putative experts were designated by SF in Mexican its civil case but have not yet submitted their reports.

report in the Mexican criminal proceeding that SF used to obtain the unlawful embargoes against the assets of certain unrelated AIC affiliates—a core component of AIC's Counterclaims.

For similar reasons, AIC's requests are clearly proportional. After all, SF retained its experts for the express purpose of relying on their opinions in litigating its fraud claims against AIC.

SF cannot dispute that it has control over the persons it has retained as experts. *See Alper v. United States*, 190 F.R.D. 281, 283 (D. Mass. 2000) ("Given the fact that Dr. Becker is Defendant's expert, the documents which Plaintiff seeks from him may be considered to be within Defendant's control."); *Calzaturificio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 39 (D. Mass. 2001) (finding documents in the possession of a party's accountant and counsel were within the party's control because the party had the legal right and practical ability to obtain the documents). Indeed, SF specifically identified Ms. Lerin as a "[p]erson[] to be contacted through [its] counsel." Soledad Decl., Ex. A.

SF's sole justification for withholding this discovery is privilege. But AIC seeks only the disclosures that Rule 26(a)(2)(B) requires from any expert who submits a written report, along with basic information concerning the involvement of these purported experts in the Mexican civil and criminal cases. This information is not protected from discovery. *See, e.g.*, *Peterson v. Wright Med. Tech., Inc*., 2013 WL 655527, at *6 (C.D. Ill. Feb. 21, 2013) (compelling production of "[p]rior expert reports prepared . . . for [defendant] by its retained experts . . . for use in [a different] litigation"); *High Point SARL v. Sprint Nextel Corp*., 2012 WL 1533213, at *9 (D. Kan. Apr. 30, 2012) (requiring the plaintiff to produce expert reports and deposition transcripts of experts from other litigations).

It is irrelevant that these experts will not testify in this case. The Mexican cases are "closely related" to this matter, meaning that AIC is entitled to "exactly the same" discovery into those

experts "as it would be if [the expert] expected to testify" in this case. *In re Application of Republic of Ecuador*, 2012 WL 5519611, at *2 (N.D. Fla. Nov. 2, 2012); *see also Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013) (plaintiff was entitled to discovery materials from expert in prior proceeding under Rule 26(b)(1)); *Peterson*, 2013 WL 655527, at *6; *High Point*, 2012 WL 1533213, at *9.

## CONCLUSION

For the reasons stated herein, AIC respectfully requests that the Court grant this motion and compel SF to take the below actions, consistent with the accompanying proposed order, and any other relief the Court deems just and proper:

- Provide a complete response to AIC's Interrogatory No. 4, including by answering (1) whether there have been any prior beneficiaries of Trust 682, and if so, when the beneficiaries were changed; (2) the identities of Trust 682's settlor(s) and trustee(s); and (3) any side agreement or other arrangement relevant to SF's ownership;

- Search and produce documents from any prior settlor(s), trustee(s), or beneficiaries of Trust 682;

- Collect and produce documents from Fibra Uno;

- Collect and produce responsive documents from its Mexican criminal counsel, including the Mexican prosecutor's investigative file; and

- For each of SF's retained experts, Gloria Lerin Revueltas, Marco Antonio Ramos Rivera, José Alfredo Chávez Carrera, Luis Eduardo Lambarri Boladera, and Luis Ignacio Hernández Vivar, produce (1) expert opinions from the Mexican civil and criminal proceedings; (2) facts and data considered in forming those opinions; (3) assumptions provided by counsel; (4) a list of other cases from the previous four years in which the experts testified; (5) a statement of the expert's compensation; and (6) communications concerning instructions or assumptions provided related to these topics.

Dated: August 23, 2023

Respectfully submitted,

*/s/ Andrew J. Rossman*

Andrew J. Rossman*
Nicholas A. S. Hoy*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com

Joseph H. Margolies*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

Peter L. Welsh (No. 643261)
Daniel V. Ward (No. 667158)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com
*Admitted Pro Hac Vice*

*Counsel for Defendant and Counterclaim-
Plaintiffs*

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), AIC respectfully submits that oral argument may assist the Court in resolving the instant motion and accordingly requests the opportunity to present this Court with oral argument.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of August, 2023, I caused to be served a copy of the foregoing document via the CM/ECF system on all counsel of record.


_/s/ Andrew J. Rossman_
Andrew J. Rossman