# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

SERVICIOS FUNERARIOS GG, S.A.          )
DE C.V.,                               )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )
                                       )
ADVENT INTERNATIONAL CORPORATION,      )
                                       )
        Defendant,                     )
                                       )   Civil Action No.
and                                    )   1:23-cv-10684-IT
                                       )
ADVENT INTERNATIONAL CORPORATION,      )
                                       )
        Counterclaim-Plaintiff,        )
                                       )
    v.                                 )
                                       )
SERVICIOS FUNERARIOS GG, S.A.          )
DE C.V.,                               )
                                       )
        Counterclaim-Defendant.        )
                                       )
_____

BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE

SCHEDULING VIDEOCONFERENCE

Tuesday, May 23, 2023
2:54 p.m.


John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts


Robert W. Paschal, RMR, CRR
Official Court Reporter
rwp.reporter@gmail.com

1                       **A P P E A R A N C E S**

2

3    On behalf of the Plaintiff/Counterclaim-Defendant:

4         BOIES SCHILLER FLEXNER LLP
          BY:  DAVID BOIES, III
5         333 Main Street
          Armonk, NY  10504
6         (914) 749-8200
          dboies@bsfllp.com
7

8         BOIES SCHILLER FLEXNER LLP
          BY:  CARLOS SIRES
9         401 East Las Olas Boulevard
          Suite 1200
10        Fort Lauderdale, FL  33301
          (954) 356-0011
11        csires@bsfllp.com

12

          LESSER NEWMAN ALEO & NASSER
13        BY:  MICHAEL E. ALEO
          39 Main Street
14        Northampton, MA  01060
          (413) 584-7331
15        aleo@lnn-law.com

16

17   On behalf of the Defendant/Counterclaim-Plaintiff:

18        ROPES & GRAY LLP
          BY:  PETER L. WELSH
19             DANIEL V. WARD
          Prudential Tower
20        800 Boylston Street
          Boston, MA  02199
21        (617) 951-7000
          peter.welsh@ropesgray.com
22        daniel.ward@ropesgray.com

23

24

25

```
 1      QUINN EMANUEL URQUHART & SULLIVAN, LLP
        BY:  ANDREW JOHN ROSSMAN
 2           NICHOLAS HOY
        51 Madison Avenue
 3      22nd Floor
        New York, NY  10010
 4      (212) 849-7000
        andrewrossman@quinnemanuel.com
 5      nicholashoy@quinnemanuel.com

 6
        QUINN EMANUEL URQUHART & SULLIVAN, LLP
 7      BY:  GABRIEL FERNANDO SOLEDAD
        1300 I Street NW
 8      Suite 900
        Washington, DC  20005
 9      (202) 538-8000
        gabrielsoledad@quinnemanuel.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    **P R O C E E D I N G S**

2                 (In open court at 2:54 p.m.)

3            THE DEPUTY CLERK:  United States District Court is

4    now in session, the Honorable Judge Indira Talwani presiding.

5            This is Case Number 23-cv-10684, Servicios

6    Funerarios GG, S.A. de C.V. versus Advent International

7    Corporation.

8            Will counsel please identify themselves for the

9    record.

10           MR. BOIES:  Good afternoon, Your Honor.  This is

11   David Boies, representing the plaintiff.

12           THE COURT:  Good afternoon.

13           MR. SIRES:  Good afternoon, Your Honor.  This is

14   Carlos Sires, also representing the plaintiff.

15           THE COURT:  Good afternoon.

16           MR. WELSH:  Good afternoon, Your Honor.  Peter

17   Welsh from Ropes & Gray representing Defendant Advent

18   International Corporation.  And, Your Honor, with me here is

19   Daniel Ward, also from Ropes & Gray; and also on the Zoom are

20   attorneys from the Quinn Emanuel firm, and I will let them

21   introduce themselves, Your Honor.

22           Thank you.

23           THE COURT:  Good afternoon.

24           MR. ROSSMAN:  Good afternoon, Your Honor.  This is

25   Andrew Rossman with Quinn Emanuel for Defendant and

1    Counterclaim Plaintiff Advent International Corporation, and

2    with me is my partner, Nicholas Hoy.

3          THE COURT:  Good afternoon.

4          MR. SOLEDAD:  Good afternoon, Your Honor.  Gabriel

5    Soledad, also from Quinn Emanuel, also on behalf of Advent

6    International Corporation.

7          THE COURT:  Good afternoon.

8          MR. ALEO:  Good afternoon, Your Honor.  Michael

9    Aleo from Lesser Newman Aleo & Nasser for the plaintiff as

10   well.

11         THE COURT:  Good afternoon.

12         So it looks like no one is getting along well here.

13         Okay.  This is our scheduling conference, and I

14   will go through matters.  There are claims and cross-claims,

15   and it sounds like there is a dispute on the anticipated

16   schedule.  So as a starting matter, I'm assuming as you are

17   proceeding in front of me that your number one audience is me

18   and not your clients.  Maybe that's not the case.

19         Sometimes I go through people's papers and just

20   strike all the adjectives and adverbs, thinking of sort of

21   charging a fine each time I see one.  But, seriously, I have

22   a lot of cases on my docket.  You need to all figure out what

23   is actually in dispute.  That's what I'm interested in.

24         You know, I sometimes think that being a parent may

25   be my best training for my position in this job, and I've

