**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Plaintiff, | |
| v. | |
| ADVENT INTERNATIONAL CORPORATION, | |
| Defendant, | |
| and | Civil Action No. 23-cv-10684-IT |
| ADVENT INTERNATIONAL CORPORATION, | Referral: Hon. Jennifer C. Boal |
| Counterclaim-Plaintiff, | |
| v. | |
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Counterclaim-Defendant. | |

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF AIC'S**
**OPPOSITION TO SERVICIOS FUNERARIOS' MOTION**
**TO COMPEL AIC TO SEARCH DOCUMENTS OF REQUESTED CUSTODIANS**

Defendant and Counterclaim-Plaintiff Advent International Corporation n/k/a Advent International, L.P. ("AIC") submits this brief in opposition to Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V.'s ("SF") Motion to Compel to Search the Documents of Custodians (Dkt. 109 ("Motion")) and accompanying Memorandum of Law (Dkt. 111 ("SF Br.")).

1

## PRELIMINARY STATEMENT

While cloaked as a run-of-the-mill dispute over custodians, SF's Motion has no legitimate discovery purpose.  Over four months of negotiations, SF has failed on at least **six separate occasions**, including when directly asked, to provide any basis to designate the Disputed Custodians.[1]  That fact, combined with its apparent abuse of the Mexican criminal justice system, compels the conclusion that SF's objective in this Motion is to exert additional pressure on AIC by harassing its senior executives and threatening their liberty with criminal process in Mexico.

Discovery from the Disputed Custodians—three of AIC's most senior executives, **including its Chairman, David Mussafer, and the co-head of its Latin American operations, Juan Pablo Zucchini**—would be unreasonably duplicative.  The Disputed Custodians had no involvement in making the financial representations SF alleges to have been false, and SF does not suggest otherwise.  Instead, their roles in the transaction at issue were limited to reviewing or approving it based on materials prepared or obtained by the Advent Mexico employees who actually negotiated the sale—all of whom AIC long ago agreed to treat as custodians.  On top of that, AIC has already offered to produce documents from **other AIC executives who sat on the exact same committees and participated in the exact same approval processes** that SF claims render the Disputed Custodians' documents relevant.  The Motion fails to offer a single nonspeculative reason that the Disputed Custodians would have relevant documents beyond those from custodians AIC has already agreed to produce.

By contrast, SF has given every indication that its pursuit of the Disputed Custodians is for purposes of harassment.  As AIC detailed in its Counterclaims, to extract a settlement for its

---

[1] Herein, "Disputed Custodians" refers to AIC executives David Mussafer, Juan Pablo Zucchini, and Heather Zuzenak.

baseless civil allegations, SF has already sought improper arrest warrants and Interpol Red Notices against other Advent employees, including AIC's former General Counsel and Managing Partner, James Westra.  Significantly, ***SF did so based solely on those employees' signatures on a single document***—in Mr. Westra's case, a document that SF does not even allege to be fraudulent.  This risk compels AIC's grave concern and vehement opposition to this Motion.  While the Disputed Custodians did not engage in any activity on which any legitimate civil—much less criminal—proceeding in Mexico could be based, and are highly unlikely to possess non-duplicative, relevant documents, it is apparent that even the most benign document bearing the name of someone with the most tenuous connection to the Gayosso transaction is liable to be used as a basis for an arrest warrant against them in Mexico.

SF's other discovery conduct deepens this concern.  As AIC explained in its Opposition to SF's Motion for Reconsideration on the Protective Order (Dkt. 120), SF openly concedes its intent to use the documents produced in this litigation ***in the Mexican criminal proceedings***—vigorously opposing a standard "use" restriction in the parties' protective order.  Particularly in the absence of such a restriction, AIC is gravely concerned that any shred of paper could be used as pretext to seek criminal charges against additional AIC executives in Mexico, like the Disputed Custodians.

The Court should reject these tactics and deny SF's motion to compel.

## BACKGROUND

### A. The Gayosso Transaction

SF's claims concern its 2021 purchase of Mexican funeral services company Grupo Gayosso, S.A. de C.V. ("Gayosso") from special purpose vehicles owned by AIC-managed funds. Dkt. 1 ("SF Compl.") ¶¶ 6–10.  SF alleges that AIC knowingly misrepresented Gayosso's financial condition during the negotiation and due diligence process.  *Id.* ¶¶ 14–20.  Not only are these

allegations false, but SF also paints a misleading picture of what individuals are actually relevant to exploring those allegations in discovery.

