# Exhibit J

| | |
|---|---|
| **From:** | Joseph Margolies <josephmargolies@quinnemanuel.com> |
| **Sent:** | Saturday, September 9, 2023 4:19 PM |
| **To:** | Carlos Sires |
| **Cc:** | Nicholas Hoy; Gabriel Soledad; Valerie Ramos; Ward, Daniel V.; Brooke Alexander; Michael Aleo; Ana Carolina Varela; Matthew D. Cooper |
| **Subject:** | Servicios Funerarios v. AIC \| Discovery Meet & Confer |

Carlos,

Thanks for a productive meet and confer yesterday morning. Below is a summary of what we discussed, by topic. In addition, we understand you will provide the following information to us by Monday:

- Servicios Funerarios' search protocol, including the full list of search terms you have run over Servicios Funerarios' documents and the hits for any terms that you have excluded.

- A ranked list of the disputed potential AIC custodians, along with (i) an explanation of why you believe they are necessary in light of the collections we have already undertaken or (ii) questions about the custodian's role that would help you eliminate further proposed custodians.

- Confirmation that you have no objection to us not running "Advent," "AIC," "Paz," "Pani," "Peña," and "Westra."

- Whether you agree to our proposed date range of Jan. 1, 2017–March 21, 2022 for AIC's production.

- An explanation of any central repositories that you have limited by search terms rather than reviewing in a linear fashion, including the size of those repositories.

- Whether you are willing to reconsider any of your positions encompassed by AIC's motion to compel.

- An update on whether Mr. Chagoya will voluntarily provide his documents.

- Mr. Chagoya's employment (or other) contract with MexCap.

### AIC's Custodians

We reiterated that (i) we have taken substantial effort to collect, review, and set for production documents from our original custodians plus three additional custodians in accordance with the compromise proposal we sent weeks ago, and (ii) we do not believe it is reasonable, productive, or necessary to now re-trade on the custodians after we did not hear from you for several weeks, but (iii) we continue to hope there is a potential compromise and will work with you to find it.

You agreed to provide us a priority list of the disputed potential custodians by this coming Monday. We noted it would also be helpful to understand your basis for seeking these additional custodians in addition to those we've already agreed to.

### Search Terms for AIC's Production

You asked whether we were limiting our searches by excluding the search terms we identified in our August 16 letter. We explained that after we did not hear from Servicios Funerarios, we ran all of your proposed terms (including all of AIC's search terms) across all custodial data, and excluded only "Advent," "AIC," "Paz," "Pani," "Peña," and "Westra" for the evident reason that they would hit on nearly every email in these custodians' files.

You agreed to confirm by Monday whether you have any objections or proposed modifications to these limited exclusions.

**AIC's Date Range**

We explained that AIC and Servicios Funerarios are not identically situated for discovery purposes. AIC's counterclaims allege substantial post-closing misconduct for which a May 2023 end date is appropriate. Your claims focus on alleged pre-closing misconduct, so an end date shortly after the close of the transaction is appropriate. As a compromise, we proposed a date substantially later than the close of the transaction, March 21, 2022, the date Servicios Funerarios filed the Mexican civil action.

You agreed to discuss internally and let us know by Monday whether you agree to this proposal.

**AIC's Central Repositories**

We reiterated that we have searched central repositories in a linear fashion, not limited by search terms. We will produce all responsive documents within the agreed-upon date range. You asked how we identified central repositories, and we explained that we conducted interviews and reviewed the contents of the folders we collected to ensure they contained the full scope of materials we would expect to be included.

**Personal Devices**

You asked whether we collected our custodians' personal devices. You represented that you have collected all data on personal cellular devices from Carlos Peña, Pablo Peña, and Mariana Gonzalez, including text messages and WhatsApp messages. We confirmed that we had collected some work laptops, and would revert with additional information concerning the collection of personal devices, including from former employees.

**Technology-Assisted Review**

We explained that we believe that we have a reliable TAR algorithm, and that we have sampled (and will continue to sample) excluded documents to confirm this. To ensure a complete production, we have also conducted a linear review of all documents responding to the following search terms: "Gayosso;" *@mexcap.mx; *@executionfinance.com; and *@fibrauno.mx during the time frame January 2019 through March 31, 2021.

You noted that you had not been able to establish a reliable TAR model and thus do not intend to use TAR in your review process.

