# Exhibit M



October 16, 2023

**CONFIDENTIAL**
**VIA EMAIL**

Gabriel Soledad
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
gabrielsoledad@quinnemanuel.com

Re: *Servicios Funerarios GG, S.A. de C.V. v. Advent International Corporation*
    Case No.: 23-cv-10684-IT

Dear Gabriel:

We write in response to your letter, dated September 28, 2023, concerning Plaintiff's September 6, 2023 Responses to Defendant's Second Set of Requests for the Production of Documents, and to address further issues raised during the meet and confer convened last Thursday, October 12.

**I.   Cell Phone Collection**

As we previously told you, SF is prepared to accept a review of three custodians' cell phone data: Mr. Pani, Mr. Paz, and Mr. Zucchini (dropping Mr. Westra from our earlier request). Per our discussion, if we do not hear back from you today, we will assume that we are at an impasse on this issue and act accordingly.

**II.  Production Date Range**

During our October 12, 2023 meet and confer, you proposed running the limited set of search terms we provided over the period from March of 2021 through October of 2022, instead of through May of 2023. Because, among other reasons, your counterclaims concern the effects of the actions upon which you base your close of discovery cut-off, we cannot agree to that proposal. As a result, we presume we are at impasse on this issue.

**III. Interrogatory Response Amendments**

In our meet and confer, we thanked you for providing amended interrogatory responses, but outlined several ways in which we felt they were still deficient. We asked that you add specific details regarding the time, place, and manner of the acts upon which



your counterclaims are based prior to having them signed. We also asked you to let us know when we could expect a signed version.

On our interrogatory responses, we agreed to follow up in response to your questions on Interrogatory 6. I can confirm that we will amend that response.

## IV.     Production Updates

**Chagoya Documents**: We agreed to follow up regarding the lack of documents in our productions listing Chagoya as a custodian. Those documents were flagged for a secondary privilege review which has now been completed. You should receive a production of those documents today.

**Metadata Updates**: We have alerted our vendor to the list of issues you brought to our attention concerning the metadata fields for our productions. They are working on remedying the issue as they did with the confidentiality information previously. We will provide a metadata update by the end of this week.

Concerning the custodian field specifically, the custodian information in the production metadata contains all the necessary information for you to evaluate the scope and diligence of our production within a single "custodian" field. As part of de-duplication, all custodians who gave us a duplicate document are listed in the single "custodian" field for the sake of efficiency. This single field is the general practice of our vendor. The custodian field provided is the only one that exists within our review platform; there is no additional metadata to be provided.

**Outstanding Production:** As we told you during the October 12, 2023 meet and confer, in addition to those documents concerning Mr. Chagoya referenced herein, we are continuing to work with Mexican counsel and those documents have not yet been produced.

Additionally, we are performing a linear review of a small number of handwritten documents.

## V.     Objections

Regarding our multiple objections to your requests for "all documents and communications" for non-compliance with Rule 34's reasonable particularity requirement, and our repeated objections to your requests for "documents sufficient to show" various items, we confirm that we are not actively withholding any documents based on those objections.



We are merely declining to certify that we have complied with your broad and nebulous requests as drafted, as their vagueness makes it nearly impossible to do so.

As discussed on our call, and further below, we are willing to entertain any proposal regarding additional search terms to provide greater certainty that responsive documents are produced, however, we have received no such proposal to date despite a statement in your September 28, 2023 letter that one would be forthcoming in short order.

### VI.   Withholding Documents on the Basis of an Objection

Where we intend to withhold documents based on our objection, we have so stated, in accordance with Rule 34.  Where your requests were vague and ambiguous, we have stated our understanding of the request and, unless specifically stated, intend to produce in accordance therewith.  All responsive materials will be produced to the extent they exist, are in our client's possession, custody, or control, are not protected by an applicable privilege, and are located through a reasonable search in accordance with an agreed-upon search protocol.

### VII.   Proposal of New Search Terms

By our estimation, it appears that many of the documents that your second set of RFPs seek will already have been pulled by the search terms already run.  As we told you on Friday, documents reviewed during this round were coded for production in response to all RFPs, not solely the first set.  Further, as we previously told you, we agreed to undertake a non-ESI review for the following requests from the second set of RFPs: Nos. 54, 84-85, 87, and 90.  Many of these documents were produced in the final production on the substantial completion date.  To the extent we identify any others in our final checks, we will endeavor to produce those promptly.

