# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

---

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,   Case No. 23-cv-10684

  Plaintiff/Counter-Defendant,

  v.

ADVENT INTERNATIONAL CORPORATION,

  Defendant/Counter-Plaintiff.

_____/


**SERVICIOS FUNERARIOS GG, S.A. DE C.V.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL ADVENT INTERNATIONAL CORPORATION TO
(1) PRODUCE DOCUMENTS AND (2) RESPOND TO INTERROGATORIES**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ..........................................................................................................................1

ARGUMENT ...............................................................................................................................3

I.     DISCOVERY CONFERENCES.............................................................................................3

II.    THE NATURE OF THE CASE AND RELEVANT FACTS ...............................................3

III.   DISCOVERY DISPUTES AT ISSUE ...................................................................................7

      A.     Production of Cell Phone Data from Paz and Zucchini ...........................................7

      B.     Production of Documents for the Requested Date Range ......................................10

      C.     Insufficient Answers to Second Set of Interrogatories..........................................11

IV.   SERVICIOS FUNERARIOS' POSITION WITH RESPECT TO THE DISCOVERY
        DISPUTES ..........................................................................................................................15

      A.     Production of Cell Phone Data ..............................................................................15

      B.     Production of Documents from March 2022 through May 2023 ...........................17

      C.     Response to Interrogatory 11 .................................................................................18

CONCLUSION............................................................................................................................19

CERTIFICATE OF SERVICE ....................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                    **<u>Page(s)</u>**

*Billings v. Taylor Royall, Inc.*,
    2000 WL 490734 (D. Md. Apr. 11, 2000) .............................................................................. 7

*Dauska v. Green Bay Packaging Inc.*,
    291 F.R.D. 251 (E.D. Wis. 2013) ........................................................................................ 17

*Duhigg v. Goodwill Indus.*,
    2016 WL 4991480 (D. Neb. Sept. 16, 2016) ...................................................................... 18

*Evenson v. Johnson Bros. Liquor Co.*,
    2020 WL 12948540 (D. Minn. May 19, 2020) .................................................................... 16

*Guarriello v. Family Endowment Par*tners, LP,
    2015 WL 13694425 (D. Mass. Oct. 30, 2015) ............................................................... 2, 13

*In re Recticel Foam Corp.*,
    859 F.2d 1000 (1st Cir. 1988) ............................................................................................. 17

*Mack v. Great Atl. & Pac. Tea Co.*,
    871 F.2d 179 (1st Cir. 1989) ............................................................................................... 17

*Menard v. CSX Transportation, Inc.*,
    698 F.3d 40 (1st Cir. 2012) ................................................................................................... 6

*Muhammad v. Love's Travel Stops*,
    2019 WL 2210770 (S.D. Ohio May 22, 2019) .................................................................... 13

*Opio v. Whole Foods Market Group, Inc.*,
    2021 WL 5500481 (D. Me. Nov. 22, 2021) .......................................................................... 6

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ............................................................................................................ 15

*Paisley Park Enters. v. Boxill*,
    330 F.R.D. 226 (D. Minn. 2019) ......................................................................................... 16

*Ramirez v. Cnty. of L.A.*,
    231 F.R.D. 407 (C.D. Cal. 2005) ........................................................................................ 17

*Weinreich v. Brooks*,
    2022 WL 2373796 (D. Mass. Apr. 4, 2022) ........................................................................ 15

*Wells Fargo Bank, N.A. v. Wasserman*,
    2011 WL 3878368 (D.R.I. July 15, 2011) ........................................................................... 19

**<u>Rules</u>**

Fed. R. Civ. P. 26......................................................................................................... passim

Fed. R. Civ. P. 33............................................................................................... 1, 18, 19

Fed. R. Civ. P. 34........................................................................................... 1, 15, 16, 17

Fed. R. Civ. P. 37........................................................................................................... 1

Plaintiff Servicios Funerarios GG, S.A. de C.V. ("Servicios Funerarios"), pursuant to Local Rules 7.1(b) and 37.1 and the Court's Standing Order Regarding Discovery Disputes, submits this memorandum in support of its motion, made pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 37, to compel defendant Advent International Corporation ("AIC") to (1) search for relevant documents maintained on the mobile devices of two key custodians, (2) produce documents responsive to a limited set of search terms for the time period March 2022 through May 2023, and (3) answer under Interrogatory No. 11 of Servicios Funerarios' Second Set of Interrogatories and verify its answers to Interrogatories Nos. 10 and 11 of Servicios Funerarios' Second Set of Interrogatories.

## **INTRODUCTION**

Servicios Funerarios brought this action to redress the fraud committed upon it in connection with its purchase of Grupo Gayosso, S.A. de C.V. ("Gayosso").  Gayosso was owned by passive investment trusts that were controlled and managed by AIC.  Despite that fact, AIC asserts that it did not participate in, or even know about, the fraud, which consisted of the misrepresentation of Gayosso's true financial condition.  AIC has thus placed its knowledge of, and participation in, the fraud squarely at issue in this litigation.  Yet, AIC has refused to search the mobile devices of two key Latin America-based AIC employees who were intimately involved in the sale.  AIC cannot dispute that these employees used cell phone apps to communicate about the sale of Gayosso. These mobile devices are thus unquestionably potential repositories of evidence – principally communications about Gayosso involving AIC senior employees in the United States – that cuts to the heart of AIC's attempt to distance itself from the fraud.   AIC has no basis for refusing to search these devices.

