UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 23-10684-IT |
| ADVENT INTERNATIONAL CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) ) | |

ORDER ON DEFENDANT'S MOTION TO COMPEL
[Docket No. 74]

November 7, 2023

Boal, M.J.

Defendant and Counterclaim Plaintiff Advent International Corporation ("AIC") has moved to compel plaintiff Servicios Funerarios GG, S.A. de C.V. ("SF") to produce certain discovery. Docket No. 74.[1,2] This Court heard oral argument on October 18, 2023. For the following reasons, this Court grants in part and denies in part the motion.

---

[1] On September 14, 2023, Judge Talwani referred the motion to the undersigned. Docket No. 100.

[2] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

1

I.   RELEVANT BACKGROUND

In January 2021, SF purchased Grupo Gayosso, S.A. de C.V. ("Gayosso") for $224.7 million from affiliates of AIC-managed funds.  See Complaint at ¶¶ 7-10.  Founded in Mexico City in 1875, Gayosso is Mexico's oldest, active funeral-services company.  Id. at ¶ 6.  SF alleges that AIC fraudulently induced SF to purchase Gayosso by misrepresenting the true financial condition of Gayosso.  See generally id. at ¶¶ 1, 11-33.  Among other things, AIC allegedly deleted liabilities from the company's financial statements, manipulated invoices for accounts payable, understated the cost of sales, concealed transferred assets, and omitted contractual and regulatory liabilities from the financial statements.  See id.

AIC alleges, on the other hand, that soon after SF acquired Gayosso, it began a campaign to extort AIC by asserting meritless civil and criminal claims.  First, SF sued AIC and its affiliates in Mexican civil court and sought to freeze hundreds of millions of dollars in assets owned by unrelated AIC-managed funds.  Counterclaims at ¶ 152.  When Mexican civil courts denied this relief, SF turned to the criminal courts, where it obtained improper arrest warrants targeting current and former AIC affiliate employees, as well as the same asset embargoes the civil courts had rejected.  See id. at ¶¶ 180, 182, 185, 187, 196, 208.

According to AIC, SF was able to secure these illegitimate criminal orders by retaining the services of Mexican criminal counsel, Garcia Gonzalez y Barradas Abogados ("GGB"), a firm that is notorious for its corrupt abuse of the Mexican criminal justice system.  Id. at ¶¶ 54-57.  AIC maintains that this action was SF's latest attempt in its extortion campaign.  See id. at ¶¶ 216-218.

II.      ANALYSIS

     A.      Standard Of Review

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether discovery is proportional to the needs of the case depends on, among other things, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the expense of the proposed discovery outweighs its likely benefit." Id.

If a party fails to respond to requests for production of documents or interrogatories, the party seeking discovery may move to compel production of the requested information. See Fed. R. Civ. P. 37(a)(3). "[T]he party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant." Torres v. Johnson & Johnson, No. 3:18-10566-MGM, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (citation omitted). "Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper." Id. (citation omitted).

     B.      Information Regarding SF's Ownership Structure

At the parties' Rule 26(f) conference, SF represented that, as an acquisition vehicle with no daily operations, it has neither an email server nor a central document repository, and that all relevant documents are maintained by its affiliates, including Gayosso and Pablo Peña's companies MexCap and ExeFin. Declaration of Gabriel F. Soledad (Docket No. 76) ("Soledad Decl.") at ¶ 1. Therefore, AIC propounded the following interrogatory on SF:

> Describe in detail, with reference to supporting documents, Servicios Funerarios' ownership structure, and to the extent it has changed over time,

> any prior ownership structure, including without limitation its current or former ultimate beneficial owner(s); any agreements or understandings concerning profit sharing, stock options, phantom interests, deferred compensation, or any other economic entitlements or benefits of any kind; any current or former relationship with Banco Ve Por Más, SA Institución Banca Múltiple, Grupo Financiero Ve Por Más, and the Trust Fideicomiso 666; and any other equity, ownership, or economic interests in Servicios Funerarios of any kind.

