UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 23-10684-IT |
| ADVENT INTERNATIONAL CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) ) | |

ORDER ON PLAINTIFF'S MOTION TO COMPEL DEFENDANT
TO SEARCH DOCUMENTS OF REQUESTED CUSTODIANS
[Docket No. 109]

November 7, 2023

Boal, M.J.

Plaintiff Servicios Funerarios GG, S.A. de C.V. ("SF") has moved to compel defendant Advent International Corporation ("AIC") to search the documents of three disputed custodians. Docket No. 109.[1] This Court heard oral argument on November 6, 2023. For the following reasons, this Court denies the motion.

I.   RELEVANT BACKGROUND

In January 2021, SF purchased Grupo Gayosso, S.A. de C.V. ("Gayosso") for $224.7 million from affiliates of AIC-managed funds. See Complaint at ¶¶ 7-10. Founded in Mexico City in 1875, Gayosso is Mexico's oldest, active funeral-services company. Id. at ¶ 6. SF

---

[1] On October 3, 2023, Judge Talwani referred this motion to the undersigned. Docket No. 114.

1

alleges that AIC fraudulently induced SF to purchase Gayosso by misrepresenting the true financial condition of Gayosso. See generally id. at ¶¶ 1, 11-33. Among other things, AIC allegedly deleted liabilities from the company's financial statements, manipulated invoices for accounts payable, understated the cost of sales, concealed transferred assets, and omitted contractual and regulatory liabilities from the financial statements. See id.

AIC alleges, on the other hand, that soon after SF acquired Gayosso, it began a campaign to extort AIC by asserting meritless civil and criminal claims. First, SF sued AIC and its affiliates in Mexican civil court and sought to freeze hundreds of millions of dollars in assets owned by unrelated AIC-managed funds. Counterclaims at ¶ 152. When Mexican civil courts denied this relief, SF turned to the criminal courts, where it obtained improper arrest warrants targeting current and former AIC affiliate employees, as well as the same asset embargoes the civil courts had rejected. See id. at ¶¶ 180, 182, 185, 187, 196, 208.

According to AIC, SF was able to secure these illegitimate criminal orders by retaining the services of Mexican criminal counsel, Garcia Gonzalez y Barradas Abogados ("GGB"), a firm that is notorious for its corrupt abuse of the Mexican criminal justice system. Id. at ¶¶ 54-57. AIC maintains that this action was SF's latest attempt in its extortion campaign. See id. at ¶¶ 216-218.

Pursuant to a Stipulation for the Production of Documents and ESI (Docket No. 92), the parties conferred regarding proposed custodians whose documents would be searched for potentially responsive information. See Docket No. 111 at 5-6; Docket No. 129 at 7-11.[2] There are three individuals that SF contends should be included as custodians but AIC disagrees (the

---

[2] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

"disputed custodians"):

- *David Mussafer*: Mussafer is AIC's Chairman.  Mussafer was part of the AIC Investment Committee which participated in the approval of the sale but did not participate in the due diligence process, including the furnishing of any financial documentation to SF or its representatives.  Docket No. 110-3 at 10.

- *Juan Carlos Zucchini*: Zucchini is the co-head of the AIC's Latin American Operations.  Docket No. 129 at 2.  He was a member of the AIC Latin American Investment Advisory Committee at the time the sale was approved.  Docket No. 110-3 at 6.  The AIC Latin American Investment Committee evaluated the business case for the transaction based on summary information provided by the AIC deal team, and contributed to the exit memorandum presented to the AIC Investment Committee.  Id.

- *Heather Zuzenak*: Zuzenak is AIC's Chief Compliance Officer.  Docket No. 111 at 7.  According to SF, Zuzenak was charged with making sure that the sale complied with all AIC policies.  Id.  SF also claims that she "signed off on the Exit Approval Sheet with respect to the transaction," but AIC maintains that SF is wrong about that claim.  Docket No. 129 at 13.

By its motion, SF seeks an order compelling AIC to search the custodial files of these three individuals.

II.   STANDARD OF REVIEW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Whether discovery is proportional to the needs of the case depends on, among other things, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the expense of the proposed discovery outweighs its likely benefit." Id.

If a party fails to respond to requests for production of documents or interrogatories, the party seeking discovery may move to compel production of the requested information. See Fed. R. Civ. P. 37(a)(3). "[T]he party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant." Torres v. Johnson & Johnson, No. 3:18-10566-MGM, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (citation omitted). "Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper." Id. (citation omitted).

"Relatively little legal authority exists on the standards a court should apply when parties are unable to agree on designated ESI custodians and a party seeks to compel another party to designate an additional ESI custodian or custodians." In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig., No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018). As relevant here, other courts have set the following general principles when ruling on a party's request to compel designation of ESI custodians. "Absent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems 'most likely to possess responsive information and to search the files of those individuals.'" Id. "[U]nless the party's choice is 'manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient,' the court should not dictate the designation of ESI custodians." Id. In addition, the party seeking to compel the designation of a particular ESI custodian bears the burden of demonstrating that the additional requested custodian "would provide *unique* relevant information not already obtained." Fort

Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co., 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (emphasis in original). "This is because the party responding to the discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case." In re EpiPen, 2018 WL 1440923, at *2.

III.   DISCUSSION

AIC does not contest that the disputed custodians may have relevant and responsive documents. Rather, AIC argues that other individuals already designated as custodians are more likely to be in the possession of relevant documents and information and any documents obtained from the disputed custodians are likely duplicative of those already being produced. See Docket No. 129 at 2, 12, 14. In addition, AIC argues that SF's request is nothing more than a "vehicle for harassment" and leverage against AIC. Id. at 16.

SF argues that AIC has provided no support for its representations regarding custodians likely in the possession of relevant documents and that such representations are "speculative." Docket No. 111 at 8-9. As discussed above, however, AIC is in the best position to know and identify appropriate custodians and it is SF who bears the burden of showing that the additional requested custodians are in the possession of "uniquely relevant information." See Fort Worth Employees' Retirement Fund, 297 F.R.D. at 107; In re Epi Pen, 2018 WL 1440923, at *2. SF has not met its burden. Indeed, at oral argument, it acknowledged that it did not know whether the disputed custodians have uniquely relevant information. Accordingly, this Court denies the motion.

IV.    ORDER

For the foregoing reasons, this Court denies SF's motion.

                              /s/ Jennifer C. Boal
                              JENNIFER C. BOAL
                              U.S. MAGISTRATE JUDGE