UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,         Case No. 23-cv-10684

    Plaintiff/Counter-Defendant,

    v.

ADVENT INTERNATIONAL CORPORATION,

    Defendant/Counter-Plaintiff.
_____/

**SERVICIOS FUNERARIOS' OBJECTIONS TO
MAGISTRATE JUDGE BOAL'S ORDER ON MOTION TO COMPEL
DEFENDANT TO SEARCH DOCUMENTS OF REQUESTED CUSTODIANS**

Plaintiff Servicios Funerarios GG, S.A. de C.V. ("Servicios Funerarios") submits, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(a), this Objection to Magistrate Judge Boal's Order (Doc. 183) (the "Order") on Plaintiff's Motion to Compel Defendant to Search Documents of Requested Custodians (Doc. 109) (the "Motion") and, in support, states as follows:

**INTRODUCTION**

While Magistrate Judge Boal's decision to deny Servicios Funerarios's request to compel Defendant to search three additional custodians' documents—David Mussafer, Juan Carlos Zucchini, and Heather Zuzenak (the "Disputed Custodians")—was clearly erroneous and contrary to law.

*First*, the Order did not adequately account for Plaintiff's allegations concerning the three proposed custodians' actions with respect to the transaction, and thus improperly created an inordinately high burden for Plaintiff. *Second*, the Order improperly credited AIC's bald assertion concerning the duplicate nature of the proposed custodians' documents and provided insufficient

1

findings supporting its conclusion on this factual issue.  **Third**, since Magistrate Judge Boal issued the Order, Plaintiff has had additional time to review Defendant's document production and has found documents warranting the searches of the Disputed Custodians' files.[1]

## LEGAL STANDARD

If a party timely objects to a magistrate judge's non-dispositive rulings, the district judge must set aside or modify any part of the order that is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  Factual findings are reviewed for clear error, and questions of law are reviewed de novo.  *Neelon v. Kruger*, 2015 WL 1037992, at *2 (D. Mass. Mar. 10, 2015) (citing *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999), then citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)).  Mixed questions of law and fact invoke a sliding scale of review pursuant to which "[t]he more fact intensive the question, the more deferential the level of review (though never more deferential than the clear error standard); the more law intensive the question, the less deferential the level of review."  *In re IDC Clambakes, Inc.*, 727 F.3d 58, 64 (1st Cir. 2013) (internal quotation marks omitted).

## ARGUMENT

Plaintiff seeks documents from three custodians, all of whom held high-level positions at AIC at the time of the transaction, and all of whom were involved in the Gayosso transaction, including by approving it.  There is thus no question that these proposed custodians have potentially relevant evidence.  AIC has admitted as much.  Indeed, whether those executives who

---

[1] As these documents were not before Magistrate Judge Boal at the time of the Order, Plaintiff does not base these Objections on them.  Given the nature of the Rule 72(a) deadline, however, and out of an abundance of caution, Plaintiff has timely filed these Objections and submits this new evidence for the Court's consideration.  Plaintiff, however, requests the Court hold these Objections in abeyance to afford Plaintiff the opportunity to proffer its new evidence to Magistrate Judge Boal for consideration in the first instance.

2

actually approved the transaction were aware of fraudulent accounting practices at Gayosso during the negotiations, at the time of closing, or after (including concealing such fraud), is unquestionably relevant to Plaintiff's claims. Given the very broad discovery permitted under Rule 26, and the likelihood that the proposed custodians have unique documents—or that their possession of identical documents may also be probative—Plaintiff respectfully submits Defendant should be compelled to search and produce documents belonging to this limited group of additional custodians.

### A. Magistrate Judge Boal Misapprehended Servicios Funerarios' Burden

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). "The party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant." *Torres v. Johnson & Johnson*, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (citing *Cont'l W. Ins. Co. v. Opechee Constr. Corp.*, 2016 WL 1642626, at *1 (D.N.H. Apr. 25, 2016)).

"[T]he party seeking to compel the designation of a particular additional ESI custodian has the initial threshold burden of showing that the disputed custodian's ESI ***likely includes*** information relevant to the claims or defenses in the case." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2018 WL 1440923, at *1-2 (D. Kan. Mar. 15, 2018) (emphasis added). Here, Servicios Funerarios met this initial burden to show relevance. There is no dispute that the requested custodians possess relevant evidence. (Doc. No. 183 at 5). AIC admits as much. Yet, AIC's rank speculation that the relevant evidence they possess is duplicative of that possessed by other custodians carried the day. But "once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper."

