# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

_____

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,                    Case No. 23-cv-10684

    Plaintiff/Counter-Defendant,

    v.

ADVENT INTERNATIONAL CORPORATION,

    Defendant/Counter-Plaintiff.

_____/

### SERVICIOS FUNERARIOS'S OBJECTIONS TO
### MAGISTRATE JUDGE BOAL'S ORDER ON DEFENDANT'S MOTION TO COMPEL

Plaintiff Servicios Funerarios GG, S.A. de C.V. ("Servicios Funerarios") respectfully objects, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a), to Section II(D) of Magistrate Judge Boal's Order (the "Order") (Doc. 182 at 7-10), on the Motion to Compel filed by Defendant Advent International Corporation ("AIC") (Doc. No. 74), which directs Servicios Funerarios to produce to AIC the "criminal investigative file" that was provided to Servicios Funerarios by the Mexican prosecutors despite the fact that Mexican law prohibits Servicios Funerarios from producing or using that file for purposes of this action, including by producing it to AIC.

### INTRODUCTION

The Order requires Servicios Funerarios to produce a criminal investigative file it is barred by Mexican law from producing.  It is not disputed that, as the victim of the fraud, Servicios Funerarios was entitled to receive from the Mexican prosecutors a copy of the criminal investigative file.  However, Article 218 of the Mexican Criminal Code ("Article 218") prohibits Servicios Funerarios from disclosing the criminal investigative file to AIC for use in this litigation.  The Order is contrary to the Supreme Court's test for determining whether the production of

1

documents otherwise protected from disclosure by foreign law may be compelled by a United States court.

The Order is clearly erroneous for three independent reasons:

*First*, the Order ignores the uncontroverted evidence from the office of the Mexican Prosecutor's Office (the "First Prosecutor's Statement") that Servicios Funerarios is not permitted to use the criminal investigative file in this proceeding.  (*See* Doc. 148 at 3-4.)  Instead, the Court brushed off the First Prosecutor's Statement because, purportedly, the prosecutor merely rejected Servicios Funerarios' request that the prosecutor provide it with an authenticated copy of the criminal investigative file to provide to AIC in this proceeding.[1]  (*See* Doc. No. 182 at 9-10.)  But the prosecutor did much more than that.  The First Prosecutor's Statement specifically confirms that the copies provided to parties to the criminal proceeding "are provided for use in the respective theories of the [criminal] case for the parties and should not be used for other purposes or independently." (Doc. 148 at 3-4.)  This is consistent with the declaration of Servicios Funerarios' expert that when the Mexican prosecutors turn over a criminal investigative file to a party to the criminal proceeding, the party is made to sign a confirmation that the file will be used only for purposes of the criminal proceeding.  (*See* Doc. 141 ¶ 9.)  In any event, to make this even clearer, after issuance of the Order Servicios Funerarios went back and asked the prosecutor for confirmation that it could turn over its own copy of the criminal investigative file to AIC.  The prosecutor issued a second statement reiterating that Article 218 prohibits Servicios Funerarios

---

[1] Of course, there was good reason for Servicios Funerarios' request for an authenticated copy of the file, since that type of copy would be most valuable in this proceeding.

from turning over to AIC its copy of the criminal investigative file because it is confidential "due to the protection of the public interest and the safeguarding of the investigation."[2]

*Second*, and notwithstanding the First Prosecutor's Statement, the Order improperly credited the declarations of AIC's expert witness despite the fact that, as pointed out by Servicios Funerarios' expert witness, AIC's expert relied on a wholly inapplicable Mexican judicial opinion that does not even mention, let alone analyze, Article 218.  (*See* Doc. 182 at 9; Doc. 170 ¶ 3.)  The Court's reliance on the declaration of AIC's expert was further improper because, although the expert concedes that Article 218 renders the criminal investigative file confidential for protection of the public interest, he fails to come forward with any law applying Article 218 and comes to the wrongheaded conclusion that parties to the investigation can gut that confidentiality interest by freely turning the file over.  (*See* Doc. 76-9 ¶¶ 11-14.)  Although in the Order the Court states that it "finds the analysis from [AIC's expert witness] more persuasive" than the analysis from Servicios Funerarios' expert witness, Docket No. 182 at 9, it does not contain any analysis or reason supporting that finding, much less addressing the flaws in the analysis of AIC's expert.  (*See* Doc. 182 at 9).

