**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V.,<br><br>        Plaintiff,<br><br>v.<br><br>ADVENT INTERNATIONAL<br>CORPORATION,<br><br>        Defendant,<br><br>        and<br><br>ADVENT INTERNATIONAL<br>CORPORATION,<br><br>        Counterclaim-Plaintiff,<br><br>v.<br><br>SERVICIOS FUNERARIOS GG, S.A. DE C.V.,<br><br>        Counterclaim-Defendant. | Civil Action No. 23-cv-10684 |

**AIC'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR ENTRY OF AMENDED PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Defendant and Counterclaim-Plaintiff Advent International Corporation ("AIC") moves for entry of an amended protective order in the form attached hereto as Exhibit A (the "Amended Protective Order"), which contains (i) an expanded use restriction that would prohibit the use of *any* discovery material— regardless of confidentiality designation—in Mexico; and (ii) an expanded definition of "Confidential Information" that would unambiguously sweep in "information that could be used to impair an individual's personal safety, liberty, or well-being."

1

## BACKGROUND

AIC brings this motion to protect its interests—and those of its employees—from Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V.'s ("Servicios Funerarios") efforts to use the Mexican judicial system as a means to achieve its desired outcomes.

In its Complaint, Servicios Funerarios alleges that AIC fraudulently induced it into purchasing Grupo Gayosso, S.A. de C.V. ("Gayosso"), a Mexican funeral services company, in 2021.  *See* ECF No. 1.  In its Counterclaims, AIC alleges that Servicios Funerarios, in an effort to coerce payment of the purchase price—and then some—from AIC, asserted meritless claims against AIC and its affiliates in Mexico and caused the issuance of (i) baseless arrest warrants against employees of AIC and its affiliates in Mexico, (ii) baseless Interpol Red Notices against the same employees, and (iii) baseless embargoes targeting certain assets, owned by AIC-managed investment funds, that had nothing to do with the Gayosso transaction.  AIC alleges that Servicios Funerarios did so with the help of a Mexican law firm known for regularly abusing its close connections with prosecutors, judges, and other Mexican officials.  *See* ECF No. 14 ¶¶ 1-40, 176-214.

Given its lived experience,[1] AIC endeavored to negotiate an iron-clad protective order that would prevent Servicios Funerarios from leveraging the discovery material produced in this case for use in Mexico.  To that end, AIC initially proposed—among other things—a standard use

---

[1]    AIC's lived experience is but one example of what the U.S. federal government has expressly recognized as "improper influence" within the Mexican judiciary.  *See* Mexico 2022 Human Rights Report, U.S. Department of State, Bureau of Democracy, Human Rights, and Labor at 11, *available at https://www.state.gov/wp-content/uploads/2023/02/415610_MEXICO-2022-HUMAN-RIGHTS-REPORT.pdf* (last visited Dec. 5, 2023) (hereinafter "Human Rights Report") ("Although the constitution and law provide for an independent judiciary, court decisions were susceptible to improper influence by both private and public entities, particularly at the state and local level, as well as by transnational criminal organizations.").

restriction that would prohibit Servicios Funerarios from using "Confidential" or "Highly Confidential" discovery material for any purpose other than to litigate the claims and defenses ***in this action***.  *See* ECF No. 88, at 2.  Servicios Funerarios refused, insisting instead that it be permitted to use "Confidential" and "Highly Confidential" discovery material ***in any other action between the parties or their affiliates***, which would have included the ongoing parallel civil and criminal proceedings in Mexico.  *Id.* at 3.  AIC became concerned that Servicios Funerarios intended to use "Confidential" and "Highly Confidential" discovery material it obtained in this action to pursue ***additional*** arrest warrants, Interpol Red Notices, and asset embargoes in Mexico, where it otherwise would not have been entitled to discovery.  *Id.*  On September 7, 2023, AIC therefore moved the Court to enter a protective order containing, among other disputed provisions, the standard use restriction that Servicios Funerarios had opposed.  *Id.* at 4-7; *see also* ECF No. 87.  On September 14, 2023, the Court entered the protective order (the "Initial Protective Order"), ECF No. 101, and on September 20, Servicios Funerarios moved the Court to reconsider the order entering the Initial Protective Order—specifically challenging the "use" restriction.  *See* ECF No. 104, at 9-11.

