UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,

    Plaintiff/Counter-Defendant,

v.

ADVENT INTERNATIONAL CORPORATION,

    Defendant/Counter-Plaintiff.

Case No. 23-cv-10684

**SERVICIOS FUNERARIOS GG, S.A. DE C.V.'S MEMORANDUM OF LAW IN OPPOSITION TO ADVENT INTERNATIONAL CORPORATION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I.     SF Has Produced the Documents It Agreed to Produce ........................................ 1

    A.     SF Has Produced Valuation and Diligence Documents from MexCap ................ 2

    B.     SF Has Produced Communications with Fibra Uno and the El-Mann Family ................................................................................................................... 3

    C.     SF Has Produced Responsive Communications with and Concerning Carlos Peña. ........................................................................................................ 5

        1.     SF Has Produced Responsive Documents from Carlos Peña's WhatsApp and Gmail Accounts. ............................................................... 5

        2.     SF Has Produced Documents Concerning Carlos Peña's Work on the MexCap Valuation Committee. ................................................... 6

    D.     Documents Concerning Unused Financing for the Gayosso Transaction and Financing for Related Lawsuits Are Irrelevant and Unduly Burdensome. ......................................................................................................... 8

        1.     Financing for the Gayosso Transaction. ..................................................... 8

        2.     Financing for Related Lawsuits. .................................................................. 8

    E.     SF Has Produced an Index of Gayosso's SAP Reports and is Willing to Produce Any Report Thereon that AIC Requests. .................................................. 8

    F.     SF Has Produced Responsive, Non-Privileged Communications from Its Mexican Criminal Counsel. ............................................................................... 9

    G.     Non-Privileged Communications Concerning SF's Decision to Seek Pardons for Messrs. Trejo and Moreno Were Oral. .................................................. 9

    H.     SF Has Produced Responsive Documents Concerning Mr. Trejo's Termination. ....................................................................................................... 10

II.     SF Does Not Control Messrs. Chagoya and Trejo and, Nevertheless, Has Produced Responsive Documents in its Possession from these Witnesses. ................................... 11

    A.     SF Has Produced Responsive Documents within its Possession Relating to Messrs. Chagoya and Trejo ................................................................................. 12

      **B.**    **SF Cannot Force Messrs. Trejo and Chagoya to Sit for Depositions Because it Does Not Control Them.** ........................................................................ 12

**CONCLUSION** ........................................................................................................................... 14

**CERTIFICATE OF SERVICE** ................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Honda Am. Motor Co., Inc. Dealership Relations Litig.*,
   168 F.R.D. 535 (D. Md. 1996) ................................................................................................ 13, 14

*Rundquist v. Vapiano*,
   277 F.R.D. 205 (D.D.C. 2011) ....................................................................................................... 13

*Viscito v. Nat'l Planning Corp.*,
   2019 WL 5318228 n.2 (D. Mass. Oct. 21, 2019) ........................................................................... 4

**Rules**

Fed. R. Civ. P. 30 ............................................................................................................................. 12

Plaintiff Servicios Funerarios GG, S.A. de C.V. ("SF"), pursuant to Local Rule 7.1(b)(2), serves this memorandum in opposition to defendant Advent International Corporation's ("AIC") Motion to Compel Production of Documents (the "Motion").  Doc. 295.

## INTRODUCTION

AIC's supporting memorandum, Doc. 296, is based on incorrect speculation rather than facts and ignores the extensive production of documents made by SF at great cost.  As of the date of this response, SF has produced 714,380 documents, far more than the 76,849 documents produced by AIC.  Indeed, as discussed below, SF has produced the requested documents that are in its possession.  But rather than deal with facts, AIC resorts to its typically aggressive argument, hoping to muddy the waters and distract from its own failure to produce unquestionably relevant information and documents.  AIC also includes in the Motion a baseless request that SF be "compelled" to produce witnesses who reside in Mexico and whom it does not control.  AIC's request is rich in irony because one of those witnesses – Gayosso's former CFO – was found to have been furtively communicating with AIC executives while he was still employed by Gayosso and providing them with confidential information concerning SF's plans to sue for fraud.  If anyone controls that witness, it is apparently AIC.  In short, the Motion should be denied because there are no documents that SF can be compelled to produce and because there is no basis to compel SF to produce the two individuals for deposition.

