UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 23-10684-IT |
| ADVENT INTERNATIONAL CORPORATION, | ) ) ) ) ) |
| Defendant. | ) ) ) |

ORDER ON AIC'S MOTION FOR A PROTECTIVE ORDER
PRECLUDING THE DEPOSITION OF JUAN PABLO ZUCCHINI
[Docket No. 284]

July 5, 2024

Boal, M.J.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Defendant Advent International Corporation ("AIC") has moved for a protective order precluding the deposition of Juan Pablo Zucchini. Docket No. 284.[1] This Court heard oral argument on June 12, 2024. For the following reasons, this Court grants the motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

   A.   The Parties' Allegations

In January 2021, SF purchased Grupo Gayosso, S.A. de C.V. ("Gayosso") for $224.7 million from affiliates of AIC-managed funds. See Complaint at ¶¶ 7-10. Founded in Mexico City in 1875, Gayosso is Mexico's oldest, active funeral-services company. Id. at ¶ 6. SF

---

[1] On April 3, 2024, Judge Talwani referred this motion to the undersigned. Docket No. 309.

alleges that AIC fraudulently induced SF to purchase Gayosso by misrepresenting the true financial condition of Gayosso.  See generally id. at ¶¶ 1, 11-33.  Among other things, AIC allegedly deleted liabilities from the company's financial statements, manipulated invoices for accounts payable, understated the cost of sales, concealed transferred assets, and omitted contractual and regulatory liabilities from the financial statements.  See id.

AIC alleges, on the other hand, that soon after SF acquired Gayosso, it began a campaign to extort AIC by asserting meritless civil and criminal claims.  First, SF sued AIC and its affiliates in Mexican civil court and sought to freeze hundreds of millions of dollars in assets owned by unrelated AIC-managed funds.  Counterclaims at ¶ 152.  When Mexican civil courts denied this relief, SF turned to the criminal courts, where it obtained improper arrest warrants targeting current and former AIC affiliate employees, as well as the same asset embargoes the civil courts had rejected.  See id. at ¶¶ 180, 182, 185, 187, 196, 208.

According to AIC, SF was able to secure these illegitimate criminal orders by retaining the services of Mexican criminal counsel, Garcia Gonzalez y Barradas Abogados ("GGB"), a firm that is notorious for its corrupt abuse of the Mexican criminal justice system.  Id. at ¶¶ 54-57.  AIC maintains that this action was SF's latest attempt in its extortion campaign.  See id. at ¶¶ 216-218.

B.   Juan Pablo Zucchini

Juan Pablo Zucchini is the co-head of Advent's Latin American operations.  Docket No. 285 at 4.  In that capacity, Mr. Zucchini manages the execution of Advent's investment strategy across Latin America, advising on the operation of several multibillion-dollar private equity funds.  Id.  In addition, he is the Managing Partner of AIC's affiliate in Brazil.  Id. at 5.

According to AIC, none of those roles caused Mr. Zucchini to furnish any financial information to SF. Id. Rather, the sale of Gayosso to SF was negotiated on behalf of the seller by a three-person deal team composed of then-Advent Mexico employees Carlos Peña Vasquez, Enrique Pani Bano, and Veronica Stenner (collectively, the "Deal Team"), supported by a fourth Advent Mexico employee, Carlos Alfredo Paz Perez. Id. The Deal Team and Mr. Paz, along with outside transaction counsel, conducted the entirety of the negotiations and due diligence process for the sale. Id. While Advent's Latin American Investment Advisory Committee, of which Mr. Zucchini is a member, recommended the transaction to the Latin American Investment Committee, such recommendation was based exclusively on the summary information provided by the Deal Team. See id. at 6.

According to SF, however, Mr. Zucchini has personal knowledge about communications that he personally had with agents or principals of SF after AIC sold Gayosso to SF in January 2021. Docket No. 305 at 3.[2] In addition, per SF, Gayosso's then-CFO, Octavio Trejo, who had worked for Gayosso when AIC still owned the company and who continued to work for Gayosso after the sale, was surreptitiously in communication with several high-level AIC employees, including with members of the Deal Team that negotiated the sale of Gayosso for AIC. Id. SF argues that it would be "reasonable to infer" that Mr. Zucchini would have knowledge of "these secret communications with Mr. Trejo" and "the larger context surrounding these communications with Mr. Trejo, including planning in advance of the communications with Trejo and the substance of the communications that members of the AIC Deal Team had with Mr. Trejo." Id. "Mr. Zucchini's position at AIC establishes that fact." Docket No. 305 at 1.

