UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERVICIOS FUNERARIOS, GG, S.A., DE C.V., <br><br> Plaintiff/Counter-Defendant, <br> v. <br><br> ADVENT INTERNATIONAL CORPORATION, <br><br> Defendant/Counter-Plaintiff. | * <br> * <br> * <br> * <br> *    Civil Action No. 1:23-cv-10684-IT <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

July 23, 2024

TALWANI, D.J.

Plaintiff Servicios Funerarios' Complaint [Doc. No. 1] against Defendant Advent International Corporation alleges fraud in the inducement (Count I), violation of M.G.L. c. 93A (Count II), negligent misrepresentation (Count III), unjust enrichment (Count IV), and violation of the Uniform Fraudulent Transfer Act (Count V). Pending before the court is Defendant's Motion for Judgment on the Pleadings [Doc. No. 233] seeking judgment in its favor on all five counts. Servicios Funerarios opposes the motion. For the reasons set forth herein, the Motion is DENIED.

**I.    Factual Background as Alleged in the Complaint**

    A.    *The Parties and Related Entities*

Gayosso, S.A. de C.V. ("Gayosso") is Mexico's oldest active funeral-services company. Compl. ¶ 6 [Doc. No. 1]. Gayosso provides integrated funeral services, which cover pre-burial, burial, and post-burial services. Id.

Plaintiff Servicios Funerarios ("SF") is a Mexican corporation. Id. ¶ 2. As of January 2021, it is the owner of 99.9% of the shares of Gayosso. Id.

Defendant Advent International Corporation ("AIC" or "Advent") is a U.S. private equity investment company. Id. ¶ 3.

Seven entities (collectively, the "Twibel entities") were special-purpose entities incorporated in Belgium. Id. ¶ 8. The Twibel entities' only purpose was to own Gayosso shares. Id.

The Twibel entities were owned by seven special-purpose entities incorporated in Luxemburg (collectively, the "Twilux entities"). Id. ¶ 9. The Twilux entities' only purpose was to own the Twibel entities. Id. Neither the Twibel nor Twilux entities had their own operative management structure. Id. ¶ 39.

B.   *AIC's Relationship to the Twibel Entities and Gayosso*

Prior to the sale of Gayosso to SF, and for the purpose of the preceding Gayosso acquisition, the Mexican government recognized that AIC and the Twibel entities constituted a single economic interest. Id. ¶ 38. AIC "control[led]" and "manage[d]" both the Twibel and Twilux entities. Id. During the negotiations and execution of the sale and purchase agreement for Gayosso, the Twibel entities took no independent action; the Twibel representative was a lawyer selected by AIC. Id. ¶ 39. As a result of the original Gayosso acquisition, the Twibel entities owned 99.9% of the shares of Gayosso. Id. ¶ 8.

After the Twibel entities purchased Gayosso, AIC installed one of AIC's managing directors, Enrique Pani Bano, as the Chairman of Gayosso's board of directors. Id. ¶ 37. Pani Bano remained an AIC Managing Director during the negotiation and execution of the Gayosso stock sale to SF. Id. ¶ 42. The installation of Pani Bano as head of Gayosso was in line with AIC's publicly stated investment practice, which was to ensure that "[m]embers of Advent's

2

senior management oversee, and are ultimately responsible for, ensuring Advent's approach to Responsible Investment is implemented." Id. ¶ 37.

  C. *The Sale of Gayosso to SF*

    1. The Stock Purchase Agreement

On January 24, 2020, at the direction of AIC, the Twibel entities entered into a Stock Purchase Agreement ("SPA") with SF. Id. ¶ 7; see Decl. of Daniel Ward, Ex. A (Dec. 18, 2020 Stock Purchase Agreement) [Doc. No. 235-1]. The SPA was amended four times: on January 27, 2020; September 30, 2020; December 18, 2020; and January 27, 2021. Compl. ¶ 7 [Doc. No. 1]. The purpose of the SPA was the sale and purchase of Gayosso's capital stock and real estate assets. Id. ¶ 10. The purchase price was $224.7 million. Id.

Section 5 of the SPA was titled "Representations of the Sellers and the Company." SPA at 19 [Doc. No. 235-1]. Under Section 5.1(h), entitled "Ratification, Accuracy and Purpose," the SPA stated that: "Each of the representations that the Sellers make and grant in this Contract and the documentation presented to the other Parties to this Contract, which is attached thereto, is true and complete and does not contain false or incorrect data." Id. at 24; see Compl. ¶ 11 [Doc. No. 1]. Gayosso's audited financial statement for 2019 and unaudited financial statement for 2020 were among the "documentation submitted" with the final version of the SPA. Id. ¶ 12. Information contained in Gayosso's audited financial statements for 2016, 2017, and 2018 was included in an amendment to the final version of the SPA, and the statements themselves had been previously attached to earlier versions of the SPA. Id.

Section 5.2 of the SPA, entitled "Representations of the Company," provided a list of representations regarding Gayosso. These representations included that Gayosso complied with various applicable legislation; that Gayosso had provided a list of its outstanding liabilities in the

SPA; that Gayosso's tax returns were true and accurate; that Gayosso had provided a list of its real estate assets in the SPA; that Gayosso's real estate assets were unencumbered; and that Gayosso's representations were true and accurate. Id. ¶ 13(a)–(l). Section 5.2 contained a representation that each of AIC's subsidiaries (presumably including the Twibel entities) "did not intend to file a voluntary declaration of dissolution, liquidation . . . or commercial insolvency." Id. ¶ 13(k). The transaction closed in January 2021. Id. ¶ 10.

    2.  AIC Personnel Involved in Negotiating and Executing the SPA

The SPA was negotiated and executed on the Sellers' side by Pani Bano, the AIC managing director installed by AIC as the Chairman of Gayosso's Board, and Carlos Alfredo Paz Perez, a Senior Director and co-head of Portfolio Support Group, Latin America, for Advent International PE Advisors ("Advent Advisors"). Id. ¶ 43. Advent Advisors is an agent of AIC. Id. The sale was overseen by James Westra, who was at the time the General Counsel and Managing Partner of AIC, based in Boston. Id. ¶ 44. A committee of additional AIC employees and representatives also assisted in overseeing the Gayosso sale. Id. ¶ 45. Veronica Stenner, an "agent, representative, or employee" of AIC, was responsible for placing Gayosso's financial statements and other documentation related to Gayosso's financial condition in a virtual data room. Id. ¶ 15.

    D.  *Gayosso's Financial Situation*

SF alleges that the financial representations made in the SPA did not reflect the reality of Gayosso's financial situation. Specifically, AIC depressed the costs associated with certain of Gayosso's contracts by (a) deleting invoices from the financial statements, id. ¶ 21, and (b) reporting only a portion of the true costs associated with the sale of "Pre-Need" contracts, which were paid for in advance of a person's death, id. ¶¶ 25–26. SF also alleges that Gayosso

misrepresented the cost of purchasing caskets in its financial statements, id. ¶ 29, and failed to disclose liabilities associated with grave construction and other burial-related construction projects, id. ¶¶ 30, 32–33. Finally, SF alleges that Gayosso failed to disclose that under an existing contract it had with a Mexican government agency for which payment was rendered in 1982, it was obligated to reserve 400,000 square meters of real estate for pre-purchased burial plots and to provide burial services. Id. ¶ 31.

      E.     *AIC Dissolves the Twibel Entities*

After the transaction had concluded, AIC dissolved the Twibel entities. Id. ¶ 40. As a result, the proceeds of the Gayosso sale were moved upstream to other investment funds managed by AIC and to AIC itself. Id.

**II.    Standard of Review**

Where "a motion for judgment on the pleadings 'is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss.'" Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012).

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009). In addition, "an adequate complaint must include not only a plausible claim but also a plausible defendant." See Peñalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

When a plaintiff brings claims sounding in fraud, there is an exception to Rule 12(b)(6)'s general plausibility pleading standard. See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (holding that the particularity requirement applies not only to actual fraud claims but also to "associated claims where the core allegations effectively charge fraud"). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a party must state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires that a plaintiff's averments of fraud specifically plead the time, place, and content of the alleged false representation. Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 (1st Cir. 2017). The purpose of this requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).

The First Circuit has interpreted this rule to require that beyond pleading "the false statements and by whom they were made," a plaintiff must also identify "the basis for inferring scienter." N. Am. Catholic Educ. Programming Found, 567 F.3d at 13. In application, this renders a "general averment of the defendant's 'knowledge' of material falsity" insufficient. Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992), superseded by statute on other grounds by, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737). Instead, plaintiffs must put forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Id.

### III. Discussion

#### A. *The Court Will Consider AIC's Motion Despite Extensive Discovery*

SF objects to AIC's motion on the pleadings given the discovery that has already occurred. As the First Circuit has explained, logic strongly suggests that the plausibility inquiry occur prior to discovery, and that it makes little sense to "ignore[] the entire panoply of facts developed during discovery." Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 46 (1st Cir. 2012). Thus "once the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement." Id.

At the same time, Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The court's scheduling order also allowed the motion to be filed post-discovery, see Amended Scheduling Order [Doc. No. 254], and no trial date has been set.

Where neither party has pointed to additional facts in the record that the motion ignores, the court will consider the motion for judgment on the pleadings on its merits.

#### B. *The Complaint Adequately Alleges that AIC Exercised Direct Control Over Gayosso and the Twibel Entities*

AIC contends that SF has failed to allege sufficient facts that show AIC, rather than Gayosso and/or the Twibel entities, made the allegedly false statements in the SPA, and that SF has not attempted to pierce the corporate veil in order to hold AIC liable for statements made by its subsidiaries. As a result, says AIC, SF's claims for fraud in the inducement (Count I), chapter

93A violations (Count II), and negligent misrepresentation (Count III)[1] must all fail. SF responds that its Complaint alleges AIC was directly responsible for the statements made in the SPA because AIC, and AIC alone, directed and controlled the Twibel entities and Gayosso. The court finds that SF has adequately alleged facts that could support a finding that AIC exercised direct control over the statements made in the SPA.

The Complaint states that the Twibel entities were owned and controlled by AIC, had no independent board of directors or other management structure, and existed only to hold Gayosso shares of stock. When the Twibel entities purchased Gayosso, AIC provided a representative for the transaction; indeed, AIC and the Twibel entities were so closely intertwined that the Mexican government recognized them as one common economic interest for the purposes of the transaction. The Complaint also alleges that once Gayosso was acquired, AIC appointed one of its own Managing Directors as the Chairman of Gayosso's Board. And AIC's General Counsel, James Westra, along with a team of Boston-based AIC personnel, were responsible for handling negotiations with SF regarding the Gayosso sale. Representatives from AIC Advisors, an organization SF alleges is an agent of AIC, also participated in negotiations; one of those employees, Veronica Stenner, was responsible for transferring the allegedly fraudulent financial statements into a virtual data room. SF sufficiently alleges that AIC itself was responsible for the statements made in the SPA, where AIC had substantial (if not total) control over the Twibel entities and Gayosso itself.

---

[1] AIC also argues that SF cannot rely on "extracontractual" statements as a basis for its negligent misrepresentation claim. Mem. ISO Mot. 20 [Doc. No. 234]. The court does not read SF's Complaint [Doc. No. 1] to rely on statements made outside of the SPA or its appendices and attachments. As a result, the court need not address whether the SPA's merger clause precludes a negligent misrepresentation claim.

      C.    *The Complaint Satisfies Rule 9's Particularity Requirements*

The Complaint adequately alleges the "who, what, where, and when of the allegedly false or fraudulent representation[s]." See Rodi v. Southern New England School of Law, 389 F.3d 5, 15 (1st Cir. 2004) (citation omitted). It points to the provisions of the SPA that were allegedly fraudulent or misleading and provides additional details regarding the facts that SF contends made those statements false or misleading. See supra Sections I.C.1, I.D.

AIC is incorrect that Rule 9 holds plaintiffs to a heightened pleading standard for the knowledge and intent elements of fraud. Rather, those elements "may be averred in general terms." Rodi, 389 F.3d at 15. The Complaint satisfies this requirement where it alleges that AIC took a "hands-on approach" to running Gayosso and names specific AIC employees and agents who were actively involved in the deal with SF. See Nat'l Credit Union Admin. v. Ticor Title Ins. Co., 873 F. Supp. 718, 726 (D. Mass. 1995) ("The general rule under Massachusetts law is that the knowledge of directors, officers and agents acquired in the course of official duties is imputed to the corporation.") (citing Sperry Rand Corp. v. Hill, 356 F.2d 181, 186 (1st Cir. 1966)).

      D.    *The Complaint Adequately Alleges a Fraudulent Transfer*

AIC argues that SF has failed to allege a fraudulent transfer in violation of the Uniform Fraudulent Transfer Act (Count V) because there was no "resulting diminution in the assets available to the creditor" where a Guarantee protected SF against any losses. Mem. ISO Mot. 21 [Doc. No. 234]. But the Complaint makes no mention of a Guarantee; the Guarantee is referenced in AIC's Counterclaim [Doc. No. 14], not SF's Complaint.

AIC next argues that SF has not demonstrated that AIC acted with the requisite intent to "hinder, delay, or defraud" in transferring the proceeds of the sale from the Twibel entities to

9

itself. Mem. ISO Mot. 22 [Doc. No. 234]. The question of AIC's actual intent is a fact question that is inappropriate for resolution at the pleadings stage. And where SF pleads that AIC concealed Gayosso's true financial condition in order to effectuate Gayosso's sale from the Twibel entities to SF, at which point AIC dissolved the Twibel entities and subsequently transferred the proceeds of that sale upstream to AIC for little to no equivalent value, SF sufficiently alleges that AIC acted with the intent to defraud SF. As a result, AIC's motion is denied as to SF's fraudulent transfer claim.

### E.    *SF May Plead Unjust Enrichment in the Alternative*

AIC's attack on SF's unjust enrichment claim (Count IV) is premature. "[P]laintiffs may plead alternative theories of recovery, even though those theories are mutually exclusive." SalioGen Therapeutics, Inc. v. DNA TwoPointO Inc., 2022 WL 20138601, at *8 (D. Mass. March 25, 2022); accord SiOnyx, LLC v. Hamamatsu Photonics K.K., 332 F. Supp. 3d 446, 473 (D. Mass. 2018) (collecting cases). If the court determines that SF has an adequate remedy at law, then AIC is correct that SF may not also recover under a theory of unjust enrichment. But where SF has adequately pled that AIC committed fraud against it and was enriched by that fraud, it may continue under an unjust enrichment theory at this stage. Cf. SiOnyx, LLC, 332 F. Supp. 3d at 473 (dismissing unjust enrichment claim at summary judgment where parties agreed that contract was valid, enforceable, and covered the dispute).

## IV.    Conclusion

For the foregoing reasons, AIC's Motion for Judgment on the Pleadings is DENIED.

IT IS SO ORDERED

July 23, 2024                                        /s/      Indira Talwani
                                                            United States District Judge