# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Plaintiff, | |
| v. | |
| ADVENT INTERNATIONAL CORPORATION, | |
| Defendant, | |
| and | Civil Action No. 23-cv-10684-IT |
| ADVENT INTERNATIONAL CORPORATION, | |
| Counterclaim - Plaintiff, | |
| v. | |
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Counterclaim-Defendant. | |

## DEFENDANT AND COUNTERCLAIM-PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL SF TO DE-DESIGNATE AND RE-REVIEW DOCUMENTS DESIGNATED AS "HIGHLY CONFIDENTIAL"

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT .................................................................................................................... 5

I.      SF'S HIGHLY CONFIDENTIAL DESIGNATIONS ARE FACIALLY
        IMPROPER ........................................................................................................... 5

        A.      There Is Nothing "Small" and "Select" About 28,000 Blanket
                Designations ............................................................................................. 5

        B.      There is No Genuine Threat of Injury Dictating Extreme Measures .......... 8

II.     SF'S HIGHLY CONFIDENTIAL DESIGNATIONS RESTRICT CORE
        CATEGORIES OF DOCUMENTS PREVENTING AIC FROM PREPARING
        ITS DEFENSES AND PROSECUTING ITS COUNTERCLAIMS .............................. 10

                1.      Documents Concerning ███████████████
                        ████████████████████ ........................................... 11

                2.      Due Diligence and Valuation of Gayosso ................................. 13

                3.      Gayosso's Accounting and Financials ....................................... 15

                4.      Documents Related to Mr. Trejo's Departure ............................ 16

                5.      Documents Concerning the ISSSTE Contract and ███ ............ 16

III.    SF BEARS THE BURDEN OF RE-REVIEWING ITS IMPROPER HIGHLY
        CONFIDENTIAL DESIGNATIONS ......................................................................... 17

CONCLUSION ................................................................................................................. 18

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*ACT, Inc. v. Worldwide Interactive Network, Inc.*,
2019 WL 5865623 (E.D. Tenn. Nov. 8, 2019) ....................................................................14

*Alarmax Distrib., Inc. v. Honeywell Int'l Inc.*,
2015 WL 11112432 (W.D. Pa. Oct. 28, 2015), *aff'd*, 2015 WL 12756857
(W.D. Pa. Nov. 24, 2015) ....................................................................................................11

*In re: Aqua Dots Prods. Liab. Litig.*,
2009 WL 1766776 (N.D. Ill. June 23, 2009) ....................................................................5, 9

*Campbell v. Universal City Dev. Partners, Ltd.*,
2024 WL 1095938 (M.D. Fla. Mar. 13, 2024) .................................................................5, 17

*Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*,
133 F. Supp. 3d 1079 (N.D. Ill. 2015) .......................................................................4, 5, 10

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
593 F. Supp. 2d 298 (D. Mass. 2009) .................................................................................4

*Healthtrio, LLC v. Aetna, Inc.*,
2014 WL 6886923 (D. Colo. Dec. 5, 2014) ......................................................................17

*Iconics, Inc. v. Massaro*,
266 F. Supp. 3d 449 (D. Mass. 2017) ................................................................................13

*Impact CNC, LLC v. Dep't of Homeland Sec.*,
2019 WL 3410058 (N.D. Ind. July 29, 2019) ....................................................................13

*Jackson v. Nassau Cty.*,
2021 WL 2525397 (E.D.N.Y. June 19, 2021) .....................................................................5

*Lobster 207, LLC v. Pettegrow*,
2022 WL 3106212 (D. Me. Aug. 4, 2022) .............................................................10, 14, 17

*Medtronic Sofamor Danek, Inc. v. Michelson*,
2002 WL 33003691 (W.D. Tenn. Jan. 30, 2002)....................................................10, 15

*Miller v. City of Boston*,
549 F. Supp. 2d 140 (D. Mass. 2008)...................................................................................4

*Minter v. Wells Fargo Bank, N.A.*,
2010 WL 5418910 (D. Md. Dec. 23, 2010)..........................................................................5

*Paradigm All. v. Celeritas Techs., LLC*,
 248 F.R.D. 598 (D. Kan. 2008)........................................................................5, 18

*Ragland v. Blue Cross Blue Shield of N.D.*,
 2013 WL 3776495 (D.N.D. June 25, 2013) .................................................12, 16

*Roy v. FedEx Ground Package Sys., Inc.*,
 2023 WL 4186291 (D. Mass. June 26, 2023) .......................................................9

*Saint-Gobain Performance Plastics Corp. v. Adv. Flexible Composites, Inc.*,
 2006 WL 8458669 (D. Mass. Oct. 17, 2006) .......................................................7

*Servicios Funerarios GG, S.A. De C.V. v. Advent Int'l Corp.*,
 2024 WL 2962664 (D. Mass. June 12, 2024) .......................................................4

*Standard Space Platforms Corp. v. United States*,
 35 Fed. Cl. 505 (Fed. Cl. 1996) .........................................................................11

*Storagecraft Tech. Corp. v. Persistent Telecom Sols., Inc.*,
 2016 WL 6988819 (D. Utah Nov. 29, 2016) .....................................................17

## Other Authorities

Fed. R. Civ. P. 26(c)...........................................................................................4

Pursuant to the Amended Protective Order, Doc. No. 267 ("Protective Order"), Defendant and Counterclaim-Plaintiff Advent International Corporation, n/k/a Advent International, L.P. ("AIC") respectfully requests an order that Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V. ("SF") de-designate documents it improperly designated "Highly Confidential.".

## PRELIMINARY STATEMENT

SF has improperly designated as Highly Confidential tens of thousands of documents.  As the Court previously admonished SF in compelling it to de-designate other Highly Confidential documents, a "[Highly Confidential] designation should 'only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures.'"  June 12 Re-Designation Order, Doc. No. 387, at 2 (citation omitted).  SF's designations meet neither requirement.  As of its August 12, 2024 production of documents, SF had designated as Highly Confidential nearly **35,000** documents.  Weeks after AIC challenged SF's designations, SF represented that it would downgrade to Confidential or de-designate entirely only a quarter of those documents.  It ultimately downgraded or de-designated even less than that— 8,000 documents—leaving roughly **28,000** documents designated Highly Confidential.  There is nothing "small" or "select" about SF's list of 28,000 documents.  And SF has failed to identify any injury, let alone a "clearly defined and serious" one, justifying its designations.

SF's Highly Confidential designations are improperly preventing AIC from preparing its defenses and prosecuting its counterclaims.  SF has designated as Highly Confidential categories of documents that go to the very core of its allegations, including documents concerning the diligence and valuation of Gayosso and Gayosso's accounting.  In fact, SF has even designated as Highly Confidential ███████████████████████████████████████████████████ ████████████████████████████████████.  SF has not even attempted to explain how

1

disclosure of these or other Highly Confidential documents to a small group of AIC employees would lead to *any* injury, let alone one that would justify preventing AIC's counsel from having AIC's input as it prepares AIC's case.  The Court should order that SF immediately downgrade to Confidential all documents relating to the core allegations in this case.

SF bears the burden of re-reviewing its improper Highly Confidential designations.  To mitigate the ongoing prejudice to AIC, within one week of its order, the Court should require that SF conduct a re-review of all remaining documents it has designated Highly Confidential and downgrade them consistent with the Court's ruling.  Further, given SF's gross failure to regulate itself, the Court should order that the week following, SF provide AIC with a log explaining the basis for any documents SF persists in designating Highly Confidential.

## BACKGROUND

The Protective Order provides the parties the ability to designate documents they produce as "Confidential Information" or "Highly Confidential Information."  Protective Order § 2(v) & (vi).  "Confidential Information" includes "sensitive business, financial, or commercial information," and may generally be disclosed only to the Court, the parties, their counsel, and necessary support persons.[1]  *Id.* §§ 2(v), 4.  "Highly Confidential Information" is a more narrow and sensitive subset of "Confidential Information" limited to (i) "any trade secret;" or (ii) "any proprietary, business, competitively sensitive, research, technical, commercial, financial, or other information that would not be adequately protected under the procedures set forth . . . for 'Confidential Information.'"  *Id.* § 2(vi).  A "Highly Confidential" designation more restrictively precludes disclosure of the information in question to the parties themselves or to the parties' non-

---

[1] SF may disclose information designated "Confidential" to its Mexico-based outside counsel only if those counsel subject themselves to the jurisdiction of the Court, and SF is required to keep a log of Confidential documents disclosed to that counsel.  Protective Order § 4(ii).

U.S.-based counsel.  *Id.* §§ 4, 5.  "[T]he protection [the Protective Order] affords from public disclosure extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles."  *Id.* § 1; *see also id.* § 3(i) & (ii).

On March 1, 2024, AIC moved the Court to compel SF to downgrade its designation of its engagement letter with its Mexican criminal counsel and corresponding legal invoices from "Highly Confidential" to "Confidential."  On June 12, the Court granted AIC's motion and admonished SF that Highly Confidential designations "should 'only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures.'"  June 12 Re-Designation Order, Doc. No. 387, at 2 (citation omitted).

As of its August 12, 2024 production, SF's counsel had designated as Highly Confidential nearly 35,000 documents.  On August 21, 2024, AIC requested that SF downgrade the vast majority of those documents based on a review demonstrating that the designations were largely unsupportable.  Three weeks later, on September 13, 2024, SF finally responded, asserting that it would downgrade only 9,000 documents to either Confidential or no designation at all.  SF contended that the documents for which it maintained a Highly Confidential designation relate to four categories of information, mirroring SF's core allegations in this case:  (1) "[p]re-acquisition MexCap/ExeFin deal and due diligence documents and communications;" (2) "[p]ost-acquisition Gayosso financial and operations documents and related communications;" (3) "[p]ost-acquisition Communications with third party financiers and banks;" and (4) "[p]ost-acquisition audits and related communications."  SF claimed that "disclosure of those documents to potential competitors and owners thereof, including AIC, poses a genuine threat of competitive and financial injury," but did not specify how or why that injury would come to pass.  On September 16 and 20, SF provided an overlay that reflected a downgrade of only 8,000 documents, even fewer than that

9,000 SF had originally promised to de-designate.  Taking into account its de-designations, SF has designated approximately 28,000 documents as Highly Confidential.[2] ███████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

████████████████████

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c), a party may shield discoverable material from disclosure pursuant to a protective order **only upon a showing of good cause**.  *See*, *e.g.*, *Haemonetics Corp. v. Baxter Healthcare Corp.*, 593 F. Supp. 2d 298, 301 (D. Mass. 2009); *Servicios Funerarios GG, S.A. De C.V. v. Advent Int'l Corp.*, 2024 WL 2962664, at *1 (D. Mass. June 12, 2024) (quoting *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) ("[O]nce a protective order has been entered, the party seeking to protect documents under its shield must continue to show good cause for confidentiality when challenged." (internal quotation marks omitted)).

"A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."  *Miller v. City of Boston*, 549 F. Supp. 2d 140, 141–42 (D. Mass. 2008) (finding good cause under Rule 26(c) to allow limited modification of a protective order to release redacted versions of documents).  Rule 26(c) is "particularly exacting with regard to confidential business information," requiring "specific demonstrations of fact, supported where

---

[2]   By way of comparison, AIC has designated around 1700 documents as Highly Confidential, among them irrelevant and evidently propriety information, including investor information, information related to portfolio companies not at issue in this litigation, and fund structures.

possible by affidavits and concrete examples, demonstrating that disclosure will result in clearly

defined and very serious injury to its competitive and financial position." *Minter v. Wells Fargo

Bank, N.A.*, 2010 WL 5418910, at *9 (D. Md. Dec. 23, 2010) (internal quotation marks omitted);

*see In re: Aqua Dots Prods. Liab. Litig.*, 2009 WL 1766776, at *1, 4 (N.D. Ill. June 23, 2009)

(designating party must show that disclosure will result in a "clearly defined and serious injury"

by pointing to "specific demonstrations of fact.").

**ARGUMENT**

**I.    SF'S HIGHLY CONFIDENTIAL DESIGNATIONS ARE FACIALLY IMPROPER**

A "[Highly Confidential] designation should 'only be used on [i] a relatively small and

select number of documents [ii] where a genuine threat of competitive or other injury dictates such

extreme measures.'"  June 12 Re-Designation Order, Doc. No. 387, at 2 (quoting *Glob. Material

Techs.*, 133 F. Supp. 3d at 1084).  SF's designations meet neither element.

**A.    There Is Nothing "Small" and "Select" About 28,000 Blanket Designations**

"[A] blanket confidentiality designation is generally found not to be made in good faith."

*Jackson v. Nassau Cty.*, 2021 WL 2525397, at *5 (E.D.N.Y. June 19, 2021) (citation omitted);

*Campbell v. Universal City Dev. Partners, Ltd.*, 2024 WL 1095938, at *3 (M.D. Fla. Mar. 13,

2024) (asserting that "the wholesale designation of 'Highly Confidential' materials . . . was not

made in good faith."); *Paradigm All. v. Celeritas Techs., LLC*, 248 F.R.D. 598, 605 (D. Kan. 2008)

(ordering re-review of designations because "[t]he duty of good faith in the protective order is a

duty to review the documents in good faith *before* designating them as AEO" and Celeritas' AEO

designations included "(1) blank pieces of paper, (2) directions to Celeritas' office, and (3) emails

prepared by Paradigm employees.").  Even a cursory review of SF's production, including the

documents SF recently de-designated, confirms that SF engaged in improper blanket designations.

5

***WhatsApp Messages.***   SF has designated as Highly Confidential many WhatsApp messages, regardless of whether they contain any protectable information.   One such message contains no information other than the following GIF:



*See* Declaration of Gabriel F. Soledad ("Soledad Decl."), Ex. 2 (GSO-02409459).   Others only contained pictures of trees (Soledad Decl., Exs. 3 & 4 (GSO-02559849 & GSO-02559850)).   Although some of those have been de-designated since AIC complained, they illustrate the insufficiency of SF's review—and indeed SF has similarly retained the Highly Confidential designation on other plainly non-confidential documents, such as ███████████████████ ███████████████████████████ (Soledad Decl., Ex. 25 (GSO-02300738)).   There is plainly no justifiable basis to have designated such documents as Highly Confidential.   That they ever were designated Highly Confidential shows the inadequacy of SF's blanket approach to applying Highly Confidential designations.

***Documents From or Shared With AIC Affiliates.***   SF has designated as Highly Confidential documents generated by or previously shared with AIC affiliates.   For example, SF has so designated drafts and final versions of ███████████████████████ that

AIC affiliates previously received[3] and the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see, e.g.,* Soledad Decl., Ex. 10 (GSO-02454847).  These documents also include memoranda and analyses previously shared with employees of AIC's Mexico-based affiliate, such as ▮▮▮▮▮▮▮▮s ▮▮▮▮▮▮▮▮▮▮▮ (Soledad Decl., Ex. 11 (GSO-02444422)), ▮▮▮▮▮▮▮▮▮▮ Soledad  Decl.,  Ex.  12  (GSO-02660201)),  and ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ *see*, *e.g.,* Soledad Decl., Ex. 17 (GSO-02656040)).   Incredibly, this includes memoranda and analysis ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮  *See* Soledad Decl., Ex. 19 & 20 (GSO-02657804 & GSO-02657805); *see also* Soledad Decl., Ex. 21 (GSO-02657792) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).  There  is  no  cognizable  basis  for  the  continued  designation  of  such  documents  as  Highly Confidential.



**Public Documents.**  SF has improperly designated publicly available documents as Highly Confidential, which the Protective Order expressly prohibits.  *See* Protective Order § 2(vi) (information is not "Highly Confidential" if it is "disclosed in a publicly available printed publication [or] is known or is accessible to the public"); *see also Saint-Gobain Performance Plastics Corp. v. Adv. Flexible Composites, Inc.,* 2006 WL 8458669, at *5 (D. Mass. Oct. 17, 2006) ("The Court finds it difficult to understand how a party could, in good faith, consider published brochures or publicly available patent file histories to be 'things of a proprietary business or technical nature' warranting 'Highly Restrictive - Attorneys' Eyes Only.'").  These include

---

[3]   Examples of transaction documents SF designated Highly Confidential include ▮▮▮▮▮▮▮t (Soledad Decl., Ex. 26 (GSO-02657046)), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Soledad Decl., Exs. 6 & 7 (GSO-02669325 & GSO-02669329), ▮▮▮▮▮▮▮ SPA (Soledad Decl., Exs. 50, 54 & 55 (GSO-01664588, GSO-02453678 & GSO-01664606)).



.[4]  *See, e.g.*, Soledad Decl., Exs. 23 & 24 (GSO-02615012 & GSO-02615094) (███████████████), Ex. 27 (GSO-02615129) (███████, Ex. 28 (GSO-02615132) (███████████████.  And they even include documents from governmental authorities to which there is a *public right of access*.  For example, Exhibit 29 (GSO-01576875) ███████████

███████████████████████████████

███████████████████████████████

███████████ There is no reasonable basis for the continued designation of such documents as Highly Confidential.

    *Meeting Invites and Transmittal Emails.*  SF has improperly designated as Highly Confidential meeting invites and transmittal or scheduling emails that do not contain any remotely confidential information.[5]  There is no basis to maintain a Highly Confidential designation for such documents.

### B.    There is No Genuine Threat of Injury Dictating Extreme Measures

    "Pursuant to the terms of the Protective Order, the burden is on SF as the producing party to prove that the designated information is 'Highly Confidential.'"  June 12 Re-Designation Order, Doc. No. 387, at 2 (citing PO ¶ 3(vii)).  SF's burden is an onerous one.  "To make [the required] showing, [SF] must establish 'that disclosure will result in a 'clearly defined and serious injury,'

---

[4]   SF had previously designated as Highly Confidential AIC's public filings in this action.  *See* Soledad Decl., Exs. 1 & 5 (GSO-02323076 & GSO-02323010) (AIC's Answer and Counterclaims).

[5]   A representative sample of meeting invites SF designated as Highly Confidential are attached as Exhibits 38 to 49 to the Soledad Declaration and a representative sample of transmittal emails SF designated as Highly Confidential are attached as Exhibits 30 to 37 to the Soledad Declaration.

by pointing to 'specific demonstrations of fact.'" *Id.* (citation omitted).[6]  And "[t]he 'harm must

be significant, not mere trifle.'" *Id.*  Moreover, "[c]onclusory statements are not sufficient to meet

that burden." *Id.*  Where a party asserts only "unsubstantiated allegations of nonspecific harm,"

such claims "[do] not satisfy the good cause standard." *Roy v. FedEx Ground Package Sys., Inc.*,

2023 WL 4186291, at *3 (D. Mass. June 26, 2023) (denying motion to maintain documents under

seal).

    SF has failed to identify any injury, let alone a "clearly defined and serious" one, that it

would face were AIC given access to the below categories of documents.  Instead, SF vaguely

asserts, without more, that 28,000 of its documents are "competitively sensitive" such that their

"disclosure . . . to potential competitors and owners thereof, including AIC, poses a genuine threat

of competitive and financial injury" to SF.  But that is precisely the kind of "conclusory statement"

that is insufficient to meet SF's burden.  Indeed, SF's admission that it is protecting against a

"potential" injury is dispositive. *See In re: Aqua Dots Prods. Liab. Litig.*, 2009 WL 1766776, at

*1, *4 (designating party must show that disclosure will result in a "clearly defined and serious

injury" by pointing to "specific demonstrations of fact").  That is especially so where, as here, SF

is attempting to justify sweeping categories of information. *See* Background at 3.  Further, SF

nowhere explains why a Confidential designation would not adequately protect SF's and

Gayosso's information.

    As difficult as it is to imagine, even if AIC were to become its competitor, as AIC

speculates, SF's designations would still be demonstrably improper.

---

[6] The protective order in effect at the time AIC originally challenged the designations likewise put
the burden on SF to justify them. *See* Doc. No. 203 § 3(vii) ("If they cannot resolve the dispute,
the Party challenging the designation may seek relief from the Court and the Producer bears the
burden of proving that the information is properly designated as CONFIDENTIAL or HIGHLY
CONFIDENTIAL.").

> To justify the AEO designation, the designating party must do more than show that it is a competitor of the receiving party or that the documents in question disclose information about the designating party's relationships with other competitors. Instead, the designating party needs to show that the disclosure of the particular AEO-designated materials to even a small number of the other party's personnel would risk the disclosure of sensitive competitive information.

*Glob. Material Techs.*, 133 F. Supp. 3d at 1084.  SF has made no effort to the "extreme measure" of a Highly Confidential designation, let alone shown that disclosure "to even a small number of AIC's personnel would risk the disclosure of sensitive competitive information."

## II. SF'S HIGHLY CONFIDENTIAL DESIGNATIONS RESTRICT CORE CATEGORIES OF DOCUMENTS PREVENTING AIC FROM PREPARING ITS DEFENSES AND PROSECUTING ITS COUNTERCLAIMS

Courts have repeatedly held that Highly Confidential designation

> "must be used selectively because discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client and because it leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are meritorious."

*Glob. Material Techs.*, 133 F. Supp. 3d at 1084 (citation omitted); *Lobster 207, LLC v. Pettegrow*, 2022 WL 3106212, at *3 (D. Me. Aug. 4, 2022) ("Whether to maintain the designation requires the balancing of a party's need for the information to assist in the development and implementation of case strategy against the need to protect proprietary information . . . ."); *Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691, at *4 (W.D. Tenn. Jan. 30, 2002) (finding that the impact of prohibiting the defendant's access to the confidential documents at the heart of the lawsuit would greatly impair his ability to defend himself).

SF's improper over-designation of 28,000 documents has prevented AIC from participating fully in its own defense and the prosecution of its counterclaims.  Indeed, SF has indicated that it has designated as Highly Confidential documents that fall into sweeping categories that go to core allegations in this case.  *See supra* Background at 3–4.  That is confirmed by AIC's

counsel's own review, which has identified documents designated Highly Confidential that go to numerous core categories of information, without a corresponding basis for a Highly Confidential designation.  This has made properly preparing for upcoming depositions with a fast-approaching deadline for completion virtually impossible.

Accordingly, the Court should thus immediately de-designate the below categories of documents, including but not limited to the documents expressly identified by Bates number.[7] *Merit Indus.*, 201 F.R.D. at 385 (finding that the defendants are entitled to participate in the preparation of their own defense, and that designating the documents at issue as Confidential, rather than Attorneys' Eyes Only, would serve the interests of fairness and efficiency); *Standard Space Platforms Corp. v. United States,* 35 Fed. Cl. 505, 509 (Fed. Cl. 1996) ("[T]o deny plaintiff the right to have its own president assist in its litigation, given defendant's flimsy showing, could well border on a denial of due process."); *Alarmax Distrib., Inc. v. Honeywell Int'l Inc.*, 2015 WL 11112432, at *3 (W.D. Pa. Oct. 28, 2015), (ordering de-designation of documents marked AEO where "it is clear that the information sought in this case speaks directly to AlarMax's claims that Honeywell is disadvantaging AlarMax with respect to the purchase price of Honeywell's electronic fire products and its pricing arrangements from non-Honeywell vendors."), *aff'd*, 2015 WL 12756857 (W.D. Pa. Nov. 24, 2015).

1.     **Documents Concerning** ██████████████
██████████████████

SF has improperly designated as Highly Confidential ██████████████████
████████████████████████████████████████
████████████████████████████████████████

---

[7]  Because of the overwhelming volume of SF's improper designations, it is only feasible for AIC to identify a representative sample of such improper designations.



. There is absolutely no justification for designating these videos and related communications and documents Highly Confidential.  SF's mere desire to keep AIC from accessing this evidence does not create an expectation of confidentiality.  *See Ragland v. Blue Cross Blue Shield of N.D.*, 2013 WL 3776495, at *1–2 (D.N.D. June 25, 2013) ("[A]ny designation of material as 'attorneys' eyes only' . . . should not be authorized simply because one of the parties would prefer that certain information not be disclosed to an opposing party.").

On June 14, AIC sent SF a letter advising it of the foregoing and requesting that SF downgrade its Highly Confidential designation of the above-referenced video recordings.  AIC further requested that, if SF refused, it explain how disclosure would result in a "clearly defined and serious injury."  *Id.*  On June 27, SF responded that these videos are highly confidential because they depict discussions our client had about a highly sensitive business matter.  Such a conclusory assertion falls woefully short of meeting SF's burden of demonstrating good cause, particularly where the "highly sensitive business matter" is ███████████████████████. June 12 Re-Designation Order, Doc. No. 387, at 2 (finding argument that engagement letters contain information that SF "believes

---

[8]   Transcriptions of the video recordings produced by SF are attached to the Soledad Declaration as Exhibits 51 to 53.  AIC will provide the files produced by SF at the Court's request.

is both sensitive proprietary and financial information concerning its relationship with legal counsel" is conclusory and insufficient to meet burden).

In any event, the assertion is plainly untrue.  These documents and recordings make no reference to trade secrets or to commercially sensitive information, let alone information that would give the recipient of such information a competitive or economic advantage.  *See Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 449, 452 (D. Mass. 2017) (defining "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."); *Impact CNC, LLC v. Dep't of Homeland Sec.*, 2019 WL 3410058, at *1 (N.D. Ind. July 29, 2019) ("For commercially sensitive material to be protected, it must give the holder an economic *advantage* and threaten a *competitive* injury—business information whose release harms the holder only because the information is embarrassing or reveals weaknesses does not qualify for trade secret protection.").  Likewise, other documents and communications concerning ███████████ █████████████████████████████ go to the central issues in the case and do not contain information rising to the level of Highly Confidential.  Accordingly, the Court should issue an order re-designating as Confidential documents related to ███████, including but not limited to the above video recordings.

### 2.     Due Diligence and Valuation of Gayosso

SF improperly designated as Highly Confidential ████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████.  As an initial matter, AIC's Mexico-based affiliate, Advent Mexico, had access to documents shared with SF during due diligence, and SF, itself, shared with Advent Mexico ████████████.  *See, e.g.*, Soledad Decl., Ex. 8 (AIC00454109) (an ExeFin email to Advent Mexico attaching due diligence

documents) and Ex. 9 (AIC00454101) (same); *see also* Soledad Decl., Exs. 56–58 (GSO-02658164, GSO-02658168, and GSO-02658169).  As such, there is no reasonable basis for their designation as Highly Confidential.

Even where the specific document was not previously shared with an AIC affiliate, such as is the case with EY's due diligence reports or SF's valuations of Gayosso, an Advent affiliate had access to the underlying information.  EY's due diligence and SF's valuations of Gayosso were derived from information that was disclosed in due diligence, all of which Advent Mexico had the ability to access.  In fact, that information was the basis for SF's renegotiation of the sales price in the SPA with AIC's Mexican affiliate after its execution.  Even if some of these analyses were not previously shared with Advent Mexico, such analyses cannot remain confidential as they are key to any damages SF seeks to obtain, and rely on evidence that was available to Advent Mexico.  *See, e.g., ACT, Inc. v. Worldwide Interactive Network, Inc*., 2019 WL 5865623, at *7 (E.D. Tenn. Nov. 8, 2019) (ordering production of damages-related documents where "Plaintiff's AEO designation has created an unfair contest where Defendant is forced to blindly defend against Plaintiff's alleged claims and is prohibited from consulting with its attorney on the fundamental issue of damages.").  In sum, AIC's need for the information to develop its defenses to SF's claims and prosecute its counterclaims, and the fact that it is not proprietary or could lead to identifiable harm to SF, make the balance of equities clear:  there can be no basis for SF to maintain the Highly Confidential designation.  *See Lobster*, 2022 WL 3106212, at *3 ("Whether to maintain the designation requires the balancing of a party's need for the information to assist in the development and implementation of case strategy against the need to protect proprietary information to which an opposing party would not have access without the litigation.").  Accordingly, the Court should

14

issue an order re-designating as Confidential documents related to the due diligence of Gayosso, as well as Gayosso's valuation.

### 3.      Gayosso's Accounting and Financials

SF has also improperly designated as Highly Confidential documents concerning Gayosso's financial condition[9]—i.e., documents at the heart of this lawsuit given SF's allegations of fraud as to Gayosso's financial condition.  SF's improper designation includes Gayosso's financial statements, ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████,[10] and various financial reports, as well as documents concerning Gayosso's audits and accounting.  Documents concerning Gayosso's financial condition are neither "trade secrets" nor proprietary information, and thus would not cause injury if they were disclosed to AIC.  SF has not borne its burden in demonstrating otherwise.  And were AIC not to be able to access these documents, it would be undoubtedly prejudiced, since the basis for SF's claim for fraud is that AIC misrepresented Gayosso's financial condition.  *See Medtronic Sofamor Danek,*, 2002 WL 33003691, at *4 (finding that the impact of prohibiting the defendant's access to the confidential documents at the heart of the lawsuit would greatly impair his ability to defend himself).  Moreover, the documents in question are necessary to test SF's claimed damages.  Accordingly, the Court should issue an order re-designating as Confidential documents related to Gayosso's financial condition, including but not limited to its financial statements, ███████████████████, and audits.

---

[9]   Examples of documents concerning Gayosso's financials, accounting, and audits that SF has designated Highly Confidential are attached to the Soledad Declaration as Exhibits 60 to 76.

[10]   *See*, *e.g.*, Soledad Decl., Exs. 15 and 70–74.

### 4.      Documents Related to Mr. Trejo's Departure

SF has improperly designated as Highly Confidential documents related to Octavio Trejo's departure from Gayosso.  Octavio Trejo is the former CFO of Gayosso who signed Gayosso's financial statements that SF asserts were fraudulent.  Despite his central role in making representations concerning Gayosso's financial condition, for years after alleging that Gayosso's financials were fraudulent, SF kept Mr. Trejo on as the CFO, and even formally pardoned him in the criminal proceedings it initiated in Mexico for alleged financial fraud at Gayosso.  Conspicuously, just one month before SF filed this lawsuit, SF terminated Mr. Trejo, thereby avoiding its obligation to make him available for deposition in these proceedings.  ███████████

████████████████████ as well as any documents reflecting his departure and role at Gayosso both pre-and post-sale, is not a trade secret, nor does it relate to commercially sensitive information.  Further, SF has identified no harm it would suffer were documents related to Mr. Trejo's departure disclosed to AIC.  As such, there is no justification for SF's designation as Highly Confidential of ████████████████████████████act (Soledad Decl., Ex. 71 (GSO-02340442)), ██████████████ (Soledad Decl., Ex. 78 (GSO-02345301)), and ████████████████ (Soledad Decl., Ex. 14 (GSO-02345306)), or communications about those documents or Mr. Trejo generally.  Again, SF's mere desire to keep this information from being disclosed does not create an expectation of confidentiality.  *See Ragland*, 2013 WL 3776495, at *1–2.  Accordingly, the Court should re-designate as Confidential all communications and documents related to Mr. Trejo's departure.

### 5.      Documents Concerning the ISSSTE Contract and ██████

SF has designated as Highly Confidential several documents related to the ISSSTE contract that SF alleges AIC failed to disclose to SF and a ████████████.  For example, SF has designated as Highly Confidential ████████████████ (Soledad Decl., Exs. 13

& 18 (GSO-02626918 & GSO-02626908), ██████████████████████████ (*see*, *e.g.*, Soledad Decl., Exs. 22 & 59 (GSO-02569266 & GSO-02590571)), and ████████████ ██████████████████████ (*see*, *e.g.*, Soledad Decl., Exs. 16 & 79 (GSO-02562724 & GSO-02562723)).

Given that one of SF's claims is based on AIC's purported failure to disclose this contract (that is necessarily premised upon Advent affiliates' having had access to such documents), there is no reasonable basis to assert that the information is proprietary—nor has SF identified any harm it would suffer were such information disclosed to AIC.  Further, given that SF alleges damages from being forced to comply with obligations stemming from the ISSSTE contract, and there is nothing in the ISSSTE contract that is competitively sensitive, counsel must be able to disclose and discuss this information with AIC.  *See Lobster*, 2022 WL 3106212, at *3.  Accordingly, the Court should re-designate as Confidential all communications and documents related to the ISSSTE contract and ██████.

## III.  SF BEARS THE BURDEN OF RE-REVIEWING ITS IMPROPER HIGHLY CONFIDENTIAL DESIGNATIONS

"When courts find that a party has overused a designation in a protective order, courts frequently require that party to reexamine and re-designate its production, and some courts also require the party to produce a log justifying its designations."  *Storagecraft Tech. Corp. v. Persistent Telecom Sols., Inc.*, 2016 WL 6988819, at *3 (D. Utah Nov. 29, 2016) (denying objection to magistrate order to re-review and re-designate productions) (collecting cases); *Campbell*, 2024 WL 1095938, at *3 (finding designations not in "good faith" and ordering re-review where 8,000 pages of documents were wholesale designated as "Highly Confidential"); *Healthtrio, LLC v. Aetna, Inc.*, 2014 WL 6886923, at *5 (D. Colo. Dec. 5, 2014) (requiring parties

to "re-review their production of documents ... for purposes of re-designating each page's level of restriction under the [protective order]").

After leaving 28,000 documents designated as Highly Confidential, SF has suggested that it is on AIC to "flag" documents it believes are improperly designated and provide SF "an explanation of [AIC's] concerns." But the law is clear that SF, not AIC, bears the burden and cost of demonstrating why its designations are appropriate. As such, SF should be ordered to re-review all of the documents it has designated Highly Confidential and downgrade documents as necessary.

Moreover, given the gross impropriety of SF's Highly Confidential designations, after its re-review, to the extent that it retains any Highly Confidential designations, it should be required to prepare a log describing the reasons for those designations. *Paradigm All., LLC*, 248 F.R.D. at 605 ("Because Celeritas adopted a cavalier approach in designating large volumes of documents as AEO, the court orders that Celeritas provide Paradigm with a log explaining its justification for designating a document as AEO.").

## <u>CONCLUSION</u>

For the reasons set forth above, AIC respectfully requests that this Court (1) re-designate as Confidential the categories of documents, as well as the specific documents, identified by AIC in Section II hereof;  (2) order SF to re-review the 28,000 documents it has designated as Highly Confidential and re-designate those documents consistent to the Protective Order in one week of this Court's order, and (3) order SF to provide a log justifying the designations to those documents retaining a Highly Confidential designations one week after such re-designations.  AIC also respectfully requests that this Court provide any further relief it deems just and proper.

Dated: October 1, 2024

Respectfully submitted,

*/s/ Andrew J. Rossman*

Andrew J. Rossman*
Nicholas A. S. Hoy*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad*
Valerie J. Ramos*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com
valerieramos@quinnemanuel.com

Joseph H. Margolies*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

Peter L. Welsh (No. 643261)
Daniel V. Ward (No. 667158)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com

*Admitted Pro Hac Vice*

*Counsel for Defendant and
Counterclaim-Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October, 2024, I caused to be served a copy of the foregoing document via the CM/ECF system on all counsel of record.

*/s/ Andrew J. Rossman*
Andrew J. Rossman