# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

_____

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,        Case No. 23-cv-10684

      Plaintiff/Counter-Defendant,

      v.

ADVENT INTERNATIONAL CORPORATION,

      Defendant/Counter-Plaintiff.

_____/

## SERVICIOS FUNERARIOS' OBJECTION TO
## MAGISTRATE JUDGE BOAL'S ORDER ON AIC'S MOTION TO EXTEND THE
## PROTECTIVE ORDER TEMPORARILY STAYING THE DEPOSITIONS OF
## <u>PANI, PAZ, AND WESTRA</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

    I.     The Witnesses ................................................................................................. 4

    II.    The Stay of the Depositions ............................................................................ 5

ARGUMENT ....................................................................................................................... 8

    I.     Legal Standards ............................................................................................... 8

    II.    The Order Prejudices SF (Factor 1) ............................................................... 9

    III.   The Status of the Case in Mexico and the Convenience of This Court Support Allowing the Witnesses' Depositions to Proceed (Factors 3 and 7) ......... 11

    IV.   There Is No Hardship to AIC that Justifies the Order and AIC Has Acted in Bad Faith (Factors 2 and 6) ........................................................................... 15

    V.    This Court Should Enter a Scheduling Order ................................................ 18

CONCLUSION .................................................................................................................. 19

CERTIFICATE OF SERVICE .......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Advent Int'l, L.P. v. Andre El-Mann Arazi et al.*,
    1:24-mc-00016 (S.D.N.Y. Feb. 6, 2024) ......................................................... 8, 16

*Anderson v. Cryovac, Inc.*,
    805 F.2d 1 (1st Cir. 1986) ............................................................................ 8

*Baker v. Liggett Group, Inc.*,
    132 F.R.D. 123 (D. Mass. 1990) .................................................................. 8

*CFE Int'l LLC v. Schnaas*,
    2023 WL 6702486 (S.D. Tex. Oct. 12, 2023) ............................................ 17

*Cuhaci v. Kouri Grp., LP*,
    540 F. Supp. 3d 1184 (S.D. Fla. 2021) ...................................................... 10

*Digital Equip. Corp. v. Currie Enterprises*,
    142 F.R.D. 8 (D. Mass. 1991) ............................................................... 10, 11

*GLL GmbH & Co. Messeturm KG v. LaVecchia*,
    247 F.R.D. 231 (D. Me. 2008) .................................................................... 8

*In re IDC Clambakes, Inc.*,
    727 F.3d 58 (1st Cir. 2013) .......................................................................... 8

*New England Sports Network, L.P. v. Alley Interactive, LLC (CT)*,
    No. 22-CV-10024-ADB, 2023 WL2140474 (D. Mass. Feb. 21, 2023) ...... 11

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
    385 F.3d 72 (1st Cir. 2004) ................................................................ passim

*Neelon v. Kruger*,
    2015 WL 1037992 (D. Mass. Mar. 10, 2015) .............................................. 8

*Nowaczyk v. Matingas*,
    146 F.R.D. 169 (N.D. Ill. 1993) .................................................................. 9

*Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*,
    486 F. Supp. 1118 (S.D.N.Y. 1980) .......................................................... 12

*Phinney v. Wentworth Douglas Hosp.*,
    199 F.3d 1 (1st Cir. 1999) ............................................................................ 8

*PowerShare, Inc. v. Syntel, Inc.*,
    597 F.3d 10 (1st Cir. 2010) .......................................................................... 8

*Ramirez Lluveras v. Pagan Cruz*,
   No. CV 08-1486 (FAB), 2010 WL 11679649 (D.P.R. Aug. 5, 2010) ............................... passim

*S.E.C. v. K2 Unlimited, Inc.*,
   15 F. Supp. 3d 158 (D. Mass. 2014) ...................................................................................... 12

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ...................................................................................................................... 8

*Servicios Funerarios GG, S.A. de C.V. v. Advent Int'l Corp.*,
   2024 WL 3316839 (D. Mass. July 5, 2024) ............................................................................ 8

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*,
   375 F. Supp. 2d 141 (E.D.N.Y. 2005) ................................................................................... 10

## **Statutes**

28 U.S.C. § 636(b)(1) ........................................................................................................................ 1

## **Rules**

Fed. R. Civ. P. 72(a) ................................................................................................................... 1, 8

## **Other Authorities**

Alex Vasquez, Mexico's Top Court Justices Join Strike Over Judicial Reform, Bloomberg
   (Sept. 3, 2024), https://www.bloomberg.com/news/articles/2024-09-03/supreme-court-
   justices-join-mexico-strikes-against-amlo-s-reform. ............................................................13

*Mexico: Nationwide strike, associated protests by federal judiciary workers likely to continue
   through at least late September*, Crisis24 (Sept. 18, 2024),
   https://crisis24.garda.com/alerts/2024/09/mexico-nationwide-strike-associated-protests-by-
   federal-judiciary-workers-likely-to-continue-through-at-least-late-september-update-5. ........ 13

Plaintiff Servicios Funerarios GG, S.A. de C.V. ("SF") respectfully objects, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a), to Magistrate Judge Boal's order, dated September 23, 2024 (Doc. 451) (the "Order"), granting Defendant Advent International Corporation's ("AIC") Motion to Extend the Protective Order (Doc. 435), and staying the depositions of three witnesses, Enrique Pani Bano, Carlos Alfredo Paz Perez, and James Westra (the "Witnesses"), until October 14, 2024.  SF understands that, as a practical matter, this Objection may not be resolved prior to the expiration of the extended stay.  But AIC has indicated it intends to seek a continuation of the stay until it obtains a ruling to its liking from a Mexican or Delaware court.  (*See* Doc. 446 at 4 ("If . . . the Mexican courts need longer than 45 days to rule . . . the appropriate response is a longer stay").)  SF therefore respectfully seeks review of the Order, which, for the reasons that follow, is clearly erroneous and contrary to law.

## **INTRODUCTION**

Last week, Magistrate Judge Boal entered an Order extending, until October 14, a stay of the depositions of three Witnesses—Pani, Paz, and Westra.  Each of the Witnesses is a current or former AIC officer who, all parties acknowledge, possesses "unique knowledge" and "critical evidence" that goes to the core of the issues in dispute.  (Doc. 291 at 2, 13.)  The Order did not provide a reason for extending the stay of their depositions.  However, AIC's stated reason for requesting an extension was the continued pendency of the Witnesses' appeals challenging their arrest warrants in Mexico.  (Doc. 436 at 1-2, 8-10.)  According to AIC, the Witnesses would be "burdened" by having to testify in this action while their appeals remain pending, and extending the stay until October 14 will provide the Mexican courts additional time to issue a ruling.  (*Id.* at 3-6.)  To the extent those appeals remain pending after October 14, AIC maintains, "the Court can revisit the issue" then.  (Doc. 446 at 4.)

While AIC claims continued says of the Witnesses depositions are necessary to protect their purported rights under the Mexican constitution, its true purpose in seeking the Order was to delay this action as long as possible in the hope of obtaining an order in its later-filed Delaware action to enjoin the proceedings here.  AIC now argues that a stay "would provide additional time for the Delaware court to rule" on AIC's effort to enforce a fraudulently induced Guarantee, which AIC claims bars the criminal proceedings in Mexico and SF's claims here.  (*Id*. at 12.)  AIC's pivot to the Delaware court is puzzling because AIC relies on the same Guarantee **in this action** that it is relying on in its later-filed Delaware action. (Doc. 14, Seventh Affirmative Defense.)  And AIC has admitted that this District is a proper venue for the litigation of that issue.  (Doc. 1 at ¶ 5; Doc. 14 at 2 ¶ 5 (admitting that "venue is proper in this district").)  Yet, apparently hoping its defense would receive a better reception in Delaware, AIC now wants this Court to defer discovery so that it can litigate the issue in Delaware.  The Order rewards AIC's forum shopping.

The Court should overrule and vacate the Order because it is clearly erroneous and contrary to law.  Rather than carefully balancing the relevant competing interests and specific circumstances of the case, the Order, without justification, postpones the Witnesses' depositions to an arbitrary date that is untethered to any expected event in the Mexican proceedings, and, predictably, has stopped discovery in its tracks and thrown the entire schedule in this case into doubt.

*First*, the Order significantly prejudices SF.  Like every plaintiff, SF has an interest in proceeding expeditiously.  The Order, however, sidelines these three critical Witnesses from the discovery process, preventing their depositions until two weeks before the close of fact discovery.  Unless the schedule is overhauled once again—further delaying this action—the parties will have only between October 14 and October 29 to conduct the depositions of each of the Witnesses individually and the Rule 30(b)(6) deposition of AIC (as to which, AIC agrees, these witnesses are

2

essential).  That is prejudicial.  Nor does the fact that SF presumably can proceed with other depositions change that.  The Witnesses are key to SF's claims and SF wants to depose them during the first tranche of depositions.  A stay of their depositions effectively delays the entire action and forces SF to abandon its decision to depose the Witnesses early in the deposition process.

*Second*, the Order completely ignores the status and nature of the proceedings in Mexico.  The parties agree there is no realistic possibility that the pending appeals in Mexico will be resolved by October 14.  Nearly all the employees of the Mexican federal judiciary, including employees of the Mexican Collegiate Court in which the appeal is pending, are on strike "indefinitely."  AIC has conceded that any resolution of the appeal is likely many months away.  But more fundamentally, there is virtually no prospect that the appeal—which solely concerns the validity of the Witnesses' arrest warrants, and not the merits of their alleged criminal conduct— will result in the complete termination of the criminal proceedings implicating the Witnesses in Mexico.  Even if the Witnesses are successful in their appeal, the prosecutor will retain discretion to continue investigating the Witnesses' conduct in connection with Gayosso.  Thus, to the extent the Order abandons the understanding embedded in Judge Boal's initial "limited stay" (Doc. 418)—that resolution of the criminal proceedings in Mexico is not a prerequisite for proceeding with the Witnesses depositions—the Order relies on reasoning that would lead to additional extensions beyond October 14, and in effect, an indefinite stay.  Such a stay is plainly improper.

*Third*, there is no "burden" to justify a further delay of these critical depositions.  AIC claims the Mexican criminal proceedings burden the Witnesses to an extent they should not be made to participate in discovery in this civil action.  Yet, the Mexican criminal proceedings have not prevented the Witnesses' voluntary participation in AIC's later-filed action in Delaware, where, again, AIC is attempting to litigate the same Guarantee defense that it is asserting in this Court.  In

3

Delaware, the Witnesses have not only chosen to become named plaintiffs; they have submitted sworn verifications of key facts in support of AIC's claims—in other words, they have offered testimony going to SF's fraud claims.  It is improper for AIC to claim that the "burden" of the Mexican proceedings prevents these Witnesses from testifying in SF's case while actively providing sworn evidentiary declarations from these same Witnesses in AIC's Delaware case.  To the extent there is real concern that the Witnesses' testimony in this action can be used against them in Mexico, Mexican law and the protective order in place here eliminate it.

Further, AIC's attempt to delay the Witnesses' depositions long enough for the Delaware court to rule on its Guarantee defense is a transparent attempt at forum shopping.  The ulterior motive behind AIC's repeated stay requests fatally undermines any justification for the Order.

At bottom, AIC agrees that these are key depositions.  As AIC's initial motion for the now-extended protective order stated: "AIC does not dispute that the [Witnesses] possess information relevant to SF's claims and AIC's counterclaims and expects to make them available for deposition in this case at the appropriate time."  (Doc. 291 at 1.)  Fact discovery closes in less than a month.  It has long been the appropriate time.  The depositions should no longer be delayed.  The Court should overrule the Order and ensure these pivotal depositions can proceed.

## FACTUAL BACKGROUND

### I.      The Witnesses

Pursuant to the Court's Amended Scheduling Order (Doc. 254), each party was required to identify its first five deponents by February 20, 2024.  On that date, SF identified its first five deponents.  (Doc. 292-2.)  Three of the individuals on that list were Enrique Pani Bano, Carlos Alfredo Paz Perez, and James Westra.  Pani is a former Managing Director of AIC who played a leading role of the negotiations concerning the SPA and the sale generally.  Paz is a current Senior Director at AIC who, together with Pani, led the AIC team that negotiated the Gayosso sale.  Both

Pani and Paz executed the Gayosso Sale and Purchase Agreement ("SPA") on behalf of Gayosso, and both sat on Gayosso's Board of Directors at the time of the sale to SF. Westra is the former General Counsel and Managing Partner of AIC who had overall responsibility for managing and approving the transaction for AIC and who executed the Guarantee issued by AIC's managed funds in connection with the Gayosso sale.

AIC acknowledges that each of these individuals is a percipient witness who possesses "unique knowledge" and "critical evidence" that goes to the core of the issues in dispute, including, for example, AIC's contemporaneous knowledge of and involvement in Gayosso's finances and operations before and during the time of sale. (Doc. 291 at 2, 13.) Indeed, AIC has stated that it is likely to designate one or more of them as its Rule 30(b)(6) designee(s) given their "unique" personal knowledge. (*Id.*) Put simply, these are critical witnesses, and SF cannot fully and fairly litigate its fraud claims without their testimony.

## II.   The Stay of the Depositions

The Witnesses are subject to arrest warrants issued by Mexican courts in connection with the criminal case arising from the fraudulent sale of Gayosso. Each of them appealed from the arrest warrants. On November 15, 2023, a Mexican appellate court ruled that the arrest warrants had been issued "correctly." (Doc. No. 263-2 at 83, 88-89, 101.) AIC has appealed that ruling to a higher Mexican appellate court. (Doc. 436 at 1.) AIC concedes that the Mexican courts are unlikely to resolve the appeal during the extended stay. (Doc. 446 at 4 (acknowledging judicial strike in Mexico and admitting that "[o]f course a ruling could take longer [then the requested 45-day extension]—in which case the Court can revisit the issue"); Doc. 436 at 5 (acknowledging that "the Collegiate Court's ruling" is not expected until "well beyond the August 30 expiration date for the current Protective Order.").)

Although AIC has known of the arrest warrants since October 2022, (*see* Doc. 263-2 at 54-55, 59) it waited until March 15, 2024—three-and-a-half weeks after receiving SF's February 20 letter identifying the Witnesses, and 10 months after receipt of SF's initial disclosures listing the Witnesses—to move for a protective order.   SF opposed the motion on numerous grounds, including because AIC cannot invoke the Witnesses' purported rights under the Mexican constitution in this domestic action unless doing so is consistent with principles of international comity—and here it is not.  (Doc. 307 at 1-3, 10-19.)

Although AIC initially requested a stay lasting 90-days from the date of the Court's order (Doc. 291 at 8) on July 5, Judge Boal entered a protective order granting only a "limited stay" through August 30, 2024.  (Doc. 418.)  Judge Boal explained that a "limited" eight-week stay was "appropriate under the circumstances" because AIC had represented that Mexican Collegiate Court's decision in the pending appeal "will be issued by September 2024."  (*Id.* at 3, 5-6.) Accordingly, Judge Boal reasoned, "this Court need not decide whether [the Witnesses] may assert their Mexican privilege in this action" because avoiding the "burden" of eight weeks of parallel litigation was "a sufficient reason for granting a stay of the depositions" until August 30.  (*Id.* at 6.)  Judge Boal was clear, however, that regardless of whether the criminal proceeding in Mexico was promptly resolved, the Court was unlikely to extend the stay of these depositions beyond August.  (*Id.* at 6 ("This Court warns AIC, however, that it is not likely to further extend the stay if the Mexican Collegiate Court has not issued a decision by that date.").)

In view of Judge Boal's statement that the Court was "not likely to further extend the stay" beyond August 30, and to avoid unnecessary motion practice, SF did not file objections to the July 5 order.  Because fact discovery remains open until October 29, SF expected that, so long as the

Witnesses' depositions were scheduled promptly after the stay's expiration, there would be sufficient time for these critical depositions to proceed within the confines of the schedule.

Unfortunately, AIC's delay tactics have continued, and the depositions have not taken place. AIC refused to schedule the depositions after the stay expired, and instead filed a motion to extend it, this time citing not only the ongoing criminal appeal in Mexico (which all parties now acknowledge has no prospect of ending soon) but also parallel civil litigation in Delaware, *which AIC itself initiated after the filing of this action*. (Doc. 436 at 11-12.) In its submissions attempting to justify the purported need to further delay the depositions, AIC lays bare its true intentions: it seeks to stall this case indefinitely while working to obtain an order from the Delaware court in the hope of enjoining SF from further prosecuting its fraud claims here, before this Court reaches the merits. (*See id.* at 3, 11-12; Doc. 446 at 3.)

Despite the July 5 order's "warning" to AIC that further extensions were "not likely," last week, Judge Boal entered an Order extending the stay of the Witnesses' depositions until October 14, just two weeks before the close of fact discovery. (Doc. 451.) AIC has already made it clear it intends to seek another extension when this one expires. (*See* Doc. 446 at 4 (arguing that "the Court can revisit the issue" and the end of the next temporary stay and "if the Mexican courts need longer than 45 days to rule …the appropriate response is a longer stay….").) The predictable result of the Order extending the stay is that discovery has now stalled and the entire schedule in this case has been thrown into doubt.[1]

---

[1] It has become clear that the delay resulting from the Order will make it highly unlikely that depositions in this case will be completed by October 29, 2024. SF has thus asked the Court to schedule a case management conference where it can address the discovery schedule. (Doc. 454.)

# ARGUMENT

## I.     Legal Standards

If a party timely objects to a magistrate judge's non-dispositive rulings, the district judge must set aside or modify any part of the order that is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  Factual findings are reviewed for clear error, and questions of law are reviewed *de novo*.  *Neelon v. Kruger*, 2015 WL 1037992, at *2 (D. Mass. Mar. 10, 2015) (citing *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999), then citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)).  Mixed questions of law and fact invoke a sliding scale of review pursuant to which "the more law intensive the question, the less deferential the level of review."  *In re IDC Clambakes, Inc.*, 727 F.3d 58, 64 (1st Cir. 2013).

While the trial court has "broad discretion" under Rule 26 to determine "when a protective order is appropriate and what degree of protection is required," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984), "a showing of good cause is required to justify any protective order," *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990) (citing *Anderson v. Cryovac*, Inc., 805 F.2d 1, 7 (1st Cir. 1986)).  "The party seeking a protective order has the burden of demonstrating good cause."  *Servicios Funerarios GG, S.A. de C.V. v. Advent Int'l Corp.*, 2024 WL 3316839, at *2 (D. Mass. July 5, 2024).

Nothing in the U.S. Constitution requires a stay of a civil proceeding "simply because a parallel criminal proceeding is in the works."  *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004).  A court's discretion to stay civil litigation in deference to a parallel criminal action "is to be exercised along prudential lines and only where the interests of justice counsel in favor of the stay."  *GLL GmbH & Co. Messeturm KG v. LaVecchia*, 247 F.R.D. 231, 233 (D. Me. 2008) (citing *Microfinancial*, 385 F.3d at 77–78).  The party seeking the stay "bears the 'heavy burden' of demonstrating that there would be a 'clear case of hardship' if a stay did not

issue." *Id.* (quoting *Microfinancial*, 385 F.3d at 77); *see also Nowaczyk v. Matingas*, 146 F.R.D. 169, 178-79 (N.D. Ill. 1993) (declining to stay civil discovery during pendency of parallel Polish and U.S. criminal proceedings because a protective order staying discovery would shield defendant "from prejudicial consequences, albeit not violative of his constitutional rights, involving his decision whether to invoke his Fifth Amendment privilege in this civil action.").

The First Circuit has articulated several factors that "typically bear on the decisional calculus" of whether a court a stay is warranted due to a parallel criminal proceeding:

> (i) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (ii) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem; (iii) the convenience of both the civil and criminal courts; (iv) the interests of third parties; and (v) the public interest. . . . To this list we add (vi) the good faith of the litigants (or the absence of it) and (vii) the status of the cases.

*Microfinancial*, 385 F.3d at 78. The determination is "highly nuanced" and "involves competing interests." *Id.* "Balancing these interests is a situation-specific task, and an inquiring court must take a careful look at the idiosyncratic circumstances of the case before it." *Id.*

Judge Boal's single-sentence Order extending the stay did not address any of factors discussed in *Microfinancial*, or any of the "idiosyncratic circumstances" of this case. When those factors and circumstances are appropriately considered, however, they weigh heavily in favor of lifting the stay and allowing the Witnesses' depositions to proceed.

## II.     The Order Prejudices SF (Factor 1)

The Order prejudices SF because it prolongs the delay of these critical depositions until October 14—two weeks before the close of fact discovery under the current schedule.

Plaintiffs in civil proceedings "are entitled to a speedy discovery process, especially when facing complex litigation." *Ramirez Lluveras v. Pagan Cruz*, No. CV 08-1486 (FAB), 2010 WL

11679649, at *5 (D.P.R. Aug. 5, 2010) (*Digital Equip. Corp. v. Currie Enterprises*, 142 F.R.D. 8, 12 (D. Mass. 1991)); *see also Microfinancial*, 385 F.3d at 78 (noting plaintiff "had an obvious interest in proceeding expeditiously"). A stay of discovery creates heightened risk of prejudice for the party seeking discovery when it is sought in "close proximity to upcoming discovery deadlines." *Ramirez Lluveras*, 2010 WL 11679649, at *5 (denying stay where defendants "knew that parallel criminal proceedings existed long before they filed their motions" and only filed motions "at the eleventh hour," in "close proximity to upcoming discovery deadlines"); *see also Cuhaci v. Kouri Grp., LP*, 540 F. Supp. 3d 1184, 1186 (S.D. Fla. 2021) ("Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.") (internal quotation marks omitted). This is particularly true in the context of a fraud case where witness as to whom discovery is stayed was alleged to be "central" to the defendant's scheme. *See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 157 (E.D.N.Y. 2005) (affirming denial of stay where plaintiff "is likely to suffer prejudice . . . because [the witness] is alleged to be central to the defendants' alleged scheme" and the requested stay "would, in effect, impede discovery related to other parties in this action").

Here, the Order prejudices SF by depriving it of a reasonable period in which to examine these witnesses and AIC (under Rule 30(b)(6)). In particular, the parties agree that the Witnesses—Westra, Pani, and Paz—are among the most crucial witnesses in this case. As AIC stated in its initial motion seeking the protective order, these Witnesses "are among the principal current and former AIC affiliates with first-hand knowledge of the matters listed in SF's 30(b)(6) 'Matters for Examination'" and possess "unique knowledge" of the most important issues in the case. (Doc. 291 at 13.) SF agrees. Under the current schedule, fact discovery closes on October 29.

(Doc. 415 at 1.)  Under the Order, however, these critical Witnesses have been sidelined until two weeks before the fact discovery deadline and discovery has essentially halted in its tracks.  Unless the schedule is amended once again—further delaying progress in this action—the parties will have only between October 14 and October 29 to conduct the depositions of each of the Witnesses individually and the Rule 30(b)(6) deposition of AIC (as to which, AIC agrees, these witnesses are critical).  That is prejudicial.  *See Ramirez Lluveras*, 2010 WL 11679649, at *5 (denying stay in "close proximity" to discovery cut-off where stay threatened to "grind [discovery] to a halt" and "penalize plaintiffs" whose "discovery work has been extensive").

The fact that the Order is only temporary and only applies to the three Witnesses makes it no less prejudicial.  "While courts may favor more limited stays over 'blanket' stays," the "limited nature" of a requested stay cannot overcome a party's "failure to show how a stay will . . . avoid prejudice."  *New England Sports Network, L.P. v. Alley Interactive, LLC (CT)*, No. 22-CV-10024-ADB, 2023 WL 2140474, at *5 (D. Mass. Feb. 21, 2023) (Boal, *M.J.*).

## III.    The Status of the Case in Mexico and the Convenience of This Court Support Allowing the Witnesses' Depositions to Proceed (Factors 3 and 7)

The Order is also clearly erroneous and contrary to law because it fails to account for the status of the respective cases in Mexico and in this Court, or the relative convenience of proceeding expeditiously here, in this forum.  The Order's termination date of October 14 illustrates this point.  The October 14 termination date is untethered to anything in particular—nothing is expected to occur by October 14 in the Mexican criminal proceedings that would alter the status quo with respect to the parties here.  When the "idiosyncratic circumstances" of the cases are considered, extending the stay is not justified.

"'[A] policy of freely granting stays solely because a litigant is defending simultaneous multiple suits interferes' with judicial administration."  *Currie Enterprises*, 142 F.R.D. at 14

(quoting *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980)).  Courts are generally reticent "to rely upon fortuitous events to manage [their] docket[s]." *Id.*  Consequently, in determining whether to issue a stay, the "status of the cases" and "the court's convenience" is "deserving of substantial weight."  *Microfinancial*, 385 F.3d at 79. Where the purported justification for a discovery stay could produce indefinite delay, courts routinely deny requested stays.  *See, e.g.*, *id.* (denying stay where "the defendants were, in effect, asking to stay proceedings for an indefinite (and potentially protracted) period"); *Ramirez Lluveras*, 2010 WL 11679649, at *5 ("defendants' request to stay the civil proceedings until the 'culmination' of the criminal proceedings . . . is overbroad and potentially delays the civil trial's reopening for years to come"); *S.E.C. v. K2 Unlimited, Inc.*, 15 F. Supp. 3d 158, 161 (D. Mass. 2014) ("if discovery in this case were stayed until after the criminal case is resolved, [the witness] would still have an incentive to invoke any valid Fifth Amendment privilege if her answers could lead to additional criminal charges against her").

Here, the relative status and convenience of the proceedings in Mexico and in this Court strongly weighs in favor of lifting the stay and allowing the depositions to proceed.  While Judge Boal's single-sentence Order does not specifically reference the criminal appeals in the Mexican Collegiate Court and Mexican Supreme Court, the pendency of those appeals was the stated basis of AIC's motion (*see* Doc. 436 at 1, 5) and thus presumably the basis for the Order as well.  To the extent the Order stays the Witnesses' depositions in favor of the pending appeals in Mexico, the Order is plainly improper.

*First*, there is no realistic prospect that the pending appeals will be resolved by October 14, so staying the depositions until October 14 is arbitrary.  While AIC previously estimated decisions in the Witnesses' appeals could be expected within "months," (Doc. 291 at 4; Doc. 436 at 6), it has

since conceded a ruling will likely take far longer.  (Doc. 446 at 4.)  As AIC has acknowledged (Doc. 436 at 6 n.4), much of the Mexican federal judiciary (including more than 1,400 judges and nearly all 55,000 federal court employees, and members of the Collegiate Court) have gone on strike.[2]  Although employees of the Mexican Supreme Court ended their participation in the strike as of September 17, the remaining sectors of the judiciary, including the Collegiate Court, "plan to continue the current course of action indefinitely."[3]  According to SF's Mexican law expert, even after the strike ends, it will likely take another two to six months for the Supreme Court to rule on the issues surrounding Mr. Westra's signatures (*see* Doc. 442, Nader Decl. ¶ 39) well-past the fact discovery cut-off date.  In short, the timeline for a resolution of the appellate proceedings in Mexico is highly uncertain and could be many months away.

*Second*, at a more fundamental level, the speculation concerning the timing of next appellate ruling from Mexico is irrelevant because no matter how the Witnesses' appeal is resolved, it will not put the criminal matter to rest.  The pending appeal concerns the validity of the Witnesses' arrest warrants.  (Doc. 291 at 7.)  It does not go to the merits of the alleged fraudulent conduct and will not resolve the criminal charges against the Witnesses.[4]  (Doc. 307 at 7 (citing

---

[2] *See* Alex Vasquez, Mexico's Top Court Justices Join Strike Over Judicial Reform, Bloomberg (Sept. 3, 2024), https://www.bloomberg.com/news/articles/2024-09-03/supreme-court-justices-join-mexico-strikes-against-amlo-s-reform.

[3] *Mexico: Nationwide strike, associated protests by federal judiciary workers likely to continue through at least late September*, Crisis24 (Sept. 18, 2024), https://crisis24.garda.com/alerts/2024/09/mexico-nationwide-strike-associated-protests-by-federal-judiciary-workers-likely-to-continue-through-at-least-late-september-update-5.

[4] The Witnesses are appealing the validity of their arrest warrants before a three-judge appellate panel of the Mexican Collegiate Court in a proceeding an "*amparo*." (Doc. 291 at 7.)  In the event the Witnesses prevail on their *amparo*, the Mexican prosecutor would nevertheless retain discretion to keep investigating the Witnesses. (Doc. 292-3 at ¶¶ 7-8.) Conversely, if the Witnesses lose their appeals, they will remain under investigation and AIC might still assert their Mexican privilege against self-incrimination.  During the *amparo* proceedings, on June 13, 2024, SF filed an *incidente de falsedad de firmas* with the Mexican Collegiate Court alleging that Mr. Westra

Doc. 292-3 ¶¶ 7-8.)  In other words, the pending appellate decisions in Mexico will not eliminate the purported "burden" on which AIC has been relying to repeatedly request stays of the Witnesses' depositions.  If the pendency of the criminal proceedings in Mexico remains the justification for the stay, then regardless the Order's expiration date of October 14, AIC will continue to invoke the same justification for continued extensions, rendering the stay functionally indefinite.  Indeed, AIC does not hide its intent to do so.  (*See* Doc. 446 at 4 (arguing that "the Court can revisit the issue" and the end of the next temporary stay and "if the Mexican courts need longer than 45 days to rule . . . the appropriate response is a longer stay").)

*Third*, to the extent the Order indicates that the Witnesses' depositions will be stayed until the criminal proceedings in Mexico are fully resolved (i.e., indefinitely), the Order is plainly improper.  *Microfinancial*, 385 F.3d at 79 (denying request for "in effect . . . an indefinite . . . and potentially protracted" stay).  Importantly, the initial July 5 protective order appeared to recognize that the proceedings in Mexico do *not* categorically bar the Witnesses' depositions from going forward in this Court.  The July 5 order stated that a further extension of the stay was "not likely" even "if the Mexican Collegiate Court has not issued a decision" before the stay expired.  (Doc. 418 at 6.)  Judge Boal thus appeared to acknowledge that complete resolution of the Mexican criminal proceedings was not a prerequisite for the depositions to proceed.  To the extent the recent Order abandons that understanding and suggests the Witnesses' depositions will now be further

---

forged certain instruments filed in the *amparo*.  (Doc. 405-1 at 2-3.)  SF submitted its challenge based on opinions from two leading Mexican experts in graphoscopy.  (*Id.* at 3-5, 11-18.)  The experts determined that Mr. Westra's signatures on four separate filings did not share a common origin and graphic gesture.  (*Id.*)  Although some of the alleged forgeries had been filed in late 2022, SF did not notice the discrepancy until it compared the 2022 signatures against documents Mr. Westra filed in December 2023.  (Doc. 437-1 at 24-25.)  On July 9, SF petitioned the Mexican Supreme Court for clarity on a jurisdictional question.  (*Id.* at 2, 12.)  On August 1, the Supreme Court notified the parties that it agreed to hear SF's petition.  (Doc. 437-4 at 5.)

delayed pending the culmination of the criminal proceedings in Mexico, the Order is not tenable. *Ramirez Lluveras*, 2010 WL 11679649, at *5 (staying "civil proceedings until the 'culmination' of the criminal proceedings . . . is overbroad").

*Fourth*, in contrast to the uncertain timeline of the proceedings in Mexico, the action here has been pending for over nineteen months and is well into discovery.  The parties have already completed extensive document discovery and have started taking depositions.  As discussed below, SF has asked the Court to set a case management conference and enter a firm schedule to govern the next steps in this case.  So long as such a scheduled is entered and enforced, SF believes the parties can proceed expeditiously to trial.

At bottom, because the Mexican criminal proceedings have no end in sight, and because the action in this Court is further advanced, it is far more convenient to allow the Witnesses' depositions to proceed so this action can continue to move toward trial.  To the extent the Order stays the depositions in favor of the criminal proceedings in Mexico, the Court should overrule it.

## IV.   There Is No Hardship to AIC that Justifies the Order and AIC Has Acted in Bad Faith (Factors 2 and 6)

As noted above, AIC has attempted to justify extending the stay by arguing the Witnesses would be subjected to an undue "burden" if forced to testify—namely that "requiring [the Witnesses] to undergo adverse questioning on the same subject matter for which they are being prosecuted in Mexico would burden their Mexican constitutional rights . . . ."  (Doc. 436 at 1, 5.) For the reasons SF explained in opposing the initial motion for a protective order (Doc. 307 at 10-19), the entire premise of AIC's argument is wrong.  A domestic litigant cannot invoke a foreign constitutional privilege to shield its witnesses' testimony unless it can demonstrate that doing so would be consistent with principles of international comity—and here, there is no basis to apply that Mexican right in this U.S. civil litigation between a Mexican company and an American

limited partnership regarding breaches of U.S. law, stemming from fraud perpetrated by said American limited partnership in Mexico.  (*Id.*)  But even putting the international comity argument to the side, AIC's tactical decisions in its later-filed Delaware action, along with the protective order in this action, reveal there is no "burden" preventing the Witnesses' participation in this action.  The absence of good faith on AIC's part further justifies lifting the stay.

*First*, while AIC claims that the "burden" of ongoing proceedings in Mexico prevents the Witnesses' participation in this action, no such "burden" has prevented the Witnesses' participation in AIC's Delaware action.  In Delaware, these same Witnesses not only joined AIC's action as named plaintiffs, they also submitted sworn verifications (Docs. 424-2–4) of the allegations contained in AIC's Second Amended Complaint in Delaware Chancery Court.  (Doc. 425 at 2.) They further made a Supplemental Submission in Support of an Order Permanently Enjoining the Mexican Criminal Action (Ex. E, Doc. 424-5) and submitted the verifications as evidence in support of AIC's summary judgment motion.  (Doc. 425 at 2.)  One of the witnesses, Mr. Pani, also provided a sworn declaration in support of AIC's efforts in New York federal court to enforce a deposition subpoena relating to this case.  Decl. of Enrique Pani, *Advent Int'l, L.P. v. Andre El-Mann Arazi et al.*, 1:24-mc-00016 (S.D.N.Y. Feb. 6, 2024) (Doc. 26-3).  These actions fly in the face of AIC's assertion that testifying in a U.S. civil proceeding while their Mexican criminal proceeding remains pending "burdens" their rights under the Mexican constitution.  (Doc. 291 at 8).  Indeed, by submitting sworn verifications of factual assertions in the Delaware action— including the "verified" assertion that SF's fraud allegations are "without merit"—the Witnesses have done just that: offered their testimony in a U.S. civil proceeding.  (Doc. 424-1 at ¶¶ 30, 85; Docs. 424-2–4.)  The Court should not permit the Witnesses to offer testimony when and where it suits them, while hiding behind purported privileges under Mexican law where it does not.

16

*Second*, any testimony the Witnesses offer in this action cannot be used against them in Mexico or even provided to any Mexican authority pursuant to this Court's protective order.  (*See* Doc. 442, Nader Decl. ¶¶ 33-38; Doc. 267 at 7-10.)  This provides sufficient protection for the Witnesses.  *See CFE Int'l LLC v. Schnaas*, 2023 WL 6702486, at *10 (S.D. Tex. Oct. 12, 2023) (declining to decide whether Mexican self-incrimination privilege should be recognized "given the United States's relationship to the communications in dispute" and noting that "[t]he parties may designate documents they believe are protected by the right against self-incrimination as confidential and for attorney's eyes only.").

*Third*, the surrounding circumstances concerning AIC's litigation tactics reveal an ulterior motive for seeking a stay and illuminate AIC's bad faith.  After SF filed its fraud claims against AIC in this Court, AIC ran into court in Delaware to enforce, through a pending motion for summary judgment, a fraudulently induced Guarantee[5] that, AIC claims, bars SF's claims in this action.  (Doc. 449 3-4; Doc. 446 at 5 n.2.)  The pending summary judgment motion in Delaware is, in truth, what AIC's repeated requests for stays are about.  AIC is seeking to extend the stay of these critical depositions in the hope of obtaining a ruling, in its ***later-filed Delaware action***, on the issue of whether the Guarantee bars SF's claims.  It is doing so notwithstanding that it has (i) asserted the same argument as an affirmative defense in this first-filed action (*see* Doc. No. 14, Seventh Affirmative Defense), and (ii) admitted that this issue can properly be litigated in this Court.  (Doc. No. 14 at 3, ¶ 5 (admitting that "venue is proper in this district").)  Thus, despite

---

[5] More specifically, in the SPA, the special purpose vehicles that nominally owned and sold Gayosso agreed to indemnify SF in the event of losses arising from a breach, including losses relating to the falsity of the SPA's representations and warranties.  (Doc. 424-1 ¶ 4.)  AIC asserts in Delaware that under the Guarantee executed by Mr. Westra, AIC accepted financial responsibility for the special purpose vehicles' indemnification obligations in exchange for SF's agreement not to sue AIC and its affiliates concerning the Gayosso sale.  (*Id.* ¶¶ 5-6.)

agreeing that the issue of the Guarantee's non-recourse provision can be decided here, AIC apparently now believes its chances in Delaware are better and seeks to avoid a resolution in this Court by delaying these critical depositions.[6] AIC makes no secret of this.  In its brief supporting the extension of the stay, AIC admitted that a stay is necessary to "provide additional time for the Delaware court to rule" on AIC's challenges to the Mexican criminal action, or in other words, its Guarantee defense.  (Doc. 436 at 12.)  AIC's blatant forum shopping exposes its bad faith in seeking to delay these depositions and fatally undermines any justification for extending the stay.

## V.   This Court Should Enter a Scheduling Order

On September 29, SF submitted a letter requesting a case management conference to address how the parties can move to a prompt resolution of this action. (Doc. 454.)  As a result of the Order extending the stay of the Witnesses' depositions, the current discovery schedule has been thrown into doubt.  While two AIC witnesses have been examined in Mexico pursuant to letters rogatory, no other depositions have taken place, in large part because several of the most critical witnesses are subject to protective orders and stays.  (*See* Doc. 451, 417.)

For the reasons set forth above, SF respectfully submits the Order should be overruled.  However, even if the Order is not overruled, or if the matter cannot be decided before the Order expires on October 14 and this objection is mooted, SF believes that the Court should enter a scheduling order with firm deadlines and provide guidance to the parties as to when the Witnesses' (and all other) depositions must be complete.  SF is prepared to proceed to move this case toward trial and resolution.  However, without firm deadlines and a clear indication that the stay of these

---

[6] In fact, to make matters worse, AIC makes clear that, even if the Delaware court were to bar SF's claims, it intends to continue to litigate its counterclaims against SF in this Court, including its claim that it did not commit fraud upon SF.  (Doc. No. 14 at 59, Count V.)  The depositions AIC seeks to stay are also critical to SF's defense of that counterclaim.

critical Witnesses' depositions will not be extended again, AIC is likely to continue its pattern of delay and progress is likely to be elusive.

## **<u>CONCLUSION</u>**

For the foregoing reasons, SF respectfully submits Magistrate Judge Boal's order extending the stay of the Witnesses' depositions to October 14, 2024 was clearly erroneous and contrary to law.  Accordingly, SF respectfully requests that the Court enter an order sustaining its Objections, lifting the stay, and vacating the Protective Order.


Dated: October 3, 2024                              Respectfully submitted,


**LESSER, NEWMAN, ALEO & NASSER LLP**          **BOIES SCHILLER FLEXNER LLP**

Michael Aleo                                     /s/ *Carlos M. Sires*
Thomas Lesser                                    David Boies (admitted *pro hac vice*)
39 Main Street, Suite 1                          Brooke Alexander (admitted *pro hac vice*)
Northampton, MA  01060                           333 Main Street
Telephone:  (413) 584-7331                       Armonk, NY  10504
Facsimile:  (413) 586-7076                       Telephone:  (914) 749-8200
aleo@LLN-law.com                                 Facsimile:   (914) 749-8300
lesser@LLN.law.com                               dboies@bsfllp.com
                                                 balexander@bsfllp.com
*Counsel for Plaintiff / Counter-Defendant,*
*Servicios Funerarios GG, S.A. de C.V.*          Carlos M. Sires (admitted *pro hac vice*)
                                                 Ana Carolina Varela (admitted *pro hac vice*)
                                                 401 East Las Olas Blvd., Suite 1200
                                                 Fort Lauderdale, FL 33301
                                                 Telephone: (954) 356-0011
                                                 Facsimile:  (954) 356-0022
                                                 csires@bsfllp.com
                                                 avarela@bsfllp.com

                                                 *Counsel for Plaintiff / Counter-Defendant,*
                                                 *Servicios Funerarios GG, S.A. de C.V.*

## <u>CERTIFICATE OF SERVICE</u>

I, Carlos M. Sires, hereby certify that the above was filed through the ECF system and that I have caused a true and correct copy of the above to be served on Defendant/Counter-Plaintiff's counsel.

Date:  October 3, 2024                      By: *<u>/s/ Carlos M. Sires</u>*
                                                    Carlos M. Sires