# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Plaintiff, | |
| v. | |
| ADVENT INTERNATIONAL CORPORATION, | |
| Defendant, | |
| and | Civil Action No. 23-cv-10684-IT |
| ADVENT INTERNATIONAL CORPORATION, | |
| Counterclaim-Plaintiff, | |
| v. | |
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Counterclaim-Defendant. | |

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF ADVENT INTERNATIONAL, L.P.'S RESPONSE TO SERVICIOS FUNERARIOS' OBJECTION TO PROTECTIVE ORDER TEMPORARILY STAYING THE WESTRA, PANI, AND PAZ DEPOSITIONS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................3

      A.     SF Subjects the Targeted Advent Defendants to Criminal Process in
Mexico.....................................................................................................3

      B.     The Court Grants AIC's Motion for Protective Order and Denies SF's
Motion for Reconsideration.....................................................................4

      C.     The Court Extends the Protective Order After SF Strategically Delays the
Mexican Appellate Proceedings ..............................................................6

      D.     AIC Attempts To Push Discovery Forward, but SF Refuses ..................7

LEGAL STANDARD ...................................................................................................8

ARGUMENT ...............................................................................................................9

I.      SF'S OBJECTION SHOULD BE DENIED AT THE THRESHOLD AS MOOT ...........9

II.     JUDGE BOAL PROPERLY FOUND GOOD CAUSE TO ENTER THE
PROTECTIVE ORDER ......................................................................................10

      A.     SF Understates the Court's Broad Discretion To Issue Protective Orders ...........10

      B.     Even on SF's Terms, the Challenged Stay Was Warranted ................................11

      C.     AIC Did Not Seek the Protective Order Because of the Delaware Action,
but that Proceeding Independently Supports the Stay .........................19

III.    ANY REVISED SCHEDULING ORDER SHOULD ACCOUNT FOR THE
TARGETED ADVENT DEFENDANTS' RIGHTS.......................................................20

CONCLUSION...........................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Ashworth v. Albers Med., Inc.*,
229 F.R.D. 527 (S.D. W. Va. 2005) ............................................................................... 18

*Bessenyei v. Vermillion, Inc.*,
2012 WL 5830214 (Del. Ch. Nov. 16, 2012) ...................................................... 14

*Blandon v. Waste Pro USA, Inc.*,
2022 WL 336824 (M.D. Fla. Feb. 4, 2022) ........................................................ 10

*Bridgeport Harbour Place I, LLC v. Ganim*,
269 F. Supp. 2d 6 (D. Conn. 2002) ..................................................................... 17

*In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*,
805 F.2d 440 (1st Cir. 1986) ................................................................................. 9

*D.R. v. Bigda*,
2021 WL 1080244 (D. Mass. Mar. 18, 2021) ..................................................... 12

*Díaz-Alarcón v. Flández-Marcel*,
944 F.3d 303 (1st Cir. 2019) ................................................................................. 8

*FDA v. All. For Hippocratic Med.*,
602 U.S. 367 (2024) ............................................................................................. 10

*Green v. Cosby*,
177 F. Supp. 3d 673 (D. Mass. 2016) ............................................................. 12, 15

*Ka Lok Lau v. Holder*,
880 F. Supp. 2d 276 (D. Mass. 2012) ................................................................... 9

*Lastra v. City of New York*,
2020 WL 5596100 (S.D.N.Y. Sept. 18, 2020) ..................................................... 9

*Madanes v. Madanes*,
186 F.R.D. 279 (S.D.N.Y. 1999) ......................................................................... 12

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
385 F.3d 72 (1st Cir. 2004) ............................................................................. 10, 16

*NeighborCare of N.H., LLC v. New Hope Healthcare Sys.–Bedford, LLC*,
2013 WL 5739084 (D.N.H. Oct. 21, 2013) ......................................................... 20

*In re New Eng. Compounding Pharmacy, Inc. Prod. Liab. Litig.*,
  2015 WL 13715289 (D. Mass. July 31, 2015) .......................................... 10, 11

*Phinney v. Wentworth Douglas Hosp.*,
  199 F.3d 1 (1st Cir. 1999) ........................................................................... 8

*Ramirez Lluveras v. Pagan Cruz*,
  2010 WL 11679649 (D.P.R. Aug. 5, 2010) ................................................ 16

*Sea Salt, LLC v. Bellerose*,
  2020 WL 2475874 (D. Me. May 13, 2020) ................................................. 19

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ...................................................................................... 10

*SEC v. K2 Unlimited, Inc.*,
  15 F. Supp. 3d 158 (D. Mass. 2014) ........................................................... 16

*SEC v. O'Neill*,
  98 F. Supp. 3d 219 (D. Mass. 2015) .................................................. *passim*

*SEC v. Saad*,
  229 F.R.D. 90 (S.D.N.Y. 2005) ................................................................. 16

*Servicios Funerarios GG, S.A. de C.V. v. Advent Int'l Corp.*,
  2024 WL 2748348 (D. Mass. May 29, 2024) ............................................... 8

*Steffenberg v. Gilman*,
  2005 WL 8176506 (D. Mass. Sept. 13, 2005) .............................................. 8

*Trump v. Int'l Refugee Assistance*,
  583 U.S. 912 (2017) ...................................................................................... 9

*United States v. Gary*,
  75 F.3d 304 (1st Cir. 1996) ......................................................................... 13

*Video Tutorial Servs., Inc. v. MCI Telecommunications Corp.*,
  79 F.3d 3 (2d Cir. 1996) ............................................................................... 9

*Walsh v. Cont. Framing Builders, Inc.*,
  2023 WL 5939632 (D. Mass. Sept. 12, 2023) ............................................ 15

## Other Authorities

Fed. R. Civ. P. 12 ......................................................................................... 20

Fed. R. Civ. P. 26 .......................................................................... 10, 11, 12, 20

Fed. R. Civ. P. 72 ....................................................................................... 2, 8, 10, 13

U.S. Constitution Fifth Amendment ............................................................. 4, 11, 18

Defendant and Counterclaim-Plaintiff Advent International, L.P. f/k/a Advent International Corporation ("AIC") respectfully submits this Opposition to Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V.'s ("SF") Objection to Magistrate Judge Boal's Order on AIC's Motion To Extend the Protective Order Temporarily Staying the Depositions of James Westra, Enrique Pani, and Carlos Paz (the "Objection") (Doc. No. 460).

## **INTRODUCTION**

This is SF's *fifth* objection to an order from Judge Boal placing reasonable guardrails on the discovery process. This latest objection seeks to invalidate a limited protective order (the "Order") staying just three of 20 depositions to safeguard the rights of AIC and three of its witnesses (the "Targeted Advent Defendants") who are currently defendants in Mexican criminal proceedings that SF initiated based on the same facts it has alleged here. Judge Boal issued that Order with the benefit of over 100 pages of briefing and expert affidavits from both parties, and reached the correct result. The Order balances the need for depositions to proceed while protecting the rights of a few witnesses who are at risk due to SF's own improper conduct. This Court should affirm the Order and reject SF's tactic of objecting virtually every time it loses a discovery motion—which undermines this Court's decision to refer discovery matters to Judge Boal and disregards the substantial work the parties and the Court have already invested in presenting and resolving this issue.

Though the Order reflects a fact-intensive analysis of the interactions between several proceedings in the United States and Mexico, denying SF's Objection is a simple matter: the challenged stay has already expired, SF's Objection is moot, and the Court should overrule it on that basis alone. If the Court does reach the merits, it is evident that the Order was neither clearly erroneous nor contrary to law. A witness's status as a criminal defendant is a textbook basis to stay his deposition in a civil proceeding based on the same facts. The Order was also limited in

time and scope—crafted specifically to allow a reasonable time for a Mexican appellate court reviewing the criminal claims to rule.  Moreover, for all of SF's complaints about undue delay, the only reason the Mexican appeal did not conclude *months ago* (and moot any need for a stay) is that *SF* has delayed a ruling in that appeal with frivolous procedural roadblocks.  SF has done so to secure the precise advantage the Order is designed to prevent: deposing AIC's witnesses while they remain in criminal jeopardy.

None of SF's attacks on the Order call Judge Boal's decision into question, much less satisfy SF's heavy burden to overturn it under Rule 72.  SF's principal complaint is that the Order "prejudices" SF by "delay[ing] the entire action," but it is actually *SF* that has stalled discovery.  The Order *permitted* all other discovery (including seventeen depositions) to proceed, and AIC attempted to progress under the current schedule.  But SF has refused to take (or defend) any depositions unless it can depose AIC's witnesses in its preferred order, without ever providing any justification for its purported preference.  That manufactured delay is no basis to sustain SF's Objection.

SF's argument that the stay was flawed because it was too short for the Mexican courts to resolve the Targeted Advent Defendants' appeals is also meritless.  AIC sought the shortest stay that *could* have alleviated the burden the Mexican criminal proceedings placed on AIC and the Targeted Advent Defendants.  That it ultimately was not enough time (due in large part to a judicial strike) does not render the Order unreasonable; it simply shows that it balanced the need to protect AIC's witnesses and the parties' interest in advance this litigation.  SF is also incorrect that the Mexican appeals could not plausibly terminate the criminal proceedings—as SF implicitly recognized when it intervened to prevent the appellate court from ruling.

Unable to undercut the order on the merits, SF accuses AIC of seeking the stay in bad faith,

purportedly to freeze this action while a Delaware court (which has already permanently enjoined SF's civil action against AIC in Mexico) also considers whether SF contractually released all of its criminal claims against AIC and its affiliates. Stalling this action is not AIC's purpose—indeed, AIC has tried to press discovery forward while SF has refused to schedule any other depositions. This Court should overrule the Objection.

## **BACKGROUND**

### A.    **SF Subjects the Targeted Advent Defendants to Criminal Process in Mexico**

This action concerns SF's 2021 purchase of Gayosso from affiliates of AIC-managed investment funds. As AIC has alleged, SF has since abused the Mexican criminal justice system in an attempt to re-trade on an ordinary-course private equity deal. *See generally* Doc. No. 14. As part of that effort, SF caused a Mexican prosecutor to initiate criminal fraud proceedings and obtain arrest warrants in Mexico against, among others: (i) James Westra, a former AIC managing partner and general counsel, (ii) Enrique Pani, a former managing director of AIC's Mexican affiliate ("Advent Mexico"), and (iii) Carlos Paz, a current Advent Mexico senior director. Doc. No. 291 ("First P.O. Mot.) at 2.[1] As detailed in numerous other submissions, the arrest warrants are both factually baseless and procedurally improper.[2] The Targeted Advent Defendants have challenged both the warrants and criminal charges in Mexico, and their appeal is currently pending before a three-judge panel of a Mexican federal appellate court called a "Collegiate Court." The Collegiate

---

[1] Though the parties dispute the legitimacy of SF's criminal claims against AIC and its affiliates, it is undisputed that SF directly caused the prosecutor to bring the Mexican criminal action and could terminate it at any time. SF initiated that action through a "*querella*," a private complaint filed by a purported victim to recover damages via the Mexican prosecutor's office. Doc. No. 292-3 (Mijangos Decl.) ¶¶ 32–37.

[2] *See, e.g.*, Doc. No. 14 ¶¶ 14–32, 176–207; Doc. No. 18 at 6–8; Doc. No. 75 at 5–6; Dkt. No. 88 at 2; Doc. No. 120 at 10–12; Doc. No. 145 (filed under seal at Doc. No. 154) at 5–18; Doc. No. 188 at 3–4; Doc. No. 355 at 5–6; First P.O. Mot. 3.

Court has the authority not only to cancel the arrest warrants, but also to invalidate the criminal proceedings against the Targeted Advent Defendants in their entirety.  Doc. No. 292-3 ("Mijangos Decl.") ¶¶ 9–11.  While the Targeted Advent Defendants remain in criminal jeopardy, the Mexican constitution affords them a broad right not to testify in parallel civil proceedings, analogous to the self-incrimination right under the Fifth Amendment to the U.S. Constitution.  *Id.* ¶¶ 21–31.

## B.    The Court Grants AIC's Motion for Protective Order and Denies SF's Motion for Reconsideration

Despite the pending criminal proceedings and arrest warrants in Mexico (and perhaps because of them), SF informed AIC that it intended to take the depositions of the Targeted Advent Defendants no later than April 4, 2024.  First P.O. Mot. 4.[3]  AIC was concerned that subjecting the Targeted Advent Defendants to depositions while they remained in criminal jeopardy would prejudice those witnesses as well as AIC—including by (i) forcing them to choose between forfeiting their right not to testify under the Mexican constitution or invoking that right and risking an adverse inference against AIC, and (ii) giving SF, which has the unilateral power to terminate the criminal proceedings against the Targeted Advent Defendants at any time, undue leverage over AIC's key witnesses at the time of their depositions.  As AIC's motion explained, Courts routinely stay civil depositions in analogous circumstances.  *See* First P.O. Mot. 5–6 (collecting authority).  At the time, AIC projected that the Collegiate Court would resolve the Targeted Advent Defendants' appeals by mid-June and, accordingly, moved to stay their depositions until June 13, 2024.  *Id.*  AIC was later forced to revise its projection from June to September after SF intervened

___

[3] SF criticizes AIC for not seeking to stay the Targeted Advent Defendants' depositions until "10 months after receipt of SF's initial disclosures listing the Witnesses," Obj. 6, but until SF indicated its intent to depose those individuals by a particular date, there was nothing to stay.  Nor could AIC have predicted the status of the Targeted Advent Defendants' criminal appeals ten months in advance.  After SF noticed those depositions, AIC promptly moved for a stay more than two months before the then-prevailing date for the close of fact discovery.

to stall the Mexican appeal, as described further below.  Doc. No. 404 ("Status Rep.") at 2.

AIC's concerns about its witnesses' rights intensified in early June, when it learned that SF was seeking to extradite Mr. Pani, who lives in the United States, to Mexico.  Doc. No. 382 ("Supp. P.O. Submission") at 3–4.  By doing so, SF apparently seeks to depose Mr. Pani—essentially conducting a full cross-examination—and then make him unavailable for trial, where AIC would otherwise conduct his direct examination.  *Id.*  That eventuality vastly increased the risk of prejudice from holding Mr. Pani's deposition before resolution of his criminal appeal, and AIC identified the issue in a supplemental submission before Judge Boal.  *See id.*

Judge Boal heard oral argument on June 12.  On July 5, she entered an order staying the Targeted Advent Defendants' depositions until August 30.  Doc. No. 418 ("First P.O.").  The order held that as long as those witnesses "remain subject to criminal proceedings in Mexico," they would be burdened by "either asserting or waiving their rights against self-incrimination under Mexican law."  *Id.* at 5.  Based on AIC's estimate that the Collegiate Court would rule by September, Judge Boal set the protective order to expire on August 30, 2024.  P.O. Order 6.

SF moved for reconsideration of the protective order, arguing that the Targeted Advent Defendants had waived the right not to testify in this action by verifying the complaint in a Delaware action seeking to enforce SF's contractual promise not to assert claims against them in connection with the Gayosso transaction.  *See* Doc. No. 425.[4]  Judge Boal denied SF's

---

[4] The Delaware action arises out of a Guarantee pursuant to which certain AIC-managed funds (the "Guarantors") agreed to backstop the Gayosso sellers' indemnity obligations up to approximately $200 million in exchange for SF's agreement (i) not to bring any transaction-related claims against "Non-Parties" (*i.e.*, AIC or anyone else except the Gayosso sellers or Guarantors), and (ii) to bring any permitted claims in Delaware.  *See generally* Doc. No. 430 at 5–8.  After SF breached that agreement by initiating civil and criminal proceedings against Non-Parties in Mexico and in this Court, AIC and the Guarantors sued—in Delaware, pursuant to the Guarantee's forum-selection clause—to enforce the Guarantee.  *Id.*  In June 2024, the Delaware Court held that "[SF]

reconsideration motion, Doc. No. 434, and SF did not object to that denial.

**C.   The Court Extends the Protective Order After SF Strategically Delays the Mexican Appellate Proceedings**

On June 13, 2024—exactly when AIC expected the Collegiate Court to rule on the Targeted Advent Defendants' appeals—SF intervened in the Collegiate Court as an "interested third party" to assert that Mr. Westra had forged his own signature on appellate documents filed between seven and 20 months before.   Doc. No. 404 ("Status Rep.") at 2.   SF's challenge to Mr. Westra's signatures was both nonsensical and demonstrably false.   Not only does Mr. Westra have no plausible motive to forge his own signature (and every reason to appeal the arrest warrant against him), but he has since submitted a sworn statement affirming all the signatures in question—*along with videos that show him signing some of the challenged documents*.   Status Rep. 3.   Nonetheless, SF did not withdraw its challenge.   And because the Targeted Advent Defendants' appeals are consolidated into a single proceeding, SF's challenge to Mr. Westra's signature precluded the Collegiate Court from deciding any of the three pending appeals until it resolved SF's challenge.   Doc. No. 430 at 4.   Judge Boal factored in that delay when she set the original protective order to expire on August 30.   First P.O. 6.

Just four days after Judge Boal issued that protective order, however, SF doubled down on its delay tactic and once again intervened in the Mexican appeal—this time to delay resolution of *its own challenge* to Mr. Westra's signature, and thus stave off termination of the criminal

---

breached . . . the Guarantee by filing the Mexican civil action" and permanently enjoined SF from continuing to litigate it.   Doc. No. 431-1 (Del. Op.) at 23–28, 30–32.   The Delaware court recognized that its analysis "may well apply to the Mexican criminal action" too, *id.* at 29–30, and asked that the Targeted Advent Defendants join the action as plaintiffs (which they did) if they intend to seek that relief, Doc. No. 431-2 at 11:14–19, 12:18–23.   The Delaware Court is expected to rule shortly on whether SF (i) released all of its claims against AIC in all forums, and (ii) must terminate the Mexican Criminal Action against AIC and the Targeted Advent Defendants.

proceedings, until after the protective order expired.  To do so, SF petitioned the Mexican Supreme Court, the country's highest court, to assume jurisdiction and resolve an ancillary procedural matter (*i.e.*, whether the Collegiate Court should review Mr. Westra's signature on all Mexican filings or just those filed with it directly).  Doc. No. 436 ("P.O. Extension Mot.") at 5.  SF's petition was pure pretext.  Not only is the issue facially insufficient to merit Supreme Court review, but SF had also *already asked the Collegiate Court* to decide the exact same question two weeks before.  *See id.* at 5.  Indeed, the Collegiate Court had already scheduled a hearing to resolve SF's request on August 8—which would have left ample time to resolve the appeals before August 30.  *See id.* at 5.  It was only after Judge Boal issued the protective order (and identified its expiration date) that SF abandoned its own request to seek the same relief in a more time-consuming way.

Because SF's petition divested the Mexican Collegiate Court of jurisdiction pending consideration by the Mexican Supreme Court, the Targeted Advent Defendants' appeals will remain in limbo until the Mexican Supreme Court denies SF's petition or rules on the merits.  *See* Doc. No. 437-4.  When AIC realized that process would extend beyond August 30, it moved to extend the protective order by 45 days—the minimum time in which the Supreme Court could reasonably deny SF's petition and remand the case.  *See* P.O. Extension Mot. 6.  As before, AIC sought only a limited stay under which "any remaining document productions, hearings pursuant to letters rogatory in Mexico, and the seventeen other depositions to which the parties are entitled . . . could continue . . . ."  *Id.* at 12.  "After careful review and consideration of the parties' submissions," Judge Boal extended the stay until October 14, 2024.  Doc. No. 451.

### D.   AIC Attempts To Push Discovery Forward, but SF Refuses

SF's claim that "[t]he predictable result of the Order extending the stay is that discovery has now stalled and the entire schedule in this case has been thrown into doubt," Obj. 7, again omits SF's principal role in delaying the schedule.  AIC never sought to stall discovery, much less

"the entire schedule in this case."  On the contrary, the Order to which SF objects stayed only *three of twenty* depositions, while allowing all other aspects of discovery to proceed.  But SF has unilaterally refused to conduct any depositions—insisting (without providing any justification for its purported preference) that if it cannot depose the Targeted Advent Defendants first, it will neither depose AIC's witnesses nor produce its own.  On September 5, two months before the close of fact discovery, AIC reached out to SF to schedule the depositions of six witnesses (both AIC's and SF's) whose depositions had not been stayed, and to solicit SF's position on a protocol for Spanish-language depositions.  SF failed to respond for six weeks, opting instead to seek an extension of the schedule while blaming AIC and Judge Boal for the need to do so.  *See* Obj. 7. When it finally did respond (three days ago), it made clear that it would not make any of its witnesses available until AIC scheduled the Targeted Advent Defendants' depositions.

## LEGAL STANDARD

As this Court has explained, "[a] magistrate judge's ruling on a . . . discovery motion is entitled to substantial deference."  *Servicios Funerarios GG, S.A. de C.V. v. Advent Int'l Corp.*, 2024 WL 2748348, at *1 (D. Mass. May 29, 2024).  Unless that ruling is "clearly erroneous or is contrary to law," the magistrate's decision will stand.  Fed. R. Civ. P. 72(a).  "[S]howing clear error . . . is no easy task.  It is not enough that a finding strikes [the reviewing court] as possibly or even *probably* wrong.  Rather . . . the finding must be wrong with the force of a 5 week old, unrefrigerated, *dead fish*."  *Díaz-Alarcón v. Flández-Marcel*, 944 F.3d 303, 312–13 (1st Cir. 2019) (citations omitted).  It is thus "extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge."  *Steffenberg v. Gilman*, 2005 WL 8176506, at *10 (D. Mass. Sept. 13, 2005); *see also Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (magistrate judge's ruling must be upheld unless, "after scrutinizing the entire record, [the district judge] form[s] a strong, unyielding belief that a mistake has been made").

## ARGUMENT

This Court should overrule the Objection for two independent reasons.  First, the Objection is moot because the challenged order has already expired.  Second, the Order was a proper exercise of Judge Boal's discretion, and was neither clearly erroneous nor contrary to law.

## I.      SF'S OBJECTION SHOULD BE DENIED AT THE THRESHOLD AS MOOT

Though Judge Boal had good cause to grant AIC's motion, *see infra* Section II, this Court need not wade into the merits because the challenged stay has already expired.  It is well established that where an order has "expired by its own terms," an appeal "no longer presents a live case or controversy." *Trump v. Int'l Refugee Assistance*, 583 U.S. 912 (2017).  Rather, "[a]n interlocutory appeal from a temporary stay no longer in effect . . . is the paradigm of a moot appeal." *Video Tutorial Servs., Inc. v. MCI Telecommunications Corp.*, 79 F.3d 3, 5 (2d Cir. 1996); *see also In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440, 448–49 (1st Cir. 1986) (challenge moot once order "expired of its own terms"); *Lastra v. City of New York*, 2020 WL 5596100, at *2 (S.D.N.Y. Sept. 18, 2020) (same principle applies to objection to magistrate judge order).  The Objection should be denied at the threshold on this basis.

Even SF concedes that if the Objection is not "decided before the Order expires . . . [it] is mooted." Obj. 18.  SF nonetheless attempts to justify its appeal by arguing that Judge Boal could grant future stays, *id.* at 1, 7, but that is irrelevant to the justiciability of *this* Objection.  Any further stay would require an independent showing of good cause, its own review on the merits, and (should SF insist) its own objection.  To the extent SF hopes this Court will decide a moot objection to dissuade Judge Boal from granting future stays, *see id.* at 1, that request should be denied.  The "most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Ka Lok Lau v. Holder*, 880 F. Supp. 2d 276, 280 n.29 (D. Mass. 2012); *accord FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 378 (2024).  That applies equally to objections

under Rule 72, even if their subject matter "may become relevant at some point in the future." *Blandon v. Waste Pro USA, Inc.*, 2022 WL 336824, at \*2 (M.D. Fla. Feb. 4, 2022).

## II.   JUDGE BOAL PROPERLY FOUND GOOD CAUSE TO ENTER THE PROTECTIVE ORDER

### A.   SF Understates the Court's Broad Discretion To Issue Protective Orders

SF spends the bulk of its brief (Obj. 8–18) conducting a lengthy, one-sided analysis of the "*Microfinancial* factors" that aid courts in determining whether "to stay civil proceedings" in their entirety. *See Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004). But those factors are merely instructive where, as here, the challenged order stays a small subset of discovery (in this case, just three of 20 total depositions) rather than the whole action. *See In re New Eng. Compounding Pharmacy, Inc. Prod. Liab. Litig.*, 2015 WL 13715289, at \*7 (D. Mass. July 31, 2015) ("[*Microfinancial*] is not entirely applicable here as the [movant] is not seeking a stay of all civil proceedings pending resolution of the criminal case."). Since the factors SF relies on are not controlling, its arguments—which are unavailing in any event, *see infra* Section II.B— are no basis to find the Order "clearly erroneous or contrary to law."

Rather, as Judge Boal recognized (and SF largely ignores) Rule 26 *independently* confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *New Eng. Compounding Pharmacy*, 2015 WL 13715289, at \*7 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)); *see also* Fed. R. Civ. P. 26(c)(1) (authorizing orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden"). And courts in this district routinely stay depositions to vindicate witnesses' "entitle[ment] to defend both the civil and criminal cases without the defense of either prejudicing [their] rights in the other." *SEC v. O'Neill*, 98 F. Supp. 3d 219, 222–23 (D. Mass. 2015) (ordering that criminal defendant not be deposed until all other civil discovery is complete, without reference

to *Microfinancial*); *see also* First P.O. Mot. 5–6 (collecting additional authority).  That is precisely

the basis for the Order here.  *See* First P.O. 5–6; P.O. Extension Mot. 8–11.  Thus, regardless of

whether the *Microfinancial* factors are satisfied (and they are, as set forth in II.B *infra*), the Order

was a proper exercise of the Court's discretion under Rule 26.

### B.       Even on SF's Terms, the Challenged Stay Was Warranted

In any event, far from requiring Judge Boal to deny AIC's requested protective order, a

*Microfinancial* analysis amply supports the limited stay of those three depositions.

### 1.       *AIC and Its Witnesses Would Be Burdened Absent a Stay (Factor 2).*

Under the Mexican constitution, criminal defendants like the Targeted Advent Defendants

have a fundamental right not to testify in civil matters during the pendency of parallel criminal

charges against them, a right that mirrors the Fifth Amendment rights of criminal defendants in

the United States.   First P.O. Mot. 4, 6; Mijangos Decl. ¶¶ 21–31.   Because the factual

underpinnings of this action and the Mexican criminal actions are identical, "any attempt by [SF]

to depose the [Targeted Advent Defendants] will necessarily implicate" their right not to testify

about such matters under Mexican law.  *New Eng. Compounding Pharmacy*, 2015 WL 13715289,

at *8 (applying equivalent analysis under the Fifth Amendment).   Given the complete overlap of

issues, parties, and witnesses, "even . . . apparently innocuous topics could be fraught with peril

for th[e] defendants given the criminal allegations against them."  *Id.*

Thus, as the court explained in *O'Neill*, forcing the Targeted Advent Defendants to sit for

deposition puts them "between the proverbial rock and hard place."  98 F. Supp. 3d at 223.  Though

AIC and its affiliates "have an interest in having the civil case move forward, . . . that outcome

would run the risk of [their] having to be deposed (and thereby, risk compromising [their] criminal

defense), or having to accept an adverse inference if [they] choose not to answer questions in a

civil deposition."  *Id.*; *accord D.R. v. Bigda*, 2021 WL 1080244, at *3 (D. Mass. Mar. 18, 2021)

(reaffirming stay of criminal defendant's deposition to avoid the same dilemma); *Green v. Cosby*, 177 F. Supp. 3d 673, 679–80 (D. Mass. 2016) (same).  As Judge Boal explained, "[w]hile the Targeted Advent Defendants remain subject to criminal proceedings in Mexico, either asserting or waiving their rights . . . could have negative consequences for them."  First P.O. 5.

At least two additional factors render the risk to AIC and its witnesses especially severe in this case.  First, the Mexican prosecutor has repeatedly demonstrated a willingness to collude with SF and mischaracterize evidence in pursuit of criminal sanctions in Mexico—increasing the risk that the Targeted Advent Defendants' testimony would be leveraged against them.  *See, e.g.*, Doc. No. 14 ¶¶ 29–32, 182–203; Doc. No. 129 at 3; Doc. No. 274 at 9–10; Doc. No. 355 at 9.  Second, regardless of whether the Targeted Advent Defendants invoke their privilege (and regardless of whether their testimony is ever used in Mexico), forcing them to testify under the cloud of a criminal prosecution *that SF controls* gives SF undue leverage over AIC's witnesses at their depositions.  That advantage is further compounded by SF's efforts to extradite Mr. Pani to Mexico.  Not only does that increase SF's leverage over Mr. Pani at his deposition, but if SF somehow succeeds, AIC would also be unable to clarify or expand on the resulting testimony through direct examination.  *See* Supp. P.O. Submission 3–4.  In addition to weighing heavily under *Microfinancial*, this burden alone justifies the Order under Rule 26.  *See supra* Section II.A.

SF's attempts to undermine AIC's burden are unavailing.  SF's primary argument—that AIC and its witnesses cannot invoke a Mexican constitutional privilege here—is incorrect and irrelevant.  As AIC's prior briefing explained, comity principles readily support applying the witnesses' rights in this case.  *See* Doc. No. 317 at 4–5; *see also Madanes v. Madanes*, 186 F.R.D. 279, 286 (S.D.N.Y. 1999) (United States "has little stake in overriding a foreign law privilege that closely parallels a right under the United States Constitution").  But even if they did not, the Court

may stay proceedings for good cause *regardless of whether it recognizes the testimonial privilege*. As Judge Boal explained, "[r]uling whether the privilege is unavailable in the United States would not eliminate the burden the Targeted Advent Defendants would face in Mexico." First P.O. 6.

SF's further suggestion (Obj. 16) that AIC has waived or weakened its burden arguments because the Targeted Advent Defendants verified the complaint in the related Delaware action makes even less sense. *See generally* Doc. No. 430.[5] Not only is waiver of a right not to testify "limited to the particular proceeding in which the witness appears," *United States v. Gary*, 75 F.3d 304, 312 (1st Cir. 1996), but undergoing a hostile, seven-hour cross-examination by SF is also infinitely more burdensome than filing a two-sentence verification, *see* Doc. No. 430 at 2, 13. What is more, the allegations the Targeted Advent Defendants verified in Delaware barely overlap with their anticipated testimony here. *See* Doc. No. 431-1 ("Del. Op.") at 16 ("This suit and the Massachusetts action lack substantial similarity."). While this action primarily concerns the parties' *substantive* claims (*i.e.*, SF's allegations of fraud and AIC's allegations of abuse of process), the Delaware action is laser-focused on whether SF contractually released its claims against AIC and others, irrespective of their merits. The events detailed in the Delaware complaint—SF's breaches of the Guarantee—are *not* the issues for which the Targeted Advent Defendants face criminal prosecution. *See* Doc. No. 430 at 2, 11–13 & nn.4–5.[6]

Furthermore, the only reason the Targeted Advent Defendants verified the Delaware

---

[5] This argument was the entire basis for SF's motion for reconsideration, Doc. No. 425, which was denied. Doc. No. 434. SF did not object to that order, and thus cannot question that decision now. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").

[6] That the Delaware Complaint contains a *general* denial of wrongdoing, *see* Obj. 16, is irrelevant. Broadly asserting that SF's claims lack merit is miles apart from the sort of *specific* testimony SF would attempt to elicit from the Targeted Advent Defendants in deposition. As every criminal defendant who declines to take the stand after pleading "Not Guilty" knows, a blanket denial of guilt does not waive the right against self-incrimination.

Complaint in the first place is that doing so was the only way to enforce SF's contractual promise not to assert the criminal claims it brought against them in Mexico. Before the Targeted Advent Defendants joined the Delaware action, the Delaware court determined that the Guarantee prohibited SF's Mexican civil claims against AIC, and recognized that its holding "may well apply to the Mexican criminal action" too. Del. Op. 29–30. But it also indicated that it could enjoin the criminal proceedings against the Targeted Advent Defendants only if they became plaintiffs themselves, Doc. No. 431-2 at 11:14–19, 12:18–23, which (under Delaware Court of Chancery rules) required them to verify the complaint, *see Bessenyei v. Vermillion, Inc.*, 2012 WL 5830214, at *2 (Del. Ch. Nov. 16, 2012). It would be a perverse outcome if, merely by complying with the procedural requirements to enforce SF's agreement, the Targeted Advent Defendants somehow forfeited their constitutional rights not to incriminate themselves in *the very proceedings SF initiated in violation of that agreement*. *See* Doc. No. 430 at 2.

Judge Boal was also right to reject SF's argument (Obj. 16) that the Court's confidentiality order already provides sufficient protection. The Mexican prosecutor is not bound by this Court's orders. *See* Doc. No. 317 at 5. Nor are confidentiality concerns AIC's only burden. No confidentiality order can solve for the leverage SF would have over AIC's witnesses if they are forced to testify while subject to criminal proceedings and arrest warrants that SF has the unilateral power to terminate. Indeed, SF has already used that leverage by pardoning witnesses who provided favorable testimony in the Mexican criminal proceedings. *See* Doc. No. 296 at 14–15; First P.O. Mot. 3 n.1. AIC's witnesses should be able to testify without the undue pressure of a questioner who controls the criminal case against them.

### 2. *SF's Prejudice Is Minimal and Self-Inflicted (Factor 1).*

At the same time it trivializes the burden justifying the protective order, SF also inflates its own prejudice. But the only example of purported prejudice SF offers is that the stay left them

with "only between October 14 and October 29 to conduct the depositions of" the three Targeted Advent Defendants.  Obj. 2, 9.  As an initial matter, it is hardly burdensome to conduct three depositions in fifteen days.  And in any event, SF's refusal to take or permit other depositions has mooted its purported burden.  Due to SF's obstructionism, no depositions have occurred (or are scheduled to occur) before October 29 and a new schedule is necessary.  SF's claim that it will have "only" two weeks to depose the Targeted Advent Defendants is simply not true.

But even if SF faced "some inconvenience and delay" from Judge Boal's limited stay, that would not render the Order clearly erroneous; on the contrary, it is well established that compared to the risk of delay, "protection of [a] defendant's constitutional rights . . . is the more important consideration."  *Green*, 177 F. Supp. 3d at 681 (collecting authority); *see Walsh v. Cont. Framing Builders, Inc.*, 2023 WL 5939632, at *2 (D. Mass. Sept. 12, 2023) (defendant's rights in a pending criminal case "must prevail" over "a compelling interest in defendant's timely compliance").  And SF's authority about stays that "grind discovery to a halt" (Obj. 11) does not apply, since seventeen other depositions could have gone on as scheduled if SF had not refused to conduct them.

Further, any purported prejudice SF faces is entirely of its own making.  The Collegiate Court was poised to resolve the appeals—which would have mooted AIC's stay motion and obviated any need to extend it—more than *four months ago*.  It is only SF's repeated efforts to delay that ruling that forced AIC to seek, and caused Judge Boal to grant, the extension SF now challenges.  *See* P.O. Extension Mot. 4–7.  Even more fundamentally, SF chose to pursue this civil action after it had already initiated criminal proceedings against the Targeted Advent Defendants in Mexico.  *See* First P.O. Mot. 4–7.  It is undisputed that SF could at any time direct the Mexican prosecutor to terminate the criminal cases against those witnesses *without* sacrificing its actions (civil or criminal) against AIC.  *Id.*  Since SF prefers the leverage of maintaining criminal claims

against innocent Advent personnel, it must also bear the consequences of that litigation strategy.

### 3. *Judge Boal Correctly Accounted for the Status of the Case and Convenience of the Court (Factors 3 and 7).*

SF attacks a strawman by arguing (Obj. 11–15) that the Court should not stay the case indefinitely until the Mexican criminal action concludes.  Judge Boal neither stayed the case nor did so indefinitely.  Rather, the Order stayed just three depositions for 45 days, ending more than two weeks before the intended close of fact discovery.  Courts routinely stay criminal defendants' depositions—for much longer than 45 days—while other aspects of the case proceed.  *See*, *e.g.*, *O'Neill*, 98 F. Supp. 3d at 222–23 (staying deposition until all other discovery is complete); *SEC v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y. 2005) (denying "a general stay of discovery" but staying relevant depositions until after completion of criminal trial).  None of SF's readily distinguishable authority (Obj. 12) suggests that course was error here.[7]

SF's arguments that the Mexican criminal appeals are insufficiently advanced to warrant a stay are likewise unavailing.  First, there was nothing "arbitrary," *see* Obj. 11–12, about the Order's October 14 termination date.  AIC expressly recognized that the Collegiate Court may not fully resolve the Targeted Advent Defendants' appeals by that date, but—to minimize disruption to the discovery schedule—it requested the shortest possible stay that might still give the Mexican courts time to rule.  *See* P.O. Extension Mot. 6; Doc. No. 446 ("P.O. Extension Reply") at 4.  SF's position that AIC should not even have a *chance* of having its witnesses cleared of the Mexican criminal charges before being deposed is illogical—and particularly inappropriate because SF *caused* the

---

[7] *See Microfinancial*, 385 F.3d at 79 (denying "indefinite" stay of entire case "on the brink of trial"); *Ramirez Lluveras v. Pagan Cruz*, 2010 WL 11679649, at *5 (D.P.R. Aug. 5, 2010) (denying stay of entire case pending completion of criminal case); *SEC v. K2 Unlimited, Inc.*, 15 F. Supp. 3d 158, 161 (D. Mass. 2014) (same).  *K2* is especially inapt because, unlike here, "the allegations in [the] criminal and civil cases [we]re different."  15 F. Supp. 3d at 161.

uncertainty about when the Collegiate Court would be able to rule.  P.O. Extension Mot. 4–7.  It would set a dangerous precedent to reward SF for purposefully undermining a Court order by allowing it to depose AIC's witnesses under unfair circumstances.

SF is also wrong (Obj. 13–14) that "no matter how the [] appeal is resolved, it will not put the criminal matter to rest."  Although it is true that the appeal "concerns the validity of the [Targeted Advent Defendants'] arrest warrants," Obj. 3, a principal basis of that appeal is that the *underlying charges are improper*.  If the Collegiate Court rules on those grounds, it can terminate the criminal proceedings in their entirety.  *See supra* Background A.  And as SF notes, the Delaware court could *also* order SF to terminate the Mexican criminal proceedings—an independent avenue by which those proceedings could terminate imminently.  *See infra* II.C. Thus, even if the challenged stay were tied to the resolution of the Mexican criminal case (and it is not), it would not invite undue delay.  *See Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 9 (D. Conn. 2002) ("Though the criminal case here will not be resolved by the end of the year, the projected completion does not seem to create inordinate delay.").

### 4.    *SF, Not AIC, Has Acted in Bad Faith (Factor 6).*

The challenged stay was also a justified response to SF's attempt to circumvent the prior protective order.  *See* P.O Extension Mot. 4–11; P.O. Extension Reply 4–5.  There is simply no good-faith explanation for SF's multiple efforts to prevent a ruling on the Mexican criminal appeals—each of which corresponds precisely to relevant events in this litigation.  On the exact date by which AIC projected the Collegiate Court would rule (and just one day after Judge Boal indicated she would extend deposition deadlines), SF precluded the Collegiate Court's ruling by claiming Mr. Westra forged his own signature on pleadings filed 20 months earlier, based on a "discrepancy" it had apparently noticed (but failed to raise) *six months before*.  *See* Obj. 14 n.4. Then, days after Judge Boal stayed the Targeted Advent Defendants' depositions until August 30,

SF *again* manipulated the appellate proceedings to ensure AIC's witnesses would remain in jeopardy beyond that date. *See supra* Background C. SF's challenge was frivolous enough on its own,[8] but its timing leaves no doubt about SF's gamesmanship.

To distract from its own bad faith, SF tries to point the finger at AIC—speculating (Obj. 17) that AIC's "ulterior" purpose for seeking a stay was to pause this litigation until the Delaware Court determines whether the Guarantee bars SF's claims. SF is wrong about AIC's motive. *See infra* II.C. But SF is also wrong to imply that AIC has *ever* concealed the Delaware litigation or its relevance to the challenged stay. *See, e.g.*, Doc. No. 43 (AIC's letter alerting the Court to the Delaware litigation on the day it was filed); P.O. Extension Mot. 12 ("A reasonable extension of the Protective Order would provide additional time for the Delaware court to rule."). Indeed, *in the same paragraph* that SF accuses AIC of subterfuge, it admits that "AIC makes no secret" of the pending motions in Delaware. Obj. 18. That is because, far from hiding that litigation, AIC expressly argued that it constitutes additional good cause for a stay. *See infra* Section II.C.

### 5. *The Interests of Third Parties and the Public Favor the Stay (Factors 4 and 5).*

SF's *Microfinancial* analysis tellingly omits two of the seven factors, each of which overwhelmingly supports Judge Boal's order. The stay benefitted the relevant third-party interests because it protected the Targeted Advent Defendants' rights. *See Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 532 (S.D. W. Va. 2005) ("[That] . . . discovery may touch on the Fifth Amendment rights of witnesses who are not parties to the civil action but who may be targets of the criminal investigation. . . . favors a stay."). Likewise, it aligned with "[t]he public['s] interest . . . in the

---

[8] SF's own pleadings argued that the purpose of the challenged signatures was to "ensure[] that the individual . . . has provided their consent" to appeal, but SF still refused to withdraw its challenge even after Mr. Westra affirmed his consent. *See* Stay Extension Mot. 5 n.2.

preservation of an individual's ability to defend in a meaningful way against both criminal charges and civil claims." *Sea Salt, LLC v. Bellerose*, 2020 WL 2475874, at *3 (D. Me. May 13, 2020).

### C.   AIC Did Not Seek the Protective Order Because of the Delaware Action, but that Proceeding Independently Supports the Stay

SF is incorrect (Obj. 2) that AIC sought a stay "to delay this action . . . in the hope of obtaining an order" in Delaware.  If that had been AIC's goal, it would have just sought that relief directly.  Nonetheless, the pending Delaware action provides *cumulative* justification for the stay. Like the Collegiate Court, the Delaware court is considering whether to terminate SF's Mexican criminal action, and a decision on that issue (fully briefed and argued since July) is likely imminent.  Since a ruling from either Mexico or Delaware could spare the Targeted Advent Defendants from having to testify while in criminal jeopardy, the pending Delaware action made it more likely that Judge Boal's order would reduce the burden on AIC and its witnesses' rights.

SF protests that considering the Delaware action at all would reward AIC for what SF calls "forum shopping."  Obj. 2, 4, 17.  SF has it backwards.  In fact, it was *SF* that forum-shopped by suing here.  AIC enforced the Guarantee in Delaware court not because it "believes its chances in Delaware are better," *contra* Obj. 18, but because (i) the Guarantee has *exclusive Delaware forum-selection and choice-of-law clauses*; (ii) the Delaware action seeks additional relief—including termination of the Guarantee and anti-suit injunctions against SF's Mexican litigation—far beyond the scope of this action; and (iii) AIC has 22 co-Plaintiffs in Delaware who are not parties here, all of whom were required to bring their claims in Delaware.  AIC is not obligated to litigate the Guarantee's meaning in this Court simply because SF sued here first (in violation of a forum-selection clause).  *See* Del. Op. 15–16 (rejecting SF's contrary argument).[9]

---

[9] That is no less true because AIC asserted an affirmative defense based on the Guarantee (lest it be waived) in this action, or consented to venue in its answer.  *Contra* Obj. 2, 17.  "[I]n the

### III.   ANY REVISED SCHEDULING ORDER SHOULD ACCOUNT FOR THE TARGETED ADVENT DEFENDANTS' RIGHTS

Because SF refused to conduct any depositions in September and October as scheduled, AIC agrees that a new schedule is necessary.   But that schedule must not become a vehicle for further gamesmanship by SF.   When Judge Boal previously warned that she was "not likely to further extend the stay," First P.O. 6, SF abused that indication by stalling the Mexican appeals so that AIC's witnesses would remain in jeopardy, *see supra* Background C.   Now that Judge Boal has foiled that attempted end-run, *id.*, SF asks *this* Court for "firm deadlines and a clear indication that the stay of the . . . depositions will not be extended again." Obj. 18–19.   But as SF's prior actions have shown, such a ruling would just give SF carte blanche to find yet another way to delay the criminal appeals in Mexico and maintain its improper leverage here.

Whether this Court maintains its referral of "all scheduling matters" to Judge Boal, Doc. No. 309, or enters a new schedule itself, AIC respectfully urges the Court not to close the door on further limited orders that may be necessary to "protect [AIC and its witnesses] from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  AIC is as invested as SF in "mov[ing] this case toward trial and resolution," Obj. 18, but doing so must account for the Targeted Advent Defendants' "entitle[ment] to defend both the civil and criminal cases without the defense of either prejudicing [their] rights in the other." *O'Neill*, 98 F. Supp. 3d at 223.

### CONCLUSION

For the foregoing reasons, the Court should overrule SF's Objection.

---

First Circuit, a forum-selection clause creates a Rule 12(b)(6) problem rather than a Rule 12(b)(3) [*i.e.*, venue] problem." *NeighborCare of N.H., LLC v. New Hope Healthcare Sys.–Bedford, LLC*, 2013 WL 5739084, at *3 (D.N.H. Oct. 21, 2013).  AIC thus preserved its defense that SF's claims are barred by the Guarantee's choice-of-forum and non-recourse provisions by asserting that SF "fails to state any claims upon which relief can be granted" and that its "claims are barred or limited by the terms of the . . . guarantee." Doc. No. 14 at 12.

Dated: October 17, 2024

Respectfully submitted,

/s/ Andrew J. Rossman

Andrew J. Rossman*
Nicholas A. S. Hoy*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad*
Valerie Ramos*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com
valerieramos@quinnemanuel.com

Joseph H. Margolies*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

*Admitted Pro Hac Vice

Counsel for Defendant and Counterclaim-
Plaintiff

Peter L. Welsh (No. 643261)
Daniel V. Ward (No. 667158)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2024, I served a copy of the foregoing document via

ECF to all counsel of record.

*/s/ Andrew J. Rossman*

Andrew J. Rossman
*Counsel for Defendant and*
*Counterclaim-Plaintiff AIC*