## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,

       Plaintiff,

v.

ADVENT INTERNATIONAL
CORPORATION,

       Defendant,

       and

ADVENT INTERNATIONAL
CORPORATION,

       Counterclaim-Plaintiff,

v.

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,

       Counterclaim-Defendant.

Civil Action No. 23-cv-10684-IT

Referral: Hon. Jennifer C. Boal

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF
ADVENT INTERNATIONAL, L.P.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO EXTEND THE PROTECTIVE ORDER
STAYING THE DEPOSITIONS OF ENRIQUE PANI AND CARLOS PAZ**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................4

      A.    The Court Grants AIC's Initial Motion For Protective Order .................................4

      B.    The Court Extends The Protective Order Following SF's Frivolous Challenge To Mr. Westra's Signature ....................................................................5

      C.    Changed Circumstances Lessen The Impact Of A Stay on SF and the Litigation Schedule ..........................................................................................6

LEGAL STANDARD .............................................................................................................8

ARGUMENT ..........................................................................................................................9

I.      AIC DOES NOT SEEK TO EXTEND THE STAY WITH RESPECT TO JAMES WESTRA ...........................................................................................9

II.     A FURTHER, LIMITED STAY IS WARRANTED TO PROTECT THE RIGHTS OF ENRIQUE PANI AND CARLOS PAZ ....................................10

CONCLUSION ....................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### <u>Cases</u>

*Green v. Cosby*,
    177 F. Supp. 3d 673 (D. Mass. 2016) ...................................................................................6, 9

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
    385 F.3d 72 (1st Cir. 2004)...........................................................................................11, 12

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984)................................................................................................................8

*SEC v. O'Neill*,
    98 F. Supp. 3d 219 (D. Mass. 2015) .................................................................................11

### <u>Rules/Statutes</u>

Fed. R. Civ. P. 26...............................................................................................................8, 11

### <u>Other Authorities</u>

Jose Orozco, *Mexico Federal Judges Group Votes to End Strike, Keep Protesting*,
    Bloomberg (Oct. 12, 2024), available at
    https://www.bloomberg.com/news/articles/2024-10-12/mexico-federal-
    judges-group-votes-to-end-strike-keep-protesting......................................................6

Defendant and Counterclaim-Plaintiff Advent International, L.P., f/k/a Advent International Corporation ("AIC") respectfully submits this memorandum of law in support of its Motion to Extend the Protective Order Staying the Depositions of Enrique Pani and Carlos Paz.

## **INTRODUCTION**

This Court previously issued and extended a protective order (the "Protective Order") temporarily staying the depositions of three current and former employees of AIC and its Mexican affiliate (the "Targeted Advent Defendants"), who are defendants in a Mexican criminal prosecution directed by Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V. ("SF"). The Protective Order was designed to safeguard the Targeted Advent Defendants' Mexican constitutional rights while permitting this matter to proceed apace. As this Court held, requiring those individuals to submit to cross-examination concerning the same allegations for which they face prosecution would prejudice their rights in the pending criminal proceedings and AIC's rights in this case. The temporary stay of those three depositions in no way impeded any of the other seventeen depositions in this proceeding from moving forward.

The Court's initial Protective Order was set to expire on August 30, 2024, by which time AIC expected a Mexican Collegiate Court to rule on the Targeted Advent Defendants' criminal appeals and potentially terminate the criminal proceedings against them. *See* Doc. No. 418. The Collegiate Court did not reach a decision by that date due to SF's frivolous challenge to one of the Targeted Advent Defendants' signatures on documents submitted more than a year earlier—and its subsequent tactical decision to prolong the delay by petitioning Mexico's Supreme Court to resolve ancillary procedural questions outside its usual jurisdiction. Upon AIC's motion, the Court extended the stay of all three Targeted Advent Defendants' depositions until October 14, 2024.

In light of the current status of the cases here and in Mexico, this Court should grant a limited, further extension of that stay **with respect to Messrs. Pani and Paz only**, through

1

December 31.  AIC is acutely aware that, as this Court has noted, whether to stay these depositions is a "highly nuanced decision involving competing interests."  One such interest is AIC's need to defend itself and advance this litigation.  Accordingly, AIC does not seek to further stay Mr. Westra's deposition even though he remains in criminal jeopardy in Mexico.  While Mr. Westra will still be burdened by a deposition, he is less vulnerable to SF's abuses than Messrs. Pani and Paz, and the parties' interest in advancing this litigation now weighs in favor of allowing that deposition to proceed.  The parties agree that the schedule should be amended to permit fact depositions through January 31st; AIC's proposed stay leaves ample time for both depositions following a court ruling terminating the Mexican criminal proceedings.

The same analysis does not apply to Messrs. Pani and Paz who, as Mexican citizens, continue to be at sufficiently substantial risk to require a continued limited stay.  SF's actions have forced Mr. Paz, who lives and works in Mexico, into hiding.  And while Mr. Pani currently lives in the United States, SF's pursuit of his extradition puts Mr. Pani in concrete fear of imprisonment in Mexico despite his innocence.  Indeed, the risk of Mr. Pani's extradition raises the further specter that SF will conduct a full cross-examination of Mr. Pani at his deposition and then, through extradition, make a key witness unavailable for AIC to examine directly at trial.  Under those conditions, the choice to which SF seeks to put these witnesses—testify in the civil case and give up their constitutional right against self-incrimination, or assert that right and prejudice AIC's civil defense—is unconscionable.  So is the prejudice to AIC if SF is given carte blanche to examine these witnesses while holding over them the unilateral power to terminate the Mexican criminal proceedings and arrest warrants against them.  This Court has already held that avoiding that burdensome choice warrants a stay; since those decisions, the burden has only grown.

The prejudice a stay would cause SF—already minimal, and twice deemed insufficient to preclude relief—has lessened even further, even as SF's wrongdoing continues to burden AIC and the Targeted Advent Defendants.  A decision terminating SF's unlawful prosecution, whether from the Mexican Collegiate Court or Delaware's Court of Chancery, is increasingly likely.   The Mexican Supreme Court, which recently ended its participation in a nationwide judicial strike, is likely to soon decide SF's handwriting objection, clearing the way for the Collegiate Court to promptly rule on the Targeted Advent Defendants' appeal.  And Delaware practice encourages the Court of Chancery to issue opinions within 90 days; under that timeline, it could issue a decision on AIC's request to enjoin the Mexican criminal proceeding by the end of this month.

Meanwhile, just as before, the limited stay AIC seeks will not delay this case at all.  AIC has not and does not stand in the way of the other *eighteen depositions* (now including Mr. Westra) that the parties are entitled to take.  In any event, SF itself has concluded that the present schedule in this case is "untenable," and has proposed extending the fact deposition cut-off until January 31.  AIC's proposed extension to December 31 is tailored with this amended cut-off date in mind, and leaves an entire month available for these two depositions.  AIC has always remained committed to making Messrs. Pani and Paz available to be deposed in this case—the only question is whether SF's unsubstantiated insistence that their depositions take place before any others outweighs the benefits of protecting their rights without affecting any other discovery deadline.

SF's abuses of the Mexican judicial process necessitated a stay of the Targeted Advent Defendants' depositions.  Its delay of their appeals required an extension of that say.  SF's delay has only continued; nonetheless, AIC's commitment to expeditiously proceeding with discovery in good faith has led it to narrow its request for a stay to only what is absolutely necessary to protect the Targeted Advent Defendants' rights.

## BACKGROUND

**A.      The Court Grants AIC's Initial Motion For Protective Order**

On July 5, 2024, the Court granted in relevant part AIC's motion for a protective order temporarily staying the depositions of three witnesses in this action—James Westra, Enrique Pani, and Carlos Paz—during the pendency of an appeal before the Mexican Collegiate Court which seeks to terminate the criminal proceedings against those defendants. *See* Doc. No. 418.  The Court held that these "Targeted Advent Defendants" would be burdened by "either asserting or waiving their rights against self-incrimination under Mexican law" as long as they "remain subject to criminal proceedings in Mexico," and that avoiding that burden was "a sufficient reason for granting a stay of the depositions." *Id.* at 5–6.  AIC's motion emphasized that it sought only a temporary stay to permit the Collegiate Court to rule, and would "make [the Targeted Advent Defendants] available for deposition in this case at the appropriate time," Doc. No. 291 at 1, 11–12.

AIC estimated that the Mexican Collegiate Court was likely to rule on the Targeted Advent Defendants' criminal appeal by mid-June. *See* Doc. No. 436, at 4; Doc. No. 404, at 3.  But SF schemed to delay the Targeted Advent Defendants' Mexican criminal appeal by mounting a frivolous challenge to Mr. Westra's signature on certain appellate documents. *See* Doc. No. 436 at 4–5; Doc. No. 404 at 2–4.  On June 13, 2024, SF filed an unsolicited submission in the Mexican Collegiate Court claiming that Mr. Westra's signature had been forged on certain appellate documents filed *up to 20 months before.*  Doc. No. 404 at 2.  SF's challenge "prevented the Collegiate Court from resolving any of the three pending appeals," and so stymied the Targeted

Advent Defendants' appeals.  Doc. No. 436.[1]  AIC was forced to revise its estimate of when the Collegiate Court would rule, and projected that it would do so by September.  Doc. No. 404.  In line with AIC's prediction, this Court set the Protective Order to expire on August 30.  Doc. No. 418 at 3, 6.  SF moved for reconsideration of the Protective Order, Doc. No. 425, which this Court denied, Doc. No. 434.

### B.     The Court Extends The Protective Order Following SF's Frivolous Challenge To Mr. Westra's Signature

Following the Protective Order, SF set to work to find a means to delay the Mexican Collegiate Court's ruling beyond the Protective Order's expiration.  Just four days after this Court granted the Protective Order staying the Targeted Advent Defendants' depositions, SF made its move.   It petitioned the Mexican Supreme Court to review the scope of its objection to Mr. Westra's signature, a question the Mexican Collegiate Court had already set a hearing to resolve *at SF's request*.  *See* Doc. No. 436 at 5–6.  SF's petition was not only duplicative of the request SF had already made to the Collegiate Court, but it was also plainly improper under the Mexican Supreme Court's practices, which limit such petitions to "matters of exceptional importance to Mexican constitutional law."  *See id.* at 6–7.  SF's gambit nonetheless achieved its objective and further delayed the Targeted Advent Defendants' appeals, making it "effectively

---

[1]  SF's objection to Mr. Westra's handwriting is remarkably baseless.  *See* Doc. No. 404, at 2-4; Doc. No. 436, at 2-5.  Mr. Westra had every reason to appeal the unlawful arrest warrants that SF procured against him, and clearly and consistently manifested his intent to do so.  That alone should have precluded SF's challenge, as explained in AIC's prior briefing.  *See* Doc. No. 436, at 2 n.2. But SF has since maintained its challenge despite Mr. Westra's submission of video evidence of him contemporaneously signing the challenged documents, and a sworn statement affirming the legitimacy of his signatures.  Doc. No. 404, at 3.  SF's response to this evidence—that its hired "experts" in "graphosocopy" had looked at various examples of Mr. Westra's signature and noticed slight differences—put the frivolity of its challenge beyond all doubt.  *See* Doc. No. 441, at 8.

impossible for the Collegiate Court to rule until more than a month after the Protective Order expires." *Id.*

In light of SF's dilatory tactics—and its attempts to exploit them by requesting an immediate deposition of the Targeted Advent Defendants—AIC moved on August 26, 2024 for an extension of the Protective Order through October 14, 2024. Doc. No. 436, at 1–2. AIC "recognize[d] the need to move this litigation forward," and accordingly "reaffirm[ed] its intent to offer the Targeted Advent Defendants for deposition at the appropriate time." *Id.* at 2. In accordance with that objective, AIC requested only a "limited stay" as to the three depositions of the Targeted Advent Defendants—but not the remaining seventeen potential depositions (or any other discovery)—to prevent SF's obstructionism from vitiating the original protective order and its objective of protecting the Targeted Advent Defendants' constitutional rights. *Id.* at 2, 10–11. This Court granted AIC's motion. Doc. No. 451.

### C.    Changed Circumstances Lessen The Impact Of A Stay on SF and the Litigation Schedule

In granting the Protective Order, this Court ruled that the importance of protecting the Targeted Advent Defendants' rights outweighed "any prejudice to the plaintiff" resulting from a stay. *See* Doc. No. 418, at 4–5; *accord Green v. Cosby*, 177 F. Supp. 3d 673, 681 (D. Mass. 2016). The Court's extension of the stay reaffirmed that holding.

Since those orders, several new developments have reduced the risk of prejudice to SF even further. *First*, a strike of Mexican federal judges that began in August—which AIC indicated could further delay the Mexican court's ruling, *see* Doc. No. 436 at 6 n.4—seems to have lifted.[2]

---

[2] *See* Jose Orozco, *Mexico Federal Judges Group Votes to End Strike, Keep Protesting*, Bloomberg (Oct. 12, 2024), available at https://www.bloomberg.com/news/articles/2024-10-12/mexico-federal-judges-group-votes-to-end-strike-keep-protesting.

As such, it is increasingly likely that, once SF's groundless objection to Mr. Westra's signature is rejected, the Collegiate Court will be able to act promptly on the Targeted Advent Defendants' appeals.

*Second*, as detailed in AIC's prior briefing, the parties to this case "are separately litigating potentially dispositive contract claims in Delaware."  Doc. No. 430, at 5.  The Delaware Court of Chancery ruled in June that SF's pursuit of a civil action against AIC in Mexico violated a binding Guarantee that SF had signed in connection with the Gayosso transaction, and "permanently enjoined" SF "from litigating the Mexican civil action against [AIC]."  *Id.* at 6–7 (quoting Doc. No. 431-1 ("Delaware Op.") at 7)).  The Delaware court further expressly recognized that its decision "may well apply to the Mexican criminal action," Delaware Op. 29–30, and so requested "supplemental submissions on the status and procedure of the Mexican criminal action."  *Id.*  After receiving those supplemental submissions—which confirmed that SF initiated the criminal proceedings and could unilaterally terminate them at any time, *see* Doc. No. 430 at 7 & n.2—the Delaware court heard argument on these issues on July 31, 2024, *id.* at 8.  Delaware procedure encourages the Court of Chancery to issue opinions within ninety days, which time runs on October 29, 2024.  *See* Appendix D-4, Delaware Judicial Branch Operating Procedures.  Accordingly, an order from the Delaware court terminating the Mexican criminal proceedings against the Targeted Advent Defendants may well issue by the end of this month or shortly thereafter.

*Third*, the schedule in this case is likely to be extended.  While the parties have continued to engage in discovery, including letter rogatory examinations in Mexico, no depositions have yet taken place.  On September 24, 2024, SF wrote to the Court that "[i]t has become apparent that the current pretrial schedule cannot hold," Doc. No. 454, at 1, and has since proposed that the fact discovery cut-off be extended until January 31, 2025.  The upshot of this is that the present

schedule, which figured heavily in the parties' prior briefing regarding the Protective Order, *see, e.g.*, Doc. No. 430, at 15–16, is likely to be significantly altered, further reducing the impact of a stay.

*Finally*, AIC requests a protective order only as to two of the Targeted Advent Defendants, rather than all three.  And the individual for whom AIC is not seeking of an extension of the Protective Order, James Westra, is the only one of the three Targeted Advent Defendants that actually worked at AIC—the defendant in this action.  SF describes Mr. Westra as one of the "most crucial witnesses in this case," having "intimate knowledge of AIC's operations generally and the Gayosso transaction specifically," and possessing testimony "critical" to SF's claims.  *See* Doc. No. 460 at 10; Doc. No. 307, at 14–15.  This significantly reduces the burden of any stay on SF.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Doc. No. 418, at 4 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  The Court may issue such an order for good cause—that is, "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* (quoting Fed. R. Civ. P. 26 (c)(1)). In addition to the power to issue protective orders, district courts have broad discretionary authority to stay a civil action "for prudential reasons," which may include the pendency of parallel criminal proceedings based on the same or similar issues.  *Id.* at 4–5.

## ARGUMENT

### I.    AIC DOES NOT SEEK TO EXTEND THE STAY WITH RESPECT TO JAMES WESTRA

AIC does not seek a further stay of Mr. Westra's deposition.[3]   As it has consistently maintained, AIC wishes to proceed expeditiously with discovery in this case.  *See, e.g.*, Doc. No. 436 at 10.  AIC has repeatedly confirmed its intent to offer the Targeted Advent Defendants for deposition at an appropriate time.  *See, e.g.*, *id.* at 1; Doc. No. 291 at 1; Doc. No. 317 at 5; Doc. No. 430 at 16; after all, these witnesses "are as important to AIC's defense as they are to SF's case-in-chief."  Doc. No. 317, at 4.

Mr. Westra remains a defendant in an illegitimate, extortionate Mexican criminal proceeding, and SF's demand to depose him will still confront him with a "difficult choice between being prejudiced in the civil litigation" if he asserts his constitutional right against self-incrimination and "being prejudiced in the criminal litigation if [he] waives that privilege in the civil litigation."  *Green v. Cosby*, 177 F. Supp. 3d 673, 69 (D. Mass. 2016); *see also* Doc. No. 418, at 5–6; Doc. No. 434; Doc. No. 451.  But as discussed below, Mr. Westra is differently situated in important respects from Messrs. Pani and Paz, and less vulnerable to SF's abuses.  Unlike SF, AIC does not seek strategic delay; it is likewise mindful of this Court's prior admonitions that it would not lightly extend the Protective Order.  Accordingly, AIC is willing to offer Mr. Westra for deposition notwithstanding the Mexican criminal proceedings against him.  SF asserts that Mr. Westra is one of the "most crucial witnesses in this case," has "intimate knowledge of AIC's operations generally and the Gayosso transaction specifically," and his testimony is "critical" to

---

[3]   Of course, in declining to renew his request for a stay, Mr. Westra maintains his objections to the propriety of any process against him in Mexico, as well as any attempt to conduct his deposition outside the United States, and reserves all his statutory and constitutional rights under United States and Mexican law.

SF's claims.  *See* Doc. No. 460, at 10; Doc. No. 307, at 14–15.  Permitting his deposition will allow for discovery in this case to further progress while safeguarding the constitutional rights of the other Targeted Advent Defendants.

## II.   A FURTHER, LIMITED STAY IS WARRANTED TO PROTECT THE RIGHTS OF ENRIQUE PANI AND CARLOS PAZ

This Court has recognized that compelling the Targeted Advent Defendants either to assert or waive their "rights against self-incrimination against Mexican law" would prejudice them as long as they "remain subject to criminal proceedings in Mexico."  Doc. No. 418, at 5; *see also* Doc. No. 434; Doc. No. 451.  "[A]voiding that burden is a sufficient reason for granting a stay."  *Id.*

As noted, all three of the Targeted Advent Defendants remain subject to Mexican criminal proceedings that SF has persistently maneuvered to extend.  SF's machinations, however, pose especially grave risks to Messrs. Pani and Paz.  Both are Mexican citizens (unlike Mr. Westra), and consequently, are far more vulnerable to SF's unlawfully procured arrest warrants.  SF's actions have forced Mr. Paz, who lives and works in Mexico, into hiding, and they have prevented Mr. Pani, who lives and works in the United States, from leaving the United States, let alone returning to his home country.

Troublingly, SF has sought to further exploit the Mexican authorities to exert additional leverage over Mr. Pani (and, in turn, AIC).  SF has requested that the Mexican prosecutor send an official letter to "the Investigation Police" to "search and locate" Mr. Pani.  Doc. No. 382 at 2 n.4.  Consistent with SF's request, the prosecutor first obtained an Interpol Red Notice and then obtained certified copies of certain arrest warrants to enable him to seek Mr. Pani's extradition from the United States to Mexico.  *See id.* at 1–2.  Of course, the threat of extradition and imprisonment on an invalid arrest warrant substantially harms Mr. Pani; but it also risks substantial prejudice to AIC—in particular, the risk that SF will conduct a full cross-examination of Mr. Pani

through deposition and then, through extradition, make a key witness unavailable for AIC to examine directly at trial. *Id.*

Under these circumstances, the relevant considerations weigh even more strongly in favor of a stay than before. *See* Fed. R. Civ. P. 26(c)(1); *see also Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (enumerating factors instructive in stay determinations).

**AIC Would Be Prejudiced Absent a Stay.**   SF's continuation of the Mexican criminal proceedings has forced Messrs. Pani and Paz to choose between exercising their Mexican constitutional rights, risking "an adverse inference if [they] refuse[] to answer questions at a deposition," and waiving those rights, in turn compelling testimony "that could be used against [them] in the criminal case." *SEC v. O'Neill*, 98 F. Supp. 3d 219, 223 (D. Mass. 2015) (staying criminal defendant's civil deposition).   Either way, SF's actions have compromised AIC and the Targeted Advent Defendants' rights "to defend both the civil and criminal cases without the defense of either prejudicing [their] rights in the other." *Id.*   As explained above, Messrs. Pani and Paz's Mexican nationality, and SF's pending extradition request, mean that the "hardship" to AIC and the Targeted Advent Defendants absent a stay has not diminished since this Court granted AIC's previous motions.

**SF Faces Minimal Prejudice from a Stay.**   Any prejudice to SF from a stay—repeatedly held insufficient to outweigh the hardship to the Targeted Advent Defendants—has been lessened even further. *See* Doc. No. 418, at 4–5.   SF may proceed with the deposition of Mr. Westra, who SF claims is "among the most crucial witnesses in the case," and "critical" to establishing its claims. *See, e.g.*, Doc. No. 360, at 10; Doc. No. 307 at 14–15.   This Court's prior Protective Orders were carefully crafted around an anticipated October 29 cutoff for fact discovery. *See, e.g.*, Doc.

No. 430 at 15–16.  SF has now concluded that cutoff is untenable and proposed to extend it until January 31.  *See* Doc. No. 454; Doc. No. 462.  Any prejudice resulting from the prior scheduling order has been eliminated.  A decision that may entirely terminate the Mexican criminal proceedings—whether from the Mexican Collegiate Court or Delaware's Court of Chancery—is also likely in the coming months.  Given those circumstances, the modest extension AIC requests will impose no burden on SF.  In any event, SF's dogged pursuit of its utterly frivolous challenge to Mr. Westra's signature confirms that it is not truly "interest[ed] in proceeding expeditiously." *Microfinancial*, 385 F.3d at 77.

**AIC Has Acted in Good Faith; SF Has Not.**  At every step, AIC has acted in good faith to protect the rights of the Targeted Advent Defendants with narrowly tailored Protective Orders. AIC sought only a limited, temporary stay, *see* Doc. No. 291, and sought to extend it only after SF manipulated the Mexican criminal justice system to delay the Targeted Advent Defendants' appeal, Doc. No. 436.  AIC has now narrowed its request further to permit Mr. Westra's deposition, making good on its promise that it would offer the Targeted Advent Defendants for deposition at an appropriate time.  In short, AIC continues to act in good faith.

SF, on the other hand, has yet to offer a credible, good-faith explanation for its conduct in the Mexican courts.  After procuring unlawful arrest warrants against various employees of the counterparty to a merger transaction, *see* Doc. No. 355, at 4–5, SF conspired to frustrate the Targeted Advent Defendants' constitutional and statutory rights in the criminal proceedings occasioned by those warrants.  The day after this Court heard argument on the original Protective Order and indicated it would consider extending the case schedule, SF delayed the Targeted Advent Defendants' appeal with a specious challenge it could have brought twenty months earlier. When confronted with video evidence disproving its absurd objection, SF doubled down,

12

procuring "experts" in "graphoscopy" to opine on Mr. Westra's "graphic gestures."  *See* Doc. No. 441 at 8.  Less than a week after this Court granted the Protective Order, SF disrupted the appeal further by bringing a groundless petition before the Mexican Supreme Court of Justice.  Those dilatory tactics have continued to prevent a ruling from the Collegiate Court and SF, not AIC, should bear the consequences of its purposeful delay.  Even now, SF seeks the extradition and imprisonment of AIC's employees—potentially depriving AIC of the benefit of the very testimony most key to establishing its abuse of process counterclaims.  This Court should not permit SF to benefit from its misconduct.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should extend the Protective Order staying the depositions of Messrs. Pani and Paz until December 31.

Dated: October 17, 2024

Respectfully submitted,

/s/ Andrew J. Rossman

| | |
|---|---|
| Andrew J. Rossman* | Peter L. Welsh (No. 643261) |
| Nicholas A. S. Hoy* | Daniel V. Ward (No. 667158) |
| QUINN EMANUEL URQUHART & | ROPES & GRAY LLP |
| SULLIVAN, LLP | Prudential Tower |
| 51 Madison Avenue, 22nd Floor | 800 Boylston Street |
| New York, New York 10010 | Boston, MA 02199 |
| (212) 849-7000 | (617) 951-7050 |
| andrewrossman@quinnemanuel.com | Peter.Welsh@ropesgray.com |
| nicholashoy@quinnemanuel.com | Daniel.Ward@ropesgray.com |

Gabriel F. Soledad*
Valerie Ramos*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com
valerieramos@quinnemanuel.com

Joseph H. Margolies*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

*Admitted Pro Hac Vice

Counsel for Defendant and Counterclaim-
Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 17, 2024, I served a copy of the foregoing document via ECF to all counsel of record.

*/s/ Andrew J. Rossman*

Andrew J. Rossman
*Counsel for Defendant and
Counterclaim-Plaintiff AIC*