**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

**Case No. 23-cv-10684-IT**

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,

      Plaintiff,

      v.

ADVENT INTERNATIONAL CORPORATION,

      Defendant.

_____/


**SF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR**
**SANCTIONS AGAINST AIC FOR ITS FAILURE TO COMPLY WITH**
**THE COURT'S ORDER REQUIRING PRODUCTION OF DOCUMENTS**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL DISCUSSION ............................................................. 4

      A.    The Documents and the Order ......................................................................... 4

      B.    AIC's Refusal to Conduct a Proper Search for the Documents............................ 5

      C.    The "Search" Undertaken by AIC Violated the Order ......................................... 7

      D.    AIC's Conduct in This Action Refutes Its Baseless Position .............................. 8

      E.    AIC Purports to Conduct a Search ...................................................................... 9

LEGAL ARGUMENT ....................................................................................................... 10

      A.    AIC Violated the Order When it Limited its Search for Documents to Application of Search Terms to ESI ................................................................... 10

      B.    AIC Should be Sanctioned for its Violation of the Order.................................... 13

            1.    AIC's Guarantee Defense Should Be Stricken or, in the Alternative, the Guarantors' Breach of the Guarantee Should Be Deemed Established.... 14

            2.    AIC Should Be Ordered to Pay SF's Reasonable Expenses..................... 20

CONCLUSION.................................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>**Cases**</u>

*Advent International Corporation, et al. v. Servicios Funerarios GG, S.A. de C.V.*,
C.A. No. 2023-0647-LWW (Del. Ch. June 7, 2024) ............................................................. 2, 3

*Bay Club Members, LLC v. Selective Ins. Co. of Am.*,
2023 WL 11868238 (D. Mass. Jan. 31, 2023) ................................................................. 10, 16

*C & J Energy Servs., Inc. v. City of Miami Gen. Empls.'*,
107 A.3d 1049 (Del. 2014) ...................................................................................................... 14

*Daval Steel Products v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991) .................................................................................................. 19

*Grover v. Larkin Iron Works, Inc.*,
2011 WL 476619 (D. Mass. Feb. 7, 2011) .............................................................................. 17

*In re: Local TV Advertising Antitrust Lit.*,
2023 WL 5659926 (N.D. Ill. Aug. 31, 2023) .......................................................................... 11

*Online Healthnow, Inc. v. CIP OCL Investments, LLC*,
2021 WL 3557857 (Del. Ch. Apr. 12, 2021) ............................................................................. 4

*Pan American Grain Manufacturing Co., Inc. v. Puerto Rico Ports Authority*,
295 F.3d 108 (1st Cir. 2002) .................................................................................................... 20

*R.W. Int'l Corp. v. Welch Foods, Inc.*,
937 F.2d 11 (1st Cir. 1991) ...................................................................................................... 15

*Raine Group LLC v. Reign Capital, LLC*,
2022 WL 538336 (S.D.N.Y. Feb. 22, 2022) ........................................................................... 10

*Saade v. Security Connection, Inc.*,
2019 WL 2477482 (D. Mass. June 13, 2019) .......................................................................... 14

*Torres-Vargas v. Pereira*,
431 F.3d 389 (1st Cir. 2005) .................................................................................................... 13

*Traverse v. Gutierrez Company*,
2020 WL 9601828 (D. Mass. April 13, 2020) ......................................................................... 15

*United States v. Toth*,
33 F.4th 1 (1st Cir. 2022) ......................................................................................................... 19

*Universal Trading & Investment Co., Inc. v. Ukraine*,
  2019 WL 5588879 (D. Mass. Jan. 25, 2019) ............................................. 15, 18, 20

*Ward v. American Mut. Liab. Ins. Co.*,
  443 N.E. 2d 1342 (Mass. 1983) ........................................................................... 14

*Waymo LLC v. Uber Technologies, Inc.*,
  2017 WL 6501798 (N.D. Cal. Dec. 15, 2017) ................................................. 11, 12

## **Statutes**

6 Del. C. § 17-1101(d) .................................................................................... 7, 17

## **Rules**

Fed. R. Civ. P. 37(b)(2) .................................................................................... 15, 20

## INTRODUCTION

Defendant Advent International Corporation ("AIC") has failed to comply with this Court's Order, Doc. 390 (the "Order"), on the motion to compel filed by Servicios Funerarios GG, S.A. de C.V. ("SF"), Doc. 301, by refusing to produce documents responsive to RFP Nos. 81-84, which concern compliance by AIC's guarantor-funds (the "Guarantors") with their funding obligations under the Guarantee they issued to SF in connection with the purchase of Gayosso (the "Documents").  The Documents go directly to AIC's attempt to enforce the Guarantee's non-recourse provision as a bar to SF's claims.  AIC's violation of the clear and direct Order is thus no small matter. If the Guarantors breached the Guarantee, AIC cannot enforce it, dooming its Seventh Affirmative Defense.

AIC's violation of the Order is also not incidental.  AIC has refused to produce the documents despite SF's requests that it comply with the Order.  And it has asserted illegitimate reason after illegitimate reason for its refusal.  AIC has based its refusal to produce the documents on the baseless proposition that it is obligated only to produce documents it has identified pursuant to the electronic search terms agreed by the parties in the Stipulation and Order for Production of Documents and ESI (the "Protocol"), Doc. 92.  AIC's position is specious and evidence of bad faith.  Neither the Protocol nor the Order purports to limit AIC's discovery obligations to *only* those documents that are "hit" by search terms applied to ESI.  That is particularly the case here, where (1) those search terms are almost certain ***not*** to hit on the Documents because they are likely financial in nature and (2) AIC can otherwise readily identify, locate, and produce the Documents.

Worse yet, in violating the Order, AIC takes positions that contradict the commitments and positions it has previously taken, underscoring its bad faith.  For instance, AIC "committed" to do a "linear review" of documents in its centralized repositories.  Yet now, having been asked to produce the Documents that would be in such repositories and found through such a "linear

review," AIC has refused to do so.  And when it has come to **AIC's** document requests **to SF**, AIC repeatedly insisted that SF not limit specific searches to the application of search terms to ESI. Yet now, it has taken the opposite position in response to the Order.  AIC is not entitled to its own set of rules – especially when dealing with the Order.

AIC's refusal to produce the Documents, based on a baseless position and a justification that is inconsistent with its own actions in this case, establishes bad faith.  This conclusion is further supported in light of AIC's attempts to enforce the Guarantee.  Beyond its Guarantee defense in this action, AIC is actively attempting to enforce the Guarantee in the later-filed Delaware action it brought against SF through motions for injunctive relief and for summary judgment.  AIC is thus seeking to enforce the Guarantee in Delaware while violating this Court's Order to produce documents that go to the enforceability of the Guarantee.[1]  AIC cannot invoke the Guarantee as a defense to SF's claims in this action and then refuse to produce documents relating to such defense in violation of the Order.  AIC's refusal to produce the Documents is part of its calculated strategy to delay litigating the enforceability of the Guarantee in this Court, even if it means violating the Order and despite the fact that AIC injected the Guarantee into this action, in the hope that the Delaware court will be more hospitable to AIC's attempt to enforce the Guarantee as a bar to SF's claims.[2]

---

[1] The Documents can be used by SF in the Delaware action.  Doc. 267 at 7, ¶ 6(i) ("discovery material produced in this action may . . . be used for purposes of . . . litigating the claims and defenses at issue in the action captioned *Advent International Corporation, et al. v. Servicios Funerarios GG, S.A. de C.V.*, C.A. No. 2023-0647-LWW (Del. Ch.)").

[2] AIC made a mid-course judgment that it likes its chances better before the Delaware court.  AIC did not file the Delaware Action until months after the commencement of this action (and, even then, did not seek an anti-suit injunction in its original complaint) and only after it answered and asserted its Guarantee defense in this action.  And, even after that, AIC filed a motion for judgment on the pleadings in this action.  Doc. 51.  In support of that motion, AIC argued that the Guarantee "bars [SF's] claims against AIC."  Doc. 52 at 9.  AIC chose not to pursue in this Court the motion

AIC's tactics succeeded in delaying production until the Delaware court issued an order. On October 29, 2024, the Delaware Court of Chancery issued an order (the "Delaware Order") finding that SF breached the Guarantee by filing suit against AIC in Mexico. Ex. A at 27-28.[3] But AIC did not succeed in obtaining an order that bars this action. On the contrary, the Delaware court denied AIC's request for a declaratory judgment that SF cannot bring this action. *Id*. Nor did the Delaware court enjoin this action. *Id*. Indeed, the Delaware court specifically acknowledged that "[w]hether fraud induced [the Gayosso] transaction is before the Mexican and Massachusetts courts." *Id*. at 15.

Yet, as soon as the Delaware Order issued, AIC once again unilaterally granted itself a stay of this case by refusing to continue participating in discovery before even seeking, let alone obtaining, any relief from this Court on the basis of the Delaware decision.[4] AIC's notification to this Court (Doc. 482) of its belief that "the Court of Chancery's decision has dispositive significance for SF's claims in this action[,]" a proposition with which SF strenuously disagrees, cannot operate to grant AIC relief in this Court which it has not yet even sought. If they wish to try an argument by analogy, they can do so in the normal course without causing further delay to a schedule this Court has finally settled, rather than turning the scheduling on its head just weeks

---

with respect to the Guarantee defense. Instead, it filed a motion for summary judgment on the Guarantee defense in the Delaware Action. *Advent International Corporation, et al. v. Servicios Funerarios GG, S.A. de C.V.*, C.A. No. 2023-0647-LWW, Doc. 52 at 16 (Del. Ch. June 7, 2024).

[3] References to "Ex. __" are to the exhibits attached to the supporting Declaration of Carlos M. Sires, Doc. 485.

[4] *Id.* ("Advent also seeks declaratory relief regarding the Massachusetts action and the Mexican criminal action. But given that the filing of the Mexican civil action caused the Guarantee to terminate, declaratory relief regarding the other suits would be meaningless. Advent is not seeking an anti-suit injunction of the Massachusetts action and, as discussed below, I decline to enjoin the Mexican civil action.") (footnotes omitted).

after its entry.

AIC's violation of the Order is inexcusable and should result in the imposition of sanctions.

## FACTUAL AND PROCEDURAL DISCUSSION

### A.    The Documents and the Order

As an affirmative defense to SF's fraud claims, AIC asserts that SF's claims are "barred or limited by the terms" of the Guarantee (the "Guarantee Defense").  Doc. 14 at 12, Seventh Affirmative Defense.  In support of the Guarantee Defense, AIC asserts that the Guarantee's non-recourse provision precludes SF from suing it for fraud in connection with the Gayosso transaction.[5]  *Id.* at 36, ¶ 136.  Because AIC seeks to enforce the non-recourse provision of the Guarantee, it will have to prove that the Guarantee is enforceable.  The Guarantee will not be enforceable against SF if the Guarantors failed to meet their obligations under it.  In other words, a prior material breach of the Guarantee will doom the Guarantee Defense.

One central obligation of the Guarantors is to fund a loss suffered by SF.  To that end, the Guarantee requires as to each Guarantor that "all funds necessary for such Guarantor to fulfill its Obligations under this Guarantee *are and shall be available* to such Guarantor (or its assignee pursuant to Section 6 of this Guarantee) *for so long as this Guarantee shall remain in effect*."  Doc. 235-2 at § 5(d) (emphasis added).  Whether the Guarantors complied with that obligation thus goes right to the heart of AIC's Guarantee Defense and, therefore, SF is entitled to discover any documents from AIC relating to AIC's compliance or non-compliance with those obligations.

---

[5] That argument is incorrect.  AIC has acknowledged to this Court the obvious fact that the Guarantee "was an integral part of the overall transaction" and was executed "in order to induce" SF to enter into the fraudulent transaction. Doc. 52 at 4. Delaware law makes clear that one committing fraud cannot escape liability through non-recourse provisions.  *See, e.g.*, *Online Healthnow, Inc. v. CIP OCL Investments, LLC*, 2021 WL 3557857, at *2 (Del. Ch. Apr. 12, 2021) ("Under Delaware law, a party cannot invoke provisions of a contract it knew to be an instrument of fraud as a means to avoid a claim grounded in that very same contractual fraud.").

For that reason, SF served upon AIC document requests specifically targeted to the Guarantee Defense, including requests for documents concerning or relating to "the reservation or availability of resources to meet the Guarantee," "calculating amounts to be held in reserve following any transaction to meet post-transaction actual or contingent obligations," and "the holding of funds in reserve in connection with the Gayosso Sale, including the calculation of amounts to be reserved and the methodology used to perform the calculation." Doc. 302-6 at 13-14.  AIC objected to producing documents in response to these relevant requests, so SF moved to compel AIC to produce them.  Docs. 301, 303.

At the hearing on the motion to compel, SF pointed out the straightforward relevance of the Documents:

> So while they're saying that they have a guarantee, we think it's relevant to know whether that guarantee really means anything, whether they [the Guarantors] established reserves, whether they have [$]200 or $300 million sitting in a bank account so that if we win we get the money.  So for them to argue that the guarantees are irrelevant when it's an affirmative defense in this case, and what they're moving on in Delaware certainly makes no sense.

Ex. B, June 12, 2024 Hr'g Tr. at 76:5-12.  The Court granted the motion, finding that the documents "are relevant and discoverable" and ordering that AIC "***shall***" produce them. Doc. 390 at 2 (emphasis added).  The Order did not limit AIC's obligations with respect to searching for and producing the Documents.

## B.     AIC's Refusal to Conduct a Proper Search for the Documents

Despite the Court's directive, AIC failed to produce the Documents.  After AIC purported to make a production pursuant to the Order (which also compelled AIC's production of documents responsive to other RFPs), SF's counsel wrote to AIC's counsel:

> [I]t appears that few, if any, documents responsive to RFPs 81-84 were produced.  In particular, we have not identified any document relating to the "reservation or availability of resources to meet the Guarantee" or the "holding of funds in reserve

in connection with the Gayosso Sale, including the calculation of amounts to be reserved . . . ."

If AIC seeks to enforce the Guarantee, it must thus produce documents that show the Guarantors have, at all times since the execution of the Guarantee, been in full compliance with their funding obligations under the Guarantee.

July 24, 2024 Letter from C. Sires to G. Soledad at 1.

To avoid confusion, SF's counsel wrote: "If it is AIC's position that it has produced all responsive documents, we request that it identify them." *Id.* In response, AIC did not confirm that it had produced the Documents. Instead, AIC's counsel advised SF that "AIC is in the process of confirming that its production of documents responsive to RFPs 81-84 ***pursuant to the Search Protocol*** is complete and will get back to you later in the week." Aug. 6, 2024 Email from M. Grealish to A. Varela (emphasis added). AIC's counsel never identified any document that had been produced concerning the funding of the Guarantee. Nor did AIC's counsel make good on its promise to confirm that AIC's production responsive to the requests for that information was complete.

More concerning about the response from AIC's counsel was the reference to AIC's production of documents having been made "pursuant to the Search Protocol." *Id*. That statement signaled that AIC had improperly limited its search for the Documents to applying search terms to the ESI that had been collected at the inception of the case. To make sure there was no misunderstanding, SF's counsel requested that AIC's counsel confirm whether AIC "is taking the position that . . . it is not required to conduct a search for responsive documents other than by conducting an electronic search applying search terms." Aug. 6, 2024 Letter from C. Sires to G. Soledad at 2. AIC confirmed that was the case. As the basis for its position, AIC's counsel responded that "Judge Boal did not grant[] an order requiring AIC to conduct an expansive review beyond its negotiated custodians and search terms." Aug. 7, 2024 Email from M. Grealish to C.

Sires.  That position made no sense because neither the Order nor the Protocol limit AIC's obligation to search for responsive documents by applying search terms to ESI.

### C.    <u>The "Search" Undertaken by AIC Violated the Order</u>

AIC is not likely to identify, collect, and produce the Documents—which are likely financial in nature—by merely applying the previously agreed search terms to ESI.  For example, documents that involve the existence and availability of funds that the Guarantors had available to meet their funding obligations under the Guarantee should include bank and financial records and statements that are not likely to be "hit" by search terms.  Moreover, those records may not be maintained in a Gayosso-specific file or in a particular custodian's email data.  Instead, they are likely to be found in other repositories where AIC maintains documents relating to the Guarantor funds.

AIC has itself recognized that some types of documents are not likely to be captured by application of search terms to ESI and thus require a traditional, linear search method to be used.  For example, concerning certain topics, AIC advised SF that, "to be clear, we do not think that [it] is appropriate for this collection or review to be ***subject to search terms***" because "[t]his ***is a request for a discrete document or set of documents that [SF] should be readily able to identify and produce*** . . . ."  Sept. 21, 2023 Email from V. Ramos to C. Sires (emphasis added).  That is precisely the case here with the Documents.

AIC knows, or reasonably should know, where the Documents are located and can readily produce them.  The Documents are not obscure records.  AIC acknowledges that the Guarantee exposes the Guarantors to a liability as high as $224.9 million.  Doc. 14 at 36, ¶¶ 129, 134.  AIC is a sophisticated entity and claims to be a "global private equity investment fund manager" with "over $92 billion in assets under management worldwide."  Doc. 14 at 22, ¶¶ 43, 45.  It is a regulated entity that owes fiduciary duties to the Guarantors.  *See, e.g.*, 6 Del. C. § 17-1101(d)

(concerning partnership duties).  It would strain credulity to accept that AIC cannot readily produce documents that show the Guarantors' compliance (or non-compliance) with their obligations under a Guarantee that subjects them to that magnitude of liability.  **Notably, AIC has not contended otherwise**.  Instead, it has refused to look for the Documents where it knows they are located.

AIC's representations to this Court and the Delaware court confirms that AIC has the Documents readily available.  In addressing the issue of the Guarantors' compliance with the Guarantee's funding obligations, AIC represented to this Court that the Guarantors are "fully funded." Ex. B at 80:15-18.  And it assured the Delaware court that it can "substantiate" the Guarantors' compliance with their funding obligations under the Guarantee.  Ex. C, July 31, 2024 Hr'g Tr. at 65:6-10.  Presumably, if AIC can make those representations to courts, it should be able to (and have already) located the supporting documents.  AIC's refusal to collect and produce these readily available documents casts doubt on the veracity of these representations.

### D.    AIC's Conduct in This Action Refutes Its Baseless Position

AIC's refusal to search for the Documents other than by search terms is inexplicable because it contradicts its prior agreements and actions in this case.  For starters, AIC "committed to conducting **a linear review** of all documents stored in Advent centralized file repositories concerning the Gayosso transaction."  Aug. 16, 2023 Letter from G. Soledad to C. Sires at 2 (emphasis added).  Yet, that is precisely what AIC has refused to do to comply with the Order.

In addition, AIC has already taken the position that a party may not search for documents merely by applying search terms to ESI.  When it came to **AIC's document requests to SF**, AIC demanded that SF conduct a manual search for documents in addition to, or instead of, an ESI search in many cases. For example, with respect to its second set of document requests, AIC identified 33 requests that, in its words, "should not be limited exclusively to an ESI search."  Sept. 28, 2023 Letter from G. Soledad to C. Sires at 3-8.  With respect to these requests, AIC advised

SF that that the requested documents "will not be sufficiently captured by a custodial review" and the requests "should be independently subject to a separate central repository search." *Id*. at 3. AIC thus demanded that "in addition to any ESI search performed, [SF] will independently obtain this information from appropriate central repositories" and other sources including SAP and SF's Mexican counsel. *Id*. at 3-8.

As another example, with respect to certain document requests, AIC took the position that SF "should produce documents in response to this request ***even if they do not hit on search terms***." Nov. 7, 2023 Email from V. Ramos to C. Sires (emphasis added). Discussing yet other requests, AIC advised SF that "[w]e expect that you will manually collect, search, and produce responsive documents from those folders ***without limiting your production by search terms***." *Id*. (emphasis added). And in another instance, AIC admonished SF that, "to be clear, we do not think that [it] is appropriate for this collection or review ***to be subject to search terms***." Sept. 21, 2023 Email from V. Ramos to C. Sires (emphasis added). These demands by AIC are inconsistent with its newfound position that it only is obligated to undertake an ESI search to collect and produce the Documents.

### E.    AIC Purports to Conduct a Search

After providing AIC with notice of this motion on October 4, 2024, AIC reiterated its disagreement with SF's understanding of its discovery obligations, but nonetheless agreed to meet and confer further on the topic.  Through those negotiations, on October 11, 2024 AIC finally agreed to produce documents sufficient to show that the Guarantors had complied with the terms of the Guarantee. In the intervening weeks, AIC has refused to provide a date certain for production, claiming it needs time to identify the right set of materials, gather them, and obtain approvals to produce – despite the repeated representations that the documents are readily available. *See* Section C, *supra.*

On November 1, 2024 AIC notified this Court that "AIC believes that the Court of Chancery's decision has dispositive significance for SF's claims in this action" (Dkt. 482), and on November 6, 2024, AIC notified SF that it did not intend to comply with the Order because, in its opinion, the Delaware Order "effectively bars [SF's] continued prosecution of this action."  Nov. 6, 2024 Email from J. Margolies to C. Sires.

## LEGAL ARGUMENT

AIC's refusal to conduct a proper search for the Documents is a brazen violation of the Order.  AIC's obligation to search for the Documents pursuant to Rule 26 has ***never*** been constricted – by the Order, the Protocol, or otherwise – to the application of search terms to ESI. Rather, AIC's basis for failing to produce the Documents has been concocted to avoid producing documents that go to the heart of its Guarantee Defense.  AIC knows where the Documents are and could have readily produced them.  It has never contended otherwise.  Its violation of the Order should be sanctioned.

### A.    AIC Violated the Order When it Limited its Search for Documents to Application of Search Terms to ESI

It is a "well-established notion that each [party] . . . is obligated to undertake a search for and submit requested documents."  *Bay Club Members, LLC v. Selective Ins. Co. of Am.*, 2023 WL 11868238, at *3 (D. Mass. Jan. 31, 2023).  AIC's contention that its obligation to search for and produce the Documents in compliance with the Order was limited to applying search terms to the ESI is meritless.

"ESI protocol and search terms work in tandem with the parties' obligations under the Federal Rules and do not replace a party's independent obligation to produce electronic (or paper) documents that are reasonably accessible, relevant, and responsive withing the meaning of Rule 34."  *Raine Group LLC v. Reign Capital, LLC*, 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022).

Nothing in this case has changed that.  Indeed, AIC and SF agreed that "neither party will treat the ESI as expanding or *reducing any rights to discovery* held by the parties."  July 27, 2023 Email from G. Soledad to C. Sires (emphasis added).  In short, AIC and SF "never reached an agreement to limit their obligation to searching for documents to only those documents that hit on agreed-upon search terms."  *Waymo LLC v. Uber Technologies, Inc*., 2017 WL 6501798, at *10 (N.D. Cal. Dec. 15, 2017).

In fact, while the parties were negotiating the Protocol, AIC informed SF that it was "not applying search terms to central repositories in AIC's control" but instead "conducting a linear review of documents in central repositories."  Aug. 16, 2023 Letter from G. Soledad to C. Sires at 5.  In AIC's words, it was "committed to conducting *a linear review* of all documents stored in Advent centralized file repositories concerning the Gayosso transaction."  *Id.* at 2 (emphasis added).  Put simply, the Protocol provides no basis for AIC's violation of the Order.

In fact, AIC's refusal to search for documents other than by applying search terms to ESI turns on its head the reason the Protocol exists, which is to assist in locating relevant documents amongst large volumes of data.  An "agreement to search terms applicable to the ESI [is] necessary and appropriate to guide fact discovery and help narrow the massive volume of documents to those most relevant to key issues."  *In re: Local TV Advertising Antitrust Lit*., 2023 WL 5659926, at *5 (N.D. Ill. Aug. 31, 2023).  The Protocol is not a tool to hide documents or refuse to produce relevant documents that a party may locate without undue burden.  As the Special Master in *Waymo* explained in ruling that Uber's exclusive use of a search based on applying search terms to ESI had been improper:

> Uber needed no such help [from agreed-upon search terms] in finding the Jacobs Materials.  There were not stowed away in a large volume of data on some server.  They were not stashed in some low-level employee's files.  Parties agree to use search terms and to look into the records of the most likely relevant custodians to

help manage the often unwieldly process of searching through massive amounts of data. These methods are particularly called for when a party, instead of merely having to look for a needle in a haystack, faces the prospect of having to look for lots of needles in lots of haystacks. This needle was in Uber's hands the whole time.

2017 WL 6501798, at *10.

AIC's argument would lead to the absurd result that a party such as AIC would not have to produce key documents it can access without any burden simply because the documents did not hit on ESI search terms. AIC cannot hide behind the Protocol as a basis to avoid producing Documents that go to the heart of the Guarantee, which it asserted as a defense in this action. There is good reason why AIC has not denied that it can access the Documents. It would simply not make sense that a sophisticated investment manager like AIC does not have within reach the financial documents that concern its managed funds' compliance with an obligation to fund what AIC admits could be claims that exceed $200 million. AIC has simply refused to look for the Documents where it knows they are located.

AIC's refusal to produce the Documents is puzzling for an additional reason. AIC has represented to this Court that the Guarantor funds "are fully funded and have – I don't know how many millions of dollars, but certainly enough to cover the amount that was guaranteed to [SF] in the documents." Ex. B at 80:15-18. And it represented to the Delaware court that it can "substantiate" the Guarantors' compliance with their funding obligations. Ex. C at 65:6-10. Presumably, AIC reviewed the Documents before it made these representations and should be able to produce them forthwith.[6]

---

[6] AIC should also not have an issue locating and producing documents setting out its policies and requirements "with respect to financial guarantees in connection with the sale of portfolio companies," RFP 81, and its "policy, procedure, or practice for calculating amounts to be held in reserve following any transaction to meet post-transaction actual or contingent obligations," RFP 83. Doc. 302-6 at 12-13. Notably, AIC has not argued otherwise. There is no assurance, however,

Finally, AIC's rationale for violating the Order is contradicted by its own actions concerning *its* document requests to SF.  AIC repeatedly insisted that (i) SF's search for responsive documents "should not be limited exclusively to an ESI search," Sept. 28, 2023 Letter from G. Soledad to C. Sires at 3-8; (ii) SF "should produce documents in response to this request even if they do not hit on search terms," Nov. 7, 2023 Email from V. Ramos to C. Sires; (iii) SF must "manually collect, search, and produce responsive documents from those folders without limiting your production by search terms," *id.*; and (iv) AIC did "not think that [it] is appropriate for this collection or review to be subject to search terms," Sept. 21, 2023 Email from V. Ramos to C. Sires.  It cannot be that SF has a greater duty to search for and produce documents than does AIC.

As AIC contended with respect to its own document requests, by their nature the Documents may not be "hit" by search terms.  On the other hand, AIC should be able to readily "manually collect, search, and produce," documents concerning "the reservation or availability of resources to meet the Guarantee," Doc. 302-6 at 13, RFP 82, and "the holding of funds in reserve in connection with the Gayosso Sale," RFP 84.  Its refusal to produce the Documents violated the Order.

### B.   AIC Should be Sanctioned for its Violation of the Order

"It is settled law that a party flouts a court order at his peril."  *Torres-Vargas v. Pereira*, 431 F.3d 389, 393 (1st Cir. 2005).  After forcing SF to move to compel production of documents that go directly to SF's ability to defend against the Guarantee Defense, AIC compounded its improper discovery conduct by violating the Court's Order that explicitly directed that AIC "shall" produce the Documents.  Doc. 390.  There is no justification for AIC's violation of the Order –

---

that an electronic search of ESI would hit on these documents, particularly if they are maintained in central files not specifically connected to the Gayosso sale.

indeed, AIC's own actions establish as much – and sanctions should be imposed.

"In determining the appropriate sanction, a court should consider the totality of the events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." *Saade v. Security Connection, Inc.*, 2019 WL 2477482, at *3 (D. Mass. June 13, 2019) (adopting Report and Recommendation by Boal, J.). AIC's actions must be judged in the context of the significance of the information it has refused to produce and the total lack of justification for its refusal.

These documents are key to AIC's efforts to use the Guarantee as a purported silver bullet to dispose of SF's fraud claims.  AIC has placed the enforceability of the Guarantee front-and-center in this case (and in the Delaware case) by asserting the Guarantee's non-recourse provision as a dispositive bar to SF's claims.  If the Guarantors breached their funding obligations under Guarantee, AIC cannot enforce the non-recourse provision against SF.[7]  In the Guarantee, each Guarantor represented that it "has the financial capacity to pay and perform its Obligations under this Guarantee," that "all funds necessary for such Guarantor to fulfill its obligations under this Guarantee are . . . available . . . for so long as this Guarantee shall remain in effect."  Doc. 235-2 at § 5(d).  SF cannot defend against the enforcement of the Guarantee based on the prior breach doctrine without these documents.  Indeed, this looks to be AIC's goal.

1.   **AIC's Guarantee Defense Should Be Stricken or, in the Alternative, the Guarantors' Breach of the Guarantee Should Be Deemed Established**

The Court should deem established as a fact that the Guarantors failed to comply with their

---

[7] *C & J Energy Servs., Inc. v. City of Miami Gen. Empls.'*, 107 A.3d 1049, 1073 n.119 (Del. 2014) ("it is a general principle of contract law that a party's prior material breach can discharge the other party's obligation to perform") (Delaware law); *Ward v. American Mut. Liab. Ins. Co.*, 443 N.E. 2d 1342, 1343 (Mass. 1983) ("It is well established that a material breach by one party excuses the other party from further performance under the contract.") (Massachusetts law).

funding obligations under the Guarantee.

"Rule 37(b) of the Federal Rules of Civil Procedure allows courts to sanction a party for disobeying a discovery order." *Universal Trading & Investment Co., Inc. v. Ukraine*, 2019 WL 5588879, at *3 (D. Mass. Jan. 25, 2019) (Boal, J.). Permissible sanctions under Rule 37(b) include "directing that certain matters or facts be taken as established [and] prohibiting the disobedient party from supporting certain . . . defenses." *Traverse v. Gutierrez Company*, 2020 WL 9601828, at * (D. Mass. Apr. 13, 2020) (Boal, J.). "Rule 37(b)(2) has two conditions precedent: a court order must be in effect, and then must be violated, before the enumerated sanctions can be imposed." *Id*. at *5 (citing *R.W. Int'l Corp. v. Welch Foods, Inc*., 937 F.2d 11, 15 (1st Cir. 1991) (cleaned up)). Here, the Court issued the Order directing the production of the Documents, and AIC violated the Order by refusing to produce.

Courts consider the following factors in determining an appropriate sanction for violation of a discovery order:

> (1) the willfulness or bad faith of the noncomplying party; (2) the prejudice to the opposing party; (3) whether the procedural history indicates "protracted inaction or deliberate delay;" (4) the disregard of earlier warnings of the consequences of the misconduct; and (5) the availability of less draconian factors.

*Acquia*, 2024 WL 3860083, at *4; *see also Traverse*, 2020 WL 9601828, at *5. These factors weigh in favor of the imposition of sanctions.

### *Willfulness or Bad Faith by AIC*

There is no question that AIC's violation of the Order was willful. AIC made the considered decision to search for the Documents exclusively by applying search terms to the ESI. It stuck to that decision even after SF explained that AIC could not limit its search for the Documents in that way.

But AIC's violation of the Order was not just willful – it crossed the line into bad faith. Rather than correct the violation when SF confronted it with the fact it had failed to produce the Documents, AIC came up with a baseless excuse that mischaracterized the Order: "Judge Boal did not grant[] an order requiring AIC to conduct an expansive review beyond its negotiated custodians and search terms." Aug. 7, 2024 Email from M. Grealish to C. Sires. But the Order neither authorized AIC to limit this search to "negotiated custodians and search terms," nor did it alter AIC's obligations under Rule 34. *See Bay Club*, 2023 WL 11868238, at *3. The Order plainly directed that AIC "shall" provide the Documents.

AIC rooted its refusal to produce the Documents on a false proposition: the exclusive method for satisfying the Protocol's obligation to search for the Documents was the application of search terms to ESI. Thus, AIC's logic goes, if the Court had wanted AIC to use a different method, it would have said so in the Order. But the Protocol says nothing of the sort. And AIC's own actions establish that it knows that.

To start, in discussions leading up to the Protocol, AIC "committed" that it would search for documents not just by applying search terms to ESI but also by conducting a "linear" search of its central document repositories. Aug. 16, 2023 Letter from G. Soledad to C. Sires at 2. The Documents are surely maintained in those repositories – and AIC has not contended otherwise. AIC has not asserted that it searched those central repositories and turned up nothing.

AIC's bad faith is also demonstrated by the position it has taken when dealing with SF's production of documents. AIC has made clear – when it came to ***its document requests to SF*** – that a search for documents limited to the application of search terms to ESI is not always sufficient, particularly when the documents are of a type that, as AIC put it, "will not be sufficiently captured by a custodial review." Sept. 28, 2023 Letter from G. Soledad to C. Sires at 3. AIC

admonished SF when discussing a search for documents requested by AIC, that "to be clear," SF could not limit its search to applying search terms on ESI.  Sept. 21, 2023 Email from V. Ramos to C. Sires.  Yet, that is precisely what AIC did in response to the Order.  There is no good faith excuse for AIC applying one standard to its requests for documents and a different, lesser standard (unsupported by law or otherwise) when it comes to complying with the Order.  "Discovery is, of course, a two-way street."  *Grover v. Larkin Iron Works, Inc.*, 2011 WL 476619, at *2 (D. Mass. Feb. 7, 2011).  And there is only one version of Rule 34.

The fact that AIC has refused to produce the Documents although it should have them readily at hand is further evidence of its bad faith.  The requested documents are not obscure records buried amid thousands of documents.  Nor is AIC an unsophisticated party – AIC claims to be a "global private equity investment fund manager," which "[t]hrough its managed funds, [] has over $92 billion in assets under management worldwide," and "[o]ver $7 billion of the capital investments of these managed funds" in Latin America.  Doc. 14 at 22, ¶¶ 43, 45.  As a regulated entity, it is required to maintain records and owes fiduciary duties to the Guarantors it manages.  *See, e.g.*, 6 Del. C. § 17-1101(d) (concerning partnership duties).  AIC acknowledges that the Guarantee exposes the Guarantors to a liability as high as US $224.9 million.  Doc. 14 at 36, ¶¶ 129, 134.  It would be illogical to contend that AIC does not readily have at hand documents that relate to this potential liability and the Guarantors' compliance with their funding obligations.

Indeed, AIC's counsel represented to this Court at the hearing on SF's motion to compel that the Guarantor funds "are fully funded and have – I don't know how many millions of dollars, but certainly enough to cover the amount that was guaranteed to [SF] in the documents."  Ex. B at 80:15-18.  And in the Delaware Action AIC's counsel represented to the court that AIC and the Guarantors could "substantiate" the Guarantors' compliance with their funding obligations under

the Guarantee.  Ex. C at 65:6-10.  These representations presumably were made after a review of the Documents, which further shows that there is no legitimate excuse for AIC to have refused to produce them.

The bad faith nature of AIC's conduct is further evidenced when viewed against the totality of the circumstances.  *See Universal Trading*, 2019 WL 5588879, at *3 ("When assessing the appropriateness of a discovery sanction, court must evaluate the totality of the circumstances.").  At the same time that it violated the Order by failing to produce documents that go to the fundamental issue of the Guarantee's enforceability, AIC was pushing ahead in the Delaware action to enforce the Guarantee's non-recourse provision.  It is quintessentially bad faith on the part of AIC to use the Guarantee in the Delaware Action while refusing to comply with the Order mandating it to provide information concerning the Guarantee's enforceability.

### *Prejudice to SF*

AIC's failure to comply with the Order has plainly prejudiced SF.  SF has had to litigate the issue of the Guarantee both in this Court and in the Delaware court with one hand tied behind its back because AIC has failed to provide the Documents.  This is not just a matter of zealous advocacy and aggressive litigation by AIC – it is an attempt by AIC to hide key Documents that go to the heart of one of AIC's defenses and undermine SF's ability to litigate.  SF has been prejudiced by having to litigate AIC's defense and claims without the benefit of the Documents.

### *AIC's Deliberate Delay*

AIC's refusal to produce the Documents based on a frivolous rationale has been part of its attempt to delay this action in the hope that it can advance its Guarantee claims in the Delaware Action and avoid litigating SF's fraud claims before this Court.  This is part of a pattern of bad-faith delay.  The Court has granted in part three motions to compel discovery against AIC.  In addition, as shown in the motion to compel with respect to SF's second set of document requests,

AIC has unjustifiably prolonged the meet-and-confer process to delay providing discovery. Doc. 358 at 1 (discussing the run-up to the motion to compel). In fact, AIC has still not fully complied with its discovery obligations, making it likely that SF will have no option but to file yet another motion to compel. Enough is enough.

### Disregard of Earlier Warnings

The Court has not previously explicitly warned AIC that the consequence of its failure to produce the Documents may lead to sanctions. But such an explicit warning is unnecessary for imposition of the requested sanctions, particularly given AIC's violation of the Order is predicated on a wholly baseless assertion – contradicted by its own actions in this case – that it need not look for documents that are readily identifiable and accessible. Parties have no "absolute entitlement to be 'warned' that they disobey court orders at their peril." *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991).

### The Availability of Less Draconian Sanctions

Having flouted a court Order mandating the production of Documents that go the heart of its Guarantee Defense, while continuing to press claims and defenses based on the Guarantee, lesser sanctions, such as the award of SF's expenses in forcing AIC to produce the Documents, will not suffice. AIC has made a bad faith business decision that the consequences of flouting the Order are acceptable if failing to produce the Documents will enable it to enforce the Guarantee to preclude SF's claims for hundreds of millions of dollars. That calculation will be rewarded if the sanction is less than establishment of the fact of the Guarantors' breach of their funding obligation under the Guarantee. *See United States v. Toth*, 33 F.4th 1 (1st Cir. 2022) (striking a defense as sanction but allowing defense of case on other issues). Respectfully, AIC's bad-faith conduct cannot be rewarded, both for purposes of this case and to discourage such conduct in other cases.

*The Totality of the Circumstances*

AIC violated the Order by failing to produce readily available documents that are relevant to a key issue in this litigation.  When that violation is viewed in the context of the totality of the circumstances, it shows that AIC acted in bad faith.  AIC not only refused to produce documents that have the potential to dispose of its defenses (and claims) based on the Guarantee – and which it unquestionably can readily locate – but did so to gain an advantage in the related litigation it has brought in Delaware.  It has now obtained that advantage.  AIC's refusal to produce the Documents is made more egregious in light of its actions seeking to enforce the Guarantee against SF in Delaware.

### 2.      AIC Should Be Ordered to Pay SF's Reasonable Expenses

"Regardless of whether the Court ultimately imposes" the sanction of deeming established that the Guarantors breached their funding obligations under the Guarantee, "it must order the disobedient party to pay the reasonable expenses caused by its noncompliance, unless the noncompliance was 'substantially justified.'"  *Universal Trading*, 2019 WL 5588879, at *3.  AIC bears the burden to show its noncompliance was substantially justified.  Fed. R. Civ. P. 37(b)(2), 1970 Advisory Committee Notes on Subdivision (b)(2).  "A substantial justification is one that could satisfy a reasonable person."  *Pan American Grain Manufacturing Co., Inc. v. Puerto Rico Ports Authority*, 295 F.3d 108, 117 (1st Cir. 2002) (internal citations omitted).  AIC cannot satisfy that burden for the reasons discussed above.

### CONCLUSION

AIC's refusal to comply with the Order to produce the Documents is inexcusable, and its bad faith conduct warrants sanction.

Date: November 7, 2024

Respectfully submitted,

**LESSER, NEWMAN, ALEO & NASSER LLP**

**BOIES SCHILLER FLEXNER LLP**

Michael Aleo
Thomas Lesser
39 Main Street, Suite 1
Northampton, MA  01060
Telephone: (413) 584-7331
Facsimile:  (413) 586-7076
aleo@LNN-law.com

By:  */s/ Carlos M. Sires*
David Boies (*pro hac vice*)
Brooke A. Alexander (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
dboies@bsfllp.com
balexander@bsfllp.com

*Attorneys for Plaintiff Servicios Funerarios GG, S.A. de C.V.*

Carlos M. Sires (*pro hac vice*)
Ana Carolina Varela (*pro hac vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022
csires@bsfllp.com
avarela@bsfllp.com

*Attorneys for Plaintiff Servicios Funerarios GG, S.A. de C.V.*

**<u>CERTIFICATE OF SERVICE</u>**

I, Carlos M. Sires, hereby certify that the above was filed through the ECF system and that I have caused a true and correct copy of the above to be served on Defendant/Counter-Plaintiff's counsel.

Date: November 7, 2024                                    By:*/s/ Carlos M. Sires*
                                                                       Carlos M. Sires