UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V.,<br><br>Plaintiff,<br>v.<br><br>ADVENT INTERNATIONAL CORPORATION,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 1:23-cv-10684-IT |

MEMORANDUM & ORDER

November 22, 2024

TALWANI, D.J.

Pending before the court is Plaintiff Servicios Funerarios's ("SF") Objection [Doc. No. 426] to the Magistrate Judge's Order on [Defendant] Advent International Corporation's [("AIC")] Motion for a Protective Order [Docket No. 284] [Doc. No. 417]. On review of the applicable law, this court finds that while a potential deponent's position in the corporate hierarchy is relevant to a movant's "good cause" showing for a protective order precluding a deposition, once the party seeking discovery has shown the relevance of the information sought, the burden of showing "good cause" remains with the movant, even when a party seeks to depose a high-level executive.[1] Applying that law here, AIC failed to show good cause to justify

[1] Defendant maintains that Plaintiff has waived its challenge to the applicable law by not raising its legal argument before the Magistrate Judge. Response to SF's Objection at 16 [Doc. No. 433]. Defendant is correct that the parties did not frame this dispute before the Magistrate Judge as turning on which party bears the burden as to the protective order being sought. The court finds no "waiver" here, however, where no judgment has entered and the legal issue could have been raised through a motion for reconsideration. The court has considered whether the legal issue should be referred to the Magistrate Judge to consider in the first instance. In the interest of moving this long-litigated dispute forward, the court declines to send the legal issue back to the Magistrate Judge, and instead addresses it here.

the protective order it sought. Therefore, and as discussed below, the grant of a protective order is REVERSED.

## I. Legal Standard

On an objection to a magistrate judge's ruling on a non-dispositive motion such as a discovery motion, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A district court reviews the magistrate judge's legal conclusions under the "contrary to law" standard. See PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010).

Unless limited by the court or by the limitations in Fed. R. Civ. P. 26(b)(2), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). On a motion to compel, a party seeking discovery "bears the initial burden of showing the relevance of the information sought." Douglas v. EF Educ. First Int'l, Ltd., 344 F.R.D. 135, 138 (D. Mass. 2023) (internal quotation omitted). If this showing is made, the burden to show the discovery request is improper moves to the party opposing discovery. DMO Norwood LLC v. Kia America, Inc., 691 F.Supp.3d 252, 257 (D. Mass. 2023) (internal citation omitted).

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . ." Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense, including . . . forbidding the disclosure or discovery." Id. "If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2). The party moving for a protective order bears the burden of showing good cause for the protective order. See Ameristar Jet Charter, Inc. v. Signal Composites, 244 F.3d 189, 192 (1st Cir. 2001) ("Upon a showing of 'good cause' by the movant . . . .") (emphasis added).

The First Circuit has imposed limitations on depositions of high-ranking government officials. See Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007).[2] It has not, however, addressed whether a similar categorical rule should apply to depositions of "high-ranking officials in private institutions . . . ." Race v. Cambridge Health Alliance, No. 1:23-cv-10143-JEK, 2024 WL 2330741, at *5 (D. Mass. May 22, 2024).

Some district courts have alluded to special frameworks—lumped under the umbrella of "the apex doctrine"—in deciding whether to allow a high-level executive to be deposed. The Magistrate Judge utilized such a framework here:

> [S]pecial considerations arise when a party attempts to depose high-level corporate executives. Such "[h]ighly-placed executives are not immune from discovery." . . . . Courts, however, have acknowledged that precluding or conditionally deferring the depositions of such executives may be appropriate where they lack specific and unique knowledge related to the suit. . . . Where executives do have such knowledge, and where other avenues of discovery do not provide an adequate substitute, courts have denied protective orders.

---

[2] The Bogan court found the need to limit access to high government officials through the discovery process "well established," where the Supreme Court has indicated that "the practice of calling high ranking government officials as witnesses should be discouraged." 489 F.3d at 423 (citing United States v. Morgan, 313 U.S. 409, 422 (1941)). Accordingly, courts have concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify or be deposed regarding their reasons for taking official action, but that such depositions may be permitted where high ranking officials have first-hand knowledge related to the claim and other persons cannot provide the necessary information. Id.

Order on [AIC's] Motion for a Protective Order [Docket No. 284] at 5 [Doc. No. 417] (internal citations omitted).

But any such framework should be, at most, "merely a tool for guiding the Court's analysis in determining whether to limit discovery . . . because [it] can be obtained from some other source that is more convenient, less burdensome, or less expensive [or is not proportional to the needs of the case]." Bassett v. Tempur Retail Stores, LLC, No. 22-cv-11127-NMG, 2024 WL 3415981, at *2 (D. Mass. July 15, 2024). Cf. Viscito v. National Planning Corporation, No. CV 3:18-30132-MGM, 2020 WL 4274721, at *2 (D. Mass. July 24, 2020) (quoting United States ex rel. Galmines v. Novartis Pharms. Corp., No. 06-3213, 2015 WL 4973626, at *2 (E.D. Pa. Aug. 20, 2015)) ("The apex doctrine does not represent an exception to the rule that a party seeking to quash a subpoena bears the 'heavy burden' of demonstrating that the subpoena represents an undue burden.").

This framework or doctrine may be seen simply as a way to square the "broad allowance for discovery of party witnesses under the federal rules" with the need to "limit the potential for the discovery rules to serve as a tool for harassment." Apple Inc. v. Samsung Electronics Co., Ltd., 282 F.R.D. 259, 263 (N.D. Cal. 2012).

Where a potential deponent is far removed from the facts at issue and is high in the corporate hierarchy, seeking the individual's deposition can indicate harassment or another improper purpose for the deposition. As the Apple court stated, "the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex [framework] become." Id. (emphasis added). But the

framework is at most a shorthand. It must properly follow from the normal application of discovery rules.

Applying the usual discovery rules, a party seeking to depose the company president over a slip-and-fall in an individual store would likely fail to meet her burden to show that this witness has information relevant to her claim under Fed. R. Civ. P. 26(b)(1). A more complex example might be an attempt to depose the company president in connection with a claim for failure to pay wages for hours worked by an individual employee. In that circumstance, the employee may well be able to show that the executive has information relevant to the employee's claim under Fed. R. Civ. P. 26(b)(1); the burden would then shift to the party opposing a motion to compel to show that the material was not proportional to the case under that rule or, if seeking a protective order, to show "good cause" under Fed. R. Civ. P. 26(c) for why the deposition should not go forward. That party resisting discovery may well seek to show "annoyance . . . or undue burden or expense" by establishing that a lower-level managerial employee has more direct knowledge than the store manager as to the disputed facts in the case and that the store manager has no unique knowledge. But it remains the party resisting discovery that must make the good cause showing, even where an "apex" employee is involved.

"A finding of good cause [for a protective order] must be based on a particular factual demonstration of potential harm, not on conclusory statements." Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986) (citing 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2035, at 264-65 (1970)). The amount of factual support needed to show "good cause" will necessarily vary by case. Where the parties dispute the facts forming the basis of the movant's "good cause" showing, mere argument by the movant, without evidence offered in support, may not be enough. And unsubstantiated assertions of fact will not suffice for showing "good cause"

where the party opposing the protective order offers evidence that undermines the movant's allegations.

## II. Background

This case concerns the sale of Gayosso, S.A. de C.V. ("Gayosso"), Mexico's oldest active funeral-services company, to Plaintiff SF, a Mexican corporation. Compl. ¶¶ 2, 6 [Doc. No. 1]. Several special-purpose entities entered into a Stock Purchase Agreement ("SPA") with SF for the purpose of selling Gayosso's capital stock, including real estate assets, to SF. Id. at ¶ 10. SF alleges that they did so on instructions from Defendant AIC, a U.S. private equity investment company, and that financial representations made in the SPA did not reflect Gayosso's true financial situation. Id. at ¶¶ 3, 21, 25, 26, 29, 30, 31, 32, 33.

Plaintiff seeks to take the deposition of Juan Pablo Zucchini. According to Plaintiff, Zucchini was the co-head of AIC's Latin American operations, Mem. on Motion for Protective Order at 4 [Doc. No. 285], and one of 14 Managing Partners of AIC who "manages the execution of [AIC's] investment strategy across Latin America," including AIC's investment in Gayosso. Objection at 4 [Doc. No. 426].

According to Defendant, there are three layers of the AIC corporate hierarchy relevant to this dispute. In ascending order, these layers are:

- The "Deal Team," which consisted of "then-Advent Mexico employees Carlos Peña Vasquez, Enrique Pani Bano, and Veronica Stenner, supported by a fourth Advent Mexico employee, Carlos Alfredo Paz Perez." Def.'s Mem. in Support of Motion for Protective Order at 5 [Doc. No. 285]. Defendant contends that this team "conducted the entirety of the negotiations and due diligence process for the sale." Id..

- AIC's Latin American Investment Advisory Committee ("LatAm Advisory Committee"), an eight-member team that, according to Defendant, "evaluat[ed] the business case for the transaction based on summary information provided by AIC deal team . . . and contribut[ed] to the exit memorandum" recommending the Gayosso transaction. Objection at 4 [Doc. No. 426]. The parties agree that Zucchini was a member of the LatAm Advisory Committee. See Objection at 4 [Doc. No. 426]; Response to Objection at 6 [Doc. No. 433].[3]
- AIC's Latin American Investment Committee ("LatAm Investment Committee"), which Defendant alleges "evaluated the transaction based on the recommendation of the LatAm Advisory Committee and a high-level overview of the transaction prepared by the Deal Team." Response to Objection at 8 [Doc. No. 433].

The parties dispute the extent of Zucchini's involvement in and knowledge of the Gayosso transaction. Plaintiff alleges not only that Zucchini was substantively involved in the deal but also that Zucchini has unique personal knowledge about communications he had with agents or principals of SF after AIC sold Gayosso in January 2021. Opp. To Motion for Protective Order at 3 [Doc. No. 305]; Objection at 2 [Doc. No. 426]. Plaintiff points to WhatsApp messages between individuals involved in negotiating the transaction, where members of the deal team stated, among other things, that it would be "very difficult for [a deal term] to fly" with Zucchini, see October 12, 2020 Messages at 5 [Doc. No. 392-11], that they had to "defend" a deal point to Zucchini, see September 1, 2020 Messages at 6 [Doc. No. 392-13],

[3] According to Defendant, despite Zucchini's role on the LatAm Advisory Committee, he was not an employee of Defendant or its Mexican affiliate but instead worked for AIC's Brazilian affiliate. Response to Objection at 5 [Doc. No. 433].

and that Zucchini recommended that AIC should accept a proposed price for the deal, see August 21, 2020 Messages at 9 [Doc. No. 392-12].

Plaintiff seeks to depose Zucchini in part to "probe his understanding and recollection of both the communications and the circumstances surrounding them regarding AIC's response to the allegations and the fallout from the deal." Opp. To Motion for Protective Order at 3 [Doc. No. 305]. Plaintiff further alleges that Zucchini has knowledge of conversations with Octavio Trejo, Gayosso's former CFO, whom Defendant maintains was responsible for ensuring the final accuracy of AIC's financial statements. Id.

Defendant insists that these messages show only that Zucchini "at times check[ed] in on the status of the Transaction and weigh[ed] in on top-line deal items . . . that were negotiated and then reported to him by others," particularly the Deal Team. Response to Objection at 7 [Doc. No. 433]. Defendant notes that Zucchini did not negotiate or sign the SPA or the related financial guarantee. Id. Zucchini's "only knowledge of the Transaction," according to Defendants, was reported to him by the three-person deal team and Carlos Alfred Paz, an Advent Mexico employee. Id. at 8.

## III. Discussion

The parties do not dispute that Zucchini has information that is relevant to Plaintiff's claims and Defendant's defenses pursuant to Fed. R. Civ. P. 26(b)(2). AIC argues that Zucchini does not possess uniquely relevant information and that SF should be required to exhaust less burdensome discovery methods before deposing him. These arguments go to whether this court should grant a protective order pursuant to Fed. R. Civ. P. 26(c)(1). Accordingly, Defendant bears the burden in this dispute. But by merely arguing that Zucchini was a high-level executive who supervised the Gayosso transaction, and offering no specific evidence regarding Zucchini's

role to support its motion or to counter the evidence offered by Plaintiff that Zucchini was substantively involved in the deal, Defendant has failed to show "good cause" for the protective order.

Defendant contends that "Mr. Zucchini's relationship to the Gayosso Transaction was in his ordinary role as an apex executive—exercising general supervisory authority over Advent's Latin American operations and serving as one of eight LatAm Advisory Committee members who recommended approval of the Gayosso Transaction based on materials prepared by the Deal Team at Advent Mexico." Def.'s Mem. in Support of Motion for Protective Order at 9 [Doc. No. 285]. Accordingly, Defendant argues, "whatever relevant information Mr. Zucchini can provide to SF would be duplicative of (and far more limited than) what SF can obtain from" other sources, including members of the Deal Team. Id. at 5, 11. Defendant further argues that Zucchini has a "limited connection to this dispute" because his role was on AIC's LatAm Advisory Committee, which allegedly made its collective recommendation to the LatAm Investment Committee "based exclusively on the summary information provided by the Deal Team." Id. at 6.

Plaintiff counters that Zucchini has unique knowledge not available from other sources because Zucchini's role as senior member of AIC's LatAm Advisory committee put him in a position to "evaluate[] the business case for the transaction." Opp. To Motion for Protective Order at 1 [Doc. No. 305]. Plaintiff contends further that Zucchini "possesses personal knowledge about communications that he personally had with the principal of Servicios Funerarios after AIC sold Gayosso to Servicios Funerarios in January 2021." Id. Plaintiff argues

that Zucchini has knowledge about communications between Zucchini and agents or principals of SF and about communications with Gayosso's former CFO, Octavio Trejo. Id. at 3.[4]

While Plaintiff and Defendant have traded arguments about Zucchini's knowledge, Plaintiff noted, as early as in its opposition to Defendant's motion for a protective order, that Zucchini has not submitted any affidavit regarding his purported lack of personal knowledge of this matter. Opp. To Motion for Protective Order at 4 [Doc. No. 305]. Indeed, Defendant has submitted no evidence in support of its arguments. Plaintiff, on the other hand, has offered WhatsApp messages showing that employees negotiating the Gayosso transaction were concerned about Zucchini's opinion on the timing of the transaction, see October 12, 2020 Messages at 5 [Doc. No. 392-11], that Zucchini unexpectedly called the employees negotiating the transaction about specific issues with the transaction, see September 1, 2020 Messages at 6 [Doc. No. 392-13], and that Zucchini required frequent updates on the transaction. See November 30, 2020 Messages at 7 [Doc. No. 392-15]; December 7, 2020 Messages at 3 [Doc. No. 392-16]. These messages undermine Defendant's arguments about Zucchini's lack of unique knowledge.

It is not enough for Defendant to cite the apex doctrine and aver that Zucchini merely "exercised general supervisory authority over the deal" and "at times check[ed] in on the status of the transaction and weigh[ed] in on top-line deal items. . . ." Response to Objection at 7 [Doc. No. 433]. Zucchini is not many layers removed from the deal negotiations, and Defendant's gloss on Plaintiff's evidence of Zucchini's supervision of the deal (that he "at times" checked in) does not amount to showing "good cause." While arguments alone might be enough to show

[4] Defendant argues in response that the "communications" that Zucchini had with "agents or principals" of SF were inadmissible settlement discussions and that SF's argument about the emails of Trejo is "wild speculation." See Def.'s Reply at 3-4 [Doc. No. 316].

"good cause" in some circumstances, that is not the case here, where Defendant has the burden of showing good cause, the factual basis for Defendant's "good cause" showing is in dispute, and Plaintiff has offered evidence undermining Defendant's arguments regarding Zucchini's knowledge.

Defendant states that "[t]o the extent this Court is inclined to overrule the Objection but for the absence of a declaration from Mr. Zucchini substantiating AIC's representations concerning his role, AIC respectfully requests the opportunity to submit such a declaration." Response to Objection at 18 n.5 [Doc. No. 433]. But nothing stopped AIC from supporting its assertions when it brought the motion (or at least when Plaintiff raised the issue). Moreover, an affidavit substantiating Defendant's vague representation that he had general supervision over the deal (as AIC has represented) would not suffice to call into dispute Plaintiff's showing that Zucchini has specific knowledge and information relevant to this case and not likely to be obtained from sources who are below Zucchini in the corporate hierarchy.

Rather than establishing what knowledge Zucchini does have, Defendant has implied that any information that Zucchini could provide could be provided by Carlos Paz and the members of the deal team. Id. at 7. According to Defendant, Paz was, as of October 2023, Senior Director and Co-Head of Portfolio Support Group, Latin America, for Advent International PE Advisors, as well as a Member of the Gayosso Board of Directors. Responses to Interrogatories at 9 [Doc. No. 110-3]. Defendant also notes that Enrique Pani, a member of the deal team, was on the LatAm Advisory Committee with Zucchini. Response to Objection at 6 n.1 [Doc. No. 433]. The court notes that Defendant has also sought to block the depositions of Carlos Paz and Enrique Pani Bano for other reasons. See, e.g., Def.'s Motion to Extend the Protective Order Staying the Depositions of Enrique Pani and Carlos Paz [Doc. No. 466]. Regardless, where Zucchini is just

above Paz and at the same level as Pani in the corporate hierarchy with respect to this deal, Plaintiff's request to depose Zucchini does not raise the specter of harassment.

Because the movant bears the burden to show "good cause" even where high level executives are involved and Defendant has failed to meet that burden, AIC is not entitled to a protective order precluding the deposition of Juan Pablo Zucchini.

## IV. Conclusion

For the foregoing reasons, the Magistrate Judge's Order [Doc. No. 284] is REVERSED.

IT IS SO ORDERED.

November 22, 2024

/s/ Indira Talwani
United States District Judge