# Exhibit A

# GUARANTEE

This Guarantee (this "<u>Guarantee</u>") is made by the parties set forth on <u>Schedule A</u> (collectively, the "<u>Guarantors</u>," and each, a "<u>Guarantor</u>"), in favor of Servicios Funerarios GG, S.A. de C.V.,  a stock corporation incorporated in accordance with the laws of the Mexican United States, or the Acquirer of the Real Estate Assets, as the case may be (the "<u>Guaranteed Party</u>"), as of January 28, 2021.  Reference is hereby made to that certain Stock Purchase Agreement (as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof, the "<u>Agreement</u>"), to be entered into by and between the Guaranteed Party and TwiBel 1 SRL, TwiBel 2 SRL, TwiBel 3 SRL, TwiBel 4 SRL, TwiBel 5 SRL, TwiBel 6 SRL and TwiBel 7 SRL, incorporated pursuant to the laws of the Kingdom of Belgium ("<u>Vendor</u>"), regarding the acquisition by the Guaranteed Party of certain equity and real estate interests of Grupo Gayosso S.A. de C.V., a company organized pursuant to the laws of Mexico held, directly or indirectly, by Vendor pursuant to the transactions contemplated under the Agreement (collectively, the "<u>Transactions</u>").  Capitalized terms used herein without definition shall have the respective meanings given to them in the Agreement.

1.  GUARANTEE.  To induce the Guaranteed Party to enter into the Agreement, each Guarantor hereby absolutely, unconditionally and irrevocably guarantees, severally (but not jointly or jointly and severally) among the Guarantors to the Guaranteed Party, the due and punctual payment, performance and discharge of an amount equal to the product of (a) the percentage set forth opposite such Guarantor's name on <u>Schedule A</u> hereto (such Guarantor's "<u>Maximum Guarantor Percentage</u>") and (b) the obligation of Vendor to fund an amount equal to the amount of monetary damages (the "<u>Money Damages</u>") with respect to Section 9 of the Agreement, as determined pursuant to and subject in all respects to the terms set forth in the Agreement, including the limitations set forth in Sections 9(a), 9(b), 9(c), 9(f) and 9(g) thereof (a "<u>Payment Event</u>") up to MXN$4,076,040,000.00 (four thousand seventy six million forty thousand pesos M.N.) (such amount being such Guarantor's "<u>Payment Limit</u>"); <u>provided</u>, that in the event that Vendor is wound up, dissolved, or otherwise ceases to exist, a Payment Event shall be deemed to take place if it is determined in a final, non-appealable judgment by a court of competent jurisdiction that Vendor would have been obligated to fund the Money Damages as described in the preceding subsection (b).

The Guarantors' obligations pursuant to <u>Section 1</u> are hereinafter referred to as the "<u>Obligations</u>". Notwithstanding anything in this Guarantee, the Agreement or any other agreement to the contrary, the Guaranteed Party hereby agrees that in no event shall any Guarantor be required to pay any amount to the Guaranteed Party or any Affiliate thereof under, in respect of, or in connection with this Guarantee, the Agreement or any other agreement, in excess of, such Guarantor's Maximum Guarantor Percentage of the Payment Limit in connection with a Payment Event (such Guarantor's "<u>Cap</u>").  The parties hereto agree that this Guarantee may not be enforced without giving effect to the Cap and the immediately preceding sentence.  The Guaranteed Party may, in its sole discretion, bring and prosecute a separate action against each Guarantor for the full amount of such Guarantor's Maximum Guarantor Percentage of the Payment Limit in the case of a Payment Event, regardless of whether action is brought against Vendor or whether Vendor is joined in any such action or actions.  The Guaranteed Party agrees that it and its Affiliates shall not assert any claim, directly or indirectly, that any Guarantor is liable for an aggregate amount in excess of such Guarantor's Maximum Guarantor Percentage of the Payment Limit.  All payments hereunder shall be made in lawful money of the United States, in immediately available funds. In the event that pursuant to the Agreement a payment thereunder is denominated in the lawful money of the Mexican United States, such payment shall be made in lawful money of the United States using the exchange rate published by the Mexican Central Bank (*Banco de México*) in the Federal Official Gazette (*Diario Oficial de la Federación*).

The parties hereto acknowledge and agree that irreparable damage would occur in the event that any of the provisions of this Guarantee were not performed in accordance with its specific terms or were otherwise breached and further agree that the Guaranteed Party shall be entitled to seek an injunction, specific performance and other equitable relief against the Guarantors to prevent breaches of this Guarantee and to enforce specifically the terms and provisions hereof, in addition to any other remedy (subject to the limitations herein (including the Cap) and the waiver of claims by the Guaranteed Party hereunder (including Section 9 hereof) and the Agreement) to which it is entitled at law or in equity, and shall not be required to provide any bond or other security in connection with any such order or injunction. Each Guarantor further agrees not to oppose the granting of any such injunction, specific performance and other equitable relief on the basis that (i) the Guaranteed Party has an adequate remedy at law or (ii) an award of an injunction, specific performance or other equitable relief is not an appropriate remedy for any reason at law or in equity.

2. NATURE OF GUARANTEE. The Guaranteed Party shall not be obligated to file any claim relating to any Obligation in the event that Vendor becomes subject to a bankruptcy, reorganization or similar proceeding, and the failure of the Guaranteed Party to so file shall not affect the Guarantors' Obligations hereunder. This Guarantee is an unconditional guarantee of performance in the case of a Payment Event and not of collection. Notwithstanding any other provision of this Guarantee or the Agreement to the contrary, the Guaranteed Party hereby covenants and agrees that the Guarantors may assert, as a defense to such payment or performance by the Guarantors under this Guarantee, or as an affirmative claim against the Guaranteed Party or its Affiliates, or any Person claiming by, through or on behalf of any of them, (a) any rights, remedies, set-offs and defenses that Vendor could assert pursuant to the terms of the Agreement or pursuant to any Applicable Law in connection therewith (other than any such rights, remedies, set-offs and defenses arising out of, due to, or as a result of, the insolvency or bankruptcy of Vendor) and (b) any breach by the Guaranteed Party of this Guarantee.

3. CHANGES IN OBLIGATIONS, CERTAIN WAIVERS.

(a) The Guarantors agree that the Guaranteed Party may at any time and from time to time, without notice to or further consent of the Guarantors enter into any agreement with Vendor (in accordance with the terms thereof) for the extension, renewal, payment, compromise, discharge or release thereof, in whole or in part, or for any modification of the Agreement or of any agreement between the Guaranteed Party and Vendor without in any way impairing or affecting the Guarantors' Obligations under this Guarantee. The Guarantors agree that the Obligations of the Guarantors hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (i) the failure of the Guaranteed Party to assert any claim or demand or to enforce any right or remedy against Vendor or any other Person interested in the transactions contemplated by the Agreement; (ii) any change in the time, place or manner of payment of any of the Obligations or any rescission, waiver, compromise, consolidation or other amendment or modification of any of the terms or provisions of the Agreement made in accordance with the terms thereof, except to the extent Vendor has a defense to the payment of the Obligations under such rescission, waiver, compromise, consolidation or other amendment or modification; (iii) any insolvency, bankruptcy, reorganization or other similar proceeding affecting Vendor or any other Person (other than the Company or any of its Subsidiaries) interested in the transactions contemplated by the Agreement; (iv) the existence of any claim, set-off or other right which a Guarantor may have at any time against Vendor or the Guaranteed Party, whether relating to, arising out of or in connection with the Obligations or otherwise (other than those described in the last sentence of Section 2 of this Guarantee); or (v) the adequacy of any other means the Guaranteed Party may have of obtaining repayment of any of the Obligations.

(b) To the fullest extent permitted by Applicable Law, the Guarantors hereby expressly waive any and all rights or defenses arising by reason of any Applicable Law which would otherwise require any election of remedies by the Guaranteed Party. The Guarantors waive promptness,

diligence, notice of the acceptance of this Guarantee and of the Obligations, presentment, demand for payment, notice of non-performance, default, dishonor and protest, notice of any Obligations incurred and all other notices of any kind (except for notices to be provided pursuant to this Guarantee or to Vendor and its counsel in accordance with the Agreement), all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar Applicable Law now or hereafter in effect, any right to require the marshalling of assets of Vendor or any other Person interested in the transactions contemplated by the Agreement, and all suretyship defenses generally (other than fraud or willful misconduct by the Guaranteed Party or any of its Affiliates). Notwithstanding anything to the contrary in the foregoing clauses (i) through (v), the Guaranteed Party hereby acknowledges and agrees that it must obtain a final, non-appealable judgment by a court of competent jurisdiction of the Money Damages against the Vendor with respect to the Vendor's obligations pursuant to Section 9 of the Agreement as determined pursuant to and subject in all respects to the terms set forth in the Agreement, including the limitations set forth in Sections 9(a), 9(b), 9(c), 9(f) and 9(g) thereof, prior to enforcing the obligations of any Guarantor to pay, in the case of a Payment Event, such Guarantor's Maximum Guarantor Percentage of the Payment Limit. Notwithstanding anything to the contrary contained in this Guarantee, the Guaranteed Party hereby agrees that to the extent that Vendor is relieved of any of its obligations and liabilities under the Agreement including its obligations to fund the Closing Payment (other than, in each case, due to, in connection with, or as a result of, the insolvency or bankruptcy of Vendor), the Guarantors shall be similarly relieved of the Obligations under this Guarantee. Notwithstanding anything to the contrary in this Guarantee, any payment made by or on behalf of Vendor to the Guaranteed Party with respect to an Obligation shall reduce the total Obligations of the Guarantors under this Guarantee accordingly on a pro rata basis, based upon the percentages set forth on Schedule A hereto.

(c) The Guaranteed Party hereby covenants and agrees that it shall not institute or assert, and shall cause its Affiliates and any controlled Person claiming by, through or on behalf of any of them, not to institute or assert any action or proceeding or bring any other Claim (as defined in Section 9 hereof) of any kind whatsoever against the Guarantors, Vendor or any other Non-Parties (as defined in Section 9 hereof), except for claims against: (i) the Guarantors under and pursuant to this Guarantee and (ii) Vendor under and pursuant to the Agreement.

(d) Except as explicitly set forth herein or in the Agreement, each Guarantor hereby unconditionally and irrevocably agrees not to exercise any rights that it may now have or hereafter acquire against Vendor or any other Person interested in the transactions contemplated by the Agreement that arise from the existence, payment, performance, or enforcement of a Guarantor's Obligations under or in respect of this Guarantee, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of the Guaranteed Party against Vendor or such other Person, whether or not such claim, remedy or right arises in equity or under contract, or Applicable Law, including, without limitation, the right to take or receive from Vendor or such other Person, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim, remedy or right, unless and until such Guarantor's Maximum Guarantor Percentage of the Obligations and all other amounts payable under this Guarantee shall have been paid in full in cash; provided, that each Guarantor shall have the right to cause any other Person to satisfy its Obligations to the Guaranteed Party hereunder. If any amount shall be paid to any Guarantor in violation of the immediately preceding sentence at any time prior to the payment in full in cash of the Obligations, an amount equal to the lesser of (i) the amount paid to such Guarantor in violation of the immediately preceding sentence, and (ii) all amounts payable under this Guarantee, shall be received and held in trust for the benefit of the Guaranteed Party, shall be segregated from other property and funds of such Guarantor and shall forthwith be paid or delivered by such Guarantor to the Guaranteed Party in the same form as so received (with any necessary endorsement or assignment) to be credited and applied to the Obligations in accordance with the terms of the Agreement, whether matured or unmatured, or to be held as collateral for any Obligations thereafter existing.

4. <u>NO WAIVER; CUMULATIVE RIGHTS</u>.  No failure on the part of the Guaranteed Party to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the Guaranteed Party of any right, remedy or power hereunder preclude any other or future exercise of any right, remedy or power hereunder except as explicitly set forth herein or in the Agreement (including <u>Section 9</u> hereof).  Subject to the terms, conditions and limitations hereof (including the Cap) and of the Agreement, each and every right, remedy and power hereby granted to the Guaranteed Party or allowed to it by Applicable Law shall be cumulative and not exclusive of any other, and may be exercised by the Guaranteed Party at any time or from time to time.

5. <u>REPRESENTATIONS AND WARRANTIES</u>.  Each Guarantor hereby represents and warrants to the Guaranteed Party that:

(a) such Guarantor is a validly existing entity in good standing under its jurisdiction of organization; it has the power and authority to execute, deliver and perform its obligations under this Guarantee; the execution, delivery and performance of this Guarantee have been duly authorized by all necessary action and do not contravene any provision of the Guarantor's charter, partnership agreement, operating agreement or similar organizational documents or any Applicable Law or material contract binding on such Guarantor or its assets;

(b) all consents, approvals, authorizations, permits of, filings with and notifications to, any Governmental Entity necessary for the due execution, delivery and performance of this Guarantee by such Guarantor have been obtained or made and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any Governmental Entity or regulatory body is required in connection with the execution, delivery or performance of this Guarantee;

(c) assuming the due execution and delivery of the Agreement by all parties thereto and the due execution and delivery of this Guarantee by the Guaranteed Party, this Guarantee constitutes a legal, valid and binding obligation of such Guarantor enforceable against such Guarantor in accordance with its terms, subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium or other similar Applicable Laws affecting creditors' rights generally, and (ii) general equitable principles (whether considered in a proceeding in equity or at law); and

(d) such Guarantor has the financial capacity to pay and perform its Obligations under this Guarantee, and all funds necessary for such Guarantor to fulfill its Obligations under this Guarantee are and shall be available to such Guarantor (or its assignee pursuant to <u>Section 6</u> of this Guarantee) for so long as this Guarantee shall remain in effect in accordance with <u>Section 8</u> of this Guarantee.

6. <u>ASSIGNMENT</u>.  No Guarantor nor the Guaranteed Party may assign its respective rights, interests or obligations under this Guarantee to any other Person (except by operation of law) without the prior written consent of the Guaranteed Party (in the case of an assignment by a Guarantor) or the Guarantors (in the case of an assignment by the Guaranteed Party); provided, however, that any Guarantor may assign and transfer any or all of its rights, interests, and obligations to another private equity fund with sufficient undrawn commitments from its investors to allow it to meet the obligations assumed by it pursuant to such assignment and transfer and which is managed or advised by an affiliate of such Guarantor, provided that any such permitted assignment will not relieve such assigning Guarantor of its obligations under this Guarantee. Vendor may assign and transfer any or all of its rights, interests, and obligations under this Guarantee to Advent Twilight Luxembourg 1 S.à rl, and/or Advent Twilight Luxembourg 2 S.à rl, and/or Advent Twilight Luxembourg 3 S.à rl, and/or Advent Twilight Luxembourg 4 S.à rl, and/or Advent Twilight Luxembourg 5 S.à rl, and/or Advent Twilight Luxembourg 6 S.à rl, and/or Advent Twilight Luxembourg 7 S.à rl without the prior written consent of the Guaranteed Party. Any purported assignment in violation of this <u>Section 6</u> shall be null and void *ab initio*.

4

7.  NOTICES.  All notices, requests, demands and other communications under or relating to this Guarantee must be in writing and will be deemed given (a) when delivered personally, by hand (with written confirmation of receipt), (b) when sent by facsimile or email (with written confirmation of transmission), (c) one Business Day following the day sent by reputable, internationally recognized overnight courier (with written confirmation of receipt), or (d) upon receipt of confirmation of delivery when sent by registered or certified mail (return receipt requested), postage prepaid, in each case to the parties at the following addresses or facsimile numbers (or at such other address for a party as such party specifies by like notice given to the other parties hereto pursuant to this provision):

    If to the Guarantors, to each at:

    c/o Advent International Corporation
    Prudential Tower
    800 Boylston Street
    Boston, Massachusetts 02199
    Attention:  James Westra
    Facsimile: (617) 951-0566
    Email:  jwestra@adventinternational.com

    If to the Guaranteed Party:

    Servicios Funerarios GG, S.A. de C.V.
    Paseo de los Tamarindos No. 400-B, Floor 22
    Bosques de las Lomas, 05120
    Mexico City
    Attention: Pablo Peña Vázquez
    Email: pablo@mexcap.mx

    with a copy to (which shall not constitute notice):
    Sarur Servicios Integrales S.C.
    Paseo de la Reforma 2345-101, Colonia Lomas de Reforma,
    Miguel Hidalgo, CP. 11930,
    México City
    Attention: Raúl Sánchez Rucobo
    Email: raul.sanchez@sarur.com

8.  CONTINUING GUARANTEE.  Unless terminated pursuant to this Section 8, this Guarantee shall remain in full force and effect and shall be binding on each Guarantor, its successors and permitted assigns until either of the mutually exclusive Obligations has been indefeasibly paid, observed, performed or satisfied in full.  Notwithstanding the foregoing, or anything to the contrary expressed in or implied by this Guarantee, this Guarantee shall terminate automatically and immediately without the giving of notice and the Guarantors shall have no further obligations under this Guarantee as of the earlier of (a) the date of commencement of any litigation or other proceeding by the Guaranteed Party or any Affiliate thereof (or any controlled Person claiming by, through or on behalf of any of the foregoing) prohibited by Section 9 of this Guarantee, (b) satisfaction of such Guarantor's Maximum Guarantor Percentage of the Payment Limit pursuant to the terms hereof, and (c) the date that is ninety (90) days from the date of termination of Vendor's obligations pursuant to Section 9(f) of the Agreement under circumstances in which any portion of the Obligations is payable (unless the Guaranteed Party has made a claim under this Guarantee prior to such date, in which case the relevant date shall be the date that such claim is finally settled or otherwise resolved either in a final judicial determination or by agreement of the Guaranteed Party and the Guarantors (or their permitted assignee) and the Obligations finally determined or agreed to

be owed by the Guarantors are satisfied in full), in the understanding that this Guarantee shall remain in full force and effect indefinitely with respect to a Payment Event arising as a result of Vendor's inaccuracy of the representations contained in Sections 5.1 (except with respect to paragraph (g)), 5.2(a), 5.2(b), 5.2(c), 5.2(d), 5.2(n)(i) and 5.2(r)(i) of the Agreement.  Furthermore, upon any termination of the Agreement in accordance with its terms, the Obligations of the Guarantors regarding a Payment Event shall automatically terminate *ab initio* and be null and void (and all other provisions of the preceding sentence shall apply to such Obligations *mutatis mutandis*).

9. NO RECOURSE.

(a) Notwithstanding anything that may be expressed or implied in this Guarantee to the contrary (and subject only to the specific contractual provisions of the Agreement), by its acceptance hereof, the Guaranteed Party acknowledges, covenants and agrees that all claims, obligations, liabilities, causes of action, or proceedings (in each case, whether at law or in equity, and whether sounding in contract, tort, statute or otherwise) that may be based upon, in respect of, arise under, out or by reason of, be connected with, or relate in any manner to this Guarantee, or the negotiation, execution, performance, or breach (whether willful, intentional, unintentional or otherwise) of this Guarantee, including, without limitation, any representation or warranty made or alleged to be made in, in connection with, or an as inducement to, this Guarantee (each of such above-described legal, equitable or other theories or sources of liability, a "Claim") may be made or asserted only against (and are expressly limited to) the Guarantors as expressly identified in the preamble to and signature page(s) of this Guarantee, and shall be subject to the limitations set forth herein, including but not limited to the provisions of Section 1 hereof.  No Person who is not such a Guarantor (including, without limitation, (i) any past, present or future director, officer, employee, incorporator, member, partner, manager, direct or indirect equityholder, management company, Affiliate (other than Vendor or any assignee of Vendor or of a Guarantor under the Agreement or hereunder), agent, attorney, or representative of, and any financial advisor or lender to (all above-described Persons in this subclause (i), each a "Related Party") to a Guarantor or any Affiliate of a Guarantor, and (ii) any Related Party of such Guarantor's Related Parties (the persons in subclauses (i) and (ii), collectively "Non-Parties")) shall have any liability or obligation in respect of any Claims.

(b) Without limiting the generality of the foregoing, to the maximum extent explicitly permitted or otherwise conceivable under Applicable Law (and subject only to the specific contractual provisions of the Agreement), (i) the Guaranteed Party, on behalf of itself, its Affiliates, and any Person claiming by, through or on behalf of any of them, hereby waives, releases and disclaims any and all Claims against all Non-Parties, including, without limitation, any Claims to avoid or disregard the entity form of any Guarantor or otherwise seek to impose any liability arising out of, relating to or in connection with a Claim on any Non-Parties, whether a Claim granted by statute or based on theories of equity, agency, control, instrumentality, alter ego, domination, sham, single business enterprise, piercing the veil, unfairness, undercapitalization, or otherwise, and (ii) the Guaranteed Party disclaims any reliance upon any Non-Parties with respect to the performance of this Guarantee or any representation or warranty made in, in connection with, or as an inducement to this Guarantee.  This Section 9 shall survive the termination of this Guarantee.

(c) The Guaranteed Party hereby covenants and agrees that it shall not assert, and shall cause its Affiliates (and any controlled Person claiming by, through, or on behalf of any of the foregoing) not to assert in writing or pursue: (i) any Claim that the provisions of Section 1 of this Guarantee limiting the Guarantors' aggregate liability or the provisions of Section 8 or Section 9 of this Guarantee are illegal, invalid or unenforceable in whole or in part or (ii) any Claim whatsoever against the Guarantors or any other Non-Parties affiliated with Vendor under or in connection with this Guarantee or the Agreement and any transactions contemplated hereby or thereby or instrument delivered herewith or therewith other than

a claim (x) against the Guarantors for payment or performance of the Obligations pursuant to (and as limited by) the terms of this Guarantee or (y) against Vendor pursuant to the Agreement.

10. GOVERNING LAW; JURISDICTION AND FORUM. This Guarantee (including, without limitation, the validity, construction, effect or performance hereof and any remedies hereunder or related hereto) and all Claims shall be governed by the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware. Each of the parties hereto (for itself and on behalf of its successors and permitted assigns and any Person claiming by, through or on behalf of any of them) irrevocably agrees that any permitted Claim shall be brought exclusively in the state and federal courts located in the City, County and State of Delaware. Each of the parties hereto (for itself and on behalf of its successors and permitted assigns and any Person claiming by, through or on behalf of any of them) irrevocably and unconditionally submits to the exclusive jurisdiction of such courts in any such action, agrees to take any and all future action necessary to submit to the jurisdiction of such courts, waives and agrees not to assert (by way of motion, as a defense, counterclaim or otherwise) any objection it may now or hereafter have to venue or to convenience of forum (including: (a) any claim that it is not personally subject to the jurisdiction of the above named courts for any reason other than the failure to serve; (b) any claim that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise); and (c) to the fullest extent permitted by Applicable Law any claim that: (i) the suit, action or proceeding in such court is brought in an inconvenient forum; (ii) the venue of such suit, action or proceeding is improper; or (iii) this Guarantee, or the subject matter hereof, may not be enforced in or by such courts), agrees that all Claims shall be heard and determined only in any such court and covenants and agrees not to bring any Claim in any other court. The parties hereto agree that any of them may file a copy of this Section 10 (provided that a copy of Section 9 of this Guarantee shall accompany any such filing) with any court as written evidence of the knowing, voluntary and bargained agreement between the parties hereto irrevocably to waive any objections to venue or to convenience of forum. Each of the parties hereto irrevocably consents to the service of process out of the above-described courts in any permitted Claim in accordance with Section 7 hereof. Nothing herein shall affect the right of any party to serve process in any other manner permitted by Applicable Law.

11. WAIVER OF JURY TRIAL. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS GUARANTEE IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONTEMPLATED BY SECTION 10 HEREOF. Each party certifies and acknowledges that (a) no representative of any other party has represented, expressly or otherwise, that such other party would not seek to enforce the foregoing waiver in the event of a legal action, (b) such party has considered and understands the implications of this waiver, (c) such party makes this waiver voluntarily and (d) such party has been induced to enter into this Guarantee by, among other things, the mutual waivers and certifications in this Section 11.

12. ENTIRE AGREEMENT. This Guarantee constitutes the entire agreement with respect to the subject matter hereof and supersedes any and all prior discussions, negotiations, proposals, undertakings, understandings and agreements, whether written or oral, among the parties hereto. All parties hereto acknowledge that each party and its counsel have participated in the drafting and negotiation of this Guarantee and that any rules of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Guarantee.

13. <u>COUNTERPARTS</u>. This Guarantee may be executed and delivered (including by facsimile transmission or via portable document format (.pdf) or similar electronic means) in one or more counterparts, and by the different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original but all of which taken together shall constitute one and the same instrument.

14. <u>AMENDMENTS AND WAIVERS</u>. No amendment, waiver, supplement or modification of any provision of this Guarantee will be valid and binding unless it is in writing and signed, in the case of an amendment, supplement or modification, by the Guarantors and the Guaranteed Party or, in the case of waiver, by the party or parties against whom the waiver is to be effective. No waiver by any party hereto of any breach or violation of, or default under, this Guarantee, whether intentional or not, will be deemed to extend to any prior or subsequent breach, violation or default hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence. Subject to the terms hereof, no delay or omission on the part of any party hereto in exercising any right, power or remedy under this Guarantee will operate as a waiver thereof.

15. <u>SEVERABILITY</u>. Any term or provision of this Guarantee that is invalid or unenforceable in any situation in any jurisdiction will not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction; <u>provided</u>, <u>however</u>, that this Guarantee may not be enforced without giving full force and effect to the Cap and the other limitations set forth in <u>Section 1</u>, <u>Section 8</u> and <u>Section 9</u> hereof.

16. <u>NO THIRD PARTY BENEFICIARIES</u>. The parties hereby agree that their respective representations, warranties, agreements and covenants set forth herein are solely for the benefit of the other parties hereto and their respective successors and permitted assigns, in accordance with and subject to the terms of this Guarantee, and this Guarantee is not intended to, and does not, confer upon any person other than the parties hereto and their respective successors and permitted assigns any rights or remedies under this Guarantee; except that the Non-Parties shall be considered third party beneficiaries of the provisions of <u>Section 9</u> hereof and all interpretive provisions required to give effect thereto.

17. <u>Confidentiality</u>. This Guarantee shall be treated as strictly confidential and is being provided to the Guaranteed Party solely in connection with the Agreement and the transactions contemplated thereby. This Guarantee may not be used, circulated, quoted or otherwise referred to in any document or otherwise distributed to any Person without the prior written consent of each Guarantor. Notwithstanding the foregoing, this Guarantee may be provided to those of the Guaranteed Party's advisors with a *bona fide* need to review this Guarantee in connection with the transactions contemplated by the Agreement; <u>provided</u>, that the Guaranteed Party shall direct such advisors to treat this Guarantee as strictly confidential in accordance with (and shall be responsible for any dissemination of this Guarantee by such advisors in violation of) this <u>Section 17</u>.

18. <u>CERTAIN TERMS</u>. As used herein:

(a) "<u>Applicable Law</u>" means, with respect to any Person, any transnational, U.S. or non-U.S. federal, state, provincial, territorial or local law (statutory, common or otherwise), constitution, treaty, convention, statute, ordinance, code, rule, regulation, order, ruling or other similar requirement enacted, adopted, promulgated or applied by a Governmental Entity that is binding upon or applicable to such Person or such Person's properties or assets, as amended unless expressly specified otherwise.

(b) "<u>Person</u>" shall be construed broadly and shall include any corporation, partnership, limited liability company, association, trust or other entity (including any foreign equivalent of any of the foregoing), individual or organization, including any Governmental Entity.

8

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK– SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, each of the parties has duly executed and delivered this Guarantee through its undersigned designee duly authorized to be effective as of the date first above written.

**GUARANTORS:**

    Advent Partners III Limited Partnership
    Advent Partners LAPEF III Limited Partnership
    Advent Partners LAPEF IV Limited Partnership

    By:    Advent International LLC, General Partner
    By:    Advent International Corporation, Manager

By: _____
    James Westra, Chief Legal Officer, General Counsel, and Managing Partner

    Advent Latin American Private Equity Fund III Limited Partnership
    Advent Latin American Private Equity Fund III-A Limited Partnership
    Advent Latin American Private Equity Fund III-B Limited Partnership
    Advent Latin American Private Equity Fund III-C Limited Partnership
    Advent Latin American Private Equity Fund III-D Limited Partnership
    Advent Latin American Private Equity Fund III-E Limited Partnership
    Advent Latin American Private Equity Fund III-F Limited Partnership
    Advent Latin American Private Equity Fund III-G Limited Partnership

    By:    LAPEF III GP Limited Partnership, General Partner
    By:    Advent International LLC, General Partner
    By:    Advent International Corporation, Manager

By: _____
    James Westra, Chief Legal Officer, General Counsel, and Managing Partner

    Advent Latin American Private Equity Fund IV Limited Partnership
    Advent Latin American Private Equity Fund IV-A Limited Partnership
    Advent Latin American Private Equity Fund IV-B Limited Partnership
    Advent Latin American Private Equity Fund IV-C Limited Partnership
    Advent Latin American Private Equity Fund IV-D Limited Partnership
    Advent Latin American Private Equity Fund IV-E Limited Partnership
    Advent Latin American Private Equity Fund IV-F Limited Partnership
    Advent Latin American Private Equity Fund IV-G Limited Partnership

    By:    LAPEF IV GP Limited Partnership, General Partner
    By:    Advent International LLC, General Partner
    By:    Advent International Corporation, Manager

By: _____
    James Westra, Chief Legal Officer, General Counsel, and Managing Partner

[Signature Page to Guarantee]

**GUARANTEED PARTY:**

Servicios Funerarios GG, S.A. de C.V.

By: _____
Name: _____
Title: _____
Sole Administrator

## SCHEDULE A

| Guarantor | | Pro-Rata Percentage |
|---|---|---|
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND III LIMITED PARTNERSHIP | LAPEF-3 | 4.53% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND III-A LIMITED PARTNERSHIP | LAPEF-3A | 2.94% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND III-B LIMITED PARTNERSHIP | LAPEF-3B | 0.72% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND III-C LIMITED PARTNERSHIP | LAPEF-3C | 0.69% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND III-D LIMITED PARTNERSHIP | LAPEF-3D | 3.60% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND III-E LIMITED PARTNERSHIP | LAPEF-3E | 2.16% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND III-F LIMITED PARTNERSHIP | LAPEF-3F | 4.77% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND III-G LIMITED PARTNERSHIP | LAPEF-3G | 2.76% |
| ADVENT PARTNERS LAPEF III LIMITED PARTNERSHIP | APLAPEF-3 | 0.27% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND IV LIMITED PARTNERSHIP | LAPEF-4 | 14.36% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND IV-A LIMITED PARTNERSHIP | LAPEF-4A | 4.40% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND IV-B LIMITED PARTNERSHIP | LAPEF-4B | 1.46% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND IV-C LIMITED PARTNERSHIP | LAPEF-4C | 1.17% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND IV-D LIMITED PARTNERSHIP | LAPEF-4D | 14.06% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND IV-E LIMITED PARTNERSHIP | LAPEF-4E | 15.28% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND IV-F LIMITED PARTNERSHIP | LAPEF-4F | 14.06% |
| ADVENT LATIN AMERICAN PRIVATE EQUITY FUND IV-G LIMITED PARTNERSHIP | LAPEF-4G | 11.42% |
| ADVENT PARTNERS LAPEF IV LIMITED PARTNERSHIP | APLAPEF-4 | 1.14% |
| ADVENT PARTNERS III LIMITED PARTNERSHIP | APLP-3 | 0.20% |