## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,

          Plaintiff,

v.

ADVENT INTERNATIONAL
CORPORATION,

          Defendant,

          and                    Civil Action No. 23-cv-10684-IT

ADVENT INTERNATIONAL
CORPORATION,

          Counterclaim-Plaintiff,

v.

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,

          Counterclaim-Defendant.

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF ADVENT INTERNATIONAL, L.P.'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION FOR SUMMARY JUDGMENT ON ITS FIRST, SEVENTH, AND NINTH AFFIRMATIVE DEFENSES OR DISMISSAL OF SF'S CLAIMS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................1

STATEMENT OF UNDISPUTED FACTS ...........................................................3

       A.      SF Executes A Financial Guarantee Releasing Claims Against AIC ..................3

       B.      SF Initiates Claims Against AIC In Violation Of The Guarantee ...........................4

              1.     Mexican Actions ............................................................................4

              2.     Massachusetts Action.....................................................................5

       C.      The Delaware Court of Chancery Holds The Guarantee Bars Claims Against AIC Concerning The Gayosso Transaction ..................................6

              1.     The Delaware Court Holds Claims Against AIC Violated The Forum-Selection Clause.................................................................6

              2.     The Delaware Court Holds SF's Promises Not To Sue AIC Enforceable.................................................................................7

LEGAL STANDARD ............................................................................................9

ARGUMENT .........................................................................................................9

I.       SF IS BOUND BY THE DELAWARE COURT'S RULINGS THAT THE GUARANTEE BARS SF'S CLAIMS CONCERNING THE GAYOSSO SALE .............9

     A.      SF's Claims Are Barred By Issue Preclusion ........................................10

     B.      The Forum Selection Clause Independently Precludes SF's Action .....................15

II.      SF'S ATTEMPTS TO NARROW THE DELAWARE RULINGS FAIL ........................18

CONCLUSION.....................................................................................................20

## TABLE OF AUTHORITIES

**Page**

### Cases

*Amyndas Pharms., S.A. v. Zealand Pharma A/S,*
    48 F.4th 18 (1st Cir. 2022) ........................................................................... 16

*Arch Ins. Co. v. Murdock,*
    2018 WL 1129110 (Del. Super. Mar. 1, 2018) ........................................... 12

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,*
    471 U.S. 49 (2013) ........................................................................................ 9

*Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc.,*
    677 F. Supp. 2d 373 (D. Mass. 2009) ........................................................ 17

*Bd of Tr. of Trucking Emps. of N.J. Welfare Fund, Inc. v. Centra,*
    983 F.2d 495 (3d Cir. 1992) ....................................................................... 13

*Beal Bank, SSB v. Pittorino,*
    177 F.3d 65 (1st Cir. 1999) ........................................................................... 9

*In re Bestwall LLC,*
    47 F.4th 233 (3d Cir. 2022) ........................................................................ 12

*Betts v. Townsends, Inc.,*
    765 A.2d 531 (Del. 2000) ........................................................................... 10

*Christiana Health Care Servs. Inc. v. Carter,*
    223 A.3d 428 (Del. 2019) ........................................................................... 11

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez,*
    775 F.3d 41 (1st Cir. 2014) ................................................................ 9, 15, 17

*Defillipo v. Quarles,*
    2010 WL 702310 (Del. Super. Feb. 26, 2010) .......................................... 12

*Goldstein v. Galvin,*
    719 F.3d 16 (1st Cir. 2013) ......................................................................... 10

*Greenleaf v. Garlock,*
    174 F.3d 352 (3d Cir. 1999) ....................................................................... 12

*Gurney-Goldman v. Goldman,*
    321 A.3d 559 (Del. Ch. 2024) .................................................................... 20

*HealthTrio, Inc. v. Margules*,
    2007 WL 544156 (Del. Super. Jan 16, 2007) ........................................................... 20

*Hughes v. McMenamon*,
    204 F. Supp. 178 (D. Mass. 2002) .................................................................... 16, 18

*InterMune, Inc. v. Harkonen*,
    2023 WL 3337212 (Del. Ch. May 10, 2023) ............................................................ 20

*Kennedy v. Louisiana*,
    554 U.S. 407 (2008) ............................................................................................... 13

*Manganella v. Evanston Ins. Co.*,
    700 F.3d 585 (1st Cir. 2012) ..................................................................................... 9

*Martinez v. E.I. DuPont de Nemours & Co., Inc.*,
    86 A.3d 1102 (Del. 2014) ...................................................................................... 14

*Matsushita Elec. Indus. Co. v. Epstein*,
    516 U.S. 367 (1996) ............................................................................................... 10

*NeighborCare of N.H., LLC v. New Hope Healthcare Sys.–Bedford, LLC*,
    2013 WL 5739084 (D.N.H. Oct. 21, 2013) ............................................................. 17

*Nottingham Partners v. Trans-Lux Corp.*,
    925 F.2d 29 (1st Cir. 1991) .................................................................................... 11

*Orange Bowl Corp. v. Jones*,
    1986 WL 13095 (Del. Super. Oct. 16, 1986) ......................................................... 11

*PureWick Corp. v. Sage Prods., LLC*,
    2023 WL 2734779 (D. Del. Mar. 31, 2023) ........................................................... 12

*Rome v. McNally*,
    718 F. Supp. 3d 118 (D. Mass. 2024) .................................................................... 16, 18

*Rundlett v. Oliver*,
    607 F.2d 495 (1st Cir. 1979) .................................................................................. 14

*Silva v. Encyclopedia Britannica Inc.*,
    239 F.3d 385 (1st Cir. 2001) ................................................................................ 9, 15

*In re Town Sports Int'l, LLC*,
    2023 WL 124860 (D. Del. Bankr. Jan 6, 2023) ...................................................... 12, 14

*Troy Corp. v. Schoon*,
    959 A.2d 1130 (Del. Ch. 2008) ............................................................................. 10, 15

*Tygon Peak Capital Mgmt., LLC v. Mobile Invs. Investco, LLC*,
    2023 WL 4857281 (Del. Ch. July 31, 2023) ................................................................20

*Villare v. Beebe Med. Ctr., Inc.*,
    2013 WL 2296312 (Del. Super. Ct. May 21, 2013) ....................................................15

*Wilson v. Recorded Future, Inc.*,
    669 F. Supp. 3d 53 (D. Mass. 2023) (Talwani, J.) ......................................................13

*Yucaipa Am. All. Fund I, LP, v. SBDRE LLC*,
    2014 WL 5509787 (Del. Ch. Oct. 31, 2014) ...............................................................12

*Zecco v. Hess Corp.*,
    777 F. Supp. 2d 207 (D. Mass. 2011) .........................................................................13

## **<u>Statutes</u>**

28 U.S.C. § 1404(a) ....................................................................................................................18

28 U.S.C. § 1738 ........................................................................................................................10

Massachusetts General Law Chapter 93A ..............................................................................5, 6

## **<u>Other Authorities</u>**

18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice
    and Procedure* § 4446 (3d ed. 2024) ..........................................................................18

Restatement (Second) of Judgments § 27 cmt. C (1982) ........................................................20

Rule 12(b)(3) .............................................................................................................................17

Rule 12(c) ..................................................................................................................................17

Rule 12(h)(2) .............................................................................................................................15

Rule 56.1 ......................................................................................................................................3

Defendant and Counterclaim-Plaintiff Advent International, L.P. f/k/a Advent International Corporation ("AIC") respectfully submits this motion for summary judgment or dismissal, which seeks judgment for AIC on AIC's First, Seventh, and Ninth affirmative defenses and to terminate all of Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V.'s ("SF") claims in this action.

## INTRODUCTION

This motion seeks to enforce decisions the Delaware Court of Chancery issued against SF that have preclusive effect here and bar SF from pursuing its claims on two independent grounds.

When SF acquired Gayosso, it signed a binding Guarantee governed by Delaware law, in which SF promised not to bring "any Claim whatsoever" against AIC in connection with "the [Gayosso Stock Purchase] Agreement and any transactions contemplated . . . thereby." It likewise agreed that any permissible claims arising from the Gayosso transaction must be brought in Delaware. The Delaware Court of Chancery has now held both promises to be "valid and binding," and that the fraud allegations SF propounds in this action are the precise types of "Claims" the Guarantee prohibits. SF is bound by those preclusive rulings. Under controlling First Circuit and Delaware authority, their enforcement requires summary judgment or dismissal of SF's claims.

The relevant facts are simple and beyond dispute. SF's acquisition of Gayosso was a heavily negotiated transaction. The Stock Purchase Agreement ("SPA") effectuating the sale provided that indemnification would be SF's sole remedy for false representations in the SPA. And because the Sellers were special-purpose vehicles without significant assets, SF bargained for AIC-managed investment funds that owned those Sellers to guarantee the Sellers' indemnification obligations up to the full value of the transaction. In exchange for that valuable consideration, SF agreed to seek any recovery for Gayosso-related claims *only* from the Sellers (in Mexican court) or the Guarantors (in Delaware court). In multiple unambiguous provisions—including a non-

1

recourse clause, release and waiver, and two overlapping covenants not to sue—SF released any and all other claims against any other parties, including AIC. It further agreed in a forum-selection clause (the "Forum Selection Clause") that any claims that *were* permitted (apart from claims against the Sellers) *must* be brought in Delaware.

SF did not keep its promises. It is undisputed that SF has since brought civil and criminal actions against AIC and its affiliates in Mexico and in this Court—all arising from the same allegations of purported fraud in the Gayosso transaction. In response, AIC (i) timely asserted affirmative defenses in this action that the Guarantee barred each of SF's claims, and (ii) sued SF in the Delaware Court of Chancery, as required by the Guarantee's exclusive Delaware forum-selection clause, to enforce the Guarantee's plain terms.

The Delaware court has now ruled. Across two well-reasoned opinions, which followed hundreds of pages of briefing and two oral arguments, the Delaware court definitively construed the Guarantee, which is governed by Delaware law, to bar SF's fraud claims. The court held that, as a matter of law: (i) claims arising from the Gayosso transaction are "Claims" under the Guarantee; (ii) AIC is a "Non-Party" protected by the Guarantee; (iii) SF released and covenanted not to bring any "Claims" against any "Non-Party"; and (iv) in any event, SF was required to bring any permitted "Claims" in Delaware pursuant to the Forum Selection Clause. In so ruling, the Delaware court expressly rejected all of SF's arguments that the Guarantee is unenforceable, including its claim that AIC could not enforce the Guarantee if SF proved the SPA was fraudulently induced. Applying those holdings and the unambiguous text of the Guarantee, the Delaware court permanently enjoined SF's civil claims against AIC in Mexico (claims virtually identical to those here), held that SF breached the Guarantee by suing AIC for fraud, and held that those breaches terminated the Guarantors' obligations a year before SF brought this action.

The Delaware court's interpretation of the Delaware-law Guarantee is issue preclusive and entitled to full faith and credit in this Court. And applying that construction forecloses all of SF's claims in this action. *First*, SF is collaterally estopped from avoiding its enforceable promises not to sue AIC in connection with the Gayosso transaction, requiring summary judgment for AIC. *Second*, even if SF were permitted to bring such Claims against AIC (and it is not), the binding Forum Selection Clause mandates that they be brought only in Delaware—as the Delaware court has now confirmed. Under controlling First Circuit precedent, SF's failure to bring suit in the proper forum is an independent ground for summary judgment or dismissal.

## STATEMENT OF UNDISPUTED FACTS

### A.      SF Executes A Financial Guarantee Releasing Claims Against AIC

In January 2021, SF purchased Gayosso from the special-purpose vehicle Sellers pursuant to the SPA. Rule 56.1 Stmt. of Undisputed Material Facts ("SUMF") ⁋ 3. Contemporaneously, SF also entered into a separate guarantee agreement with AIC-managed investment funds (the "Guarantors"). *Id.* ⁋ 9. In the Guarantee, the Guarantors agreed to backstop the Sellers' indemnification obligations under the SPA up to Gayosso's full enterprise value of MXN $4.076 billion (approximately USD $200 million). *See* Ex. A ("Guarantee") ¶ 1; SUMF ⁋ 10.

SF, for its part, agreed to release any and all "Claims"—defined to include any action related to the Gayosso Transaction[1]—except (i) claims brought in Mexico against the Sellers for breach of the SPA, and (ii) claims brought in Delaware against the Guarantors for breach of the

---

[1] The Guarantee defines "Claims" to include "all claims, obligations, liabilities, causes of action, or proceedings . . . that may . . . relate in any manner to this Guarantee," Guarantee § 9(a), and to include "any Claim whatsoever against the Guarantors or any other Non-Parties affiliated with [the Sellers] under or in connection with th[e] Guarantee or the [SPA] and any transactions contemplated hereby or thereby," *id.* § 9(c)—in other words, the full universe of possible claims emanating from the Gayosso Transaction. *Id.* § 9(a). As discussed below, the Court of Chancery has definitively construed the term "Claims" to cover fraud and related claims regarding the SPA.

Guarantee.  Guarantee §§ 3(c), 9(c); Doc. No. 482-1 ("Second Del. Op.") at 4.  SF's promise not

to sue "Non-Parties" like AIC was reflected in multiple provisions of Sections 3 and 9 of the

Guarantee:

- *A non-recourse clause*, providing that Claims "may be made or asserted only against (and are expressly limited to) the Guarantors" and that no "Non-Party," including AIC, "shall have any liability or obligation in respect of any Claims."  Guarantee § 9(a).

- *A release clause*, providing that SF "waives, releases and disclaims any and all Claims against Non-Parties, including, without limitation, any Claims to . . . impose any liability arising out of, relating to or in connection with a Claim on any Non-Parties." *Id.* § 9(b).

- *A covenant not to sue*, providing that SF "covenants and agrees that it shall not assert . . . any Claim whatsoever against . . . Non-Parties affiliated with [the Sellers] under or in connection with this Guarantee or the [SPA] and any transactions contemplated hereby or thereby . . . other than a claim against the Guarantors for payment or performance of . . . this Guarantee or against [the Sellers] pursuant to the [SPA]."  *Id.* § 9(c); *see also id.* § 3(c) (containing an equivalent covenant not to sue).

SF also agreed that if it *did* "commence[] any litigation or other proceeding . . . prohibited

by Section 9 of this Guarantee," the "Guarantee shall terminate automatically and immediately . . .

and the Guarantors shall have no further obligations under this Guarantee," *id.* § 8, but SF's

obligation not to sue Non-Parties "shall survive" termination, *id.* § 9(b).

Finally, SF agreed to the Forum Selection Clause, under which the "Guarantee . . . shall be

governed by the internal laws of the State of Delaware" and "any permitted Claims shall be brought

exclusively in the state and federal courts located in . . . Delaware." *Id.* § 10.

### B.    SF Initiates Claims Against AIC In Violation Of The Guarantee

Despite the Guarantee's unambiguous Forum Selection Clause and promises not to sue

Non-Parties like AIC in connection with the Gayosso transaction, SF initiated multiple prohibited

claims against AIC in Mexico and this Court.

### 1.    Mexican Actions

On March 24, 2022, SF filed a civil action in Mexico City against AIC, AIC's Mexican

affiliate ("Advent Mexico"), and the Sellers.  SUMF ⁋ 22.  SF alleged that AIC and its co-defendants had committed fraud with respect to the SPA's representations by "fraudulently omitt[ing] to truthfully disclose Gayosso's financial and accounting situation, as well as the existence of certain relevant and material contracts that represent obligations for Gayosso."  SUMF ⁋ 23; Ex. B (Mex. Civ. Compl.), at 17.  SF's Mexican civil complaint sought damages for fraud "due to the execution of the SPA."  SUMF ⁋ 24; Ex. B at 6.

On June 2, 2022, SF filed a private criminal complaint called a *querella* with a Mexico City prosecutor asserting the same fraud claims against AIC and its affiliates that SF had alleged in its civil complaint two months earlier.  SUMF ⁋ 25-27; Second Del. Op. 29.  Pursuant to SF's *querella*, the prosecutor sought and obtained arrest warrants and asset embargoes against AIC and various of its affiliates.  Second Del. Op. 29.

### 2.    Massachusetts Action

On March 29, 2023, SF filed this action, which precisely mirrors the fraud allegations in the Mexican Civil and Criminal Actions and asserts claims for fraudulent inducement, violations of Massachusetts General Law Chapter 93A, negligent misrepresentation, unjust enrichment, and fraudulent transfer.  SUMF ⁋ 29.  In response to SF's claims, AIC asserted several affirmative defenses based in part on the Guarantee—including AIC's First Affirmative Defense, that "[t]he Complaint fails to state any claims upon which relief can be granted"; AIC's Seventh Affirmative defense, that SF's claims "are barred or limited by the . . . guarantee"; and AIC's Ninth Affirmative Defense, that SF "has released its claims in connection with the SPA."  *Id.* ⁋ 30.  AIC also asserted Counterclaims for abuse of process and related claims arising from SF's use of the Mexican justice system to obtain arrest warrants and asset embargoes affecting AIC and its affiliates.  *Id.* ⁋ 31.  AIC's Counterclaims describe both the Forum Selection Clause and SF's agreements not to sue AIC in connection with the Gayosso transaction.  *Id.* ⁋ 32.

### C.    The Delaware Court of Chancery Holds The Guarantee Bars Claims Against AIC Concerning The Gayosso Transaction

Shortly after SF brought this action, AIC and the Guarantors filed an action in the Delaware Court of Chancery—as required by the Forum Selection Clause—seeking to enforce the Guarantee.  *See* SUMF ⁋ 38.  As relevant here, AIC and the Guarantors sought (i) declarations that SF had breached the Guarantee by suing Non-Party AIC and that the Guarantee had terminated as a result, and (ii) an anti-suit injunction barring SF from continuing to prosecute the Mexican Civil Action against AIC.  *Id.* ⁋ 40.[2]  AIC also requested a declaration that SF breached the Guarantee by filing suit in Massachusetts, but expressly declined to seek an anti-suit injunction of this action.  *Id.* ⁋ 40-41.  AIC represented instead that it would bring the Delaware court's construction of the Delaware Guarantee before this Court to apply.  *Id.* ⁋ 42.  In November 2023, AIC and the Guarantors moved for summary judgment, SF cross-moved to dismiss the Complaint, and the parties briefed both motions between November 2023 and March 2024.  SUMF ⁋⁋ 43-45.[3]

#### 1.    The Delaware Court Holds Claims Against AIC Violated The Forum-Selection Clause

On June 7, 2024, the Delaware court denied SF's motion to dismiss and granted partial summary judgment in favor of AIC, entering a permanent anti-suit injunction prohibiting SF from

---

[2] The Delaware Plaintiffs also sought an anti-suit injunction against SF's prosecution of the Mexican Criminal Action, which the Delaware Court denied for reasons of comity, Del. Op. 30, and an anti-suit injunction against SF's prosecution of the Mexican Civil Action against Advent Mexico, which the Delaware Court denied for laches.  *Id.* 40–41.

[3] Around the time it filed the Delaware action, AIC also moved for judgment on the pleadings here, including on the ground that the Guarantee bars SF's claims.  Doc. No. 51.  The Court denied AIC's motion without prejudice.  Doc. No. 78.  When AIC renewed its motion for judgment on the pleadings, the parties had already agreed to litigate the interpretation of the Guarantee in Delaware.  SUMF ⁋ 37.  To avoid having two courts concurrently interpreting the same Guarantee, and to allow the Delaware courts to resolve claims and defenses involving exclusively Delaware law, AIC expressly preserved its Guarantee arguments, but did not ask this Court to rule on them in the renewed 12(c) motion.  *See* Doc. No. 234 (Renewed MJOP) at 2–3 & n.3.

prosecuting the Mexican Civil Action against AIC.  SUMF ⁋ 46; Doc. No. 381-2 ("First Del.

Op.").[4]  The Delaware court held that SF's fraud and related claims in Mexico were "Claims" as

defined in the Guarantee, First Del. Op. 23–28, and that contractually protected "Non-Parties"

"indisputably includes [AIC]," *id.* at 19.  It thus held that—regardless of whether SF's Claims

were "permitted" under the Guarantee's non-recourse provision, releases, and covenants not to

sue—SF still violated the Forum Selection Clause when it filed Claims against Non-Party AIC in

Mexico rather than in Delaware.  *Id.* at 28–29.  The Delaware court left "[a]ll remaining issues,"

including the enforceability of SF's various promises not to sue AIC, "to be resolved" in a

subsequent decision.  *Id.* at 32.

### 2.    The Delaware Court Holds SF's Promises Not To Sue AIC Enforceable

On October 29, 2024, the Delaware court issued a second decision granting AIC and the

Guarantors' motion for summary judgment in relevant part.  SUMF ⁋ 57; Second Del. Op.  The

Delaware court held that SF's promises not to sue AIC were "valid and binding" notwithstanding

SF's defenses, expressly rejecting SF's argument that the Guarantee would be unenforceable if SF

could prove that the SPA had been fraudulently induced.  Second Del. Op. at 15–20 ("The

Guarantee includes anti-reliance and integration clauses that preclude fraud claims falling outside

its four corners" and "[SF] acknowledges that the alleged fraudulent statements in the SPA fall

outside the Guarantee's four corners.").  The Delaware court also expressly rejected SF's argument

(which SF raised for the first time after summary judgment had already been briefed and argued)

that "questions of fact remained regarding the Guarantors' ability to meet [their] funding

---

[4]    The Court ruled on these issues on an expedited basis because, after the parties completed summary judgment briefing, SF purported to serve AIC with summons in the Mexican Civil Action, triggering a 30-day response deadline in Mexican court.  First Del. Op. 9.  Since AIC had moved to enjoin SF's prosecution of that action, the Court expedited resolution of AIC's motion in part so that it could rule before AIC was forced to respond.  *Id.*

obligations under the Guarantee," ruling that SF had waived that argument as a matter of Delaware law, *id.* at 11 n.43, which governs all disputes concerning the "validity, construction, [and] effect" of the Guarantee," Guarantee § 10.

Having found the Guarantee enforceable, the Delaware court held that Sections 3(c) and 9 "barred Servicios Funerarios from filing lawsuits other than the permitted Claims against the Guarantors and Sellers." Second Del. Op. 21–22. As a result, it held that (i) SF breached Sections 3(c) and 9(a)–(c) when it brought Claims against Non-Parties AIC and Advent Mexico in the Mexican Civil Action, *id.* at 22–23; (ii) the Guarantors' obligations under the Guarantee terminated as a result, *id.* at 23–27; and (iii) SF's obligations not to sue Non-Parties like AIC nonetheless remain in effect following termination, *id.* at 23. In other words, by the time SF filed this action, the Guarantors no longer had any obligation to backstop the Sellers' liability in connection with the Gayosso transaction, but SF was still barred from seeking recovery from AIC.

The Delaware court declined to issue a separate declaration that this action also constituted a breach of the Guarantee, but did so only because "the filing of the Mexican civil action [had already] caused the Guarantee to terminate." *Id.* at 27. Thus, "declaratory relief regarding [SF's] other suits would be meaningless" in the context of the Delaware action, where "[AIC] is not seeking an anti-suit injunction of the Massachusetts action" and a declaration of breach would amount to an "advisory opinion" rather than a pathway to relief. *Id.* at 27. In the Order implementing that ruling, the Delaware court confirmed that it had declined to rule on the permissibility of this action because the Guarantee's application to this case did not present a "live case or controversy" in Delaware. SUMF ¶ 63; Doc. No. 489-1 (Del. Ord.) at ¶ 4.[5] Because the

---

[5] The only remaining issue in the Delaware action is AIC's request for damages stemming from SF's breaches of the Guarantee.

issue of whether the Guarantee bars SF's claims in this action indisputably *does* present a live controversy here, AIC brings the present motion.

## LEGAL STANDARD

"A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999). The applicability of issue preclusion "is a question of law." *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 590 (1st Cir. 2012). Moreover, "a motion to dismiss based on a forum-selection clause may be raised at any time in the proceedings before disposition on the merits," *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 49 (1st Cir. 2014) (quoting *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 388 (1st Cir. 2001)), including after a prior motion to dismiss has been denied, *id.* at 45. A forum selection clause is presumptively enforceable. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013).

## ARGUMENT

I. **SF IS BOUND BY THE DELAWARE COURT'S RULINGS THAT THE GUARANTEE BARS SF'S CLAIMS CONCERNING THE GAYOSSO SALE**

The Delaware Court's construction of the Delaware-law Guarantee requires summary judgment for AIC, or dismissal of all claims, on two independent grounds. First, SF is bound by the Delaware court's ruling that SF's promises not to sue AIC in connection with the Gayosso transaction are valid and enforceable, and AIC is entitled to summary judgment on that basis. Equally, SF is bound by the Delaware court's determination that any *permissible* claims must in all events be brought exclusively in Delaware; even if SF were entitled to pursue claims against AIC, it is not entitled to do so in this Court. Under settled United States Supreme Court and First Circuit authority, AIC is entitled to summary judgment or dismissal on that basis.

### A.    SF's Claims Are Barred By Issue Preclusion

The parties submitted over 200 pages of briefing in the Delaware Court of Chancery regarding the impact of the Guarantee on SF's right to bring the exact same fraud and related claims it brings in this action. The Delaware court then heard two oral arguments on the issue and held, as a matter of Delaware law, that the Guarantee is a valid and binding contract that bars SF from bringing claims concerning the Gayosso transaction against Non-Parties like AIC. Textbook principles of issue preclusion render that determination binding here.

Like all "judicial proceedings" in state courts, the Delaware court's ruling is entitled to "full faith and credit" in this Court, meaning treatment "with the same respect that it would receive in the courts of the rendering state." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996); 28 U.S.C. § 1738. And "[w]hen a federal court considers the preclusive effect of an earlier state court judgment, it must apply that state's preclusion principles." *Goldstein v. Galvin*, 719 F.3d 16, 22 (1st Cir. 2013). Under Delaware law, "[c]ollateral estoppel, or issue preclusion, prevents a party from relitigating a factual issue that was previously adjudicated," and applies "where (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Troy Corp. v. Schoon*, 959 A.2d 1130, 1134 (Del. Ch. 2008); *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del. 1991). ("[T]he doctrine of collateral estoppel provides repose by preventing the relitigation of an issue previously decided. In addition, by putting an end to litigation, it conserves judicial resources."). All four requirements are met here.

***Identical Issue.*** AIC's Seventh and Ninth affirmative defenses here turn on the same issue already decided in the Court of Chancery—whether "the plain and unambiguous language of the

[release] provision . . . extinguishes the plaintiff's claim[.]" *Christiana Health Care Servs. Inc. v. Carter*, 223 A.3d 428, 430–31 (Del. 2019) (granting summary judgment on defense of release); *accord Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 32 (1st Cir. 1991) (release defense bars suit when the release "(1) applie[s] to [plaintiffs], (2) encompasse[s] the claims asserted . . . and (3) [is] legally enforceable."). The Delaware court's rulings make this clear. *First*, "the Guarantee is a valid and binding contract," and would remain so even if the SPA were fraudulently induced as SF alleges. Second Del. Op. 27. *Second*, the Guarantee's plain language bars SF from bringing "Claims against Non-Parties" like "[AIC]." *Id.* at 21, 23. And *third*, "[a] fraud claim about representations of Gayosso's financial statements in the SPA"—the basis of all of SF's claims here—constitutes such a prohibited "Claim" under the Guarantee. First Del. Op. 25.

In sum, all of the ultimate issues necessary for AIC to prevail on its defenses—that SF executed a "legally enforceable" release that "encompasses the claims asserted" in this case—have been decided by the Delaware court. *See Nottingham Partners*, 925 F.2d at 31–32 (release of claims under Delaware law barred subsequent suit in District of Massachusetts). Any "[q]uestions about the enforceability" of that release were "necessarily decided against [SF]," *Orange Bowl Corp. v. Jones*, 1986 WL 13095, at *3 (Del. Super. Oct. 16, 1986), when the Delaware court ruled that it was valid and binding as a matter of Delaware law—which expressly governs the "validity, construction, [and] effect" of the Guarantee," Guarantee § 10. SF is "thus collaterally estopped from relitigating" those dispositive issues here. *Orange Bowl*, 1986 WL 13095, at *3.

**Final Adjudication.** The court the parties agreed would decide this question has already ruled, and done so definitively. The Delaware court's grant of partial summary judgment to AIC—made after hundreds of pages of briefing and two oral arguments—is indisputably "final" for purposes of issue preclusion. *See Defillipo v. Quarles*, 2010 WL 702310, at *3 (Del. Super. Feb.

26, 2010) ("[the] doctrine of collateral estoppel applies [to Delaware court's] entry of partial summary judgment"); *Greenleaf v. Garlock*, 174 F.3d 352, 360 (3d Cir. 1999) (reviewing precedent and concluding that "state court's partial summary judgment" is "sufficiently final to have issue preclusive effect."). It is well established that "the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable." *PureWick Corp. v. Sage Prods., LLC*, 2023 WL 2734779, at *6 (D. Del. Mar. 31, 2023). Rather, "finality" for purposes of issue preclusion means only that there has been "any prior adjudication of an issue . . . that is determined to be sufficiently firm to be accorded conclusive effect"—or, in other words, "that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again[.]" *Arch Ins. Co. v. Murdock*, 2018 WL 1129110, at *6 (Del. Super. Mar. 1, 2018) (quoting *Yucaipa Am. All. Fund I, LP*, *v. SBDRE LLC*, 2014 WL 5509787, at *12 n.51 (Del. Ch. Oct. 31, 2014)).

There is no reason to permit SF to relitigate questions of Delaware law already decided by Delaware's courts. The Court of Chancery has issued two thorough opinions definitively resolving the key issue here—whether the Guarantee bars SF from bringing claims against AIC concerning the Gayosso transaction. "Preclusive effect is appropriate" where, as here, "the parties were fully heard" and "the court supported its decision with a reasoned opinion." *In re Town Sports Int'l, LLC*, 2023 WL 124860, at *16 (D. Del. Bankr. Jan 6, 2023). Likewise, "there was nothing 'avowedly tentative' about the [Delaware court's] Order[s]"—both of which will accelerate into final judgment once any outstanding damages issues are resolved—so they are "sufficiently firm to be accorded conclusive effect." *In re Bestwall LLC*, 47 F.4th 233, 243–44 (3d Cir. 2022). In fact, the Delaware court has repeatedly rejected SF's requests to alter its permanent injunction in response to developments in the enjoined action. *See, e.g.*, Second Del. Op. 10 (noting that the

12

court "declined to affirmatively grant [SF] permission to violate [its] Injunction Order" in response to SF's request "for permission to file a substantive reply . . . in the Mexican criminal action").

It is no obstacle that AIC's request for damages—which has no effect on the Delaware court's interpretation of the Guarantee—is yet to be resolved in Delaware. Issue preclusion "does not require a decision on the ultimate issue." *Bd of Tr. of Trucking Emps. of N.J. Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992). "A final determination regarding a given specific issue" is enough, and "occurs when that narrow issue is actually litigated and decided." *Id.* The only issues applicable here—whether the Guarantee precludes SF from bringing fraud Claims against Non-Parties like AIC—have been finally adjudicated in AIC's favor.

It bears emphasis that even if the Delaware court's decision were *non*-final, summary judgment would still be warranted because the Guarantee is an unambiguous contract that bars SF from suing AIC for claims arising from the Gayosso transaction. There can be no dispute that the Delaware court has definitively ruled on the meaning of the Guarantee. This ruling on a contract governed by Delaware law is entitled to substantial deference in this Court, even if not given preclusive effect, and there are no disputed issues of fact that stand in the way of summary judgment here. Deference to the Delaware court is especially appropriate in this case, where the parties *agreed that the Guarantee is to be litigated exclusively in Delaware*. *See infra* I.B.

In all events, it is well-established that such questions of state law are "best left to the judgment of the state courts." *Zecco v. Hess Corp.*, 777 F. Supp. 2d 207, 211 (D. Mass. 2011); *see also, e.g.*, *Kennedy v. Louisiana*, 554 U.S. 407, 425 (2008) ("Definitive resolution of state-law issues is for the States' own courts[.]"); *Wilson v. Recorded Future, Inc.*, 669 F. Supp. 3d 53, 57–58 (D. Mass. 2023) (Talwani, J.) ("It is well-established that 'state courts are the ultimate expositors of state law' …." (ellipsis omitted) (quoting *Rundlett v. Oliver*, 607 F.2d 495, 500 (1st

Cir. 1979))); *Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 86 A.3d 1102, 1109 (Del. 2014) ("[A]s our jurisprudence holds, significant weight should be accorded the neutral principle that important and novel issues of Delaware law are best decided by Delaware courts[.]").

*Privity.*  SF was a party to the Delaware action and is bound by the Delaware court's rulings.  *See* Guarantee § 10 ("Each of the parties hereto . . . irrevocably and unconditionally submits to the exclusive jurisdiction of [Delaware courts].").

*Full and Fair Opportunity to Litigate.*  "As a party" in the Delaware action, SF was "fully entitled to appear and be heard," and "[t]here is no suggestion that [it] [was] denied an opportunity to participate[.]"  *Town Sports*, 2023 WL 124860, at *17.  On the contrary, SF took full advantage of its opportunity to litigate the Guarantee in Delaware.  It filed two motions to dismiss the Delaware action, and (after voluntarily stipulating to a briefing schedule) multiple briefs opposing AIC's motion for summary judgment and in support of its own motion to dismiss.  In those filings and at two oral arguments, SF challenged both the Guarantee's validity, *e.g.*, Second Del. Op. 15 (rejecting SF's arguments "that the Guarantee is invalid and unenforceable"), and its application to SF's claims concerning the SPA, *e.g.*, First Del. Op. 24 (rejecting SF's argument that covered "Claims" include only "causes of action that arise out of the Guarantee itself").  It also leveled a barrage of procedural attacks, including that the Delaware action should be dismissed or stayed in favor of this action, *see id.* at 15–16 (rejecting this argument), that the Delaware court lacked subject-matter jurisdiction, *see id.* at 10–14 (rejecting these arguments), and that issues of material fact precluded summary judgment, *see* Ex. D, at 64–66 (arguing that AIC's "motion for summary judgment is based on disputed factual allegations and premature").  The Delaware court's reasoned rejection of SF's arguments demonstrates precisely that SF had the opportunity to litigate the Guarantee fully and fairly.

That SF chose not to take discovery in Delaware does not undermine that conclusion.  SF stipulated to a summary judgment schedule that did not include discovery, never propounded any discovery, and never asserted that more discovery was necessary before the Delaware court could construe the Guarantee.  Those decisions "were the result of a particular litigation strategy [SF] chose to pursue," and "[i]t is not for this court to rectify [SF's] litigation choices by now refusing to apply the doctrine of collateral estoppel."  *Troy*, 959 A.2d at 1136–37; *see also Villare v. Beebe Med. Ctr., Inc.*, 2013 WL 2296312, at *5 (Del. Super. Ct. May 21, 2013) (preclusion appropriate when party had "opportunity to litigate the damage aspect" of prior case "but chose not to present evidence[.]").  SF has fully litigated the effect of the Guarantee and lost—it is now bound by that result, and this Court should apply the Delaware court's interpretation to bar SF's claims here.

### B.    The Forum Selection Clause Independently Precludes SF's Action

Under First Circuit law, the Delaware court's determination that the Guarantee's Forum Selection Clause bars Claims filed outside of Delaware *independently* entitles AIC to summary judgment based its First Affirmative Defense for failure to state a claim, or dismissal pursuant to Rule 12(h)(2).  *See Claudio-De Leon*, 775 F.3d at 46 (motion "based on a forum selection clause" is treated "as a motion alleging the failure to state a claim[.]"); *Silva*, 239 F.3d at 388 (same).  The necessary issues have already been litigated and decided: the Guarantee's "binding and valid" Forum Selection Clause requires "Servicios Funerarios' fraud claims against 'Non-Parties'" like AIC (to the extent permitted at all) to "be brought exclusively in the state and federal courts located in . . . Delaware."  First Del. Op. 21, 28–29.

Those holdings bind SF, and require termination of its claims in this action.  As above, the key questions here—the validity and scope of the Forum Selection Clause—were "actually litigated and decided" in the Delaware court.  *See, e.g.*, First Del. Op. 21 (Guarantee "is binding and valid as to Servicios Funerarios"); First Del. Op. 23–25 (Forum Selection Clause encompasses

"claims that 'relate in any manner' to the Guarantee," including "those related to representations in the SPA"). SF was a party to those proceedings, and received a full and fair opportunity to litigate the relevant issues. *See id.* (detailing and rejecting SF's many arguments on these points).[6] Because "the forum selection clause . . . is enforceable and [SF's] claims are within its scope," SF "fail[s] to state claims upon which relief may be granted and [AIC] is entitled to their dismissal[.]" *Hughes v. McMenamon*, 204 F. Supp. 178, 181 (D. Mass. 2002) (granting summary judgment on forum-selection clause); *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 36 (1st Cir. 2022) ("uphold[ing] the district court's dismissal" because where "forum-selection clause is valid and enforceable. . . . [the plaintiff's] claims . . . must be litigated in [the chosen] court.").

In prior filings, SF has attempted to preempt application of the Court of Chancery's forum-selection ruling here by arguing that "AIC has never invoked the Guarantee's Delaware forum selection provision in this action" and "AIC has admitted that venue in this District is 'proper.'" Doc. No. 487 (SF letter concerning Delaware rulings) at 1 n.1. Both arguments fail. *First*, AIC has consistently maintained both here and in Delaware that the Guarantee's Forum Selection Clause bars this proceeding.[7] Even if AIC had not done so, First Circuit precedent dictates that a

---

[6] SF waived any argument that the Forum Selection Clause was fraudulently induced. First Del. Op. 21 ("Unlike the no recourse clause, release, and covenants not to sue, Servicios Funerarios makes no argument that the forum selection provision was procured by fraud.").

[7] *See, e.g.*, Doc. No. 14 (Answer and Counterclaims), at 12 ("Servicios Funerarios' claims are limited or barred by the terms of the SPA [or] the concurrently executed financial guarantee"); *id.* ¶ 139 ("The Guarantee further provides that . . . 'any permitted Claim shall be brought exclusively in . . . Delaware.'"); Doc. No. 489-2 (Del. Compl.) ¶ 158 ("[T]he Massachusetts Complaint constitutes a separate breach of Section 10 [*i.e.*, the forum-selection clause]"); Ex. C at 35 ("By bringing 'Claims' against 'Non-Parties' in . . . Massachusetts, SF has straightforwardly breached the Forum-Selection Clause."); *id.* at 30 ("[T]he Massachusetts Complaint asserted prohibited 'Claims' against prohibited 'Non-Parties' in prohibited non-Delaware forums."); Ex. E (Del. S.J. Reply) at 11 ("AIC has preserved its right to assert the forum selection clause in Massachusetts"); Doc. No. 234 n.3 (AIC's Rule 12(c) Mot.) (noting "AIC filed a complaint in the Delaware Court of Chancery (as required by the Guarantee's forum selection clause) to enforce the plain terms of the Guarantee," which "dictated dismissal of this action.").

defense based on such a clause is properly raised "at any time before disposition on the merits," and it is "preserved against waiver prior to that time." *Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc.*, 677 F. Supp. 2d 373, 376 (D. Mass. 2009)(Citation Omitted). In *Claudio-De Leon*, for example, the First Circuit applied these principles to "easily dispense[] with" arguments that "movants had waived enforcement of the forum selection clause" by waiting to invoke it until "discovery was well under way, significant resources had already been expended, and substantive and dispositive motions were filed." 775 F.3d at 44, 49. As in that case, if SF wanted to avoid dismissal now, it "should have filed [its] suit in the proper forum to begin with."[8]

*Second*, SF "improperly conflates the special statutory term 'venue' and the word 'forum.'" *Atlantic Marine*,, 571 U.S. at 56. The Supreme Court has established that "venue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause," *id.*, which in the First Circuit "creates a [failure to state a claim] problem rather than a Rule 12(b)(3) [*i.e.*, venue] problem," *NeighborCare of N.H., LLC v. New Hope Healthcare Sys.–Bedford, LLC*, 2013 WL 5739084, at *3 (D.N.H. Oct. 21, 2013); *accord Claudio-De Leon*, 775 F.3d at 46 & n.3. AIC unambiguously asserted defenses both for failure to state a claim *and* based on the Guarantee, Ans. & Countercls. 12, consistent with the simultaneous propriety of venue and impropriety of forum. Accordingly, AIC is independently entitled to summary judgment or dismissal on the basis of the Forum Selection Clause.[9]

---

[8] The Guarantee itself similarly preserves AIC's forum-selection rights, containing "a non-waiver clause requiring that a waiver be in writing, that 'no delay or omission' in exercising any right operates as a waiver, and that no prior waiver operates as a future waiver." First Del. Op. 14.

[9] Termination or dismissal is the proper remedy for SF's decision to bring suit in a jurisdiction prohibited by the forum-selection clause. *See Hughes*, 204 F. Supp. at 182. But because the clause allows permitted claims to be brought in Delaware's "federal courts," this Court may, in its discretion, alternatively enforce it by transferring the case to the District of Delaware pursuant to 28 U.S.C. § 1404(a). *See, e.g., Rome*, 718 F.Supp.3d at 124–25 ("Since the clause points to either

## II.    SF'S ATTEMPTS TO NARROW THE DELAWARE RULINGS FAIL

Since the Delaware court issued its second summary judgment decision in October, SF has raised three principal arguments to resist the conclusion that those rulings foreclose SF's Claims against Non-Party AIC in this Court.  None succeeds.

*First*, SF has emphasized that the Delaware court declined to enter a declaratory judgment that SF's filing prohibited Claims in this Court breached the Guarantee.  Second Del. Op. 27.  But that technical ruling in no way insulates SF's claims from termination here.  The Delaware court's opinion and subsequent implementing order were explicit that they "declined to grant declaratory relief related to the Massachusetts action" only because such relief "was practically 'meaningless'" in the context of the Delaware action.  Del. Ord. ¶ 4; *see also* Second Del. Op. 28.  Since SF terminated the Guarantee when it filed the Mexican Civil Action a year *before* bringing this action, and AIC was "not seeking an anti-suit injunction of the Massachusetts action" in Delaware, *id.*, the Delaware court did not need to reach the propriety of this action in order to grant the substantive relief AIC sought at summary judgment in the Delaware action.  In other words, the Delaware court did not deny AIC's request for a declaratory judgment concerning this action because SF's claims here are *proper*, but rather because "no live case or controversy was presented." Del. Ord. ¶ 4; *see also* 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4446 (3d ed. 2024) ("[D]enial of declaratory relief as a matter of remedial discretion does not preclude further litigation on the same issues or claims.").  Applying Delaware law as articulated by the Court of Chancery here—where applying the Guarantee to this action *does* present a "live case or controversy"—compels summary judgment for AIC.  *See supra* Section I.

---

'a state or federal court' . . . the Court could enforce it by dismissal . . . or by transfer pursuant to 28 U.S.C. § 1404(a).").

*Second*, SF has quoted the Delaware court's observation that "[w]hether fraud induced that transaction is before the Mexican and Massachusetts courts," *see* Doc. No. 489, misleadingly suggesting that it somehow endorsed this case. It did no such thing. On the contrary, the Delaware court explicitly held that the Guarantee (including the Forum Selection Clause and SF's multiple promises not to sue AIC in connection with the Gayosso transaction) was a binding contract *notwithstanding* SF's allegations that the Gayosso transaction was procured through fraud. Second Del. Op. 15–20, 27. Putting beyond doubt that its recitation of the claims at issue are not an endorsement, the Court of Chancery proceeded to "permanently enjoin[] [SF] from prosecuting" the Mexican Civil Action concerning SF's fraud claims. Del. Ord. ¶¶ 2–3, 5. Plainly, then, the mere observation that SF's fraud claims are before different courts says nothing about the applicability of the Delaware court's ruling to those actions.

*Finally*, after the Delaware court had already enforced the Guarantee to permanently enjoin the Mexican Civil Action, SF concocted a theory that AIC cannot rely on the Guarantee unless it proves the Guarantors complied with a representation in the Guarantee that they had access to sufficient funds to satisfy the Guarantee. *See* Doc. No. 484 at 1; Doc. No. 491 at 7–8. This belated argument fails at the threshold because the Delaware court has already rejected it, holding that SF waived any argument that it can avoid its obligations due to "questions of fact . . . regarding the Guarantors' ability to meet [their] funding obligations under the Guarantee." Second Del. Op. 11 n.43. It is firmly established in Delaware and elsewhere that "if the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination"—here, that the Guarantee is valid and binding against SF—"new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact." *InterMune, Inc. v. Harkonen*, 2023 WL 3337212, at *18 (Del. Ch. May 10, 2023); *accord* Restatement (Second) of Judgments

19

§ 27 cmt. C (1982) (same). This Court should not allow SF to relitigate an argument that it had a full and fair opportunity to argue in Delaware (across over 100 pages of briefing), and simply chose not to. *See HealthTrio, Inc. v. Margules*, 2007 WL 544156, at *10 (Del. Super. Jan 16, 2007) (party barred from relitigating whether "its performance under the contract was excused by [counterparty's] alleged failure to perform under the same contract," because ruling that party had "breached its contract" settled the issue).

Even if SF had not waived the argument, the Delaware court held that the Guarantee (except for Section 9) terminated more than a year before SF filed this action. *See* Second Del. Op. 27. Since the Guarantors *had* no funding obligations when SF brought this case (but SF *was* obligated not to sue AIC), the Guarantors' compliance is irrelevant for purposes of this action.

Regardless, SF could not possibly carry its burden of showing the Guarantors breached the Guarantee. Under Delaware law, the party seeking to enforce a contract need not establish its own compliance. *See* Second Del. Op. 13 (non-breaching party's compliance not an element to establish breach). Rather, the enforcing party's prior material breach is an affirmative defense that *SF* has the burden to support. *See Tygon Peak Capital Mgmt., LLC v. Mobile Invs. Investco, LLC*, 2023 WL 4857281, at *3 (Del. Ch. July 31, 2023) ("In order for a breach to excuse performance by a counterparty, the breach by the party seeking performance must be material. This Court has treated a prior material breach as an affirmative defense.") (quotation omitted). SF could not possibly meet this burden here because—as AIC has demonstrated by producing voluminous financial records and similar evidence—the Guarantors could access *far more* than sufficient funds to comply with their representations throughout the life of the Guarantee. *See* Doc No. 491 8, 12-13, 18.

## CONCLUSION

For the foregoing reasons, the Court should grant AIC's motion and terminate SF's claims.

Dated: December 9, 2024

Respectfully submitted,

/s/ Andrew J. Rossman

Andrew J. Rossman*                          Peter L. Welsh (No. 643261)
Nicholas A. S. Hoy*                         Daniel V. Ward (No. 667158)
QUINN EMANUEL URQUHART &                    ROPES & GRAY LLP
SULLIVAN, LLP                               Prudential Tower
295 Fifth Avenue                            800 Boylston Street
New York, New York 10016                    Boston, MA 02199
(212) 849-7000                              (617) 951-7050
andrewrossman@quinnemanuel.com              Peter.Welsh@ropesgray.com
nicholashoy@quinnemanuel.com                Daniel.Ward@ropesgray.com

Gabriel F. Soledad*
Valerie Ramos*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com
valerieramos@quinnemanuel.com

Joseph H. Margolies*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

*Admitted Pro Hac Vice

Counsel for Defendant and Counterclaim-
Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2024, I served a copy of the foregoing document via ECF to all counsel of record.

/s/ Andrew J. Rossman

Andrew J. Rossman
*Counsel for Defendant and*
*Counterclaim-Plaintiff AIC*