```
1    raised children who are all good friends with each other
2    because I don't intervene in the petty disputes if I can help
3    it.  Seriously, you're all, I'm sure, very good counsel; and
4    you need to be able to present me something that isn't ten
5    pages of disagreement on a scheduling conference statement.
6              So with that, let's look at your proposed
7    schedules.
8              What's your proposed date for initial disclosures?
9              MR. ROSSMAN:  Your Honor, it's Mr. Rossman, if I
10   may?
11             THE COURT:  Yes.
12             MR. ROSSMAN:  We have exchanged initial
13   disclosures.
14             THE COURT:  Okay.
15             MR. ROSSMAN:  So we're doing our -- I appreciate
16   how it comes to Your Honor, but we are doing our best to try
17   to work cooperatively with each other, at least at the
18   counsel level.  And we have managed to accomplish the
19   exchange of initial disclosures, initial discovery requests
20   from each side, but these are -- and interrogatories.  And I
21   think we've narrowed the scheduling dispute down to one
22   principal issue, which I'm happy to address if Your Honor is
23   ready.
24             THE COURT:  Sure, because there are a lot of pages
25   for me to get through to that point, but just -- so you have
```

1  exchanged initial disclosures, and you have voluntarily

2  commenced discovery?

3          MR. BOIES:  That was correct, Your Honor.  This is

4  David Boies representing the plaintiff.  And I agree with

5  Mr. Rossman that, despite what may appear, I think counsel

6  have been working relatively cooperatively.  Each side may

7  have a tendency to use too many adjectives, but I think we

8  are working, working together.

9          I agree with Mr. Rossman that we basically have one

10  dispute in terms of the schedule, and the way it is -- the

11  way it is set up, it affects a number of dates.  But it's

12  really, basically, a question of 90 days.

13          There are really two questions.  One is whether you

14  can extend the deadline to complete fact witness depositions

15  90 days from what they have proposed.  We think what they

16  have proposed is too short.  We think either the entire

17  schedule should move 90 days or at least the deadline to

18  complete fact depositions should move 90 days.

19          And I believe that's really the crux of the issue.

20          THE COURT:  Okay.  So you are in agreement that the

21  deadline for substantial completion of document production is

22  September 7th, yes?

23          MR. BOIES:  Yes.

24          MR. ROSSMAN:  That's correct, Your Honor.

25          THE COURT:  And are you anticipating voluminous

1    document production?

2              MR. BOIES:  I think the document production will be

3    very substantial.

4              THE COURT:  And are you -- so you're saying written

5    discovery has been served already?

6              MR. BOIES:  We have each commenced written

7    discovery.

8              THE COURT:  Including document requests?

9              MR. BOIES:  Including document requests.

10             MR. ROSSMAN:  Correct.

11             THE COURT:  And have you responded -- I don't know

12   how far along you are since you've commenced it already.

13   Have you responded yet to the document requests?

14             MR. BOIES:  Not yet, Your Honor.

15             THE COURT:  Okay.  So maybe this might be sort of a

16   little point of intervention here.  When you respond to the

17   discovery request, I -- I find that there might be a

18   generational divide here.  And those of us who started

19   practicing before some of the more recent amendments to the

20   Rules of Civil Procedure over the last ten years may not be

21   in the habit of doing this, but I do believe that the rules

22   require that your response, which is due in 30 days, shall

23   state when you will produce -- when you will make the

24   documents available.

25             So number one is we may be able to avoid a

1    collision course in this case if people abide by that, that

2    if you are responding and saying you're producing something,

3    that it isn't just "We will give you this on a rolling

4    basis," but that there's a firm deadline for producing things

5    and not simply having everything come on the last day.

6              Number two is I read the Rules of Civil Procedure

7    as requiring your response to not only say when you will be

8    producing them, but also if there is an objection and you are

9    saying -- and you -- and there are responsive documents

10   despite the production, that you need to make the responsive

11   documents available.  You cannot hold them hostage to the

12   overbreadth or whatever your other objection is, and you need

13   to be clear in your response what it is you are producing.

14             So, for example, if there's a request for ten years

15   of documents and you think that's overbroad and that there's

16   no way that this is a ten-year-worth-of-document case, you

17   can't just say, "Notwithstanding the following, I'm giving

18   you these 20 documents."  You have to say, "Notwithstanding

19   the objection, I am giving you all responsive documents for

20   the two-year period that I think is the appropriate period,"

21   or whatever, so everyone knows what you exactly have and

22   don't have.

23             Okay.  So assuming we do that and we are not

24   hitting each other with all of your documents on

25   September 7th, but hopefully getting them to each other on a

1    rolling basis prior to that and resolving disputes by

2    September 7th, how much time do you need to determine which

3    witnesses you are going to depose?

4              In other words, instead of timing your deadline for

5    serving notices to fact -- to the close of fact discovery,

6    why not set that deadline to match with the deadline for

7    substantial completion of document production?

8              MR. ROSSMAN:  Your Honor, Mr. Rossman.

9              If I'm understanding Your Honor's suggestion, it is

10   that we accelerate the timing of when we would notice

11   depositions before September 7th, even as we're still

12   completing document discovery?  That's --

13             THE COURT:  No.  No, what I'm saying is that, as of

14   September 7th, you should have your written discovery

15   completed, but you might not have reviewed it all, correct?

16             MR. ROSSMAN:  Correct.

17             THE COURT:  And I'm suggesting that most likely --

18   I mean, obviously, you may find some depositions are needed

19   based on what someone else says.  But assuming most of your

20   depositions you will identify people from the written

21   discovery, I'm asking you how much time after substantial

22   production of documents you will need to figure out who to

23   depose.

24             MR. ROSSMAN:  Oh, I understand, Your Honor.  I

25   think that will be very rapid because presumably both sides

1    know most of the key witnesses already by name.  We will

2    confirm by document who are the ones who are most likely to

3    have relevant testimony.  And we should be in a position, I

4    would think, on that date or within a week of September 7th

5    to be able to share proposed deponents with each other and

6    schedule those depositions immediately.

7            And I would suggest, Your Honor, that we could also

8    take depositions before September 7th to the extent that

9    there are witnesses as to whom documents have been fully

10   produced.  And I would think, given that the document will be

11   produced on a rolling basis, as Your Honor indicated, there

12   should be some number of witnesses who will meet that

13   criteria.

14           MR. BOIES:  I think, Your Honor, it depends.  This

15   is David Boies.

16           I think it depends in large part on when the

17   documents are produced and what -- the volume of documents

18   that are produced.  I would think we be in a better position

19   to assess that if we had a rough estimate of what the volume

20   is going to be, which we don't have at the present time.

21           So I think that, just from other experience in

22   cases like this, I think it is unlikely that we would start

23   depositions until about 30 days after the documents were

24   produced.  People can do it faster than that, and maybe there

25   would be some that we could do faster.

1          But in my experience with complex cases like this

2     with a lot of documents, and including documents from foreign

3     entities, it's hard to get started, really, before about

4     30 days after document production is finished.

5          THE COURT:  So if I were to give you, instead of

6     30 days before the close of fact discovery for serving

7     notices -- or we could actually leave that deadline, but put

8     an intermediate deadline, which would be 30 days or -- maybe

9     14 days after the substantial completion of document

10    production for you to identify the anticipated deponents, not

11    necessarily having the dates when you're going to do the

12    depositions and so forth, but having a list of the

13    depositions.

14          So that would be September 21st.

15          MR. BOIES:  Your Honor, this is David Boies.

16          I think we could identify some.  I think, as the

17    Court indicated, to some extent, the people we want to depose

18    are going to come out of the early depositions.

19          I mean, for example, one of the early depositions

20    would be a 30(b)(6) deposition, presumably.  Each of us is

21    going to want to take a 30(b)(6) deposition on the other

22    side.  And that is going to inform a lot about who we

23    actually want to take depositions of.

24          So while I think we could notice some depositions

25    starting then, I don't think that it would be practical for

1    us to be able to identify all of the depositions we're taking

2    at that point.

3              MR. ROSSMAN:  Your Honor, if I may respond?

4              THE COURT:  Certainly.

5              MR. ROSSMAN:  Thank you, Your Honor.

6              I find it more than a bit surprising, Your Honor,

7    that there's a suggestion that Servicios Funerarios is not

8    going to know what witnesses it wants to depose until 30 days

9    or after document discovery given that this dispute has been

10   pending since November 2021 when they sent us the demand

11   letter.  They filed suit in Mexico in March of 2022.  They

12   filed a criminal complaint in Mexico in June of 2022.

13             They seem to know enough about the dispute to ask

14   for and get embargoes of hundreds of millions of dollars of

15   my client's assets, and they seem to know enough about who

16   the witnesses are or they claim should be witnesses to have

17   arrest warrants issued in Mexico and Interpol Red Notices

18   issued for about half a dozen current or former executives of

19   my client and their affiliates all back in 2022, which has

20   caused tremendous disruption and tremendous lost value to my

21   client's business and threatened the freedom of the

22   executives who are in peril here.

23             And the idea that the plaintiff, who brought this

24   case voluntarily in the District of Massachusetts, brought

25   this case with all this history not knowing who the witnesses

1    are it wants to depose I find quite surprising, indeed.

2            We're anxious to get this case moving as

3    expeditiously as possible because there's real harm to my

4    clients, including individual human beings, some of whom live

5    and work or would like to live and work in Mexico free from

6    fear of arrest, free from fear of being detained if they

7    travel internationally because they've been flagged with

8    Interpol Red Notices.  And they'd like to be able to sell

9    totally unrelated companies or make totally unrelated

10   investments without fear that they're going to be subject to

11   an unwarranted and appropriate asset freeze.

12           And it can't be that that -- you know, that there's

13   not sufficient information on the part of Servicios

14   Funerarios to proceed with this case.  They filed here after

15   all the proceedings in Mexico.  And, by the way, Your Honor,

16   given that they have possession of the vast bulk of the

17   documents at issue when they bought the company at issue that

18   they claim was the source of the fraud, Gayosso, they took

19   the keys.

20           They have the emails.  They have the documents in

21   their possession of that company.  So to the extent there are

22   voluminous documents to be reviewed before we can identify

23   witnesses, they -- there's nothing stopping them from

24   reviewing the documents that are in their own control right

25   now.

1          So, you know, we very much would like to get on

2    with this case and not wait one step at a time for

3    100 percent of the documents to be produced and then for them

4    to have a period of reflection to see what witnesses they

5    want and then for the witnesses to be deposed.  They have all

6    the information that they need to proceed with this case

7    expeditiously, and we very much would like to get on with it,

8    Your Honor.

9          MR. BOIES:  Your Honor, if I could respond?

10          THE COURT:  Yeah.  Unfortunately, that included a

11    lot more than was necessary for our scheduling conference

12    debate, which will then -- invites -- invites a response.

13          I'm going to -- I'm actually not going to get into

14    the substance of what was just said there.  But just with

15    regard to the scheduling, I think the answer to my setting a

16    deadline for your list of witnesses is to give a safety valve

17    to it so that I'm going to set September 21st as the date to

18    give each other the -- identify the fact witnesses to be

19    deposed and that no later notice of fact witnesses to be

20    deposed will be permitted absent good cause.

21          That gives you a safety valve.  If there's some

22    reason you discovered somebody later -- but if you knew about

23    them, you should do it on the front end.  Hopefully it

24    doesn't mean we have a whole lot of fights down the road, but

25    I am going to try to encourage this to move smoothly along,

1    and I hope that will help to do that.  So I'm going to put

2    that as a September 21st date.

3                I'm also going to put around September 7th,

4    Ms. Marchione, an initial status conference in this case.

5                THE DEPUTY CLERK:  Yes.  Excuse me.  Yes,

6    Your Honor.

7                The calendar is populating.

8                September 7th is a Thursday.

9                THE COURT:  Maybe the following week?

10               THE DEPUTY CLERK:  Yes, Your Honor.  I'm in the

11   week of the 11th.  We're picking a jury that Monday.

12               THE COURT:  Or Tuesday.  We might be picking the

13   jury on Tuesday that week.

14               THE DEPUTY CLERK:  Okay, Your Honor.  So we have --

15   we have a Rule 11 on the 13th at 2:30.  So we can do,

16   potentially, 3:15 or 3:30.

17               THE COURT:  Sure.

18               THE DEPUTY CLERK:  Actually, I apologize,

19   Your Honor.  The 14th may be better for you because you have

20   status conferences that usually show up -- we can do

21   three o'clock on September 14th.

22               THE COURT:  Let's do that.  So I'll see everyone

23   then to make sure we're not going sideways on this.  But in

24   the meantime, I will include in the scheduling order

25   September 21st, that by that date, both sides should give the

1   other notice of all fact witnesses you intend to depose.

2          And then I will have your 30 days before the close

3   of fact discovery to actually have served notices of fact

4   witnesses, and that will be limited to those previously

5   identified absent good cause.

6          Okay.  So then we get to the question, if by

7   September 21st you have an idea of who you're going to

8   depose, how much time do you need to depose them?  Assuming

9   you are using the maximum number of depositions, is that what

10  I have to be worried about here?

11         Yes, Mr. Aleo?  You're nodding?

12         MR. ALEO:  That would be my impression, Your Honor,

13  yes.

14         THE COURT:  Okay.  And so assuming that there may

15  be as many as 20 depositions, is that possible here?

16         MR. BOIES:  I think each side will use the maximum

17  number of depositions, I suspect, Your Honor.

18         And I don't mean to reargue the Court's decision,

19  but one of the -- one of the problems with a limited number

20  of depositions is that we may know a number of people that we

21  want to depose; but until we've already looked at the

22  documents and indeed until we've taken some depositions, we

23  don't know which of those -- for example, on September 21st,

24  I could probably give the Court a list of 15 or 20 people

25  that we want to depose.  We're not going to be able to depose

1  all those people.

2          THE COURT:  Correct.

3          MR. BOIES:  But to try --

4          THE COURT:  I'm not sure -- I'm not sure -- are you

5  really saying to me you can't start working on narrowing down

6  that list between now and September?

7          MR. BOIES:  Absolutely we can, Your Honor.  But

8  what I'm saying is that until we take a 30(b)(6) deposition

9  and until we really go through the documents, we're not going

10 to be --

11         THE COURT:  So if you -- if you currently have a

12 request for documents out, the Rules of Civil Procedure

13 contemplate a 30-day response time.  The only reason that, in

14 reality, people tend to do more than 30 days before actually

15 producing the documents is because they voluntarily agree to

16 do so, and they work out what that schedule is going to be.

17         There is nothing to suggest that you have to wait

18 until September 7th to be producing the documents.  And, in

19 fact, there's nothing to suggest that you can't agree with

20 each other to have the production completed earlier than the

21 September 7th deadline.

22         MR. BOIES:  If we had -- if we had a deadline for

23 substantial completion of document production significantly

24 in advance of September 7th, that would enable us to narrow

25 the depositions.  I agree with that, Your Honor.

1          THE COURT:  So that's the -- September 7th is the

2     date that you have suggested here jointly.  I'm suggesting

3     that if you are wanting to -- if you think that in order to

4     start getting to depositions, you want to have -- I mean, the

5     alternative is you can do a 30(b)(6) deposition before you

6     get all the documents, and then you can be doing the two

7     things simultaneously.  That's, obviously, another tactic.

8          I hear what you're saying, that you may want to

9     still say I'm at 20 until I have to -- you know, until the

10    eleventh hour of deciding which ones you are, in fact, going

11    to do; but I don't see -- whether you're giving yourself

12    90 days or 180 days, I don't see it's very efficient to sort

13    of just keep this time open-ended and decide on depositions

14    on a rolling basis without having that timeline keep inching

15    out.

16          MR. BOIES:  I think we could -- we could easily

17    identify -- if we're limited to ten depositions, we could

18    easily identify five depositions on September 21st.  The

19    problem that I foresee is that, as you indicated earlier, you

20    learn things in the deposition that cause you to want to

21    depose somebody.  You also learn things in the deposition

22    that make one person more important than another.  You learn

23    that from looking at the documents.

24          Until we've had a chance to look at, really look at

25    the documents and have a 30(b)(6) deposition and maybe a

1    couple fact -- other fact depositions, it's hard for us to

2    know exactly who of the 15 people in the universe that we've

3    narrowed it down to which are the ten that we really want to

4    do.

5            Speaking of generational divides, when I started

6    practicing law, you didn't have these limitations on the

7    number of depositions.  I think the limitations are basically

8    a good thing, but it means you've got to be careful about

9    identifying who you really are going to depose until you know

10   enough.

11           And Advent has never produced any documents.  They

12   didn't ever produce anything in the Mexico proceedings.  So

13   until we see those documents, it's just hard for us to make

14   the decision as to which ones of these people are we going to

15   spend those depositions on.

16           THE COURT:  So I am not going to give you an

17   open-ended date through February 16th.  I would like to come

18   up with a way to move this forward and get this moving along

19   in an efficient way.

20           Your -- I think your suggestion here is that,

21   rather than having to identify all ten deponents on my

22   September 21st date, you only want to identify the first five

23   of the ten.  Am I understanding you correctly?

24           MR. BOIES:  Yes, Your Honor.

25           THE COURT:  But you would acknowledge that it would

1      be an efficient way if we knew by September 21st the five

2      deponents on each side that both -- that both sides

3      definitely want to take, that will help us move things

4      forward.

5               MR. BOIES:  I agree with that, Your Honor.

6               THE COURT:  Okay.  Let's -- let's do that.  And

7      let's have those people -- those initial five depositions

8      will be completed by November 17th and any further

9      depositions identified by November 17th.

10              MR. ROSSMAN:  Your Honor, if I may?

11              THE COURT:  Certainly.

12              MR. ROSSMAN:  I want to be thoughtful on how this

13     actually fits on a calendar with holidays and so forth.  So

14     when we constructed the schedule that we asked the Court for,

15     we were very mindful of working time versus calendar time.

16     And so we put the deposition period in what I think of as

17     back-to-school time, being a parent myself, which is, you

18     know, after Labor Day, you know, to Thanksgiving, which is

19     probably the most productive time for people to take

20     depositions.

21              And the thought process was we'd spend the summer

22     getting through the hard part of exchanging all of our

23     documents.  The burden's much more on us than on them, I'll

24     fess up readily, in the sense that they are producing the

25     bulk of the documents because they have control of the

1    subject company Gayosso.  They'll probably be in Spanish and

2    have to be translated.  We'll have to get through a big pile

3    of documents in Spanish, and that's fine.  We all work hard.

4           And then the depositions would happen in that fall

5    period that are -- it's generally free of major holidays, so

6    September, October, November, up to Thanksgiving.  We should

7    be able to get 20 depositions done, in our estimation, pretty

8    easily between the firms that you have, you know, in this

9    case in that time period.  And we know who the main deponents

10   are already.  They're identified in the exchanges under

11   26(f), who we think the knowledgeable witnesses are.

12          But what I worry a bit, Your Honor, is that if we

13   allow for, you know, additional depositions beyond

14   November 17th, now we've introduced Thanksgiving.  We've

15   introduced, you know, the Christmas holiday season, the

16   travel that people have; and then all of a sudden, we'll find

17   ourselves in 2024 taking depositions that, in our estimation,

18   you know, could cooperatively have been completed within this

19   time period.

20          And we did already leave an escape valve, which is,

21   to the extent that there are foreign witnesses not under a

22   party's control, we wouldn't subject them to our

23   November 17th proposed deadline.  So I understand that

24   happens sometimes.  There are witnesses that no one can

25   control, and you have to go through a Hague process, and that

1  takes time.

2        But for witnesses, ten witnesses aside that are in

3  the parties' control, you know, I -- and I don't want to

4  reargue if Your Honor has made a decision on this, but I

5  would urge us to try and be in a position where we can get

6  that done by Thanksgiving and not bleed into the holiday

7  season so that we're in the best position to complete this

8  case by early spring and be trial ready, subject to, of

9  course, Your Honor's calendar.

10        THE COURT:  Well, I think what I'm suggesting here

11  is that you have, certainly, 10 out of your 20 witnesses

12  deposed by November 17th.  There would be nothing to preclude

13  you from noticing the other five of your deponents in that

14  same period.  And that may certainly make completing the

15  depositions in a timely manner easier to do.

16        I think you're right.  You get into Thanksgiving.

17  You get into holidays.  On the other hand, I'm not going to

18  write off six weeks of time that there can't be depositions

19  in.

20        Let me go ahead and ask a different question before

21  we finish this point on the depositions.  Is this a case that

22  either side is anticipating a dispositive motion?

23        MR. ROSSMAN:  I'll take a swing at that first,

24  Your Honor, not hearing anything from the other side quite

25  yet.  We're looking at pleadings.  I mean, we have now a

1    joint issue, and we are looking at the pleadings.  And, you

2    know, I can't say that we have a view, but there may well be

3    some or all of the claims here subject to -- I'm talking

4    about plaintiff's claims against us being subject to a

5    dispositive motion at some point.

6                MR. BOIES:  Your Honor, this is David Boies.

7                I think there may be some motions for partial

8    summary judgment that either side could make.  Neither side

9    has made a motion to dismiss.  I think that reflects the fact

10   that a lot of these allegations are fact bound.  But I

11   think -- I agree with counsel for the defendants that there

12   may be some partial summary judgment motions that each side

13   would make.

14               THE COURT:  And are these -- is this a case that

15   the expert discovery is anticipated; and if so, is the expert

16   discovery needed for -- in advance of dispositive motions or

17   is the expert discovery, for example, on damages and

18   dispositive motions would be on liability?

19               MR. BOIES:  Your Honor --

20               MR. ROSSMAN:  Your Honor --

21               MR. BOIES:  -- I doubt that either side is going to

22   be able to make a dispositive motion on damages.  I also --

23               THE COURT:  No, my question was really the other

24   way, which is, is either side anticipating expert discovery

25   on anything other than damages, expert disclosures on

1   anything other than damages?

2        MR. BOIES:  I think there probably will be some

3   expert disclosures on some of the accounting issues.  But my

4   guess is that those are not going to be issues that are going

5   to be the basis of a dispositive motion.  I think that

6   anything that you've got an expert testimony on you're likely

7   to have competing experts to choose from.

8        And I just -- I think it's unlikely that anything

9   that is the subject of the expert reports is going to be

10  something that's going to be ripe for summary judgment.

11       MR. ROSSMAN:  I do agree with that last statement,

12  Your Honor.  I don't think the expert disclosure part of this

13  case is going to bear meaningfully on dispositive motions.  I

14  think, to the extent that there were dispositive motions,

15  they're likely to focus on issues of law and contract rather

16  than anything that the experts will say, whether they be

17  damage experts, accounting experts, or experts on some other

18  subject.

19       THE COURT:  Okay.  So what I'm getting at is that

20  if that's the case, then you have a little bit of play in

21  your proposed schedules if you overlap expert discovery on

22  dispositive motions instead of doing them seriatim.  That's

23  what I'm trying to get at.

24       MR. BOIES:  I think that's right, Judge.  I agree

25  with that.

1          THE COURT:  Okay.  So what I'm going to do then,

2    I'm giving you the interim dates I've given you.  I'm going

3    to have a deadline for completion of completion of fact

4    discovery by the middle of January -- let me get a calendar

5    out -- by January 12th, so before the MLK weekend.

6          And I will spring forward the deadline for

7    dispositive motions.  Well, I think the -- the February 28th

8    deadline then for dispositive motions, not *Daubert* motions,

9    but dispositive motions that -- so January 12th for

10   completion of fact discovery and February 28th for filing

11   dispositive motions.

12         And the expert reports, I'm -- they can be a little

13   earlier than plaintiffs have suggested but probably fine just

14   doing it that way.  So the plaintiff's suggestion on the

15   expert dates and the defendant's suggestion on the summary

16   judgment briefing.  I suppose the plaintiff's suggestion on

17   dates for *Daubert* --

18         MR. ROSSMAN:  Your Honor?

19         THE COURT:  Yes.

20         MR. ROSSMAN:  If the fact deadline will now be

21   January 12th instead of what plaintiffs had proposed

22   February 16th, it seems that gives us the ability to move up

23   the deadline for the expert reports in concert with that.  So

24   I think the schedule they had in mind was approximately one

25   month after the fact discovery deadline ends to have opening

1    expert reports exchanged.

2            So I think instead of a March 18th deadline for

3    expert reports, we can comfortably move that up to

4    February 18th, say, or thereabouts and keep the same rhythm

5    of schedule that plaintiffs had imposed.

6            THE COURT:  Any objection by plaintiffs on that?

7            MR. BOIES:  I think we can do that, Your Honor, in

8    the spirit of moving this forward.  I think we can do that.

9            THE COURT:  Okay.  So we'll move all of those dates

10   up by a month.

11           MR. ROSSMAN:  Thank you, Your Honor.

12           THE COURT:  Okay.  So with that -- and I've got an

13   initial status conference in the middle of fact discovery.

14   Touch base and make sure everything is going as planned.  At

15   that point, assuming it is, I will set a further status

16   conference at the end of fact discovery, which is what I

17   typically do.

18           Okay.  Other things that I try to cover in this

19   status -- in the scheduling conference, number one is

20   protective orders.  I don't care -- that's the wrong word.

21   It suggests something bad.

22           I leave to your discretion how you want to handle

23   the exchange of documents between you in the course of

24   discovery.  But I -- and so you asked me to sign a protective

25   order.  I will -- a stipulated protective order.  I will

1    generally sign it.  The problem comes when you want to file

2    documents that I need to look at.

3          I read First Circuit case law as requiring a

4    presumptive right of public access to anything that I use to

5    make my decisions.  So if you want to file something, you

6    can't ask me to -- first of all, you have to ask to file it

7    under seal.  It can't just be filed under seal.

8          But in order to have a motion to file under seal

9    granted, you have to give me a reason, and it isn't that --

10   would be covered under Rule 26.  And simply saying it was

11   exchanged pursuant to a protective order is not sufficient.

12         So if, for example, plaintiff wants to use one of

13   defendant's documents in a motion that they're going to file,

14   you need to alert the other side, and they need to explain to

15   me why it is it should be kept under seal.  It's not enough

16   to simply say that was the way it was exchanged.

17         My strong recommendation is that you look at

18   whatever it is that you're having a fight about and see

19   whether the part I need to see needs to be kept under seal

20   and whether you can resolve the problem by agreeing on

21   redacted documents.  If you file redacted documents with each

22   other's agreement, that gets around the problem of whether it

23   is sealed or not sealed.  It's not sealed.  It's open, but

24   it's redacted.

25         So the example I always give is you have a contract

1    dispute, and no one wants to reveal to the competitor what

2    the contract price is, but you need me to interpret the

3    contract language; you're welcome to jointly agree to file

4    the contract with the contract price under seal or contract

5    price redacted.  So that's protective orders.

6           The other thing, the rules allow me to require a

7    discovery status conference before filing discovery motions.

8    I don't require it.  I do try to make myself available for

9    such a conference.  And the way you can set one up if you

10   need one is just an email to Ms. Marchione with a copy to the

11   other side.

12          I tend to get you in a day or two if I can.

13   It's -- we've been doing these by Zoom, and I would probably

14   do it that way.  It's a nonpaper event, and I don't do too

15   much heavy lifting, but sometimes I can help find a way

16   forward and avoid everyone doing a lot of paper.  So

17   that's -- that's it on that.

18          Anything else that you would like to address today?

19          MR. BOIES:  Not from us, Your Honor, not from the

20   plaintiff.

21          MR. ROSSMAN:  There is just one subject I think you

22   could be super helpful on, Your Honor, if I may?  So I

23   apologize; I can't -- for some reason, you've vanished from

24   my screen.

25          THE COURT:  Oh, dear.  Yes, go ahead.

1            MR. ROSSMAN:  Okay.  Thank you, Your Honor.

2            So what -- the foundational item in the

3    document-exchange process is, you know, what documents are

4    within the possession, custody, and control of Servicios

5    Funerarios, which as I understand it is essentially just like

6    a holding entity that holds the shares of this company.

7            And critically, it's a question that we raise and

8    have not gotten an answer to and told plaintiffs would raise

9    with the Court, is the possession, custody, and control of

10   Gayosso documents.

11           So the company that was the subject of this

12   transaction as to which they're making fraud claims, which we

13   obviously vehemently disagree with, those documents are now

14   being held by plaintiff.  They're owned and controlled by

15   plaintiff.  And we just wanted to understand if in the

16   discovery process they will take ownership of those documents

17   and make them available for review and production.

18           And I assume they would.  They said the witnesses

19   that are Gayosso employees we should contract through them,

20   so they're going to treat them as if the they are under their

21   control.  I would assume they would also likewise treat the

22   documents as being within their possession, custody, and

23   control.  And we haven't been able to get an answer from

24   that.

25           And that's important because those documents are,

1   obviously, in Mexico and are going to be relevant and perhaps

2   central to some of the claims in this dispute.

3          MR. BOIES:  If I could respond, Your Honor, I

4   thought that what we said -- and I'm actually confident it's

5   what we said, but it may not have been understood -- is that

6   we were prepared to agree that we would take the

7   responsibility for getting document production for any of our

8   affiliates or related entities if Advent would also do that.

9          And I thought that I had heard that Advent was

10  prepared to do that.  I didn't think this was a one-way

11  street.  I thought this was an agreement that each of us was

12  going to take the responsibility to produce the documents

13  on -- of our related or affiliated companies or entities.

14         MR. ROSSMAN:  That -- Your Honor, I think that

15  solves our issue.  We had understood that as well from our

16  discussion with Mr. Boies.  We received a subsequent email

17  from Mr. Sires that was not consistent with that, and that's

18  why I raised the question.

19         But, yes, we will -- from our end, anything that is

20  within control including affiliates of our client, we will

21  take responsibility for reviewing and producing; and I now

22  understand that the same is true with respect to Servicios

23  Funerarios, including Gayosso.

24         THE COURT:  And is the way that you are

25  anticipating this to proceed is that each side will be

1    responding for document requests as if those requests are

2    directed at whatever affiliates are named affiliates, or are

3    you simply saying, "I will shepherd the subpoena through for

4    the other entities"?

5              MR. BOIES:  I don't think we got into that level of

6    detail, but I would be prepared to do whatever they wanted to

7    do with that.  As long as it was mutual, I would be prepared

8    to do it either way.

9              MR. ROSSMAN:  I think we're actually on the same

10   page, Your Honor.

11             THE COURT:  Okay.  So I encourage you working

12   together, and I also encourage you to be as clear as possible

13   with each other because everyone always gets along very well

14   until they stop getting along.

15             MR. BOIES:  Thank you.

16             THE COURT:  And in one place that that will often

17   happen I have seen is in deadlines for producing documents or

18   responding to discovery where everyone is each other's best

19   friends until their patience is -- they've run out of

20   patience, and then we're in trouble.  So I would just

21   encourage you to, yes, be accommodating, but also be clear

22   and perhaps make sure things are in writing so that there's

23   not too much ambiguity where needed, and hopefully we can

24   avoid unnecessary disputes.

25             If you do have disputes, as I said, you're welcome

```
 1    to have a discovery conference, and we do get you in as
 2    quickly as we can.  I don't promise to always resolve matters
 3    in that context, but sometimes I can help.
 4              So with that, unless there's anything else --
 5              MR. BOIES:  Thank you very much, Your Honor.
 6              THE COURT:  Okay.
 7              MR. ROSSMAN:  Thank you, Your Honor.
 8              THE COURT:  Welcome to the session.
 9              MR. BOIES:  Thank you.
10              MR. WELSH:  Thank you, Your Honor.
11              THE COURT:  We are in recess.
12              (Court in recess at 3:42 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1             **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4          I, Robert W. Paschal, Registered Merit Reporter and

5    Certified Realtime Reporter, in and for the United States

6    District Court for the District of Massachusetts, do hereby

7    certify that pursuant to Section 753, Title 28, United States

8    Code, the foregoing pages are a true and correct transcript

9    of the stenographically reported proceedings held in the

10   above-entitled matter and that the transcript page format is

11   in conformance with the regulations of the Judicial

12   Conference of the United States.

13

14                Dated this 31st day of May, 2023.

15

16

17

18

19                /s/ Robert W. Paschal

20                _____

21                ROBERT W. PASCHAL, RMR, CRR
                    Official Court Reporter

22

23

24

25