None of the Disputed Custodians, each of whom is a senior Advent executive based in either Boston or Brazil, had any role in furnishing *any* financial information to SF.  Rather, the Gayosso investment—including its marketing and sale to SF—was directly facilitated by employees of AIC's Mexican affiliate Advent International PE Advisors, S.C. ("Advent Mexico"). Dkt. 14 ("AIC Counterclaims") ¶ 85.  The team managing the transaction (the "Deal Team") consisted of three Advent Mexico employees: Managing Director Enrique Pani Bano, Director Carlos Peña Vasquez, and Associate Veronica Stenner.  Another Advent Mexico employee, Senior Director Carlos Alfredo Paz Perez, assisted the Deal Team in his role as head of Advent's Latin American Portfolio Support Group.  *See* Dkt. 110-3 (AIC's Responses to SF's First Set of Interrogatories) at 8.  Along with outside transaction counsel, the Deal Team and Mr. Paz conducted the entirety of the negotiations and due diligence process for the sale, including the negotiation of the Spanish-language Stock Purchase and Sale Agreement ("SPA") that contains the representations and warranties at issue in this case.  *Id.* at 3–5.  Deal counsel also negotiated a financial guarantee in favor of SF, which AIC's General Counsel James Westra reviewed and signed.  As discussed below, ***AIC long-ago agreed to produce custodial documents from the entire Deal Team, Mr. Paz, and Mr. Westra***.

As relevant to SF's Motion, the Deal Team also reported on the sale to two AIC-affiliated committees: the Latin American Investment Advisory Committee (the "LatAm Committee"), which reviews and recommends whether to approve all transactions involving AIC's portfolio companies in Latin America; and AIC's Latin American Investment Committee (the "Investment

Committee"), which approves all such transactions.[2]   The LatAm Committee evaluated the business case for the Gayosso transaction based on summary information furnished by the Deal Team.  *Id.* at 5.  Then, prior to closing, the Deal Team prepared an exit memorandum containing similarly high-level information about the transaction, which Enrique Pani, a member of the Deal Team and LatAm Committee, presented to the Investment Committee.  *Id*.  Based on the Deal Team's reporting of the transaction, the Investment Committee approved the sale.  *Id.*

As part of the final approval process, AIC issued an exit approval sheet, which was signed off on by members of both Committees and several officers AIC has already designated as custodians.  The exit approval sheet included two statements referencing Heather Zuzenak, AIC's Chief Compliance Officer, neither of which had anything to do with the financial representations at issue in this litigation: (1) that the buyer was not an entity located in countries that may be subject to restrictions issued by the U.S. Treasury Department Office of Foreign Assets Control (OFAC), such that Ms. Zuzenak did ***not*** need to be notified; and (2) that Gayosso was not a publicly traded company, meaning that ***no*** conversations needed to be had with Ms. Zuzenak concerning Advent's possession of material non-public information.  Ms. Zuzenak did not sign the exit approval sheet.

**B.  SF Attempts To Extort AIC By Abusing the Mexican Justice System**

Soon after the transaction closed, SF began an extortion campaign against AIC in Mexico. It first asserted meritless civil fraud claims, seeking (among other things) to freeze hundreds of

---

[2] At the time of the transaction, the LatAm Committee's members were Enrique Pani (a member of the Deal Team), Patrice Etlin, Manuel Garcia Podesta, Mario Malta, Brenno Raiko, Wilson Rosa, Mauricio Salgar, and Juan Pablo Zucchini, all of whom are senior executives of AIC affiliates in Latin America.  The Investment Committee's members were David Mussafer, AIC's Chairman, and two other AIC Managing Partners: Chris Pike, and Chris Egan.  *Id.*  With the exception of Mr. Pani, no member of either committee (nor Ms. Zuzenak) had ***any role*** in the due diligence process or furnishing Gayosso's financial documentation to SF's representatives.

millions of dollars in assets owned by AIC-managed funds in Mexico.  As AIC has alleged, when multiple civil courts denied that extreme relief as improper, SF abused its Mexican criminal counsel's connections to prosecutors and judges to procure the same asset embargoes in criminal court—along with baseless and procedurally improper arrest warrants and Interpol Red Notices against employees of AIC and its affiliates, including Messrs. Pani, Paz, and Westra.  AIC Counterclaims ¶¶ 38–49; *see also* Dkt. 120 ("AIC's Opp. to SF's Mot. for Reconsideration") at 3–5.  SF's criminal counsel is reportedly under investigation by the Mexican Attorney General for similar abuses in other cases.  Dkt. 120 at 12.

This history is of particular concern on this Motion, in which SF seeks to compel production of additional documents from AIC's most senior leadership.  As detailed in AIC's Counterclaims, the prior arrest warrants were obtained without probable cause following a snap hearing with no notice to the accused, based on nothing more than their signatures on a single document.  AIC Counterclaims ¶ 125; AIC's Opp. to SF's Mot. for Reconsideration at 5 n.1.[3]  What's more, in Mr. Westra's case, the judge issued the arrest warrant on the indisputably false basis—never even alleged by the prosecutor—that AIC's longtime Managing Partner and General Counsel had been "hired to verify [Gayosso's] financial situation."  AIC Counterclaims ¶ 200.

## C.  SF Sues AIC In Massachusetts

After AIC refused to cave to its extortion attempts, SF filed suit in this District in March 2023, realleging the same baseless fraud claims it had brought in Mexico, where discovery is not

---

[3]  Many other procedural irregularities confirm the illegitimacy of the arrest warrants.  For instance, all six warrants issued without establishing that the accused probably committed a crime or that the warrant was necessary to cause the accused to appear.  *See* AIC Counterclaims ¶¶ 201–02.

permitted.  It has become apparent that one of SF's main purposes in filing in this Court was to obtain discovery in Massachusetts for improper use in the pending Mexican criminal proceedings.

This intent is especially clear when this Motion is viewed in the context of SF's other discovery conduct.  As described in AIC's Opposition to SF's Motion for Reconsideration of the Protective Order, SF has objected to a standard "use restriction" in the parties' protective order that (if not included) would enable SF to use documents produced in this action in Mexico—where the only active proceedings are criminal ones.  *See generally* AIC's Opp. to SF's Mot. for Reconsideration.  As AIC will further explain in its Opposition to SF's Motion to Compel Identification of Documents (due to be filed tomorrow), SF has also sought attorney-work product reflecting the documents AIC's counsel used to prepare AIC's Counterclaims, and issued the unmistakable threat of bringing a civil or criminal defamation claim in Mexico based on AIC's allegations.  *Id.* at 5 n.1.  Meanwhile, SF has delayed providing AIC with the evidence that purportedly supports its claims.  Despite being required to have all the documents and other evidence necessary to prove its fraud claims upon the filing of its virtually identical first-filed Mexican civil case in *March 2022*, SF was unable to meet the Court-ordered deadline for substantial completion of document production in *this* case in *September 2023*.  Ex. E, Sept. 5, 2023 Email from C. Sires.

**D.  SF's Unreasonable Requests for Designation of Custodians**

This context brings us to the current Motion, in which SF seeks duplicative production from AIC's most senior executives—according to SF, in order to confirm those executives' "possession" of certain transaction-related documents.  AIC has repeatedly tried to accommodate SF's discovery requests, even unreasonable ones.  Pursuant to the parties' stipulated document production protocol, Dkt. 85-1, SF and AIC exchanged initial custodian and search terms requests

beginning in June.  SF's initial request called for AIC to collect and produce documents from ***27 individuals*** (without any justification for any of them) and numerous other categories of custodians.  Ex. A, Jun. 9, 2023 Email from J. Hillborn.  AIC immediately agreed to produce custodial documents from the Deal Team, Mr. Paz, and Mr. Westra.  Dkt. 110-1 (June 21, 2023 Email from G. Soledad).  It did so even though Mr. Westra had very little involvement in the Gayosso transaction, SF has not alleged that any part of the document he signed was fraudulent, and privilege review of his documents would be particularly burdensome given his role as AIC's General Counsel.

All other custodians SF proposed were either irrelevant or inappropriate: (i) four were former Gayosso employees whose documents are in SF's exclusive possession; (ii) five were Advent employees who had no involvement in the Gayosso transaction; and (iii) the remaining thirteen, including the three Disputed Custodians, were senior executives whose only involvement in the transaction was high-level review or approval based on materials or information provided by the Deal Team.[4]  *Id.*  AIC explained that any relevant documents and email communications in the possession of the latter category of individuals' would be captured in the Deal Team's productions, and affirmed its willingness to discuss the issue further.  *Id.*  AIC separately committed to conducting a linear review of all documents stored in its centralized file repositories concerning the Gayosso transaction.  Ex. B, June 30, 2023 Letter from G. Soledad.

---

[4] Underscoring that SF's requests were not tailored to a legitimate discovery purpose, SF sought numerous top executives with no connection to the Gayosso transaction, but not those of SF's principal's brother Carlos Peña—a key member of the Deal Team who served on Gayosso's board, was intimately familiar with its finances, and played a principal role in negotiating the sale (including furnishing the allegedly fraudulent financial statements to SF).  *See* AIC Counterclaims ¶¶ 18, 64–67, 110–125.  AIC produced Mr. Peña's documents anyway.  Dkt. 110-1.

SF had no choice but to stop pursuing the four Gayosso employees under its own control but refused to compromise on any of the remaining nineteen requested custodians. Ex. C, July 6, 2023 Letter from C. Sires. Despite AIC's explanation that searching those individuals' files would yield only irrelevant or duplicative documents (and offer to discuss any disagreements), SF still ***provided no justification*** for its request. *See id.* Indeed, when the parties met and conferred on the issue, SF insisted that it would consider no "compromise between the five custodians [AIC] proposed and the 27 [SF] requested" and that it "would not accept arguments regarding relevance," but only "burden." Dkt. 71-2 (AIC's Email memorializing July 26, 2023 Meet and Confer) at 3. For its part, AIC informed SF that its five agreed-upon custodians already generated a review universe of over 700,000 deduplicated documents, but that AIC nonetheless remained willing "to discuss any reasonable compromise that would resolve th[e] issue." *Id.* at 3–4.

Rather than pursue such a compromise, SF asked the Court to intervene, filing a seven-page letter brief requesting a discovery conference, Dkt. 71, which Judge Talwani summarily denied as procedurally deficient, Dkt. 72. Even in that lengthy filing, SF provided no cogent basis to conclude that the Disputed Custodians' documents would be relevant and nonduplicative—and instead wrongly asserted that "potential duplication of documents [is] no bar to designation." Dkt. 71 at 5 (title case removed).

Still committed to compromise, AIC proposed to resolve the dispute by designating three additional custodians from SF's initial list: Chris Pike, an Investment Committee member whose custodial production would encompass all documents sent to that Committee or circulated among its members; Richard Kane, AIC's Senior Vice President of Business Operations; and Marco Mendes, head of AIC's Portfolio Support Group for Latin America before Mr. Paz took over that

role.  Ex. D, Aug. 16, 2023 Letter from G. Soledad.  Together, the additional custodians AIC offered increased its deduplicated review universe to over ***one million documents***.

SF again rejected AIC's proposal and continued to demand that AIC search the custodial files of ten additional employees whose files AIC had already explained would be irrelevant or duplicative.  Ex. E, Sept. 5 Email from C. Sires.  For yet a fourth time, SF ***failed to provide any explanation*** for its requests, giving AIC no basis to understand its overbroad demand.  *Id.*  At a subsequent meet and confer, SF finally agreed (at AIC's insistence) to provide AIC with a "ranked list of the disputed potential AIC custodians, along with (i) an explanation of why [SF] believe[s] they are necessary in light of the collections we have already undertaken or (ii) questions about the custodian's role that would help [SF] eliminate further proposed custodians."  Ex. F, Sept. 9, 2023 Email from J. Margolies.

Nonetheless, when SF sent AIC its ranked list of custodians nearly two weeks later, it ***still failed to provide any explanation*** of why it believed those custodians were necessary.  Ex. G, Sept. 21, 2023 Email from C. Sires.  Its failure to do so was particularly troubling because its list prioritized senior Advent executives with little or no connection to the case.  *See* Ex. H, Sept. 22, 2023 Email from V. Ramos.  AIC nonetheless offered a *further* compromise to produce documents from two of SF's highest-priority custodians: Managing Partner and LatAm Committee member Patrice Etlin, and AIC Chief Financial Officer Eileen Sivolella.  And once again, AIC "reiterate[d] [its] request that [SF] provide some justification for the additional custodians."  *Id.*

After waiting a week, SF rejected AIC's proposal and demanded instead that AIC agree to designate the three Disputed Custodians within 24 hours.  Ex. I, Sept. 28, 2023 Email from A. Varela and attached correspondence from C. Sires.  This demand was inexplicable because two of the Disputed Custodians were lower-ranked on SF's own "ranked list" than the custodians AIC

had just offered in its compromise proposal.  *See id.*  And on top of that, ***for the sixth time*** SF provided no explanation for why it was seeking the Disputed Custodians in discovery.  *Compare* Ex. H (AIC email requesting "justification for the additional custodians"), *with* Ex. I (SF response ignoring AIC's request).  In response, AIC suggested that the "parties [should] work together cooperatively to resolve disputes, not . . . impose unilateral deadlines in an attempt to manufacture false impasses," and noted its "ongoing frustration with [SF's] unwillingness to provide any basis for [its] requested additional custodians."  Ex. J, Sept. 29, 2023 Email from V. Ramos.  Nevertheless, AIC committed to discuss SF's request with its client and respond promptly in a further attempt to compromise.  *Id.*

SF did not respond.  Instead, it filed the Motion the next business day.

## LEGAL STANDARD

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Even if the requested evidence is relevant, "the court must limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative[.]"  Fed. R. Civ. P. 26(b)(2)(C).  "A requesting party must be able to articulate a basis for the court to find that ESI in the possession of the additional custodians would be different from, and not simply duplicative of, information that the responding party has already produced."  *Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *2 (E.D. Pa. June 8, 2016) (quotations omitted); *see also Coventry Cap. U.S. LLC v. EEA Life Settlements, Inc.*, 2020 WL 7383940, at *6 (S.D.N.Y. Dec. 16, 2020) (collecting authority denying custodians whose documents would be encompassed by existing custodians).  A motion to compel also "should be denied if the court suspects that the request is a fishing expedition or a vehicle for harassment.'"  *In re Komanokai*, 2020 WL 6684565, at *3 (N.D. Cal. Nov. 12, 2020) (internal

quotation marks omitted).

**ARGUMENT**

### A. SF's Request for Additional Custodians is Unreasonably Duplicative

SF has refused at every turn to articulate a basis to collect and search the Disputed Custodians' documents, and no wonder: all their responsive documents are already encompassed by other custodians' productions. AIC has offered to collect and produce documents from (i) all members of the Deal Team who negotiated the sale and managed every aspect of the transaction, (ii) two members of the Portfolio Support Group that supported the sale, (iii) three members of the LatAm Committee that evaluated the transaction, (iv) a member of the Investment Committee that approved the transaction, and (v) multiple AIC senior executives including AIC's SVP of Business Operations, CFO, and General Counsel at the time of the transaction. This led to a review set of well ***over one million documents***.

Together, the agreed custodians and their documents cover every stage of the Gayosso transaction, and every basis SF has ever articulated for seeking the Disputed Custodians' documents. For example, SF argues that Mr. Mussafer "was one of the three members of AIC's Investment Committee that approved the Gayosso sale," SF Br. 7, but ignores that AIC has already agreed to produce documents from Mr. Pike—another member of the Investment Committee who received and reviewed the exact same documentation from the Deal Team, *see* Ex. D, Aug. 16, 2023 Letter from G. Soledad. SF similarly states that Mr. Zucchini was "one of the members of the [LatAm Committee] at the time the Sale was approved," SF Br. 7, but ignores that AIC has offered to produce documents from ***three other members*** of that Committee, *see* Dkt. 110-1 (June 21, 2023 Email from G. Soledad agreeing to designate Mr. Pani); Ex. D, Aug. 16, 2023 Letter from G. Soledad (proposing to designate Mr. Pike); Ex. H, Sept. 22, 2023 Email from V. Ramos

12

(proposing to designate Patrice Etlin, co-head of Advent's Latin American operations along with Mr. Zucchini). And while SF is wrong (SF Br. 7) that Ms. Zuzenak "signed off on the Exit Approval Sheet with respect to the transaction," *see supra* Background A, the sheet *was* signed by members of the LatAm Committee, Mr. Westra, and other executives AIC has agreed to treat as custodians, and shepherded through the process by members of the Deal Team.

SF has thus failed to meet its burden to "demonstrate that the additional requested custodians would provide *unique* relevant information," *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013), rather than "unreasonably cumulative or duplicative" discovery, Fed. R. Civ. P. 26(b)(2)(C); *see also Garcia Ramirez v. ICE*, 331 F.R.D. 194, 197 (D.D.C. 2019) ("[T]he party requesting discovery must be able to articulate a basis for the court to find that ESI in the possession of the additional custodians would be different from, and not simply duplicative of, information that the responding party has already produced." (quotations omitted)).

Indeed, rather than address the ten custodians AIC has actually offered, SF attacks a strawman—attaching and purporting to rebut AIC's discovery correspondence from *June and July*, over two months before the parties reached impasse. *See* Dkt. 110-1 (SF's Ex. A, dated June 21, 2023); Dkt. 110-2 (SF's Ex. B, dated July 27, 2023). Since that time, AIC has offered to designate additional members of both the LatAm and Investment Committees as well as two more of AIC's C-Suite executives. *See supra* Background C. Because SF has not even *attempted* to demonstrate that AIC's existing offer is inadequate, it necessarily cannot demonstrate, as it must, "that the ESI in the possession of the additional custodians would be different from, and not simply duplicative

of, information that the responding party has already produced." *Garcia Ramirez*, 331 F.R.D. at 197 (quotations omitted).[5]

SF's efforts to avoid this conclusion fail. *First*, SF is wrong that "AIC has not provided any support for th[e] assertion" that the Deal Team's custodial documents will include all responsive documents in the Disputed Custodians' files. SF Br. 7–8. As an initial matter, it is SF, not AIC, that "must be able to articulate a basis" that its requests are not unreasonably duplicative. *Garcia Ramirez*, 331 F.R.D. at 197. Moreover, AIC has repeatedly explained to SF that (i) the Disputed Custodians received all Gayosso-related documents from—and shared their approvals with—the Deal Team, and (ii) even if the LatAm and Investment Committees deliberated separately among themselves, AIC has agreed to produce documents from one or more members of each committee. *See* Ex. D, Aug. 16, 2023 Letter from G. Soledad at 2–3. In any event, where a party has already (i) offered custodians in similar roles, (ii) "engaged in multiple rounds of negotiations," (iii) "vetted [its] list with [its] client," and (iv) offered a substantial "number of custodians [and] volume of documents," that party need not "provid[e] greater proof" that the discovery sought is duplicative. *Fortis Advisors LLC v. Johnson & Johnson*, 2021 WL 4314115, at * 2 (Del. Ch. Sept. 21, 2021). *Fortis* is on all fours here: AIC has offered compromise after compromise, ultimately proposing to produce documents from ten custodians as well as all relevant central file repositories—a review universe of well over a million documents.

---

[5] SF's reliance on *Garcia Ramirez* as a case that "reject[ed an] unsupported claim of duplication amongst custodians," SF Br. 9, is misplaced. *Garcia Ramirez* was a class action involving different plaintiffs who were mistreated by different ICE personnel in separate incidents at different times and places. *Garcia Ramirez*, 331 F.R.D. at 198. Because the additional ICE custodians the plaintiffs sought varied by "responsibility, time period, and location," the court found that they were likely to have unique information. *Id.* Here, by contrast, SF seeks to add custodians who had the *same* responsibility at the *same* time concerning the *same* alleged wrong (*i.e.*, approving the Gayosso transaction based on a common set of documents provided by the Deal Team) as other individuals AIC has already agreed to treat as custodians.

*Second*, SF's argument that non-custodians might have shared relevant documents with other non-custodians is pure speculation. *See* SF Br. 10 ("Did he read it . . . ? Did he mark it up? Did he forward it to another person . . . ?"). But mere "[s]peculation that there is more . . . will not suffice." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008). Indeed, "if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end." *Id.*; *see also Harris v. Koenig*, 271 F.R.D. 356, 370 (D.D.C. 2010) ("If plaintiffs are speculating that documents responsive to these requests do exist, there must be a reasonable deduction that that is true, and not a mere hunch."); *Assured Guar. Mun. Corp. v. UBS Real Estate Secs. Inc.*, 2013 WL 1195545, at *3 (S.D.N.Y. Mar. 25, 2013) (denying motion to compel designation of additional custodians based on "simpl[e] speculat[ion]" rather than "extensive exhibits to establish that the proposed custodians possessed additional relevant documents"). SF's conjecture is particularly misguided here because each of the LatAm and Investment Committees deliberated on the Gayosso transaction as a unit, such that all members of each committee (including AIC's proposed custodians) possessed the same body of relevant documents. Ex. D, Aug. 16, 2023 Letter from G. Soledad at 2.

*Third*, SF's argument that possession itself is a "relevant data point[]," SF Br. 9, is inapplicable. SF does not need duplicate custodians to prove that every individual on each committee possessed any particular document. Rather, the Deal Team's emails to and from each committee—as well as any intra-committee communications captured in the custodial files of the individual members of those two committees AIC has agreed to produce—will sufficiently indicate who possessed any document at issue. *See Coventry Cap.*, 2020 WL 7383940 at *7 (denying motion to compel where targeted custodians "were copied on emails that appear to have largely been captured and produced" by other custodians).

15

**B. SF's Requests Present An Unacceptable Risk of Harassing AIC's Senior Executives and Subjecting Them to Criminal Process in Mexico**

SF's request must also be denied as nothing more than "a vehicle for harassment'" and leverage against AIC. *In re Komanokai*, 2020 WL 6684565 at *3. If SF were genuinely interested in obtaining relevant information from AIC, it would have readily responded to AIC's numerous requests to explain its basis for seeking discovery from the Disputed Custodians (or accepted AIC's offer of custodians ranked *higher* on SF's "ranked list" than those it now seeks). Its failure to do so strongly suggests that SF's true purpose is to obtain leverage against AIC by threatening its senior leadership with the prospect of arrest warrants and Interpol Red Notices in Mexico.

AIC's fears are well founded. SF's Mexican counsel has already procured illegitimate arrest warrants and Red Notices against AIC employees based only on their signing a single document. *See generally* AIC's Opp. to SF's Mot. for Reconsideration at 4 (describing SF's criminal counsel's history of employing the same tactics to coerce its adversaries in civil litigation). In AIC's former General Counsel's case, the signed document is a financial guarantee that does not contain *any* of the alleged contractual misrepresentations that are the gravamen of SF's claims. Dkt. 53-2 (Decl. of Daniel Ward, Ex. A). This confirms that *any* document related to the transaction—including those that have no bearing on the claims in this case but could potentially be encompassed by SF's broad documents requests—is sufficient pretext to seek an unlawful arrest warrant and Red Notice against a senior AIC executive with limited involvement in the transaction.

SF's apparent ill intent is confirmed by its pending Motion for Reconsideration of the Court-ordered standard protective order that prohibits use of documents produced in this action outside of this action. *See generally* Dkt. 104. SF openly concedes that if that Motion is granted,

it intends to share documents produced by AIC in this litigation with its Mexican criminal counsel for use in the Mexican criminal proceedings. *Id.* at 6–9.

And now SF has in its crosshairs the Chairman of AIC and other top executives who should have no role in this case or any of SF's other attempts to extort an extracontractual windfall out of an ordinary-course private equity transaction. SF's attempts to probe these executives' files is, at a bare minimum, a transparent attempt to intimidate senior leadership at AIC, threatening them with the risk to their liberty that an arrest warrant and Red Notice (however unlawful and illegitimate) implies. Unless this court puts a stop to SF's tactics, AIC fears that this harassment will continue. The Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, AIC requests that the Court deny SF's Motion to Compel.

Dated: October 16, 2023

Respectfully submitted,

*/s/ Andrew J. Rossman*

Andrew J. Rossman*
Nicholas A. S. Hoy*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com

Joseph H. Margolies*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

Peter L. Welsh (No. 643261)
Daniel V. Ward (No. 667158)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com

*Admitted Pro Hac Vice*

*Counsel for Defendant and Counterclaim-
Plaintiff*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of October, 2023, I caused to be served a copy of the foregoing document via the CM/ECF system on all counsel of record.

*/s/ Andrew J. Rossman*
Andrew J. Rossman