**Search Terms for Servicios Funerarios' Production**

We reiterated our request to understand precisely what terms Servicios Funerarios has run over its documents, based on our understanding that you have limited your search terms to a subset of those we proposed. You indicated that you ran "more than half" as-is, but excluded others. We asked to see in writing an explanation of your search process. We also expressed concern about your running search terms over central repositories rather than using linear review, which is the normal approach for central repositories.

You agreed to provide on Monday the full list of search terms you have run, bucketed by group of search terms and documents over which each group has been run. We asked that you also provide an explanation of any central repositories you have limited by search terms rather than reviewing in a linear fashion, including the size of those repositories.

**Servicios Funerarios' Second Set of Interrogatories**

We reiterated our position that we are not required to respond to contention interrogatories at this time. We asked that if you have authority that would require us to supplement our response now, you send it to us for consideration.

**Documents Concerning Servicios Funerarios' Conduct in Mexico**

You stated your position for the RFPs concerning documents on which AIC based its allegations about Servicios Funerarios' improper conduct in obtaining criminal relief in Mexico, AIC should locate the "file" in which those documents are gathered and identify the documents specifically in a production. We explained that such a request improperly implicates attorney work product. We asked if you would be willing to produce and identify the "file" of documents that Servicios Funerarios relied on to file its own claims in this litigation and you said that you would not. We nevertheless asked you to provide any authority that supports this request and you said that you would do so.

**AIC's Supplemental Interrogatory Responses**

You asked when we intend to supplement our responses to your first set of interrogatories. We responded that our supplemental responses are underway and we expect to provide them in the next week or two.

**Privilege Logs**

You proposed that Servicios Funerarios not be required to log attorney communications with Boies Schiller Flexner on the basis that BSF was engaged after the arrest warrants were issued. We responded that we would consider your proposal and revert with our position.

**Letters Rogatory**

You indicated that you intend to add local counsel to each of the letters.  You confirmed that you would provide us an amended copy of each of the letters rogatory.

We agreed to take lead on submitting the letters once the Court has signed off on their issuance. We will provide translations later this week (which will be subject to the changes of local counsel you are making).

**Servicios Funerarios' Production**

We asked for an update on the status of your production. You represented that your most recent productions were Gayosso's internal documents and that you are providing rolling productions in chronological order with approximately 240,000 Gayosso documents produced and further documents to be produced. You also indicated that documents from different sources (*i.e.*, Gayosso and MexCap) will use different Bates prefixes.

You also explained that for the pre-sale Gayosso documents (*i.e.*, the documents produced to date), you were not performing a review for responsiveness and instead were bulk-producing all documents hitting on search terms (subject to spot checks). You also indicated that the majority of Gayosso productions should be complete by next week, with clean-up productions potentially to follow, and that you expect to have at least one MexCap production complete next week.

You asked about the status of AIC's production, and we explained that we are in a position to certify substantial completion, including custodial documents and central repositories, with a likelihood of some smaller clean-up productions to follow.

**AIC's Motion to Compel**

You agreed to let us know over the weekend if you are willing to reconsider any of your positions encompassed by AIC's motion to compel, rather than opposing the motion to compel in its entirety.

## AIC's Request for Documents from Mr. Chagoya

We asked for an update on our request that you ask Mr. Chagoya if he will voluntarily agree to provide relevant documents—reiterating our concerns that Servicios Funerarios has not agreed to take responsibility for someone identified on your initial disclosures as a person to contact via your counsel. We also asked for additional information concerning your representation that Mr. Chagoya is not an employee, including confirming whether you looked at Mr. Chagoya's employment/contract with MexCap.

You indicated that you had and would provide us a copy of the agreement on Monday, as well as responses to whether Mr. Chagoya will voluntarily provide documents in this litigation or whether you will let us contact him on our own.

## Discovery Concerning El-Mann Family

We asked that you provide additional detail on what documents relating to the El-Mann family you intend to exclude, including discussing with your client whether any side agreements relating to Gayosso exist. You agreed to provide more detail next week.

—

Best,

Joe

**Joseph Margolies**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

191 N. Wacker Drive Suite 2700
Chicago, IL 60606
312-705-7444 Direct
312.705.7400 Main Office Number
312.705.7401 FAX
josephmargolies@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.