If you wish for us to undertake ESI searches for any of the remaining requests on which we have agreed to produce subject to agreement on an ESI protocol, please propose search terms, custodians, and a date range that would be acceptable to you.  To the extent you lack information sufficient to generate search terms on any specific request, please identify the request by number and state with as much specificity as possible the information you are missing, and how it fits into your proposed search term.

**Request Nos. 35–38, 40–41:** regarding your request to propose search terms reflecting "any formal or informal arrangement between or among the El-Mann Family, their entities, Fibra Uno, Grupo E, Servicios Funerarios, Gayosso, MexCap, and the Peña brothers."



We have, on multiple occasions, clarified for you the scope of Fibra Uno's involvement with Gayosso and produced documents in keeping with the same.

In response to the first set of RFPs, we ran "Grupo E" across all MexCap and Gayosso documents, and "El-Mann" and "Fibra Uno" against all Gayosso documents.

We are currently testing a sample of documents from the following search, which generates approximately 11,000 hits: ("El-Mann" OR "Fibra Uno") AND (Gayosso or "Servicios Funerarios").  If you wish to propose further limiters or alterations for this term, please let us know.

**Request No. 43:** regarding your request to provide "a list of individuals involved in the valuation and revaluation of the Real Estate—together with a description of their role(s)—the dates on which the valuations were conducted, and what vendors were used to perform such valuations," such that AIC can better limit SF's burden or review.

We will provide this information by the end of this week.

**Request No. 42**: regarding your request for "a list of individuals involved in securing funding for the Gayosso Transaction—together with a description of their role(s)—the dates when such funding was sought, and what vendors were contacted in connection with the request for funding[.]"

We will provide this information by the end of this week.

**Request No. 96**: regarding your request for "a list of all [Servicios Funerarios] 'shareholders, beneficiaries, board members, and specific providers[.]"

We have now, on multiple occasions, confirmed for you the ownership and structure of Servicios Funerarios.  We have also produced documents evidencing same.  There is no further information to provide concerning this request and, so, we will not commit to providing anything additional.

**VIII.   Requests for Searches That Should Not Be Limited Exclusively to an ESI Search**

As discussed previously, we have agreed to search for and produce documents responsive to Requests 54, 84-85, 87, and 90 using traditional methods, including linear review of the central repositories, as appropriate.

As for Requests 33, 34, 36, 39, 42, 44, 46, 53, 55, 56, 58, 59, 60, 61, 62, 65, 66, 67, 68, 70, 72, 80, 81, 86, 92, 100, 101, 102, 103, 105, 110, 111, and 112, you are now



requesting non-ESI review for an extraordinary number of requests, and while we understand your request, we cannot agree or disagree until we understand the sum total of work requested by you under the second set of RFPs. We are willing to discuss non-ESI review alongside your search term proposal.

IX.     **Responses Seeming to Limit A Request for Production**

**Request No. 50**: While we disagree with your position on waiver and find indirect ownership to be a vague concept, there is no dispute on this item. We do not intend to withhold any documents located as the result of an agreed-upon search protocol on the basis of our objections.

Additionally, we have now, on multiple occasions, confirmed for you the ownership and structure of Servicios Funerarios. We have also produced documents evidencing the same. Carlos Peña has neither "direct" nor "indirect" ownership of either Servicios Funerarios or Gayosso.

**Request No. 51:** Same answer as 50.

**Request No. 63:** Regarding your follow up comments on your request for "[a]ll Documents and Communications related to or concerning any opinions, analysis, or recommendations from any auditor, accountant, or entity that provides auditing or accounting services regarding Gayosso's financial reporting or accounting practices, including without limitation those identified in response to AIC's Interrogatory No. 6[,]" our position remains the same as in our responses and objections to your second set of requests for production.

As Judge Talwani set forth in the August 31, 2023 Order Granting in Part and Denying in part AIC's Motion for the Issuance of Letters Rogatory (ECF No. 81), the parties have not yet disclosed expert witnesses in this case. At this stage, Servicios Funerarios reserves the right to designate any of Mr. Chávez, Mr. Lambarri, Ms. Lerin, Mr. Ramos, or Mr. Hernández as trial experts in this case (whose depositions may be taken in the regular course). Hence, as the court noted in the August 31 Order, Rule 26(b)(4)(D)'s expert safe harbor may ultimately apply to these individuals. As the court noted, in the event Mr. Chávez, Mr. Lambarri, Ms. Lerin, Mr. Ramos, or Mr. Hernández are designated as expert witnesses, AIC will be entitled to re-file its motion for letters rogatory, explaining why the exception to Rule 26(b)(4)(D)'s safe harbor should apply to these experts.

Therefore, Servicios Funerarios is not obligated at this stage of the litigation to produce documents sufficient to show opinions offered or to be offered in the Mexico Civil Action by either of Mr. Chávez, Ms. Lerin, Mr. Ramos, or Mr. Hernández or any other expert witness. Nor is Servicios Funerarios obligated at this stage of the litigation to



produce documents sufficient to show opinions offered or to be offered in the Mexico Criminal Action by Mr. Lambarri or any other expert witness.

**Request No. 64:** It appears that you misconstrue your own request, which asks for "[a]ll Documents and Communications related to or concerning any changes to Gayosso's financial reporting or accounting practices, including without limitation any changes or accounting practices implemented post-closing and the reasoning behind those changes." Materials related to changes in Gayosso's financial reporting or accounting practices could indeed include the work product of and confidential communications with experts, which are protected from disclosure by Rule 26. If you disagree, please explain your reasoning as to why such documents "would not have been created by experts hired for this litigation." In addition, please see the response to 63, above.

**Request Nos. 65-72, 75:** See 63 and 64, above.

**Requests No. 63-72, 75:** Regarding your follow up comments on these requests, we confirm that we are not withholding any documents "reviewed, relied upon, or referenced" by Mr. Chagoya in the report that was furnished to the Mexican prosecutors.

**Request No. 75:** We confirm that we are not withholding any documents received or prepared by Mr. Chagoya in response to your request for "[a]ll Documents and Communications concerning the Service Agreement, including without limitation a copy of the Service Agreement and all documents and information provided to Mr. Chagoya in connection with the Service Agreement."

**Request No. 76:** We confirm that we are not withholding any such documents.

**Request No. 87-89:** We confirm that we are not withholding any such documents.

**Request No. 91:** Regarding your follow up question on your request for "[a]ll accounting workpapers, whether prepared by Gayosso or any auditor, accountant or entity that provides auditing, accounting, or other services, including without limitation workpapers concerning, related to or reflecting the computation of cost of goods sold, inventory, contractual obligations and deferred revenue balances[,]" our response is clear. Rule 26 protects, at this stage of litigation, expert discovery.

**Request No. 97-99:** Regarding your follow up comments on your request for materials concerning "'Juan Venancio Torres Ortega,' 'Ariel Saenz Gonzalez,' and 'Jose Luis Lopez Rosales' concerning Gayosso[,]" we stand on the responses and objections contained in Plaintiff's response to Defendant's second set of requests for production. We do not intend to produce "all documents" concerning these individuals and Gayosso, but only those documents relevant to the litigation in accordance with our discovery obligations under the law.



**X.       Documents You Inappropriately Refused to Produce**

We are currently discussing each of these objections with our client to determine where we can comply without unreasonable burden such that maintaining our well-founded objections is inefficient.  We will revert as soon as we are able, but no later than the end of the week.

**XI.      Privilege Logs**

We can confirm that we are not making blanket objections to logging any and all "communications with counsel" in response to the Second Set of Requests for Production.  As we have discussed with you previously, we do not intend to log emails between BSF and the client, and we understand you to agree.

We are continuing our privilege review in connection with the Second Set of Requests for Production and will list privileged materials responsive thereto in our privilege log.  As mentioned in our prior communications, we are analyzing the number of documents flagged for privilege to determine the amount of time we will need to complete secondary review of those documents, produce any that were incorrectly tagged, and prepare a log.  We anticipate we will need several weeks after last Thursday's substantial completion date to do so.

Sincerely,

Carlos M. Sires