In addition, AIC unilaterally truncated the time period for which Servicios Funerarios requested it produce documents, refusing to search anywhere for responsive documents beyond a unilaterally set date of March 2022, when the arrest warrants for AIC employees were issued.  But although that date postdates the sale of Gayosso, documents created or received by AIC employees during that time are potentially relevant not just as to matters relating to the sale itself, but with respect to AIC's counterclaim, which seeks damages AIC claims to have suffered as a result of the criminal proceedings, including the arrest warrants.

AIC has also failed to answer Interrogatory No. 11 of Servicios Funerarios' Second Set of Interrogatories.  That is a critical interrogatory because it asks AIC to identify, with factual detail, "each instance" in which it maintains Servicios Funerarios acted corruptly. After first refusing to respond substantively to this interrogatory – incredibly, asserting that it could not be expected to provide the basis for its incendiary allegations "before at least the completion of fact discovery" – AIC was finally forced to respond when faced with Judge Talwani's opinion in *Guarriello v. Family Endowment Partners, LP*, which makes clear that Interrogatory No. 11 is not "premature." 2015 WL 13694425, at *2-3 (D. Mass. Oct. 30, 2015).  Yet, choosing to obfuscate the lack of support for its allegations of corruption, AIC's amended answer to Interrogatory No. 11 is no answer at all.  Instead, it simply "incorporates by reference" AIC's response to a different interrogatory asking for different information.  Missing from the response incorporated by Interrogatory No. 11 is the requested information: the identification of "any instance," including related facts, where Servicios Funerarios acted corruptly.  If AIC has any evidence of corrupt conduct by Servicios Funerarios, it must come forward with it now.  If it does not, as is obviously the case, it must state so clearly and without equivocation in response to the interrogatory.  In

addition, the amended answers to both Interrogatories Nos. 10 and 11 must be verified, something AIC has failed to do despite numerous requests.

## ARGUMENT

### I.   DISCOVERY CONFERENCES

The parties engaged in numerous discovery conferences through email and by Zoom in an effort to resolve their discovery disputes.  While as a result of these conferences the parties resolved many of their discovery disputes, they were not able to resolve the three disputes raised in this motion.  Participating in the conferences were Carlos M. Sires, Michael Aleo, and Brooke Alexander, as counsel for Servicios Funerarios, and Gabriel Soledad and Daniel Ward, as counsel for AIC.  In addition, other attorneys for both parties participated in the conferences in a supporting role.

### II.   THE NATURE OF THE CASE AND RELEVANT FACTS

This action arises from Servicios Funerarios' purchase of the stock of Gayosso.  (Doc. 1 at ¶¶ 7-10.)  AIC is a private equity investment fund manager that makes investments in portfolio companies and sells those companies over time, with the idea of achieving a return on the investment.  (*Id.* at ¶¶ 3, 35, 36.) Gayosso was one of AIC's portfolio companies.  (*Id.* at ¶¶ 3, 8-9.)  Gayosso was nominally owned by special purpose entities (referred to as the "Twibels") that AIC set up, "managed," and "controlled," (*id.* at ¶¶ 8-9, 38), but it was AIC that "controlled the 'sell side' of the fraudulent sale of Gayosso to Servicios Funerarios."  (*Id.* at ¶ 41.)  As part of the transaction, AIC provided Servicios Funerarios with financial information and documentation concerning Gayosso.  Through Gayosso and the selling entities it controlled, AIC represented that the information provided was "true and complete" and did not include false or incorrect data.  (*Id.* at ¶ 13.)

3

In fact, the representations made to Servicios Funerarios were false in numerous, material respects. (*Id.* at ¶ 14.) While the representations portrayed Gayosso to be a financially sound and healthy company, they misrepresented the true financial condition of the company which, in truth, had a negative valuation. (*Id.* at ¶ 16.) The false representations were made in several ways, including by the deletion and concealment of invoices, which served to understate Gayosso's liabilities, (*id.* at ¶ 21); the creation of fake invoices, which served to overstate Gayosso's revenue, (*id.* at ¶¶ 24-27); the use of falsely reduced costs of sale, which served to overstate profit margins, (*id.* at ¶ 29); and the failure to disclose liabilities, which served to overstate the company's value, (*id.* at ¶¶ 30, 31.)

In response to this fraud, Servicios Funerarios commenced a civil action in Mexico against the Twibel entities, AIC, and AIC's Mexican subsidiary. (Doc. 14, Counterclaim, at ¶ 14.) Though this Mexican action remains pending, AIC dissolved the Twibel entities soon after the sale. (Doc. 1 at ¶ 40.) In view of the dissolution of the Twibels, the slow progress of the litigation in Mexico, and AIC's failure to appear in the Mexico litigation, Servicios Funerarios filed this action against AIC seeking to recover its damages as a result of the fraudulent scheme orchestrated by AIC. (*Id.* at ¶¶ 19-20, 47.)

In addition to the civil action, Servicios Funerarios lodged with the Mexican Public Prosecutor's Office a criminal complaint against individuals employed by AIC, its subsidiary, and the firm that audited Gayosso whom it had reason to believe had been involved in, or had assisted with, the fraud in connection with the sale of Gayosso. (Doc. 14, Counterclaim, at ¶ 20.) After the Mexican Public Prosecutor's Office conducted an independent investigation of the information in the criminal complaint, it sought both the issuance of arrest warrants against these individuals and embargoes on the assets of several Mexican entities that are controlled and managed by AIC,

all as provided by Mexican law.  In response to the prosecutors' requests, the Mexican court issued the arrest warrants and embargoes.  Each of these judicial actions has been reviewed by multiple Mexican judges.

In its Answer to Servicios Funerarios' Complaint, AIC denied, among others, the allegations that the misrepresentations "were knowingly made by, or at [its] direction," (Doc. 14, Answer at ¶ 14); that it "controlled the Twibel entities, the Twilux entities, and Gayosso itself,"[1] and that "it exercised that control to make the false Representations that are the subject of this action, each of which was made by or at the direction of [AIC]," (Doc. 14, Answer at ¶ 34); and that it "controlled the 'sell side' of the fraudulent sale of Gayosso to Servicios Funerarios."  (*Id*. at ¶ 41.)  In addition, AIC asserted as an affirmative defense, among others, that it is not "legally responsible for any of the individuals or entities that were involved with or parties to the transaction, through agency theory, piercing the corporate veil or any other theory."  (*Id*., Twelfth Affirmative Defense at p.12.)

AIC also asserted a Counterclaim spanning 47 pages and 291 paragraphs. (*Id.*, Counterclaim at p. 15-63.)  In the Counterclaim, AIC refers to the Mexican civil litigation as "a sham civil lawsuit" and a "vehicle for extortion." (*Id.* at ¶¶ 14, 19.) AIC affirmatively seeks a declaration that it "has not made or caused to be made any representation to Servicios Funerarios with knowledge of its falsity or with intent to deceive Servicios Funerarios."  (*Id*. at ¶ 272.)  This claim obviously places squarely at issue AIC's knowledge of, and participation in, the fraud.  AIC also filed a Motion for Judgment on the Pleadings.  (Doc. 52.)  Although that motion has been denied without prejudice to its refiling, AIC there contended that Servicios Funerarios has failed

---

[1] AIC's assertion that it did not control the selling entities flies in the face of its representation to the Mexican competition authorities at the time of the sale that it both "manag[ed]" and "control[led]" those entities.  (Doc. 1 at ¶ 38.)

to "set[] forth specific facts that make it reasonable to believe that [AIC] knew that a statement was materially false or misleading,"[2] (*id.* at p. 21), again making it clear that it intends to defend this action on the basis that it had no knowledge of, or participation in, the fraud.

The other six counts in the Counterclaim seek relief relating to the alleged actions of Servicios Funerarios with respect to the Mexican criminal action. As support for those claims, AIC alleges that "Servicios Funerarios and its counsel influenced the prosecutor's and criminal court's actions by use of illegitimate means." (Doc. 14, Counterclaim at ¶ 181; *see also id.* at ¶¶ 193, 206.) AIC further alleges that the embargo orders entered by the Mexican criminal court were "obtained through Servicios Funerarios and its counsel's improper influence and abuse of the Mexican criminal justice system."[3] (*Id.* at ¶ 195.)

Critically, in its Counterclaim, AIC does not plead facts that support its serious allegations of corruption. In fact, AIC's conclusory allegations are made solely "on information and belief."[4] (*Id.* at ¶¶ 181, 193, 195, 206.) It is also telling that in its Rule 26 Initial Disclosures – which are "designed in part to facilitate the exchange of relevant information without the time and cost of formal discovery requests," *Opio v. Whole Foods Market Group, Inc.*, 2021 WL 5500481, at *1

---

[2] After AIC sought leave to file a reply to Servicios Funerarios' opposition to the motion, the Court denied the motion without prejudice to AIC refiling it "with an updated memorandum incorporating in a single filing Advent's arguments in support of the motion." (Doc. 78). AIC has not refiled the motion and has advised the Court that it does not know whether it will do so.

[3] Although AIC asserts two claims under Mexican law – *Fraude Procesal* (Count VI) and Illicit Conduct (Count VII) – it bears note that not only has it not asserted those claims in Mexico, but apparently has not formally asserted its allegations of corruption in any Mexican forum. Indeed, to our knowledge, AIC has only asserted those claims by way of counterclaim **after** Servicios Funerarios sued it in this action.

[4] If AIC "had any facts to support [these] assertion[s], they should have been set forth." *Menard v. CSX Transportation, Inc.*, 698 F.3d 40, 44 (1st Cir. 2012). After all, "'[i]nformation and belief' does not mean pure speculation." *Id.*

(D. Me. Nov. 22, 2021) – AIC did not identify a single individual who is likely to have discoverable evidence of, nor a single document that supports, its allegations of corrupt conduct by Servicios Funerarios or its Mexican counsel.[5]  (Doc. 173-1, Exhibit A, AIC's Rule 26 Initial Disclosures.)

AIC's failure to allege facts in its Counterclaim and to identify witnesses and documents in its Initial Disclosures that support its allegations of corrupt conduct leaves discovery as the only available means by which Servicios Funerarios can gain information from AIC relating to its defense that it did not participate in or know of the fraud and its claims that Servicios Funerarios participated in corrupt conduct in Mexico and caused it damages.  *See Billings v. Taylor Royall, Inc.*, 2000 WL 490734, at *5 (D. Md. Apr. 11, 2000) ("The purpose of discovery is to enable a litigant to uncover what is there in the way of evidence within the control of his adversary.").

## III.   DISCOVERY DISPUTES AT ISSUE

This motion raises three discovery disputes: (1) AIC's refusal to search for relevant information on the mobile devices of two key AIC employees involved in the Gayosso sale, Carlos Paz and Juan Pablo Zucchini; (2) AIC's unilateral truncation of the production period requested by Servicios Funerarios; and (3) AIC's failure to answer an interrogatory asking it to identify "any instance" in which Servicios Funerarios acted corruptly with respect to the Mexican criminal action and its failure to verify two interrogatories.

### A.   Production of Cell Phone Data from Paz and Zucchini

There is no dispute that relevant information maintained on mobile devices is subject to production.  In fact, the parties have entered into a Stipulation for the Production of Documents and ESI (the "Protocol") in which they agreed to meet and confer "regarding the terms to be used

---

[5] Rule 26 required AIC to identify "each individual likely to have discoverable information – along with the subjects of that information," and provide a copy, or description by category and location, of all documents in its possession, custody, or control that it "may use to support its claims."  Fed. R. Civ. P. 26(a)(1)(A)(i), (ii).

to search Documents and ESI for potentially responsive documents[.]" (Doc. 85-1 at p. 2.) They further agreed that during the meet and confer process they would seek to reach agreement as to the "identity and number of custodians" whose documents (including ESI) would be searched for potentially responsive information and the "data sources" that would be searched for potentially relevant information. (*Id.*)

Pursuant to the Protocol, each party requested the other to search the information maintained by particular individuals (the "Custodians"). They also identified the sources of data to be searched. AIC requested Servicios Funerarios search for data on, among other sources, the Custodians' "mobile devices, and data from any other repositories or applications used by individual custodians that may contain responsive data ...." (Doc. 173-2, Exhibit B, AIC's Proposed Search Protocol, at 3.) Servicios Funerarios, in turn, similarly requested that AIC "search using the search terms the ESI maintained by each custodian on any other server, device, application, or repository that may reasonably be expected to contain responsive data." (Doc. 173-3, Exhibit C, Servicios Funerarios' Proposed Search Protocol, at 2.)

As part of the ensuing negotiations envisioned by the Protocol, Servicios Funerarios agreed to produce cell phone data from three custodians identified by AIC: Pablo Peña Vazquez, Mariana Gonzalez, and Carlos Peña Vazquez. Servicios Funerarios' agreement was "conditioned on an agreement that Advent will similarly search the available personal devices of executives or high-level employees who were involved in relevant matters." (Doc. 173-4, Exhibit D, Excerpt from June 7, 2023 email from C. Sires to G. Soledad.) Servicios Funerarios has collected, searched for, and produced responsive documents located on the mobile devices of these three individuals.

On a meet-and-confer held on September 8, 2023, AIC informed Servicios Funerarios that it had not collected data from any of its Custodians' cell phones or other mobile devices but was

still considering the issue.  On September 11, 2023, Servicios Funerarios followed up, offering to narrow the list of Custodians whose devices would be searched: "Please advise whether you would be amenable to collecting such data for a limited number of custodians and we will provide a list." (Doc. 173-5, Exhibit E, September 11, 2023 correspondence from C. Sires to G. Soledad, at 3.)

With the substantial completion date for document production approaching, and having received no response from AIC, Servicios Funerarios followed up again on September 21, 2023. Despite having to negotiate against itself, but in the interest of reaching compromise, Servicios Funerarios proposed that AIC search only four Custodians' cell phones: Enrique Pani (also referred to as Mr. Bano), Mr. Paz, James Westra, and Mr. Zucchini.  (Doc. 173-6, Exhibit F, Excerpt from September 21, 2023 email from C. Sires to G. Soledad, at 3.)  These Custodians all were involved in the sale of Gayosso.  Mr. Pani was the AIC employee who also served as Chairman of the Board of Gayosso; Mr. Paz is the Senior Director and Co-Head of the Portfolio Support Group for AIC Latin America; Mr. Zucchini is head of AIC's Latin American operations; and Mr. Westra was AIC's general counsel.

AIC responded the next day, offering to search only Mr. Pani's cell phone, and refusing to search the mobile devices of Messrs. Paz, Zucchini, and Westra.  (Doc. 173-7, Exhibit G, Excerpt from September 22, 2023 email from V. Ramos to C. Sires, at 3.)  On September 28, 2023, in a further effort to reach agreement, Servicios Funerarios offered to withdraw its request that Mr. Westra's mobile devices be searched.  (Doc. 173-8, Exhibit H, Excerpt from email from A. Varela to V. Ramos, at 4.)  In view of AIC's agreement to search Mr. Pani's mobile device, this left Mr. Paz and Mr. Zucchini as the two Custodians at issue.[6]  On September 29, 2023, AIC's counsel

[6] This motion assumes that AIC still agrees to search Mr. Pani's mobile device, as it offered to do. If that is not the case, we seek that relief, as well.

agreed to communicate the proposal to AIC and "respond in short order." (Doc. 173-9, Exhibit I, Excerpt of September 29, 2023 email from V. Ramos to C. Sires, at 3.) Having received no response, Servicios Funerarios again raised the issue at a meet and confer on October 12, 2023 and asked AIC to provide its final position by October 16, 2023. As of the date of this motion, AIC has not done so.

### B.   Production of Documents for the Requested Date Range

In the initial search protocols exchanged by the parties, each side set forth a requested date range for which documents should be reviewed. Both sides selected the same date range: January 1, 2017 through May 5, 2023. Throughout the beginning stages of discovery, AIC did not voice an objection to this date range. However, on a September 8, 2023 meet and confer, AIC disclosed that it had chosen a different end date for production to Servicios Funerarios – March 21, 2022 – to coincide with the filing of the Mexican civil proceeding. (Doc. 173-10, Exhibit J, Excerpt of Sept. 9, 2023 email from Joseph Margolies to C. Sires, at 2-3.) AIC's unilateral truncation of the production period meant that it would not search for responsive documents created or received by AIC during the period of March 21, 2022 to May 5, 2023 (the "Disputed Period").

On September 11, 2023, Servicios Funerarios responded that it would not agree to shorten the production period for its document requests by more than a year. (Doc. 173-5, Exhibit E, at 3.) In an attempt to resolve the dispute, on September 13, 2023, Servicios Funerarios provided a significantly shortened list of search terms for use during the Disputed Period. (Doc. 173-11, Exhibit K, Excerpt of Sept. 13, 2023 email from A. Varela to G. Soledad, at 1-2.) The narrowed list of search terms targeted relevant documents that could be expected to have been created or come into AIC's possession during the Disputed Period, including documents involving the arrest warrants and other actions that AIC claims were the result of corruption in Mexico and which

underlie its claims against Servicios Funerarios.  (Doc. 173-12, Exhibit L, List of Narrowed Search Terms for Disputed Period.)

Having received no substantive response to this proposal, Servicios Funerarios followed up on September 21, 2023 and September 28, 2023 and raised the issue on a meet-and-confer on October 12, 2023.  (Doc. 173-6, Exhibit F, at 3-4; Doc. 173-8, Exhibit H, at 4.)   AIC finally responded, agreeing to run the narrowed list of search terms, but only through October 2022, which is when the arrest warrants were issued.  (Doc. 173-13, Exhibit M, Excerpt of Oct. 16, 2023 Letter from C. Sires to G. Soledad, at 1.)  AIC's refusal to search for documents through May 5, 2023 was not acceptable to Servicios Funerarios, particularly given the nature of AIC's Counterclaim, which includes allegations that AIC has suffered harm as a result of the issuance of the arrest warrants and embargoes.  (*See, e.g.*, Doc. 14, Counterclaim at ¶¶ 220-243.)

## C.    Insufficient Answers to Second Set of Interrogatories

In its Counterclaim, AIC refers to the Mexican civil litigation as "a sham civil lawsuit," and a "vehicle for extortion." (*Id.* at ¶¶ 14, 19.)  Six of the seven counts in the Counterclaim seek relief relating to the alleged actions of Servicios Funerarios with respect to the Mexican criminal action.  As support for those claims, AIC alleges that "Servicios Funerarios and its counsel influenced the prosecutor's and criminal court actions by use of illegitimate means." (*Id.* at ¶ 181; *see also id.* at ¶¶ 193, 206.)  AIC further alleges that the embargo orders entered by the Mexican criminal court were "obtained through Servicios Funerarios and its counsel's improper influence and abuse of the Mexican criminal justice system." (*Id.* at ¶ 195.)

On May 5, 2023, Servicios Funerarios served AIC with its First Set of Interrogatories, consisting of nine interrogatories.  (Doc. 173-14, Exhibit N.)  Interrogatory No. 2 asked AIC to: "Describe in detail, with reference to supporting documents and communications, the complete factual and legal basis for each of the allegations in Advent's answer and ***counterclaim***." (*Id.* at 8

(emphasis added).)   AIC objected to the interrogatory on various grounds, including that the interrogatory was overbroad and unduly burdensome, and asserted that: "AIC answers by incorporating by reference its answer and counterclaims filed on April 24, 2023 . . . ."  (Doc. 173-15, Exhibit O, at 5-6.)  AIC's answers were verified by AIC's counsel in this action.  (*Id*. at 15.)

Because AIC refused to provide a meaningful response to Interrogatory No. 2 of the First Set of Interrogatories, on July 13, 2023, Servicios Funerarios served upon AIC its Second Set of Interrogatories, which consisted of two interrogatories (numbered 10 and 11 to run consecutively with the first set).  (Doc. 173-16, Exhibit P, at 6-7.)  These interrogatories were drafted to prevent any equivocation by AIC and to force it to come forward with the facts upon which it asserts its allegations of corruption against Servicios Funerarios and its Mexican counsel and, critically, identify any instance of corruption in which Servicios Funerarios supposedly participated.   In particular, Interrogatory No. 11 asked AIC to:

> Identify ***each instance where Servicios Funerarios used illegal, improper, or illegitimate means or conduct with respect to the Mexican criminal justice system***, including by stating in detail the nature of the means or conduct, identifying the persons who participated in the conduct (including any "Mexican authorities" alleged to be involved (Counterclaim at ¶¶ 247, 257)), stating the time and place of the conduct, identifying any agreement with respect to the conduct (including, for example, any payment, arrangement, or quid pro quo), and identifying the source of the foregoing information.

(*Id*. at 7 (emphasis added).)

Despite leveling the most serious of allegations against Servicios Funerarios and its Mexican counsel, AIC incredibly objected to the interrogatories as "premature" and asserted that it "cannot be expected to provide answers to this request ***before at least the completion of fact discovery***."  (Doc. 173-17, Exhibit Q, at 2-5) (emphasis added).)  Of course, that is not the case. Rather, the expectation is a contrary one: that AIC had a factual basis to assert its claims. Moreover, the only "substantive" response to the interrogatories was AIC's improper incorporation

of the allegations in its Counterclaim.  The interrogatories were verified by AIC's litigation counsel.  AIC's non-response to these focused interrogatories confirmed what Servicios Funerarios already knew: AIC's allegations of corruption are baseless.

AIC agreed to amend its deficient responses to Interrogatories Nos. 10 and 11 only when faced with Judge Talwani's opinion in *Guarriello v. Family Endowment Partners, LP*, 2015 WL 13694425, at *2-3 (D. Mass. Oct. 30, 2015).  In *Guarriello*, the plaintiffs served an interrogatory asking the defendants to "[i]dentify those facts that support each of the defendants' affirmative defenses."  *Id*. at *2.  The defendant, like AIC here, objected that the interrogatory was premature and "agreed to supplement their response once they have an opportunity to review Plaintiffs' responses to their discovery requests . . . ."  *Id*. at *3.  Judge Talwani rejected the objection, agreeing with plaintiffs that they were "entitled to a substantive response, particularly in light of Rule 11's requirement that the parties have a good faith basis for pleading any claim or defense." *Id*.  She ordered the defendants to provide the responsive information available to them "in a further supplemental response made under oath and signed by Defendants."  *Id*.

On October 2, 2023, AIC finally served amended responses to the Second Set of Interrogatories.  Notably, the amended answers were not verified and remain unverified despite numerous requests by Servicios Funerarios.

In response to Interrogatory No. 10, which requested that AIC "detail the complete factual and legal basis" for its allegations of corruption, AIC – apparently hoping to "confuse[] length with substance," *Muhammad v. Love's Travel Stops*, 2019 WL 2210770, at *2 (S.D. Ohio May 22, 2019) – served a 16-page narrative answer.  Alas, the answer lacks any evidence that Servicios Funerarios or its Mexican counsel engaged in corrupt practices.  None.  Instead, the answer is

nothing but a regurgitation of unsourced accusations in a Mexican political muckraking book and a couple of unsourced blog posts.  (*See* Doc. 140 for discussion of book and articles.)

It bears noting that in the answer AIC relies heavily on the book's discussion of the unrelated *Oro Negro* litigation in Mexico as support for the allegation that Servicios Funerarios' Mexican counsel engages in corrupt practices.  Yet, the book's accusations are wholly unsourced. Troublingly, although it was pushing the book as reliable support for its allegations against Servicios Funerarios, AIC has failed to disclose that ***its lead counsel in this case*** were the ones who leveled the accusations against Servicios Funerarios' Mexican counsel in the *Oro Negro* litigation.  Those allegations were never adjudicated and remained mere unproven accusations through the dismissal of the case.  The nondisclosure of that critical information would be even more troubling if AIC's counsel was involved in providing information about the *Oro Negro* case to the book's author.

To be sure, that would mean that AIC has tried to pass off the book as being based on "knowledgeable sources" and being authored by "a renowned Mexican Journalist," (Doc. 120 at 2-3), and has urged the Court to accept it as reliable ***independent*** evidence of Mexican counsel's corruption, all without disclosing to the Court that its own counsel in this case is the undisclosed source of the accusations against Mexican counsel!  To address this concern before bringing it to the Court's attention, we asked AIC's counsel whether they provided information to the book's author but have not received a response to our inquiry.  (Doc 173-18, Exhibit R, October 11, 2023 Letter from C. Sires to G. Soledad and D. Ward.)

In any event, in purporting to respond substantively to Interrogatory No. 11, which asked AIC to ***"[i]dentify each instance*** where Servicios Funerarios used illegal, improper, or illegitimate means or conduct with respect to the Mexican criminal justice system . . . ," in its amended answer

AIC merely "incorporated by reference" its 16-page answer to Interrogatory No. 10.   That narrative, flawed as it is, does not answer Interrogatory No. 11, which asks that AIC identify "each instance" where Servicios Funerarios has acted corruptly.   The narrative does not identify any such interest, much less state the facts relating to such an instance.   ***The response thus does not provide the information specifically requested by Interrogatory No. 11 and it is not an answer to the interrogatory at all***.

## IV.   SERVICIOS FUNERARIOS' POSITION WITH RESPECT TO THE DISCOVERY DISPUTES

As this Court has recognized, "[d]iscovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." *Weinreich v. Brooks*, 2022 WL 2373796, at *2 (D. Mass. Apr. 4, 2022) (internal quotations and citation omitted) (Boal, J.).   Rule 26 thus provides that parties may discovery that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).   "Rule 26(b)(1) generally permits liberal discovery of relevant information." *Weinreich*, 2022 WL 2373796, at *2 (internal citation omitted).   "As the Supreme Court has instructed, because 'discovery itself is designed to help define and clarify the issues,' the limits set forth in Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Id*. (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Against this backdrop, Servicios Funerarios is clearly entitled to the discovery it seeks but that AIC has refused to provide.

### A.   Production of Cell Phone Data

There is no dispute that data found on cell phones, such as text and Whatsapp messages, is subject to discovery.   Rule 34 requires the production of any relevant and responsive documents,

including "data or data compilations—stored in any medium from which information can be obtained." Fed. R. Civ. P. 34(a)(1)(A).  Further, it is settled that cell phone ESI, including but not limited to text messages, "fit[s] comfortably within the scope of materials that a party may request under Rule 34." *Paisley Park Enters. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019) (internal citations and quotation marks omitted).  Thus, relevant cell phone data is discoverable from a custodian's mobile device, including employee-owned cell phones.  *Evenson v. Johnson Bros. Liquor Co.*, 2020 WL 12948540, at *8 (D. Minn. May 19, 2020) (holding cell phone data on employee-owned cell phones discoverable and within employer's control where said phones were used within the scope of employment) (internal citations omitted); *Paisley Park Enters.*, 330 F.R.D. at 234-35 (ruling defendant company and its principals were obligated preserve work-related text messages stored on the principals' personal cell phones).

In defense of Servicios Funerarios' claims, AIC contends that it was not involved in, nor had knowledge of, the fraud committed upon Servicios Funerarios in connection with the sale of Gayosso.  As AIC has already argued in its motion for judgment on the pleadings, Servicios Funerarios has failed to "set[] forth specific facts that make it reasonable to believe that [AIC] knew that a statement was materially false or misleading."   (Doc. 52 at p. 15.)

As AIC is well aware, its employees – including Mr. Pani and Mr. Paz – routinely communicated over WhatsApp[7] on their mobile devices concerning the Gayosso sale. (*See, e.g.,*

---

[7] WhatsApp is a free instant messaging and calling service with over 2 billion users.  (*About*, WhatsApp, https://www.whatsapp.com/about (last visited Oct. 27, 2023).)  It allows users to send text, voice, and video messages, make voice and video calls, and share images, documents, and other content, all via the internet.  (*Id.*)  The service end-to-end encrypts users' messages and calls, meaning only the participants in a chat or call can read or listen to them.  (Information for Law Enforcement Authorities, WhatsApp,  https://faq.whatsapp.com/444002211197967r (last visited Oct. 27, 2023)).  WhatsApp does not store users' messages or transaction logs thereof.  (*Id.*)

GSO-01513983 & GSO-01461308.)[8]  There is no reason why Mr. Paz's and Mr. Zucchini's (and Mr. Pani's) mobile devices should not be searched for relevant information.  Beyond reducing the number of custodians whose mobile devices would be searched to only Messrs. Pani, Paz, and Zucchini, Servicios Funerarios has also narrowed the search terms that would be applied to their mobile devices, obviating any concerns AIC may have about breadth and undue burden.

### B.   Production of Documents from March 2022 through May 2023

A party who receives a request for production must either produce or allow inspection of the requested materials or "state with specificity the grounds for objecting to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  "An objection must state whether any responsive materials are being withheld on the basis of that objection."  *Id.* at (b)(2)(C).

A trial court has wide discretion in determining the scope and effect of discovery.  *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 186-87 (1st Cir. 1989) (citing *In re Recticel Foam Corp.*, 859 F.2d 1000, 1006 (1st Cir. 1988)).  Courts applying Rule 26's broad conceptions of relevance and proportionality have admonished parties for unilaterally shortening the requested time period for running ESI search terms.  *See Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 259-60 (E.D. Wis. 2013) (holding that terminated employee's request for five years of production about severance benefits paid to other terminated employees was not overbroad in ERISA suit where employer of 3,000+ people provided no "specific evidence of the cost and burden of compliance"); *Ramirez v. Cnty. of L.A.*, 231 F.R.D. 407, 412 (C.D. Cal. 2005) (granting motion to compel production of 11-years' worth of police department personnel records over defendant's overbreadth objection because the "extensive" allegations concerned "systemic failures," the requests related to an important element of the case, and relevant information was not available from other

---

[8] These are example of WhatsApp messages with Servicios Funerarios.  Of course, we are interested in messages in which Servicios Funerarios was not included.

sources); *Duhigg v. Goodwill Indus.*, 2016 WL 4991480, at *3 (D. Neb. Sept. 16, 2016) (ordering party to run ESI search terms on plaintiff's originally requested time period, and explaining that unilateral time period shortening is not "an appropriate response" to document requests).

AIC waited until the final weeks before the substantial completion of production to advise SF that it had unilaterally truncated the requested discovery period by more than a year.  AIC should be ordered to produce documents covering the entire period of its claims.  Beyond the obvious relevance of post-deal analyses and de-briefs to the main claims in this litigation, the entirety of AIC's counterclaims goes to actions that allegedly occurred, and damages that were allegedly incurred, after AIC's unilaterally selected cut-off date.  In fact, AIC has chosen as its proposed compromise cut-off date the issue date of the criminal arrest warrants.  But, by definition, any damages AIC claims as a result will post-date that date. The same is true of the embargoes with which AIC takes issue.

## C.     Response to Interrogatory 11

Under Rule 33(a)(2), "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)."  Under Rule 33(b)(1), "[t]he interrogatories must be answered (A) by the party to whom they are directed; or (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party."  Rule 33(b)(3) requires, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and ***fully*** in writing ***under oath***."  (emphasis added).  Rule 33(b)(5) specifies, "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections."  Despite numerous requests, AIC has not served verified answers to the amended Second Set of Interrogatories (and its answers to the First Set of Interrogatories were verified only by counsel).

Moreover, AIC must fully and independently answer Interrogatory No. 11.  *Wells Fargo Bank, N.A. v. Wasserman*, 2011 WL 3878368, at *8 (D.R.I. July 15, 2011) ("Litigants have an obligation to provide the information requested by a given interrogatory in their response to that interrogatory.  If they wish to incorporate information from their answer to another interrogatory, they must do so explicitly.").  Here, the "incorporated" answer to Interrogatory No. 10 does not answer Interrogatory No. 11.  To be sure, the answer to Interrogatory No. 10, which purports to set out the basis for the allegations of corruption, demonstrates the utter lack of factual basis for the allegations.  But Interrogatory No. 11 requires that AIC identify any corrupt act taken by Servicios Funerarios.  Despite its length, the discursive response to Interrogatory No. 10 does not provide that information.

AIC must thus either identify (with supporting facts) any instance where Servicios Funerarios acted corruptly, or it must respond by stating that it cannot do so.  Its attempt to avoid providing the information requested by Interrogatory No. 11 should be rejected.  Further, the Court should order that AIC comply with Rule 33's verification requirement in responding to both Interrogatory Nos. 10 and 11.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court enter an order requiring AIC to produce responsive cell phone data for Messrs. Paz, Zucchini, and Pani, to produce documents responsive to the revised list of search terms listed for the period from March 2022 through May 2023, and to answer Interrogatory No. 11 and provide a verification for that answer as well as for the answer to Interrogatory No. 10.

Dated: October 30, 2023

Respectfully submitted,

LESSER, NEWMAN, ALEO & NASSER LLP

BOIES SCHILLER FLEXNER LLP

/s/ *Carlos M. Sires*

Michael Aleo
Thomas Lesser
39 Main Street, Suite 1
Northampton, MA  01060
Telephone:  (413) 584-7331
Facsimile:  (413) 586-7076
aleo@LLN-law.com
lesser@LLN.law.com

Carlos M. Sires (*admitted pro hac vice*)
Jason Hilborn (*admitted pro hac vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022
csires@bsfllp.com
jhilborn@bsfllp.com

*Counsel for Plaintiff / Counter-Defendant,
Servicios Funerarios GG, S.A. de C.V.*

David Boies (*admitted pro hac vice*)
Brooke A. Alexander (*admitted pro hac vice*)
Marc Ayala (*pro hac vice forthcoming*)
333 Main Street
Armonk, NY  10504
Telephone:  (914) 749-8200
Facsimile:   (914) 749-8300
dboies@bsfllp.com
balexander@bsfllp.com

*Counsel for Plaintiff / Counter-Defendant,
Servicios Funerarios GG, S.A. de C.V.*

20

**<u>CERTIFICATE OF SERVICE</u>**

I, Carlos M. Sires, hereby certify that the above was filed through the ECF system and that

I have caused a true and correct copy of the above to be served on Defendant's counsel.

Date:  October 30, 2023                    By:<u>*/s/ Carlos M. Sires*</u>
                                                          Carlos M. Sires

21