Docket No. 76-3 at 9 (Interrogatory No. 4). SF responded by stating that "Servicios Funerarios' shares have at all times been owned by a trust established pursuant to Contrato de Fideicomiso de Administracion Number 682 and by Pablo Peña." Docket No. 76-4 at 8. SF subsequently supplemented its answer to state that "[t]he sole beneficiary under the trust is Pablo Peña." Docket No. 76-6 at 5. AIC argues that these responses are insufficient. Docket No. 75 at 11. It requests that SF be required to provide information regarding (1) whether there have been any prior beneficiaries of the trust, and if so, when the beneficiaries were changed; (2) the identities of Trust 682's settlor(s) and trustee(s); and (3) any side agreement(s) or other arrangement(s) relevant to SF's ownership. Id.

SF has agreed to further supplement its response to state that Pablo Peña has been the only beneficial owner (i.e., beneficiary) of Trust 682. Docket No. 99 at 5. However, that answer does not provide the other information requested regarding the settlors of the trust and any side agreements or other arrangements relevant to SF's ownership. I find that SF should also provide that information. Accordingly, I order SF to further supplement its answer to Interrogatory No. 4 within two weeks to provide such information.[3]

---

[3] In its conclusion and request for relief, AIC also requests that this Court order SF to "[s]earch and produce documents from any prior settlor(s), trustee(s), or beneficiaries of Trust 682." Docket No. 75 at 18. That request, however, was not developed in the motion and was not tied to any particular discovery request. At the October 18, 2023 hearing, counsel for AIC stated that this request relates to Request for Production ("RFP") 28, which seeks "[a]ll documents and communications concerning the formation, ownership, management, and structure of Servicios

C. <u>Discovery From Fibra Uno</u>

AIC also requests that SF be compelled to produce documents from Fibra Uno. In connection with the Gayosso transaction, and in order to finance the acquisition, SF spun off Gayosso's real estate assets to Fibra Uno, a Mexican real estate investment trust controlled by the influential El-Mann family based in Mexico. Counterclaims at ¶ 63. In or around 2019, the El-Mann family had made a proposal to acquire Gayosso. <u>Id.</u> at ¶¶ 94, 97. Shortly thereafter, Pablo Peña told Advent Mexico that the El-Mann family's designated buyer would be a special purpose vehicle and formed SF to complete the sale. <u>Id.</u> at ¶¶ 72, 98. The parties to the final Stock Purchase and Sale Agreement ("SPA") were Gayosso, certain AIC affiliates, SF, and Fibra Uno. Docket No. 53-1. Pursuant to the terms of the SPA, after acquiring Gayosso's real estate, Fibra Uno leased it back to Gayosso, now owned by SF. Counterclaims at ¶ 144.

SF argues that it does not possess or control Fibra Uno's documents. Docket No. 99 at 5-8. Under Rule 34 of the Federal Rules of Civil Procedure, a party may request production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Control is not limited to actual physical possession of a document. <u>Merchia v. United States Internal Revenue Serv.</u>, 336 F.R.D. 396, 398 (D. Mass. 2020) (citation omitted). A document is "under a party's 'control' when that party has the right, authority or ability to obtain the document[] upon demand." <u>Id.</u> (citations omitted).

When determining whether a party has control over documents of a non-party corporation with which it has some sort of relationship (<u>i.e.</u>, as an affiliate, sister corporation, parent, or subsidiary), courts consider the following factors:

---

Funerarios." Docket No. 76-7 at 18. The request for documents regarding Trust 682 is different from and broader than RFP 28. Accordingly, this Court denies this request.

(1) commonality of ownership;

(2) exchange or intermingling of directors, officers, or employees of the two corporations;

(3) the exchange of documents in the ordinary course of business;

(4) the non-party's connection to the transaction at issue;

(5) any benefit or involvement by the non-party corporation in the litigation;

(6) the corporate party's marketing and/or servicing of the non-party's company's products; and

(7) the financial relationship between the companies.

Meridian Labs., Inc. v. OncoGenerix USA, Inc., 333 F.R.D. 131, 135-136 (N.D. Ill. 2019) (citations omitted); see also FM Generator, Inc. v. MTU Onsite Energy Corp., No. 14-14354-DJC, 2016 WL 8902603, at *3 (D. Mass. Aug. 25, 2016) (citation omitted) ("When determining whether documents in the possession of one corporation may be deemed under the control of another corporation, courts [] consider whether there has been an exchange or intermingling of directors, officers, or employees of the two corporations, whether there is any benefit or involvement by the non-party corporation in the transaction, and whether there is any involvement of the non-party corporation in the litigation."). AIC carries the burden of making a prima facie showing that SF has control over Fibra Uno's documents. Id. (citing Addamax Corp. v. Open Software Found., Inc., 148 F.R.D. 462, 465 n.3 (D. Mass. 1993)).

AIC has failed to provide this Court with evidence that SF has control over Fibra Uno's documents. AIC alleges that Fibra Uno shares key personnel with SF but points only to the fact that Fibra Uno's former CFO is on Gayosso's board and that Pablo Peña, SF's principal, was a financial advisor to Fibra Uno. Docket No. 75 at 13. However, there is no assertion that there has been an exchange or intermingling of directors, officers, or employees of Fibra Uno and

Gayosso, let alone Fibra Uno and SF. AIC also points out that the El-Mann family previously used SF's Mexican criminal counsel and SF used Fibra Uno's long-time deal counsel. Id. This assertion, however, has no relevance to the control inquiry. The only factor weighing in favor of control is the fact that Fibra Uno was a signatory to the SPA. Under the circumstances here, however, that lone factor may show that Fibra Uno is likely to possess relevant information but is insufficient to establish control.[4]

D.  Documents From SF's Criminal Counsel

AIC also seeks documents from SF's criminal counsel in Mexico. Specifically, AIC propounded the following requests for production of documents:

REQUEST NO. 1

All documents or communications between You and any prosecutor or any other governmental, judicial, or regulatory authority of any kind, including through Your counsel, concerning the Mexico Criminal Action.

REQUEST NO. 2

All documents and communications that You contend support the issuance of the Arrest Warrants, the Asset Embargo, and/or the Interpol Notices, including without limitation (a) the factual and legal basis supporting the allegations made in the Criminal Complaint, (b) the factual and legal basis supporting the issuance of the Arrest Warrants as to each of the Targeted Employees, (c) the determination not to issue Arrest Warrants or Interpol Red Notices against Carlos Peña and Octavio Trejo, (d) the factual and legal basis supporting the issuance of the Asset Embargo, including the determination of which assets should be subject to the Asset Embargo, and (e) the factual and legal basis supporting the issuance of the Interpol Red Notices as to each of the Targeted Employees.

Docket No. 76-8 at 4-5. SF responded that "[r]esponsive documents will be produced to the

---

[4] Similarly, AIC makes much of the fact that the El-Mann family played a central role in the transaction. See Docket No. 162 at 3-9. Again, that fact may show that Fibra Uno and/or the El-Mann family possess relevant information but does not establish that SF has control over their documents.

extent not protected from disclosure by Mexican law." Id. Later, it clarified that it would withhold documents "pursuant to Article 218 of the Mexican National Criminal Procedures Code." Soledad Decl. at ¶ 4. Article 218 establishes an obligation of the Prosecutor's Office to maintain the confidentiality of the files of any criminal investigation. Declaration of Javier Mijangos y Gonzalez (Docket No. 76-9) ("Mijangos Decl.") at ¶ 9. The parties dispute whether Article 218 prohibits SF from producing the Mexican investigative file to AIC.

As the party objecting to production of documents based on foreign law, SF bears the burden of "demonstrating that such law actually bars the production or testimony at issue." Wultz v. Bank of China Ltd., 298 F.R.D. 91, 96 (S.D.N.Y. 2014) (citing Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199, 207 (E.D.N.Y. 2007)). "In order to meet that burden, the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." Id. "The party must describe, among other things, 'the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case.'" Id.

Once a court determines that a conflict exists between U.S. law and foreign law, courts consider the following factors in evaluating the propriety of an order directing the production of documents or testimony that may be in contravention of foreign law: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the state where the information is located; (6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good

faith of the party resisting discovery (the "comity factors").  Id.

The parties have produced dueling expert declarations regarding whether Article 218 prohibits a party in receipt of a criminal investigative file to use it in a different proceeding. According to SF's expert, only the parties to a criminal proceeding may have access to the records of the investigation.  Declaration of Ricardo Zinser Cruz (Docket No. 141) ("Zinzer Cruz Decl.") at ¶ 5.  AIC's expert, on the other hand, states that, pursuant to Article 218, the obligation to maintain the confidentiality of the investigation corresponds solely and exclusively to the prosecutor's office.  Declaration of Javier Mijangos y Gonzalez (Docket No. 76-9) ("Mijangos y Gonzalez Decl.") at ¶ 10.  He further states that "there is no legal provision that prevents copies of an investigation, lawfully obtained by one of the parties to the criminal proceedings, from being used as evidence in a different trial."  Id. at ¶ 18.  After review of the declarations, this Court finds the analysis from Mr. Mijangos y Gonzalez more persuasive.

SF also points to a letter from the Mexican prosecutor purportedly denying permission to produce the criminal investigation file.  See Docket No. 148 at 3-4; Docket No. 148-1.  SF states that, on October 12, 2023, it submitted a request to the Mexican prosecutors for permission to produce the criminal investigation file.  Docket No. 148 at 3.  It also states that the prosecutors denied its request.  Id.  The denial letter from the prosecutors, however, states that SF "request[ed] authenticated copies of the present investigation file . . . for the purpose of presenting them as evidence" in this case, Docket No. 148-1, not that it requested permission to produce a copy of the file it has already received.  Indeed, it appears that SF requested that the prosecutor provide AIC with an authenticated copy of the criminal file.  See Docket No. 169-2.[5] Given the prosecutors' obligations to keep the investigative file confidential, it is not surprising

---

[5] SF did not provide a copy of its request to this Court.  AIC did.

9

that they would deny a request for the prosecutors themselves to provide authenticated copies to be used in a different proceeding.

Accordingly, this Court finds that SF has not met its burden to show that Mexican law prohibits it from producing the criminal investigative file and orders SF to produce it.

    E.    <u>Documents From Experts In Mexican Proceedings</u>

Finally, AIC seeks an order compelling SF to produce certain documents from Gloria Lerin Revueltas, Marco Antonio Ramos Rivera, José Alfredo Chávez Carrera, Luis Eduardo Lambarri Boladera, and Luis Ignacio Hernández Vivar—its retained experts who have submitted (or plan to submit) expert opinions in the Mexican proceedings. Docket No. 75 at 16. Specifically, AIC seeks (1) the experts' opinions; (2) the facts and data considered by the experts; (3) the assumptions provided by counsel that the experts relied upon; (4) a list of other cases during the previous four years in which the expert testified; (5) a statement of the expert's compensation; and (6) communications related to these topics. <u>Id.</u>

After the motion was filed, Judge Talwani denied AIC's motion for letters rogatory seeking testimony and documents from the same experts. Docket No. 81. She stated that: "The parties have not yet disclosed expert witnesses in this case. If Servicios Funerarios does not designate these individuals as trial experts in this case (whose depositions may be taken in the regular course), AIC may re-file its motion explaining why the exception to Rule 26(b)(4)(D)'s safe harbor applies to these experts." <u>Id.</u>

Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure provides as follows:

> (D) *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or depositions, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

>> (i) as provided in Rule 35(b); or
>> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D). "The protection afforded non-testifying experts is distinct from the work-product doctrine and the attorney-client privilege." Szulik v. State Street Bank and Trust Co., No. 12-10018-NMG, 2014 WL 3942934, at *2 (D. Mass. Aug. 11, 2014) (citing In re PolyMedica Corp. Sec. Litig., 235 F.R.D. 28, 30 (D. Mass. 2006)). The rule "protects both facts known and opinions held by a non-testifying expert," but it does not prevent a party from seeking "to obtain the same specific facts from other sources." Id. Thus, Rule 26(b)(4)(D) "creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances." Id. (citing U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC, 268 F.R.D. 614, 617 (N.D. Cal. 2010)).

AIC has not addressed the applicability of Rule 26(b)(4)(D) to these experts or shown exceptional circumstances.[6] Accordingly, this Court denies this request.

III.  ORDER

For the foregoing reasons, this Court grants in part and denies in part AIC's motion to compel. Any documents compelled by this order must be produced within two weeks.

      /s/ Jennifer C. Boal
      JENNIFER C. BOAL
      U.S. MAGISTRATE JUDGE

---

[6] At oral argument, AIC argued that any work product protection as to these experts had been waived. However, as stated above, the protection afforded non-testifying experts is distinct from the work-product doctrine and the attorney-client privilege and, in any event, AIC has not developed this argument.