*Torres*, 2018 WL 4054904, at *2 (citing *Cont'l W. Ins. Co.*, 2016 WL 1642626, at *1). Nevertheless, in the Order, Magistrate Judge Boal credited AIC's bare representation that Servicios Funerarios' request was duplicative as "AIC is in the best position to know and identify appropriate custodians[.]" (Doc. 183 at 5.)  This burden shifting – imposing upon Servicios Funerarios the impossible burden to show that the requested custodians possessed non-duplicative documents -- was clear error under the law.  *See EpiPen*, 2018 WL 1440923, at *1-4 (ordering designation of two additional executive-level custodians and rejecting producing party's arguments about proportionality).

Courts have ordered defendants to produce documents from senior executives, including CEOs, of much larger companies than AIC where, as here, they are alleged to have personal knowledge relevant to the litigation.  For example, in *MariCal, Inc. v. Cooke Aquaculture, Inc.*, No. 1:14-CV-00366-JDL, 2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016), the Court held plaintiffs met their burden on their motion to compel Defendants to search its CEO's ESI for discoverable information where, "during the times relevant to [the] litigation, [the CEO] maintained a position of prominence in Defendants' management and likely was involved in discussions regarding" business dealings at issue, and thus potentially had personal knowledge about "Defendants' knowledge and view of the scope of the patents." *Id.*  Ultimately, "the Court [was] not convinced that all of [the CEO's] relevant information would be included within the electronically stored information maintained by the other designated custodians." *Id.*; *see also EpiPen*, 2018 WL 1440923, at *3 (compelling designation of executive-level custodians who were "part of a small team" working on the business dealings at issue, notwithstanding opposing party's argument that "it has already designated lower level employees who were directly involved and have access to information relevant to the claims and defenses in the case").

4

The three Disputed Custodians fall squarely within the scope of discovery permitted by Rule 26 and related discovery dispute jurisprudence. Indeed, the Order itself acknowledged that "AIC does not contest that the disputed custodians may have relevant and responsive documents." (Doc. No. 183 at 5). Once Plaintiff showed that Defendant was withholding relevant documents from three custodians, it was AIC that bore – but did not come close to meeting – the burden of showing that the disputed custodians had only duplicate documents in their possession. *See Torres*, 2018 WL 4054904, at *2; *Garcia Ramirez v. U.S. Immigration and Customs Enforcement*, 331 F.R.D. 194, 197-98 (D.D.C. 2019) (rejecting unsupported assertion that mere potential duplication creates undue burden). Magistrate Judge Boal credited AIC's bare representation that Servicios Funerarios' request was duplicative, improperly reasoning that "AIC is in the best position to know and identify appropriate custodians[.]" (Doc. No. 183 at 5.)

However, the Order imposes upon Servicios Funerarios not the burden of showing that the requested custodians likely have relevant evidence, but the burden – properly borne by AIC – to show that the requested custodians have non-duplicative documents. Contrary to the Order, Servicios Funerarios is not "in the best position" to know whether that is the case. The Court thus held Servicios Funerarios to an unduly elevated standard on its motion to compel: "the burden of showing that the additional requested custodians are in the possession of '*uniquely* relevant information.'" (*Id.* at 4.) (citing *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013)). To the contrary, the uniqueness of the documents sought is not a dispositive factor in the analysis of whether the court should compel designation of additional ESI custodians. *Cf. EpiPen*, 2018 WL 1440923, at *3-4 (compelling designation of new executive-level custodians considering multiple factors, including defendant's failure to prove disproportionality and custodians' personal participation in conduct underlying basis for suit, and

5

only refusing to compel designation of one C-suite custodian because he did not join company until "well after many of the alleged facts and key events").

As Servicios Funerarios showed in its briefing on its motion to compel, given their involvement in the Gayosso transaction (including participating in its vetting and approval), searching the Disputed Custodians' documents is certain to yield relevant information that includes information that is "'relevant to any party's claim or defense' as contemplated by Federal Rule of Civil Procedure 26(b)(1)." *MariCal*, 2016 WL 9459260, at *2 (compelling defendant to designate CEO as additional custodian because plaintiff met its burden of establishing "good cause" for custodian designation where CEO's "unique knowledge" and personal participation in the events at issue was alleged); (Doc. No. 111 at 8-12). AIC did not adequately explain why producing the documents, even if some are duplicative, poses an undue burden considering the importance of the sought-after discovery to Plaintiff's claims regarding the sale, and defenses against Defendant's counterclaims. *Garcia Ramirez*, 331 F.R.D. at 198; Fed. R. Civ. P. (b)(2)(B) ("On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."). Further, the proportionality argument is less persuasive "especially given that [SF] has designated executive-level custodians" at AIC's urging. *In re EpiPen*, 2018 WL 1440923, at *4. (Def.'s Opp. to Pl.'s Mot. to Compel, Doc. No. 129). Moreover, given that no individual AIC employee custodian produced more than 13,000 documents, and that AIC is leaning on TAR to prioritize and review responsive documents, AIC's assertion that production of additional documents would be "unduly burdensome" is simply not credible.

As Plaintiff explained and AIC conceded, each of the three Disputed Custodians were involved in the transaction, including its approval. (Doc. No. 111 at 8). Therefore, the Disputed

Custodians' personal participation in and knowledge of the Gayosso transaction renders an order compelling custodian designation appropriate. *See MariCal*, 2016 WL 9459260, at *1-2; Fed. R. Civ. P. 26(b)(2)(B).

### B. Magistrate Judge Boal Improperly Relied on AIC's Bald Assertion Concerning the Uniqueness of the Proposed Custodians' Documents

Even assuming "uniqueness" of the proposed custodians' documents is the correct standard for determining whether the court should compel new custodian designations, Magistrate Judge Boal's findings are insufficient to support her conclusion because she relied on AIC's unsupported speculation that designating these custodians would lead to duplicative discovery. (Doc. No. 183 at 5).

In the First Circuit, "a district judge is 'entitled to discount' a magistrate's conclusions where its opinion omits essential findings or analysis." *United States v. Matias*, 885 F. Supp. 2d 458, 464 (D. Mass. 2012) (quoting *Quaker State Oil Refining Corp. v. Garrity Oil Co.*, Inc. 884 F.2d 1510, 1517 n.5 (1st Cir. 1989); *see also Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 43-44 (1st Cir. 1988) (holding appellate deference to district court's Rule 54(b) certification disappears when district court has neither made specific findings nor outlined its reasoning).

Here, the Order is similarly "cryptic" and thus this Court should discount the conclusions therein. *Quaker State*, 884 F.2d 1510, 1517-18 (affirming the district court's reversal of a magistrate's non-dispositive pretrial order where the order "made no findings and offered no hint as to her reasons for believing the late amendment to be justified"). For instance, the Order flatly concludes that "SF has not met its burden'" but cites no findings to support this conclusion. (Doc. No. 183 at 5). In fact, the Order's recitation of the relevant factual background explicitly acknowledges facts indicating that the Disputed Custodians would have unique, relevant information proportional to the needs of Plaintiff's claims and defenses. (Doc. No. 183 at 3)

(explaining each Disputed Custodian's executive-level personal involvement in the Gayosso transaction).

Additionally, the Order clearly erred in wholly ignoring Plaintiff's arguments that (1) Defendant's fears of duplicative discovery were wholly speculative and (2) that the mere possession of documents by the three Disputed Custodians was itself relevant, which constitutes clear error. *Quaker State*, 884 F.2d at 1517-18; *Thomas v. City of New York*, 336 F.R.D. 1, 2 (E.D.N.Y. 2020) (rejecting claim for lack of proof of duplication by custodians); *Garcia Ramirez*, 331 F.R.D. at 197 (same). As Plaintiff explained in its brief on the motion to compel custodian designations, email recipients often annotate the emails they receive, and forward them to non-custodians. (Doc. No. 111 at 9). Also, attachments may be pulled from an email and emailed or circulated as a standalone document—without any evidence of forwarding. It would be rare if the Disputed Custodians, each executive-level employees with personal knowledge of the Gayosso transaction, did not generate any unique, relevant documents during months of negotiations, whether annotations to emails, forwards of emails, or anything else—especially given the unique position in which AIC executives found themselves, after Gayosso turned out to be a 13-year boondoggle which they had repeatedly tried and failed to sell. (Doc. No. 1 ¶ 17); *see MariCal*, 2016 WL 9459260, at *1-2. In turn, it is extremely unlikely that Mr. Pani would have every responsive document in the possession of the Disputed Custodians. (Doc. No. 111 at 9). Yet the Order is virtually devoid of findings as to why the magistrate found AIC's representations about Mr. Pani and duplicative discovery more convincing. (Doc. No. 183). Hence, this Court should discount these findings. *See Quaker State*, 884 F.2d at 1517-18.

Furthermore, even if the Order is correct in concluding that the exact documents in the possession of the Disputed Custodians are also in the possession of Mr. Pani or other custodians –

and AIC provided no evidence of that – production of the documents in these three officers' possession would still be appropriate. That is because these officers' possession of a document, the date of that possession, and actions taken by them with respect to the document are themselves relevant data points. It is those executives who had the authority to bind the company to the sale, and to the representations and warranties traveling therewith. *See Thomas*, 336 F.R.D. at 3 ("[E]ven if duplicative, obtaining the information about custodian of a text message or email yields pertinent information," including, for example, allowing the requesting party to "counter any suggestion that he or she lacked knowledge of or did not receive the email in question."). *Thomas* is particularly apt here, where AIC claims its executives had no knowledge of the fraud. *See id.*; *Gunning v. New York State Just. Ctr. For Prot. of People with Special Needs*, 2022 WL 783226, at *9 (N.D.N.Y. March 15, 2022) (rejecting claim of duplication where the "crux of plaintiff's allegations is what information [proposed custodians] knew").

      The need to include these three officers in the document discovery process is particularly acute given that Plaintiff has alleged that AIC admitted to the Mexican competition authorities that it "controlled" and "managed" the Sellers and made all the decisions with respect to the Gayosso sale. (Doc. 1 ¶ 38, 41).  Moreover, as the investment manager for the funds that were the ultimate owners of Gayosso, AIC owed fiduciary duties to the members of those funds (the persons and entities that funded the investment in Gayosso) relating to the status of the investment.  Put another way, AIC had an obligation to know the details of the operations of its portfolio companies, which is likely why its business model calls for it to control those companies. When AIC decides to sell a portfolio company, it must thus make sure to know and understand everything about that company and the transaction.

Even if the facts were as AIC represented them to the magistrate, (and the Order made no findings supporting that hypothesis) the fact that AIC's chairman had a document that, for example, contained information showing that Gayosso's financial condition was misrepresented is directly relevant to this action, particularly given AIC's attempt to avoid liability by arguing that it neither made nor knew of any misrepresentation about Gayosso's financial condition. Therefore, the magistrate judge's unjustified acceptance of AIC's representation that any responsive document in the possession of the Disputed Custodians would be expected to be a duplicate of a document in existing custodian's possession is clearly erroneous and contrary to law. *See Quaker State*, 884 F.2d at 1517-18; *Thomas*, 336 F.R.D. at 3; *MariCal*, 2016 WL 9459260, at \*2.

### C. Plaintiff Has Recently Uncovered Evidence of Further Wrongdoing by AIC and Is Entitled to Learn who at AIC Was Involved

Plaintiff has recently discovered evidence[2] suggesting AIC was, post-transaction, conspiring to prevent Plaintiff from uncovering the evidence of its fraud. This evidence bolsters Plaintiff's position that AIC's refusal to search the Disputed Custodians' ESI is a tactic to facilitate its defense of this action. (Doc. 111 at 11). If AIC is successful in stonewalling discovery from the three Disputed Custodians, it will facilitate its defense that this was a fraud committed in Mexico without its knowledge or participation. (*Id.*).

Octavio Trejo served as Gayosso's CFO during the transaction negotiation, up until February of 2023. In a number of emails uncovered during Plaintiff's review of AIC's production, it appears Trejo was—since at least April of 2021—providing AIC senior employees Veronica

---

[2] As noted above, Plaintiff respectfully requests this Court hold these Objections in abeyance to afford the parties the opportunity to brief the impact of this new evidence before Magistrate Judge Boal in the first instance. *See also Wirth v. Barnhart*, 318 F.Supp.2d 726 (E.D.Wis.2004) (District judge reviewing a magistrate judge's recommendation should not be forced into a possibly erroneous decision simply because a litigant failed to raise a potentially meritorious defense before the magistrate.)

Stenner and Carlos Paz with frequent updates as to Servicios Funerarios' review of Gayosso's accounting practices, and putting them on notice of particular matters into which the company's new owner was inquiring.  (*See* Exhibit A, AIC00409348, ███████████ ███████████).[4]  For example, ███████████

███████████

███████████

███████████

███████████

███████████ Additionally, ███████████

███████████

███████████

███████████

███

Trejo continued to send correspondence others at AIC up until at least March of 2022.[7]

(Exhibit B, AIC00429848, ███████████

███████████).  It also appears that AIC used this illicitly obtained information

---

[3] This date is significant, as Mr. Chagoya's engagement with Gayosso began on April 4, 2021.  (Exhibit D, GSO-01531030).

[4] Plaintiff is in the process of obtaining certified translations of this correspondence, which it will provide to the Court in a supplemental filing on an expedited basis.

[5] Because AIC's production omitted earlier-sent emails, Servicios Funerarios does not have access to the metadata to determine who else was blind copied.

[6] In Spanish, "Les" refers to the second-person plural.

[7] Because AIC unilaterally shortened the relevant time period for its own production, Servicios Funerarios cannot determine whether Trejo continued to do so through the date of his termination in February of 2023.  (*See* Doc. No. 174 at 2).

with other former Gayosso employees or contractors. (Exhibit C, AIC00429546, ███████████████████████). Servicios Funerarios has searched its servers for evidence of the emails Trejo sent to himself, but he appears to have deleted all evidence of these communications prior to his departure as Servicios Funerarios has been unable to identify these emails on its servers.

These recently uncovered communications definitively show that senior employees at AIC were working with Trejo, then a Servicios Funerarios employee, to illicitly obtain information from Gayosso in an attempt to hide their fraud. Servicios Funerarios is entitled to know who else at AIC was involved in the fraud, and in concealing it after the fact. Moreover, ███████████████, there are methods of communicating information that make it impossible to determine, on the basis of three custodians' inboxes, whether and how information was received and disseminated.

In sum, reading the existing evidence presented to Magistrate Judge Boal in connection with new evidence that Defendant was, post-transaction, secretly conspiring with Plaintiff's own employees to prevent Plaintiff from uncovering the evidence of its fraud, warrants entry of an Order requiring AIC to search the Disputed Custodians' documents.

## **CONCLUSION**

The Order improperly imposed upon Servicios Funerarios a burden that it does not bear and that it cannot be expected to meet. While Servicios Funerarios met its burden of showing that the Disputed Custodians possessed relevant evidence, it did not have the burden of establishing that the Disputed Custodians were in possession of only duplicate documents. That is a burden AIC bore and failed to meet, relying instead on rank speculation. Servicios Funerarios respectfully

requests that the Court enter an order sustaining its Objections to the Order and compelling Defendant to search the documents of the three Disputed Custodians.

Dated: November 21, 2023                                  Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Carlos M. Sires*
Carlos M. Sires (admitted *pro hac vice*)
Jason Hilborn (admitted *pro hac vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
csires@bsfllp.com
jhilborn@bsfllp.com

David Boies (admitted *pro hac vice*)
Marc Ayala (*pro hac vice forthcoming*)
Brooke Alexander (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
dboies@bsfllp.com
mayala@bsfllp.com
balexander@bsfllp.com

*Counsel for Plaintiff / Counter-Defendant,*
*Servicios Funerarios GG, S.A. de C.V.*

**LESSER, NEWMAN, ALEO & NASSER LLP**

Michael Aleo
Thomas Lesser
39 Main Street, Suite 1
Northampton, MA 01060
Telephone: (413) 584-7331
Facsimile: (413) 586-7076
aleo@LLN-law.com
lesser@LLN.law.com

*Counsel for Plaintiff / Counter-Defendant,*
*Servicios Funerarios GG, S.A. de C.V.*

## **CERTIFICATE OF SERVICE**

I, Carlos M. Sires, hereby certify that the above was filed through the ECF system and that I have caused a true and correct copy of the above to be served on Plaintiff's counsel.

Date: November 21, 2023                                             By:/s/ *Carlos M. Sires*
                                                                                              Carlos M. Sires