*Third*, having improperly determined that Article 218 does not prohibit Servicios Funerarios from producing the criminal investigative file, the Court failed to apply the factors enunciated in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).  Those factors decidedly weigh in favor of not compelling Servicios

---

[2] (*See* Ex. B). Servicios Funerarios does not suggest that these later developments render the Order clearly erroneous.  Nevertheless, because they are pertinent to the resolution of this issue, Servicios Funerarios presents them to this Court through this submission.  Accordingly, Servicios Funerarios alternatively requests that the Court hold these Objections in abeyance and remand the Order to Magistrate Judge Boal to consider these new facts in the first instance.

Funerarios to produce the criminal investigative file, particularly since it is not controverted that AIC may obtain those files from its own employees to whom the Mexican Prosecutor has already provided them or, perhaps directly, by claiming to be an injured party by virtue of the embargo.

## LEGAL STANDARD

If a party timely objects to the non-dispositive rulings of a magistrate judge on pretrial matters, the district judge must modify or set aside any part of the disputed order that is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" prong requires the district judge to accept the factual findings and conclusions of the magistrate judge unless, after reviewing the entire record, the district judge has a "strong, unyielding belief that a mistake has been made." *Green v. Cosby*, 160 F. Supp. 3d 431, 433 (D. Mass. 2016) (citing *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999)). On objection, the district judge reviews pure questions of law *de novo*, and factual findings for clear error. *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010); *Phinney*, 199 F.3d at 4. Mixed questions of law and fact invoke a sliding scale of review pursuant to which "[t]he more fact intensive the question, the more deferential the level of review (though never more deferential than the clear error standard); the more law intensive the question, the less deferential the level of review." *In re IDC Clambakes, Inc.*, 727 F.3d 58, 64 (1st Cir. 2013) (internal quotation marks omitted).

## ARGUMENT

The Order both ignored the uncontroverted evidence from the Mexican Prosecutor confirming that Servicios Funerarios cannot turn over the criminal investigative file for use in this action and consequently misapplied relevant law by failing to apply the *Societe Nationale* factors.

A. **The Court Ignored Servicios Funerarios' Uncontroverted Evidence and Credited AIC's Expert's Unsupported Legal Conclusions**

The Court correctly noted that, "[a]s the party objecting to production of documents based on foreign law, [Servicios Funerarios] bears the burden of 'demonstrating that such law actually bars the production or testimony at issue.'" (Doc. 182 at 8 (citing *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 96 (S.D.N.Y. 2014)).  The Court committed error, however, when it determined there was no conflict between United States discovery law, which provides for disclosure of relevant, non-privileged documents, and Article 218, which prohibits the disclosure of even relevant evidence here.

The Order's finding that AIC's expert declaration as "more persuasive" was clearly erroneous because it ignores the dispositive evidence in the First Prosecutor's Statement (since corroborated by the Second Prosecutor's Statement) that Article 218 does not permit Servicios Funerarios to produce the criminal investigative file in this case while, instead, relying on AIC's expert's declaration that is based on a Mexican judicial opinion that does not even address Article 218.  We respectfully submit that this Court should "discount" the Magistrate Judge's finding because it "omits essential findings or analysis." *United States v. Matias*, 885 F. Supp. 2d 458, 464 (D. Mass. 2012) (quoting *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, Inc. 884 F.2d 1510, 1517 n.5 (1st Cir. 1989).

At the outset, we note that the Court did not state the basis for its finding that AIC's expert was "more persuasive" than Servicios Funerarios' expert, instead offering only the conclusory statement that, "after a review" of what it acknowledges were "dueling" declarations, the Court "finds the analysis from [AIC's expert] more persuasive."  (Doc. 182 at 9.)  A review of the evidence submitted by both parties makes clear that AIC failed to come forward with evidence that

Article 218 does not prohibit Servicios Funerarios from turning over the criminal investigative file.

While Servicios Funerarios met its burden by "describ[ing], among other things, 'the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case,'" *see Wultz*, 298 F.R.D. at 96 (internal citations omitted), AIC's expert relied on a Mexican judicial opinion not even involving Article 218. The statement by AIC's expert that the Mexican Supreme Court "resolved that the rule of reserve of article 218 of the CNPP[ ] is a unique obligation of the Prosecutor and cannot be transferred to other persons or authorities[ ]," (Doc. 151-10 ¶ 5), is flatly wrong. As shown by the statement of Servicios Funerarios' expert, the judicial opinion ("59/2016") upon which AIC's expert relied has *nothing to do with Article 218*. (*See* Doc. 170-1 ¶ 3.) Instead, decision 59/2016 interprets a provision of a penal code that is no longer in force and "Article 218" appears nowhere in the decision. But, as AIC's expert concedes, "the rule of confidentiality applicable to the delivery of copies of the investigation file is contained in Article 218 of the CNPP." (Doc. 151-10 ¶ 3.)

The very concessions made by AIC's expert refute his reliance on the 59/2016 legal opinion. For starters, he concedes that it is Article 218, unmentioned in 59/2016, that "regulates the essential rules and formalities of the criminal process, the rights of the parties (the accused, the victim, and their attorneys), and the powers and obligations of the Prosecutor's Office, among other issues," that, "[i]n this particular case," Article 218 establishes an obligation of the Prosecutor's Office to maintain the confidentiality of the files of any criminal investigation," and that "this implies that *only the parties to the procedure may be allowed access to said records*" because Article 218 "recognizes a right *of the parties* to access the investigation files." (Doc. 76-9 ¶¶ 8, 9 (emphasis added).)

AIC's expert thus agrees that "Article 218 of the CNPP provides for the obligation of the Prosecutor to keep in reserve the acts of investigation contained in the respective file, limiting access, consultation and copy of such records **to the parties to the proceeding**, when the requirements of the Law are met." (Doc. 151-10 ¶ 2) (emphasis added). According to the expert, the prosecutor thus "has the duty to ensure that the original files of an investigation can be inspected **only by the parties that are part of the criminal procedure**." (Doc. 76-9 ¶ 16.) Thus, AIC's expert further admits, the "Public Prosecutor's Office is the one who must **guarantee** the confidentiality" of the criminal investigation file. (*Id*. ¶ 4.) To that end, as AIC's expert agrees that "[i]t is further the responsibility of the Prosecutor's Office to ensure that any inspection of the investigation files it allows to be made and **any copies that are issued to the parties do not compromise or jeopardize the criminal investigation**." (Doc. 76-9 ¶ 10 (emphasis added).)

Against this backdrop, AIC's expert's conclusion that, once a prosecutor provides a party to the criminal proceeding with a copy of the highly confidential criminal investigative file that party is free to disseminate the file as it wishes, posting it on public bulletin boards if it so desires, makes absolutely no sense. Yet, that is the upshot of the legal opinion offered by AIC's expert, which the Magistrate Court found "more persuasive." (Doc. 182 at 9.)

Servicios Funerarios' expert, on the other hand, is entirely consistent with not just the objectives of Article 218, which inure to the public interest in the government's ability to conduct criminal investigations. As Servicios Funerarios' expert explained:

> The secrecy and confidentiality of a criminal investigation is considered one of the core principles that govern a criminal investigation, which is regulated in Articles 218 and 219 of the Código Nacional de Procedimientos Penales. ***The purpose of these articles is to protect the public interest and the safeguarding of the right to security, which protect the investigation and effectiveness in the prosecution of crimes***. For this reason, the Ministerio Público as well as the parties must maintain the secrecy and confidentiality of the records that are in a criminal investigation folder.

(Doc. 141 ¶ 4 (emphasis added).)  Thus, "[i]n order to protect the secrecy of criminal investigation records, Article 218 'strictly' limits access to the criminal investigation records to the parties themselves."  (*Id*. ¶ 5.)

That is why, Servicios Funerarios' expert explains, in his 20 years of practicing criminal law, when prosecutors provide a party to the criminal case with a copy of the criminal investigative file, "the receipt that accompanies the records state[s]: 'Por lo anterior, se entregan copias simples, únicamente con el fin de que sean utilizadas para su teoría del caso del solicitante, sin que deba ser usada para otros propósitos,' which, in English, means: 'For the above, simple copies are delivered, ***solely for the purpose of being used for the requester's theory of the case***, without being used for other purposes.'"[3]  (*Id*. ¶ 9.)  Nowhere does AIC's expert controvert this assertion by Servicios Funerarios' expert.  Indeed, as discussed below, AIC has refused to state, despite a direct request by Servicios Funerarios, whether it has already obtained a copy of the criminal investigative file from any of its employees for whom arrest warrants have been issued or perhaps directly by claiming to be a victim of the embaroges.  It should, at the least, address this point explicitly.

The Magistrate Judge also disregarded ***direct*** evidence from the Mexican Public Prosecutor's Office – the very office that is conducting the criminal investigation and that provided the criminal investigative files to Servicios Funerarios and other parties to the investigation – that makes clear that Servicios Funerarios is not at liberty to produce the criminal investigative file in

---

[3] AIC's contention that it is entitled to the criminal investigative file because it intends to use for its "theory of the case" is silly.  Docket No. 150-10.  The case with respect to which the file is provided is the criminal case, not a civil case brought later in the United States.  In any event, if AIC is correct, it should be able to get the file directly from the prosecutor.

discovery in this action.  (Doc. 148 at 3-4.)  The Magistrate Judge did so by narrowly looking at Servicios Funerarios' request to the prosecutors rather than to the substance of the prosecutors' response.  (*See* Doc. 182 at 9).  Initially, Servicios Funerarios requested that the prosecutors provide it with a "authenticated copies of the present investigation file … for the purpose of presenting them as evidence in this case," (Docket 148-1), but did not "request[] permission to produce a copy of the file it has already received."[4]  (Doc. 182 at 9.)  Focusing on the nature of the request, the Magistrate Judge found that "it is not surprising that they would deny a request for the prosecutors themselves to provide authenticated copies to be used in a different proceeding."[5]  (*Id*. at 9-10.)

The Magistrate Judge, however, ignored the prosecutors' ***substantive*** response to Servicios Funerarios' request.  The prosecutor's letter explained, in no uncertain terms, that Servicios Funerarios may not share its copy of the criminal investigative file with AIC:

> In accordance with the provisions of Articles 105 and 218 of the National Code of Criminal Procedures, ***it is stipulated that the identity of the parties involved and the acts of investigation are to be kept confidential. This means that only the involved parties are allowed access to them, including the possibility of providing copies.*** However, these investigative records are classified as confidential, and ***access is not granted to individuals not directly involved in the criminal proceeding.*** This is done to protect the public interest and to safeguard the investigation's effectiveness, as well as to prevent any compromise of the investigation. It should be noted that ***this ministerial authority has provided copies of these investigative records to various defendants through their legal representatives and to the offended party***. It is always clarified during the delivery of such copies that ***they are provided for use in***

---

[4] Servicios Funerarios' request for an authenticated copy of the criminal investigative file was wholly appropriate since that would be the file most suitable for use in this action.  Presumably, that is the version of the file that AIC would prefer to receive.

[5] We note that the Magistrate Judge acknowledged two things at odds with its ruling: "the prosecutors' obligations to keep the investigative file confidential" and that they could thus not be expected to provide the confidential file to be used in a "different" proceeding.

> *the respective theories of the case for the parties and should not be used for other purposes or independently*.

(Doc. 148-1 at 4 (emphasis added).)   Nowhere did the prosecutor say that Servicios Funerarios was free to disseminate the copy of the investigative file it had received from the prosecutor, which is something the prosecutor would have been expected to say in response to Servicios Funerarios' request.

But to erase any doubt, following the Order's issuance, Servicios Funerarios returned to the prosecutors in a good faith attempt to clarify the scope of Article 218's prohibition on providing copies of the criminal investigative file to third parties.   (A copy of Servicios Funerarios' request to the prosecutors, and a machine-generated translation of the same are attached hereto as Exhibit A.   On November 14, 2023, Servicios Funerarios made the following request:

> [Magistrate Judge Boal] considered that "it is not surprising that the Public Ministry Agent denied the request because it was directly requested from you, Mr. Prosecutor," and now points out that what is sought is a copy of the file of the current case in the possession of SERVICIOS FUNERARIOS GG, S.A. de C.V., which was handed over by this Prosecutor's Office on October 28, 2022. Therefore, respectfully, I would like to insist on this new inquiry, so that my client *can present a copy of the file that is in their possession in the Massachusetts proceedings and thus comply with what is indicated in said lawsuit. SERVICIOS FUNERARIOS GG, S.A. de C.V., has no objection to doing so and granting Advent International Corporation full access to it, provided that there is no legal impediment that results in any legal liability for my client*.

(*Id*. (emphasis added).)   On November 15, 2023, the Mexican prosecutor rejected the request:

> Adhere to the determination made in the resolution dated October 16, 2023, and consequently it is reiterated that the information contained in the copies of the investigation folder that [were] already granted to you as a victim of the crime *must be confined to the criminal proceedings* in order to, [on the one hand,] *respect the fundamental rights of the parties and, [on the other hand,] ensure the confidentiality of investigations, for the proper administration of justice*. Based on articles 1, 6 , 8 and 21 of the Political Constitution of the United Mexican States; 1, 3, 5, section VIII, 40, sections 11 and XXI of the General Law of the National Public

Security System; 1, 2, 3, 4 (for the purposes of this law, it is understood [to be] in possession of the obligated entities, protected by the fundamental right to privacy, intimacy, honor and dignity and as foreseen by the law), VIII (restricted access information, all types of information in the possession of obligated entities, under reserved or confidential classification), IX, X (reserved information: the public information [that is] temporarily subject to some of the exceptions provided in this law); 36 first paragraph 37 section VII, 40, 42 and 50 of the Law of Transparency and Access to Public Information of Mexico City and 105 and 218 of the National Code of Criminal Procedures, the following is agreed: According to Articles 105 and 218 of the National Code of Criminal Procedures, confidentiality over the identity of the procedural subjects and the investigation acts is established, which implies that only the parties can have access to them, including the issuance of copies. . However, these ***investigation records are confidential, so individuals who are not part of the criminal proceeding cannot access them***, due to the protection of the public interest and the safeguarding of the investigation to ensure its effectiveness and not to jeopardize it.

(Ex. B, Prosecutor's Denial dated Nov. 15, 2023 (translated with assistance of software) (emphasis added).)[6]  In short, the Mexican prosecutors – who AIC's expert concedes are required to guarantee the confidentiality of the criminal investigative filed and who would be tasked with prosecuting a violation of confidentiality – have now twice denied Servicios Funerarios permission to produce the file to AIC as part of discovery in this action.

The Order directing Servicios Funerarios to produce to AIC the confidential criminal investigative file is contrary to law.

### B.  The Magistrate Judge Erred by Failing to Consider the *Societe Nationale* Factors

Because it erroneously found that there existed no conflict between this Court's discovery rules and Article 218, the Court did not conduct the analysis compelled by *Societe Nationale*.  482

---

[6] As noted above, Servicios Funerarios believes the issuance of the Second Prosecutor's Statement warrants a remand to Magistrate Judge Boal to consider this new evidence in the first instance.

U.S. at 546.  The Societe Nationale factors weigh decisively against forcing Servicios Funerarios to produce the criminal investigative file in disregard of Article 218 and the Mexican prosecutors' directives.

As this Court has recognized, where compliance with a discovery request would put a litigant at risk of violating foreign laws, "American courts . . . should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."  *AnywhereCommerce, Inc. v. Ingenico, Inc.*, 2020 WL 5947735, at *1 (D. Mass. Aug. 31, 2020) (quotation marks omitted) (quoting *Societe Nationale*, 482 U.S. at 546) (Talwani, J.).  Accordingly, in determining whether to order discovery in contravention of foreign law, courts consider a number of factors, including:

> (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance . . . would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id*. (citing *Societe Nationale*, 482 U.S. at 544 n.28).

Here, several important factors weigh against forcing Servicios Funerarios to produce the criminal investigative file.  First it is undisputed that the information did not originate in the United States.  Second, compliance with the request would obviously undermine important Mexican interests – the confidentiality of criminal investigations – which trump discovery in this civil action.  Third, the fourth factor is dispositive here: the availability of alternative means of securing

the information that will not place Servicios Funerarios in a position where it would violate Mexican law.[7]

Where there exists an alternative means of obtaining the criminal investigative file that would not result in placing Servicios Funerarios in the unenviable position of having to violate Mexican law in order to comply with the Order, the alternative means should be pursued. *Societe Nationale*, 482 U.S. at 544 n.28; *cf. AnywhereCommerce*, 2020 WL 5947735, at *2 ("Where it may be possible to obtain sought-after information domestically, concerns regarding comity militate for avoiding superfluous foreign discovery.").

As stated in the First Prosecutors' statement, the criminal investigative file has been provided to all of those for whom arrest warrants have been issued. (*See* Doc. 148 at 3-4.) Yet, AIC has studiously avoided stating whether it has obtained (or tried to obtain) the criminal investigative file from one of its employees.

AIC first asserted that it had no alternative means of obtaining the criminal investigative file because its employees could not obtain the file without risking arrest in Mexico. (Doc. 115 at 2-3). When AIC's expert refuted that contention, explaining that he had many times obtained the file without his client having to appear and risk arrest, AIC pretended not to know that could be done, asserting at the September 18th hearing that "notwithstanding that [Servicios Funerarios'] expert said that's something that can be done, no one on our side has seen it done." (Hr'g Tr. at 38:17-18).

---

[7] It is fair to question whether the first factor weighs in favor of production. AIC has asserted claims that Servicios Funerarios corruptly influenced the Mexican criminal proceedings. Yet, it has yet to produce the first piece of evidence to support those allegations. Servicios Funerarios has produced to AIC all of the documents it provided the Mexican prosecutors in connection with its criminal complaint. It is in those documents that any evidence of improper conduct by Servicios Funerarios would be found. There is none. AIC's request for the criminal investigative file is simply a fishing expedition in the hope of finding anything it can claim supports its baseless claims.

In response, Servicios Funerarios' counsel advised the Court that one of AIC's senior employees, Carlos Paz, had apparently "obtained this file and was able to obtain it through counsel" and "didn't have to subject himself to arrest" and requested that AIC "either make a very clear representation that they have tried to get it from Mr. Paz and have been unable to, or that Mr. Paz tells them that he doesn't have the file." (*Id*. at 52:15-23). Only then did counsel for AIC advise the Court that Mr. Paz "received a version of this file," although he speculated that "it's a version that is not up to date, it's a version that doesn't have all the additional information, it's a version that is, in short, incomplete." (*Id*. at 54:17-22). And only after the Court suggested that AIC include information concerning Mr. Paz's possession of the file "in [AIC's] submission that I'm getting on Friday," did AIC admit that, in fact, "Mr. Paz received a copy of the criminal investigative file." (Doc. 150 at 11.) But even then, AIC continued to obfuscate, stating that "has no way to independently verify that Mr. Paz's copy of the file is complete." *Id*. Even then, AIC has never stated whether it has obtained a copy of the criminal investigative file, from Mr. Paz or any other source.

In short, AIC has not been forthright as to whether it has a less burdensome means of acquiring the criminal investigative file, and has been unable to rebut or refute Servicios Funerarios' evidence that it can obtain the file through alternative means and without risk.[8] The Court's Order requiring Servicios Funerarios to turn over the criminal investigative file without confirming that there were no alternative means that would not pose a risk to Servicios Funerarios is contrary to law. *Societe Nationale*, 482 U.S. at 544 n.28.

---

[8] In fact, since AIC is the subject of embargoes in connection with the criminal investigation, it may be able to acquire the file directly from the Mexican prosecutors pursuant to Article 218. However, it has been silent as to whether it has attempted to obtain the file in that manner.

## CONCLUSION

The Order places Servicios Funerarios in the impossible position of producing the criminal investigative file as discovery in this action, thus violating Mexican law.  That result is contrary to law.  *See Societe Nationale*, 482 U.S. at 546.  Servicios Funerarios respectfully submits that the Court should reverse Section II(D) of the Order, consistent with the principle that courts must "demonstrat[e] due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state."  *AnywhereCommerce*, 2020 WL 5947735, at *1.[9]  In the alternative, Servicios Funerarios respectfully requests that the Court enter an order holding these Objections in abeyance and remanding the Order to Magistrate Judge Boal to reconsider in the first instance in light of the Second Prosecutor's Statement.

Dated: November 21, 2023

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Carlos M. Sires*
Carlos M. Sires (*admitted pro hac vice*)
Jason Hilborn (*admitted pro hac vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
csires@bsfllp.com
jhilborn@bsfllp.com

David Boies (*admitted pro hac vice*)
Brooke Alexander (*admitted pro hac vice*)

**LESSER, NEWMAN, ALEO & NASSER LLP**

Michael Aleo
Thomas Lesser
39 Main Street, Suite 1
Northampton, MA  01060
Telephone:  (413) 584-7331
Facsimile:  (413) 586-7076
aleo@LLN-law.com
lesser@LLN.law.com

*Counsel for Plaintiff / Counter-Defendant, Servicios Funerarios GG, S.A. de C.V.*

---

[9] Though the *AnywhereCommerce* court ordered discovery from two of the three defendants, it specifically bifurcated its analysis, beginning by ordering discovery from the two U.S. entities and allowing plaintiffs to renew their motion to compel against the foreign litigant after first pursuing the discovery via the less burdensome means: through the domestic entities.  This supports at least beginning by having AIC use the less burdensome means of attempting to obtain the file itself before potentially subjecting Servicios Funerarios to serious legal consequences before a Mexican authority.

Marc Ayala (*pro hac vice forthcoming*)
333 Main Street
Armonk, NY  10504
Telephone:  (914) 749-8200
Facsimile:  (914) 749-8300
dboies@bsfllp.com
mayala@bsfllp.com

*Counsel for Plaintiff / Counter-Defendant,*
*Servicios Funerarios GG, S.A. de C.V.*

## **CERTIFICATE OF SERVICE**

I, Carlos M. Sires, hereby certify that the above was filed through the ECF system and

that I have caused a true and correct copy of the above to be served on Plaintiff's counsel.

Date:  November 21, 2023                                        By:*/s/ Carlos M. Sires*
                                                            Carlos M. Sires