The Court issued its ruling on October 23, 2023, *see* ECF No. 155 (the "Protective Order Ruling"), holding that it would not "allow use of information subject to the protective order in the Mexican proceedings," particularly given that AIC's proposed use restriction was "generally a standard component of most stipulated protective orders."  *Id.* at 2.  In so holding, the Court specifically noted Servicios Funerarios' acknowledgement that "discovery is not permitted in the Mexican proceedings" and observed that "allowing [Servicios Funerarios] to use confidential information produced in this case in those proceedings would work an end-run around Mexican

procedural rules." *Id.* The Court ordered the parties to submit a revised form of stipulated protective order consistent with its ruling. *Id.* at 4; *see also* ECF No. 181.

The parties did so on November 13, 2023, and the Court entered the revised protective order (the "Revised Protective Order") on November 28, 2023. *See* ECF Nos. 185, 203. But the Revised Protective Order would only restrict the use of "Confidential" and "Highly Confidential" information; it would not restrict the use of (i) discovery material not designated as "Confidential" or "Highly Confidential" by AIC in the first place, or (ii) discovery material initially designated as "Confidential" or "Highly Confidential" by AIC, but then later de-designated voluntarily or on successful challenge by Servicios Funerarios. *See* ECF No. 203 § 3(vii) (permitting any party to dispute "designation of information as CONFIDENTIAL or HIGHLY CONIDENTIAL").

While the parties' dispute concerning the Initial Protective Order remained pending before the Court, Servicios Funerarios made clear, in more ways than one, that it intends to use such discovery material in Mexico.

For example, on October 2, 2023, AIC served its Amended Responses and Objections to Servicios Funerarios' Second Set of Interrogatories (the "Interrogatory Responses"), which addressed a series of contention interrogatories propounded by Servicios Funerarios probing the basis for AIC's Counterclaims. *See* ECF No. 165, at 2-3. The Interrogatory Responses contained twenty pages of extensive support for AIC's Counterclaims, including detailed and contemporaneous reports of prior relevant conduct by Servicios Funerarios' Mexican counsel and the same Mexican authorities involved in the criminal proceedings currently pending against employees of AIC and its affiliates in Mexico. *Id.* at 3. AIC initially designated the Interrogatory Responses as "Highly Confidential," but Servicios Funerarios objected to that designation. *Id.* AIC agreed to re-designate the Interrogatory Responses as "Confidential." *Id.* Servicios

Funerarios again objected, insisting that the Interrogatory Responses should bear **no** confidentiality designation whatsoever. *Id.*; *see also* ECF No. 128, at 2 ("Servicios Funerarios does not agree that the [Interrogatory Responses] ha[ve] been properly designated as confidential."). AIC did not agree to de-designate the Interrogatory Responses completely, for fear that SF intended to use them to obtain additional arrest warrants or take other steps to pressure AIC or its affiliates' employees in Mexico. *See* ECF No. 165, at 3, 5. Indeed, one day later on October 3, in briefing before this Court, Servicios Funerarios accused AIC of making allegations in its Counterclaims that "are, in fact, defamatory *per se*."[2] ECF No. 118, at 8.

SF also filed a motion to compel AIC to produce documents that it "had in its possession at the time it filed its Counterclaim." *Id.* at 6. As the Court noted at a recent hearing, those requests were "interestingly constructed" in that they did not seek discovery of facts supporting AIC's Counterclaims—rather, they were aimed at identifying documents that were in AIC's possession at the time of filing, suggesting that Servicios Funerarios was more concerned with retaliatory measures than developing a defense on the merits. ECF No. 189-3, at 20:20-23; *see also id.* at 27:21-28:1. Servicios Funerarios later insisted that these document requests were designed to inform a potential Rule 11 motion. *See id.* at 21:8-17. But that post-hoc rationalization is belied by the record: Servicios Funerarios had never previously notified AIC of any Rule 11 concern. *See id.* at 29:11-30:5.

---

[2]     "Defamation *per se*" is a charged term, suggesting potential criminal prosecution in Mexico. *See* ECF No. 189-3 at 29:19-20 (explaining that "defamation per se is a crime in several states in Mexico currently"); *see also* Human Rights Report at 15-16 (explaining that nine states in Mexico "have criminal laws regarding" defamation, libel, and slander and observing that penalties for all three offenses include prison time and fines). Of course, Servicios Funerarios could not bring a claim for defamation in the United States based on the allegations in the Counterclaims. *See Frazier v. Bailey*, 957 F.2d 920, 927 (1st Cir. 1992) (statements made "in the institution or conduct of litigation" are "absolutely privileged" in the United States).

In parallel, Servicios Funerarios repeatedly insisted that AIC designate an individual to verify the Interrogatory Responses. *See* ECF No. 165, at 6 n.4.[3]  In light of Servicios Funerarios' recent conduct—including its insistence that the Interrogatory Responses be de-designated entirely, its thinly-veiled threat that the allegations in AIC's Counterclaims amount to "defamation *per se*," and its "interestingly constructed" document requests—AIC grew increasingly concerned that Servicios Funerarios, with the help of its Mexican counsel, would pursue criminal charges or take other coercive action in Mexico against any individual who verifies the Interrogatory Responses.[4]  To that end, AIC declined to provide a verification until it had assurances that its Interrogatory Responses could not be used for that purpose. *See* ECF No. 165, at 5-7.  Servicios Funerarios ultimately moved to compel AIC to provide such a verification. *See* ECF No. 174. Despite the ***twenty pages*** of evidence cited by AIC in the Interrogatory Responses in support of its Counterclaims, Servicios Funerarios counterfactually insisted in its opening brief in support of that motion, and in yet another attempt to box AIC in as a means to manufacture further criminal process against AIC's affiliates in Mexico:  "If AIC has any evidence of corrupt conduct by Servicios Funerarios, it must come forward with it now.  If it does not, as is obviously the case, ***it must state so clearly and without equivocation*** in response to the interrogatory."  *Id.* at 2 (emphasis added).  And in its reply brief in further support of that motion, Servicios Funerarios ***explicitly stated*** that "fear of liability resulting from signing under oath" should not permit AIC to avoid having to verify the Interrogatory Responses. *See* ECF No. 196, at 5.

---

[3]     As with AIC's previous responses and objections to SF's interrogatories, AIC initially served the Interrogatory Responses without a verification in the interest of time, explaining that it would follow up separately with the verification. *See* ECF No. 165, at 6 n.4; ECF No. 165-2, at 3.

[4]     This is, of course, an eminently reasonable concern given that SF has sought and obtained arrest warrants against employees of AIC and its affiliates *solely* because they signed one single transaction document.  Countercl. ¶ 125.

To make matters even worse, recent discovery from Servicios Funerarios heightens AIC's well-grounded concerns.  On November 14, 2023—only hours after AIC filed its opposition to SF's motion to compel the verification of the Interrogatory Responses, *see* ECF No. 188—SF produced its engagement letter with its Mexican criminal counsel.  *See* ECF Nos. 204-3, 209 Ex. A-1 (the "Engagement Letter").  As detailed in AIC's surreply in opposition to SF's motion to compel, *see* ECF Nos. 204, 209, the Engagement Letter ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████

Servicios Funerarios' troubling positions and the Engagement Letter have revealed that the current use restriction in the Revised Protective Order is not sufficient to protect AIC's interests.  Even with that use restriction in place, Servicios Funerarios has the ability to serially challenge AIC's confidentiality designations, as it did with the Interrogatory Responses, and use de-designated (or un-designated) discovery material produced in this action in Mexico—where it otherwise is not entitled to discovery—against AIC's and its affiliates' employees.  To that end, AIC proposed (i) an expanded use restriction that would prohibit the use of *any* discovery material—regardless of confidentiality designation—in Mexico;[5] and (ii) an expanded definition

---

[5]     AIC similarly revised the "Document Disposal" and "Survival of Obligations" provisions to conform with its proposed expansion of the use restriction.  *See* Ex. A, Amended Protective Order § 10 (requiring that "all discovery material produced in this action" be returned or destroyed

of "Confidential Information" that would unambiguously sweep in "information that could be used to impair an individual's personal safety, liberty, or well-being"[6]—language that largely had previously been included only in the definition of "Highly Confidential Information."  *See* Ex. A, Amended Protective Order §§ 2(v)-(vi); 6 (i)-(ii).[7]  These twin restrictions would permit AIC to designate information that Servicios Funerarios may seek inappropriately and illegitimately to weaponize in Mexico as "Confidential" while ensuring that even a successful challenge to any such designation would prohibit Servicios Funerarios from end-running the use restriction. Tellingly, Servicios Funerarios did not agree to these revisions, which should have been uncontroversial.

## ARGUMENT

Under Rule 26, the court may, for good cause, issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  The order may forbid "disclosure or discovery" or "limit[] the scope of disclosure or discovery."  Fed. R. Civ. P. 26(c)(1).  Good cause is a flexible standard requiring "individualized balancing of the many interests that may be present."  *Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 402 (1st Cir. 2005).  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Gardner v. Cape*

---

within sixty days of "final termination of this action"); *id.* § 11 (providing that "[t]he obligations set forth in this Order survive the conclusion of this action").

[6]     This expanded definition is necessary because certain information may not be commercially sensitive, but nonetheless could be wrongfully used against an individual in Mexico if not designated "Confidential."

[7]     A redline of the Amended Protective Order against the Revised Protective Order is attached hereto as Exhibit B.

*Cod Healthcare, Inc.*, 344 F.R.D. 127, 132 (D. Mass. 2021) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

Good cause exists to (i) include in the definition of "Confidential Information" that which "could be used to impair an individual's personal safety, liberty, or well-being," and (ii) expand the use restriction such that it would prohibit the use of *any* discovery material—regardless of confidentiality designation—in Mexico. *See* Ex. A §§ 2(v)-(vi); 6(i)-(ii). To start, courts have long upheld protective orders shielding information from public disclosure that could jeopardize individual safety or liberty. *See, e.g.*, *Patterson v. Burge*, 2007 WL 1317128, at *3 (N.D. Ill. May 4, 2007) (plaintiff's "safety concerns" were addressed by protective order "allowing [plaintiff] to designate as 'Confidential' and limiting disclosure of any portions of his deposition that he believe[d] in good faith would create a concern for his personal safety"); *D Stadtler Tr. 2015 Tr. v. Gorrie*, 2023 WL 2708575, at *4 (D. Ariz. Mar. 30, 2023) (approving requested modification to protective order that would permit parties to designate "Confidential" information "that, if disclosed, could harm a party's personal safety or could expose a party to additional litigation"); c*f. United States v. Caicedo Velandia*, 2019 WL 6913524, at *2 (E.D.N.Y. Dec. 19, 2019) ("[C]ourts routinely permit the continued sealing of information when its release threatens the safety of those involved."); *Pinson v. Dukett*, 2023 WL 2463786, at *3 (D. Ariz. Mar. 10, 2023) ("Compelling reasons exist to seal judicial records if there is a substantial probability that unsealing them would place individuals in danger.").

Similarly, courts routinely approve protective orders that restrict the use of *all* discovery material, regardless of designation, for any purpose other than the litigation in question. *See, e.g.*, *Looney v. Moore*, 2014 WL 1364509, at *2-3 (N.D. Al. Apr. 7, 2014) (good cause existed to keep language in protective order providing that "*[a]ll Discovery Material* produced" in the litigation

"is to be used solely for the purposes of this Litigation" (emphasis added)); *Connector Serv. Corp. v. Briggs*, 1998 WL 34024177, at *2 (N.D. Ill. May 18, 1998) (entering protective order providing that "*[a]ll discovery material, whether designated 'Confidential' or not so designated,* shall be used solely for the prosecution or defense of the claims in this action" (emphasis added)); *In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1805398, at *2 (S.D.N.Y. June 2, 2022) (approving protective order requiring that "*all 'Disclosure or Discovery Material,*'" regardless of confidentiality designation, be used "solely for the purpose of the prosecution or defense" of the litigation in question (cited by Protective Order Ruling at 2) (emphasis added)).

As discussed, Servicios Funerarios has established a pattern of conduct strongly suggesting that it intends to end-run the so-ordered use restriction in the Revised Protective Order by serially challenging AIC's confidentiality designations. At the outset, Servicios Funerarios insisted that it be able to use "Confidential" and "Highly Confidential" discovery material produced in this litigation in any other action between the parties or their affiliates. But before the Court issued the Protective Order Ruling, Servicios Funerarios apparently determined that, even if the Court ultimately rejected its position, it could simply insist that AIC de-designate documents completely on the theory that those documents do not meet the definition of "Confidential Information," and then—if it were successful—use those de-designated documents in Mexico to further its ongoing efforts to coerce AIC, its affiliates, and their employees. Servicios Funerarios has already aggressively insisted that AIC de-designate and verify its Interrogatory Responses and then threatened, in no uncertain terms, to pursue defamation (or other process) against the individual who ultimately verified them (while seeking discovery into whether AIC filed its Counterclaims without any basis to do so)— ████████████████████████████████████████

████████████████████████████████████████████████████████

███████████.[8]  Furthermore, Servicios Funerarios mischaracterized AIC's position in court, calling AIC's request for a reasonable protective order a "red herring" intended to evade discovery entirely.  *See* ECF No. 189-3, at 33:10-15 (Servicios Funerarios' counsel stating:  "Apparently, even though we have a fraud case . . . which is viable, we can't conduct discovery because they think, oh, well, then, that means you can use it in Mexico.  That is a red herring argument that cannot prevent us from discovery in this case.").  But AIC has never taken the position that Servicios Funerarios is not entitled to discovery in this proceeding, and has in fact produced tens of thousands of documents to Servicios Funerarios already.  AIC simply seeks to ensure that the discovery it produces in this litigation will not be used for improper purposes in Mexico, where— as the Court has noted—no discovery is available.  *See* Protective Order Ruling at 2.

Under these circumstances, AIC should have (i) the ability to designate as "Confidential" information that Servicios Funerarios may seek to use in Mexico against AIC's and its affiliates' employees, putting at risk their safety, liberty, or well-being, and (ii) assurances that, even in the event of a successful challenge, Servicios Funerarios will be prohibited from leveraging de-designated (or un-designated) documents against AIC's and its affiliates' employees.  *See* Wright & Miller, *Federal Practice and Procedure* § 2036 (3d ed.) (explaining that "the court has considerable latitude in focusing on the nature of the harm advanced to justify the [protective] order" and that "a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes" of the Federal Rules).

---

[8]     Tellingly, AIC has repeatedly raised its concerns in correspondence and in briefing, *see, e.g.*, ECF No. 165, ECF No. 188, ECF No. 189-3, and Servicios Funerarios has had ample opportunity to assuage them.  Servicios Funerarios has not done so.

## **CONCLUSION**

For the reasons stated herein, AIC respectfully requests that the Court grant its motion and enter the Amended Protective Order.

Dated: December 5, 2023

_/s/ Daniel V. Ward_

Peter L. Welsh (No. 643261)
Daniel V. Ward (No. 667158)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com

Andrew J. Rossman*
Nicholas A. S. Hoy*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com

Joseph H. Margolies*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

_*Admitted Pro Hac Vice_

_Counsel for Defendant and Counterclaim-
Plaintiff Advent International Corporation_

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2023, I caused to be served a copy of the foregoing document via the CM/ECF system on all counsel of record.

 /s/ *Daniel V. Ward*
*Counsel for Defendant and Counterclaim-Plaintiff*
*Advent International Corporation*