## ARGUMENT

**I.      SF Has Produced the Documents It Agreed to Produce**

While Section I of the Memorandum seeks to compel SF to produce documents it has previously agreed to produce, AIC fails to identify a single such document that SF has not produced.  Instead, AIC engages in speculation as to documents it believes should exist that have not been produced.  (*See, e.g.*, Doc. 296 at 9-10) (asserting (incorrectly) that it "defies reason" that particular

1

documents do not exist;) (*id*. at 12) (asserting that documents should exist because "Carlos Peña would likely have messaged his brother concerning the deal on WhatsApp.") But SF cannot produce documents it does not have or that simply do not exist. There is thus nothing that SF can be compelled to produce that it has not already produced.

### A. SF Has Produced Valuation and Diligence Documents from MexCap

AIC's contention that "SF's production of *any* MexCap documents – let alone valuation documents – remains wildly deficient," (*id*. at 7,) is simply not tethered to reality. SF voluntarily agreed to produce documents from MexCap's server pursuant to the parties' agreed-upon ESI Protocol. It has done exactly that and AIC does not point to an actual instance in which SF has not produced a responsive, non-privileged document from MexCap concerning valuation and due diligence, or otherwise.

AIC is thus simply incorrect when it states that SF "has not produced MexCap's internal analyses and valuations of Gayosso." (Doc. 296 at 8.) For example, SF has produced multiple versions of a valuation model prepared by SF's due diligence team.[1] (*See, e.g.*, Doc. 333-1, Ex. A.) These spreadsheets are, in turn, attached to parent emails that provide additional context with respect to Gayosso's value. (*See, e.g., id*.) As another example, SF produced the Ernst & Young due diligence report referenced in the Memorandum.[2] (Doc. 333-2, Ex. B.)

AIC's accusations of non-production are based on speculation rather than fact. Thus, as a purported "illustration" of the deficiency of production, AIC points to what it believes are too-few "internal" emails produced by SF. (Doc. 297 at 7.) But that assertion is based on rank speculation

---

[1] These versions are not solely duplicates of a single version of the valuation model but rather distinct versions reflecting SF's evolving valuation of Gayosso across time. References to "Ex. __" are to exhibits attached to the Declaration of Carlos Sires, (Doc. 333.)

[2] AIC misreads Exhibit 6. (Doc. 297, Ex. 6.) █████████████████████████████
████████████████████████

2

that more such emails must exist. Moreover, AIC's count of "internal" emails, as defined in AIC's Memorandum, (Doc. 296 at 7 n.4,) fails to count about 100 additional produced "internal" emails dating from pre-signing through closing. To date, SF has produced at least 450 "internal" emails between addresses with only MexCap or ExeFin domains. And SF has produced at least 400 emails dating from pre-signing through closing between SF's financial due diligence advisor and either ExeFin or MexCap.

SF has also produced responsive documents in accordance with its Responses and Objections to AIC's RFPs 6 and 43. As stated in response to RFP 6, SF agreed to produce responsive documents regarding its valuation and due diligence for Gayosso "that are identified pursuant to an ESI protocol agreed to by the parties." (Doc. 297-4 at 6-7.) Similarly, as stated in the response to RFP 43, SF agreed to produce documents concerning valuations of Gayosso or Gayosso's real estate "to the extent the parties reach agreement on reasonable search terms pursuant to an ESI protocol that will ameliorate the lack of specificity, overbreadth, and disproportionality of the request." (Doc. 297-5 at 10.) That is precisely how SF proceeded with respect to this production, without a complaint by AIC. In sum, SF has produced documents identified through the document collection and review process, as agreed-to in the ESI protocol and expressed in the responses and objections to RFPs 6 and 43. There is nothing to compel here.

B. **SF Has Produced Communications with Fibra Uno and the El-Mann Family**

AIC's assertion that SF has failed to produce all "transaction-related communications" between MexCap and Fibra Uno and the El-Mann family, (Doc. 296 at 8-9,) is similarly false and, once again, AIC fails to identify any document that has not been produced.[3] For example, in response to AIC's RFP 40, SF agreed to produce communications with Fibra Uno, Grupo E, the El-

---

[3] We ignore here AIC's continuing mischaracterizations of the role of the El-Mann family and Fibra Uno in the transaction. The Court has already held that documents in the possession of these persons and entities are not deemed to be in the possession of SF. (Doc. 182 at 6-7.)

3

Mann family, and related entities "pursuant to an ESI protocol agreed to by the parties."[4] (Doc. 297-5 at 8.) Subsequently, during a February 2 meet-and-confer, SF explained "that we have searched for and produced documents related to the El-Mann's non-binding offer to purchase Gayosso based on the agreed-upon search terms, as explained in our prior discovery communications." (Doc. 302-1 at 8.) At the same meet-and-confer, SF's counsel agreed to confirm with SF whether additional documents related to the non-binding offer existed. (*Id.*) SF's counsel confirmed after reasonable inquiry that its client believed no such documents existed and communicated to AIC's counsel during a telephonic meet and confer that most communications about the 2018 non-binding offer were verbal. Yet, AIC insists on baselessly accusing SF of failing to produce more documents. But SF cannot be made to produce what it does not have. *See Viscito v. Nat'l Planning Corp.*, 2019 WL 5318228, at *6 n.2 (D. Mass. Oct. 21, 2019) ("Because the court will not order the production of documents that do not exist, the court denies so much of Defendants' Motion as seeks to compel production of documents responsive to" records that Plaintiff represented he "did not maintain").

In any event, AIC is incorrect that SF "has produced zero communications or valuation documents concerning the El-Manns' original offer to buy Gayosso for MXP 4 billion in 2018." (Doc. 296 at 9-10.) SF produced the term sheet for the El-Manns' 2018 non-binding offer for Gayosso, internal MexCap communications about the 2018 offer, the offer letter itself, and related communications with AIC. (Docs. 333-3-6, Exs. C-F.) SF has also produced communications with the El-Manns including, for example, emails pertaining to the purchase and valuation of Gayosso's real estate assets in connection with the sale & leaseback. (*See, e.g.*, Docs. 333-7-9, Exs. G-I.) In

---

[4] SF also agreed to produce documents and communications pertaining to the El-Manns and Fibra Uno in response to numerous other requests in AIC's first and second RFPs, subject to various conditions. (*See generally* Docs. 297-4 & 297-5.) AIC's Motion apparently does not challenge the sufficiency of SF's production with respect to these other RFPs.

all, SF has produced at least 106 emails between SF's principal, MexCap, ExeFin, and either Fibra Uno, the El-Mann family, and their affiliates relating to the purchase of Gayosso's real estate assets alone. That count does not include produced emails relating to Fibra Uno's valuation of Gayosso's real estate, which, contrary to AIC's representations, SF has produced. (*See, e.g.*, Docs. 333-10-11, Exs. J-K.)

In sum, here, too, responsive documents have been produced in accordance with the parties' ESI protocol and there is no basis to AIC's charge to the contrary.

### C.   SF Has Produced Responsive Communications with and Concerning Carlos Peña.

SF has produced responsive communications with and concerning Mr. Peña, in accordance with its responses and objections to the RFPs identified in AIC's Memorandum, Doc. 296 at 10-12, and subsequent agreements with AIC, also identified in the Memorandum.

#### 1.   SF Has Produced Responsive Documents from Carlos Peña's WhatsApp and Gmail Accounts.

The numbers in the Memorandum concerning Carlos Peña's WhatsApp messages are inaccurate. SF has produced over 100 documents, constituting 100 separate message chains, from Carlos Peña's WhatsApp account. Included in that total are just under 100 chains predating the Gayosso transaction's closing. Separately, regarding whether AIC has produced WhatsApp communications between Carlos Peña and former Advent personnel that SF has not produced, AIC does not point to a single instance of a WhatsApp message allegedly produced by AIC but not by SF, so it is not clear by what metric AIC has deemed this production deficient, beyond its own speculation. Further, SF believes assertions concerning the WhatsApp productions are premature until AIC has reviewed SF's March 7 through March 20 productions. In addition, SF collected Carlos Peña's Gmail account and searched it in accordance with the ESI protocol. Following

5

collection, the Gmail account's contents were reviewed for responsiveness and privilege; responsive documents were subsequently produced.[5]

SF has produced responsive documents from Carlos Peña's WhatsApp and Gmail accounts pursuant to the ESI protocol and its discovery agreements.

### 2. SF Has Produced Documents Concerning Carlos Peña's Work on the MexCap Valuation Committee.

AIC's November 28 email explained that, with respect to MexCap's Valuation Committee, AIC sought "any engagement letters or documents outlining the relationship between Carlos Peña and any entity/individual connected to the Gayosso transaction." (Doc. 333-12, Ex. L at 5.) The November 30 letter from SF's counsel reflects SF's understanding that AIC sought "payments" from MexCap to Carlos Peña, along with any "formal agreement," such as "employment engagement letters, and scope of employment documents." (Doc. 297-7 at 8, 16.) SF has produced these responsive, nonprivileged documents pursuant to its responses and objections to AIC's RFPs, the ESI protocol, and its discovery agreements with AIC.) As SF represented to AIC during the meet-and-confer process, there is no formal agreement memorializing the terms of Carlos Peña's services for MexCap's Valuation Committee.

AIC's Memorandum misrepresents the substance of its own Exhibits 11 and 12, which cannot be construed to constitute either "employment engagement letters, [or] scope of employment documents." (*See* Doc. 297-7 at 16;) (Doc. 296 at 13) (citing Docs. 297-9 & 297-10.) Exhibit 11 ▮



▮ (Doc. 297-9 at 1.) Exhibit 12 ▮▮▮▮▮ (Doc. 297-10.)

---

[5] SF has found about 30 emails that were otherwise produced by other custodians, including Pablo Peña, with Carlos Peña's Gmail address also copied or listed as a recipient, and has confirmed that these emails were permanently deleted from Carlos Peña's Gmail inbox prior to the initiation of Mr. Peña's document retention obligations.

AIC's attempt to mischaracterize these as substantive, written engagement letters and scope of employment documents will not make them so.

Moreover, Mr. Peña's tax withholding and confidentiality agreements were attached to email chains between Carlos Peña's AIC email address and MexCap employee Thalia Fernández. (Doc. 333-13-14, Exs. M and N.) AIC did not designate Ms. Fernández as a custodian; accordingly, SF did not collect her emails. (*See* AIC's Proposed Search Protocol, Doc. 173-2 at 2.) And SF does not control the server that contains Carlos Peña's AIC emails; AIC does. In other words, SF had no obligation to produce an equivalent of AIC Exhibits 11 and 12 under either its discovery agreements with AIC or the ESI protocol. (*See id.*;) (Doc. 92.) Thus, SF's non-production of those documents cannot supply an inference that SF is withholding documents related to Carlos Peña's work on MexCap's Valuation Committee.

The only responsive documents in SF's possession related to Carlos Peña's services for the MexCap Valuation Committee are the two payments for said services, which AIC admits SF produced.[6] (*See* Doc. 296 at 13.) These two payments are indeed the only payments from MexCap to Carlos Peña for his Valuation Committee service, as SF previously explained to AIC. (Doc. 297-3 at 2.) The "[m]onthly notation" was a clerical error by the document's author. Carlos Peña has never been a salaried MexCap employee, nor has he received payments from MexCap on a monthly basis. (Doc. 297-7 at 16.) SF cannot produce what does not exist. Therefore, AIC's Motion should

---

[6] In certain instances, to reach compromise during the meet and confer process, SF agreed to go outside of the ESI protocol to search for a specific document or type of document. This resulted in certain documents being produced as standalone documents, even though they might exist or were later produced as part of a document family collected via ESI search. To facilitate the specific non-ESI requests, SF may have collected from custodians and sources not specifically discussed or requested in the ESI protocol. Far from evidencing any kind of bad faith attempt to hide documents, these reflect an interest in resolving disputes that do not warrant the attention of the Court — not a concession that such documents should have been located through the typical ESI process.

be denied with respect to the allegedly withheld documents concerning Carlos Peña's services on the MexCap Valuation Committee.

### D. Documents Concerning Unused Financing for the Gayosso Transaction and Financing for Related Lawsuits Are Irrelevant and Unduly Burdensome.

#### 1. Financing for the Gayosso Transaction.

Contrary to AIC's representations, Doc. 296 at 14-15, SF has produced responsive documents "concerning the financing and re-financing that it secured for Gayosso" pursuant to the ESI protocol agreed to by the parties. Despite receiving these documents, AIC seeks the additional and unnecessary production of all documents related to "source[s] of funds *considered*" (Doc. 297-5 at 9) or "financing . . . *requested*" (*id.* at 49) for Gayosso and the Gayosso Transaction. AIC seeks SF's unused sources of financing because it asserts those documents are relevant to the question of Gayosso's value. (Doc. 296 at 15) ("Any representations SF made to potential lenders concerning its assessment of Gayosso (whether before or after the transaction closed) goes to what SF actually believes Gayosso's value to be.") But AIC already has the valuation materials generated internally at Gayosso, which would be the most probative of this fact; additional unused financing communications are cumulative.

#### 2. Financing for Related Lawsuits.

Despite receiving the fee agreement SF had with its criminal counsel, AIC seeks production of all documents related to financing of the litigation both in Mexico and the US. Doc. 296 at 15.

[redacted]

### E. SF Has Produced an Index of Gayosso's SAP Reports and is Willing to Produce Any Report Thereon that AIC Requests.

This issue is not ripe for a motion to compel because SF has produced the index of all SAP reports maintained by Gayosso, contrary to AIC's assertions. (Doc. 333-15, Ex. O.) SF is willing to produce any report listed on the SAP index at AIC's request, provided the understanding that

8

Gayosso can only generate the reports it currently generates without having to engage in burdensome re-coding. Because the parties are not yet at impasse on the issue of SAP data production, the Court should deny the Motion with respect to this issue.

But, in any event, the Court should not allow AIC's vendor "to do a backend collection of the data," as AIC suggests. Doc. 296 at 16. Doing so would essentially allow AIC unfettered access to Gayosso's entire financial system, including competitively sensitive financial information not relevant to the issues in this case. Moreover, allowing AIC's ESI vendor to access the SAP data directly would violate the terms of the Court's protective order governing access to highly confidential documents which have no bearing on the resolution of this case. (*See* Doc. 267 at 3, 6-7.) AIC has simply not made a showing that such a drastic and unusual step should be ordered.

### F. SF Has Produced Responsive, Non-Privileged Communications from Its Mexican Criminal Counsel.

The "unnamed custodian associated with [SF's] criminal counsel" is Francisco Arreguin, and SF has collected and produced responsive documents from him, as expressed in discovery communications with AIC. (*See* Doc. 297-14 at 2;) (Docs. 333-16-18, Exs. P-R.) Most relevant documents in Mr. Arreguin's custody are duplicates already produced by other custodians, and several are privileged. Additional documents will be produced in an upcoming privilege review roll-off production set.

Separately, counsel has confirmed, after reasonable inquiry, that neither SF nor criminal counsel possess documents or communications concerning the Interpol Red Notices.

### G. Non-Privileged Communications Concerning SF's Decision to Seek Pardons for Messrs. Trejo and Moreno Were Oral.

AIC mischaracterizes SF's limitation of its production on the subject of Messrs. Trejo's and Moreno's pardons to documents subject to ESI search; the document to which AIC cites states that "[t]o the extent they exist and are in the possession, custody, or control of Servicios Funerarios,

9

documents not protected by the attorney-client privilege or work product doctrine that concern a 'pardon' of Octavio Trejo and Francisco Moreno, will be produced, to the extent the parties reach agreement on reasonable search terms pursuant to an ESI protocol that will ameliorate the lack of specificity, overbreadth, and disproportionality of the request." (Doc. 296 at 18;) (Doc. 297-5 at 17.) After reasonable inquiry and conferring with Mexican counsel, SF's U.S. counsel confirmed that there were no nonprivileged, written communications on the topic of pardons beyond the notice of granting the pardons filed with the prosecutors, which AIC has had since October 19, 2023. (Doc. 333-19, Ex. S.)  In addition, to the extent SF or its counsel communicated internally concerning the rationale for granting the pardons, such documents would be privileged under Mexican law.

Accordingly, AIC's Motion should be denied with respect to the nonexistent, non-privileged communications concerning Messrs. Trejo's and Moreno's pardons.

**H.     SF Has Produced Responsive Documents Concerning Mr. Trejo's Termination.**

SF disputes AIC's characterization of RFP No. 52, which verbatim sought "[a]ll Documents and Communications related to or concerning Octavio Trejo's departure or termination from Gayosso, including any termination or severance agreements or ongoing agreement or understanding (whether formal or informal) to continue to provide services to Gayosso, Servicios Funerarios, or MexCap." (Doc. 297-5 at 16.)  While SF agreed to produce documents responsive to this request pursuant to the parties' agreement on ESI search terms, (*id.*,) RFP 52 on its face is not broad enough to capture "communications . . . (ii) concerning who should replace Mr. Trejo, and (iii) with or about Mr. Trejo's ultimate replacement" as AIC's Memo argues.  (*See* Doc 296 at 19.)  Furthermore, at no point during the meet-and-confer process did AIC explain that it was seeking communications with and concerning Mr. Trejo's ultimate replacement as CFO.  In any event, SF has produced communications with and collected from Mr. Trejo's replacement.  (*See, e.g.*, Doc. 333-20, Ex. T.)

Thus, AIC's Motion should be denied with respect to communications about Mr. Trejo's replacement because AIC has never requested these communications.

Regarding communications concerning "the reason for Mr. Trejo's termination or resignation, (Doc. 296 at 19,) SF has produced the nonprivileged, responsive documents collected pursuant to the agreed-upon ESI search and subsequent attorney review for responsiveness and privilege. AIC is incorrect that SF has produced only one responsive document concerning Mr. Trejo's termination or resignation; SF also produced an internal Gayosso email regarding Trejo's termination, the noncompete agreement executed between Gayosso and Mr. Trejo in connection with his termination, and Mr. Trejo's related nondisclosure agreement (attached to AIC's Memo as Exhibit 22). (*See, e.g.*, Ex. 22 to Doc. 297.) The foregoing documents are the only responsive, nonprivileged documents or communications concerning Mr. Trejo's termination that have been located. SF can confirm that all other written communications it has identified discussing Mr. Trejo's termination are privileged. Responsive yet privileged communications will be listed on SF's privilege log.[7]

Hence, because SF has produced responsive, nonprivileged documents concerning Mr. Trejo's termination and replacement, the Court should deny the Motion in this respect.

## II. SF Does Not Control Messrs. Chagoya and Trejo and, Nevertheless, Has Produced Responsive Documents in its Possession from these Witnesses.

AIC's Motion should be denied as to the requests to compel (1) production of documents from Messrs. Trejo and Chagoya and (2) to produce those two witnesses for depositions. SF has produced responsive documents from these individuals that were stored on its servers and email exchanges. SF, however, cannot do more because it does not control these individuals, neither of whom are currently associated with SF.

---

[7] The parties have not yet agreed on a date for the exchange of privilege logs in this matter, yet another reason why much of AIC's Motion is premature.

A. **SF Has Produced Responsive Documents within its Possession Relating to Messrs. Chagoya and Trejo.**

SF in good faith agreed to produce – and did produce – responsive documents from both Messrs. Trejo and Chagoya, as evinced in AIC's own filing. (*Compare* Doc. 297-2 at 4) (Gabriel Soledad stating "[SF] agreed to the following custodians: . . . Octavio Trejo Garcia . . . .",) (*with id.* at 2) (Carlos Sires replying that "[SF] will search the identified custodians to the extent there is information that is maintained on the Gayosso server or the MexCap server.";) (*compare id.* at 5) (Gabriel Soledad: "You are going to get back to us on whether you will: [] accept as a custodian Roberto Chagoya,") (*with id.* at 3) (Carlos Sires agreeing to search for documents belonging to Mr. Chagoya on MexCap's server.)

SF has conducted both linear and ESI searches for Messrs. Trejo's and Chagoya's documents in accordance with the ESI protocol and its discovery agreements with AIC. Following these collections, SF produced at least 8,500 documents for which Mr. Trejo is a custodian that post-date the closing. As to Mr. Chagoya, SF has produced over 1,000 total documents listing him as a custodian.

B. **SF Cannot Force Messrs. Trejo and Chagoya to Sit for Depositions Because it Does Not Control Them.**

At the outset, the issue of SF producing Messrs. Trejo and Chagoya for depositions was not discussed at any point in the meet-and-confer process leading up to the Motion. Nor has AIC served deposition notices on SF pursuant to Federal Rule of Civil Procedure 30, as AIC admits. (Doc. 296 at 21 n.13.) Thus, this issue is not ripe for a motion to compel.

In any event, AIC has failed to meet – and, indeed, cannot meet – its burden of showing that SF may be compelled to produce these individuals for deposition for three reasons:

*First*, neither Chagoya nor Trejo were ever managing agents of SF. Mr. Chagoya was never a partner at MexCap (Doc. 333-24, Sires Decl., Ex. X ¶¶ 4-5) and Mr. Trejo was an employee of Gayosso.

*Second*, even if that inconvenient fact were to be overlooked, Trejo and Chagoya are no longer affiliated with Gayosso and MexCap, respectively. *Id.* As AIC concedes, "[a]s a general rule, former employees cannot be 'managing agents' of an organization and the organization cannot be compelled to produce them for deposition." *Rundquist v. Vapiano*, 277 F.R.D. 205, 208 (D.D.C. 2011).

*Third*, AIC's reliance on a little-used exception to the general rule is unavailing.[8] (Doc. 297 at 19.) That exception applies "when a corporation terminates an officer in light of pending litigation." *Id.* (quoting *Rundquist*, 277 F.R.D. at 208). AIC offers absolutely no proof that was the case here, where the litigation was not even filed when Trejo was terminated by Gayosso and Chagoya chose to leave for a better opportunity. (Doc. 333-24, Sires Decl., Ex. X ¶¶ 6-9.) Rather, the sum-and-substance of its support for this assertion is that SF "part[ed] ways with both in the month prior to filing this litigation." (Doc. 297 at 23.) That bare assertion is insufficient to meet AIC's burden to invoke this rare exception. *In re Honda American Motor Co., Inc. Dealership Relationships Litigation*, 168 F.R.D. 535, 540 (D. Md. 1996).

Mr. Chagoya was not "terminated" by MexCap, much less by SF. He simply left for a better offer. (Doc. 333-24 Sires Decl., Ex. X ¶¶ 6-9.)) Moreover, since at least June 7, 2023, AIC has been on notice that SF does not control Chagoya, Docs. 297-17, 110-2 at 4, yet waited until now to raise this issue (which it failed to even raise prior to filing the motion).

---

[8] AIC does not cite to any case from this Circuit applying the exception.

Nor was Mr. Trejo terminated by Gayosso so as to "hide" him in this litigation.[9]  Indeed, AIC's assertion that SF somehow controls Trejo is remarkable in view of the evidence uncovered in discovery.  That evidence shows that after SF acquired Gayosso and while Trejo was still employed by Gayosso, Trejo and AIC executives engaged in illicit and furtive communications. (*See*, Docs. 333-21–23, Exs. U-W.)  Those communications included Trejo sending SF's confidential information to the AIC executives using private email addresses and meeting in person and electronically with AIC's executives.  The communications even involved Trejo advising AIC's executives of SF's litigation plans.  If a party here controls Trejo, it is AIC.  In any event, SF cannot be made to produce Trejo (putting aside he was never its employee) because the "paramount test is whether the individual can be expected to identify with the corporation's interest as opposed to an adversary's."  *Honda*, 168 F.R.D. at 542.  That is clearly not the case here, where Trejo engaged in corporate espionage with AIC's executives (and, for all SF knows, has continued to do so).

## CONCLUSION

For the foregoing reasons, the Court should deny AIC's Motion.

Dated: April 19, 2024                                                   Respectfully submitted,

**LESSER, NEWMAN, ALEO & NASSER LLP**            **BOIES SCHILLER FLEXNER LLP**
  Michael Aleo
  Thomas Lesser                                                        /s/  Carlos M. Sires
  39 Main Street, Suite 1                                              David Boies
  Northampton, MA  01060                                               Brooke A. Alexander
  Telephone: (413) 584-7331                                            333 Main Street
  Facsimile:  (413) 586-7076                                           Armonk, NY  10504
  aleo@LLN-law.com                                                     Telephone: (914) 749-8200
  lesser@LLN.law.com                                                   Facsimile:  (914) 749-8300
                                                                       dboies@bsfllp.com
  *Counsel for Plaintiff / Counter-Defendant,*                         balexander@bsfllp.com
  *SF GG, S.A. de C.V.*

---

[9] In fact, SF joined AIC in requesting Letters Rogatory directed to Trejo.  (Doc. 49-1.)

Carlos M. Sires
Ana Carolina Varela
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
csires@bsfllp.com

*Counsel for Plaintiff / Counter-Defendant, SF GG, S.A. de C.V.*

## CERTIFICATE OF SERVICE

I, Carlos Sires, hereby certify that the above was filed through the ECF system and that I have caused a true and correct copy of the above to be served on Plaintiff's counsel.

Date: April 19, 2024                              By: */s/ Carlos M. Sires*
                                                              Carlos M. Sires

15