---

[2] According to AIC, these communications were preliminary discussions concerning SF's interest in settling its claims (beginning in January 2022, after SF sent AIC a demand letter in November 2021). Docket No. 316 at 3.

II.      DISCUSSION

      A.  Standard of Review

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)). To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case". Fed. R. Civ. P. 26(b)(1). Factors that must be considered in weighing proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. Information within the scope of discovery need not be admissible in evidence to be discoverable. Id.

In general, "[a] party may, by oral questions, depose any person, including a party, without leave of court . . ." Fed. R. Civ. P. 30. Rule 26(c) of the Federal Rules of Civil Procedure limits this generally broad access to witnesses during the discovery process. Fed. R. Civ. P. 26(c) (providing for the issuance of a protective order to avoid "undue burden" on the deponent).

Specifically, Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1). Rule 26 "confers broad

discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co v. Rhinehart, 467 U.S. 20, 36 (1984).

Although courts are loath to preclude parties from deposing prospective witnesses, special considerations arise when a party attempts to depose high-level corporate executives. Such "[h]ighly-placed executives are not immune from discovery." Koninklijke Philips Elec. N.V. v. ZOLL Med. Corp., No. 10-11041-NMG, 2013 WL 1833010, at *1 (D. Mass. Apr. 30, 2013) (citation omitted). Courts, however, have acknowledged that precluding or conditionally deferring the depositions of such executives may be appropriate where they lack specific and unique knowledge related to the suit. Id.; see also B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters, 285 F.R.D. 185, 186 (D.P.R. 2012) (granting protective order prohibiting deposition of executive where he filed affidavit attesting to his lack of knowledge regarding the discovery sought); Consol. Rail Corp. v. Primary Indus. Corp., No. 92 Civ. 4924(PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (deferring executive depositions until other witnesses were deposed, but contemplating that such depositions could be conducted upon a showing that the executives had "some unique knowledge pertinent to the issues in these cases"). Where executives do have such knowledge, and where other avenues of discovery do not provide an adequate substitute, courts have denied protective orders. See Koninklijke Philips, 2013 WL 1833010, at *2 (permitting deposition of executive where discovery from corporate designee did not specifically address the relevant time period at issue, for which executive was alleged to have unique knowledge); Travelers Rental Co. v. Ford Motor Co., 116 F.R.D. 140, 142 (D. Mass. 1987) (permitting depositions of executives, including Ford president, "who approved and/or administered" the actions at issue).

B. <u>SF Has Not Shown That Mr. Zucchini Possesses Specific And Unique Knowledge</u>

Based on the record before this Court, it appears that Mr. Zucchini's involvement in the Gayosso transaction was in his ordinary role as a high-level executive, exercising general supervisory authority over Advent's Latin American operations and serving as one of eight LatAm Advisory Committee members who recommended approval of the Gayosso transaction based on materials prepared by the Deal Team. SF argues that Mr. Zucchini has relevant information about two topics. First, it states that he has personal knowledge about communications he had with agents or principals of SF after AIC sold Gayosso to SF in January 2021. Docket No. 305. However, it appears that such communications with SF were in the context of preliminary settlement discussions; not about the Gayosso transaction itself. <u>See</u> Docket No. 316 at 3.

Second, SF speculates that Mr. Zucchini might have knowledge about communications between Mr. Trejo and high-level AIC executives. Docket No. 305 at 3. SF provides no evidence to support this statement.

After the hearing on this motion, SF sought to provide additional documents that it maintains show that Mr. Zucchini was extensively involved in the Gayosso transaction. <u>See</u> Docket No. 392. Having reviewed those documents, however, this Court finds that they do not show that Mr. Zucchini possesses specific and unique knowledge related to this suit. Accordingly, this Court finds that a protective order preventing SF from taking Mr. Zucchini's deposition is appropriate.

III.	ORDER

For the foregoing reasons, this Court grants AIC's motion for a protective order.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge