UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., <br><br> Plaintiff, <br><br> v. <br><br> ADVENT INTERNATIONAL CORPORATION, <br><br> Defendant, <br><br> and <br><br> ADVENT INTERNATIONAL CORPORATION, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> SERVICIOS FUNERARIOS GG, S.A. DE C.V., <br><br> Counterclaim-Defendant. | Civil Action No. 23-cv-10684-IT |

**AIC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..............................................................................................................................1

BACKGROUND ..............................................................................................................................3

    A.    SF Initiated The Mexican Criminal Action In An Effort To Extort AIC .................3

    B.    SF Has Repeatedly Sought To Hamstring This Court And The Court in Mexico From Reviewing The Criminal Action, In Each Case Necessitating Relief From This Court ........................................................................4

        1.    SF Sought To Prevent AIC From Accessing The Mexican Criminal File And Presenting It To This Court Or A Jury ..........................................4

        2.    SF Sought To Delay A Mexican Appellate Tribunal's Resolution Of AIC's Witnesses' Challenges To Their Arrest Warrants ........................5

        3.    SF Sought To Further Delay Resolution Of AIC's Witnesses' Challenges To Their Arrest Warrants, Thereby Circumventing The Court's Stay ..................................................................................6

    C.    Consistent With Its Prior Efforts, SF Seeks To Delay The Federal Prosecutor's Taking Control Of The Criminal Action And Reassessing Its Propriety ........................................................................7

    D.    SF Refuses To Produce Documents Concerning The Zacatecas Action .................8

LEGAL STANDARD ......................................................................................................................9

ARGUMENT ..................................................................................................................................10

CONCLUSION ...............................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Aronstein v. Mass. Mut. Life Ins. Co.*,
  2017 WL 2818993 (D. Mass. June 29, 2017) ..................................................................... 10

*Colonial Gas Co. v. Aetna Cas. & Sur. Co.*,
  144 F.R.D. 600 (D. Mass. 1992) ........................................................................................ 10

*Davine v. Golub Corp.*,
  2017 WL 517749 (D. Mass. Feb. 8, 2017) ......................................................................... 10

*DMO Norwood LLC v. Kia America, Inc.*,
  691 F. Supp. 3d 252 (D. Mass. 2023) ................................................................................. 11

*Katz v. Liberty Power Corp.*,
  2020 WL 3492469 (D. Mass. June 26, 2020) ...................................................................... 9

*Pitkin v. Corizon Health, Inc.*,
  2017 WL 6496565 (D. Or. Dec. 18, 2017) ......................................................................... 10

*Rounds v. Hartford*,
  2021 WL 4150838 (D.S.D. Sept. 13, 2021) ....................................................................... 10

### Rules

Fed. R. Civ. P. 26 ........................................................................................................................... 9

Fed. R. Civ. P. 33 ........................................................................................................................... 8

Defendant and Counterclaim-Plaintiff Advent International, L.P., f/k/a Advent International Corporation ("AIC"), maintains that discovery in this case should be stayed pending resolution of its Motion for Summary Judgment or Dismissal, *see* Doc. No. 501 (AIC's Motion to Stay), but, to the extent the Court disagrees, AIC respectfully requests an order compelling Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V. ("SF") to produce documents and filings concerning SF's *amparo* proceeding in the Mexican state of Zacatecas (the "Motion").

## INTRODUCTION

This Motion seeks limited, discrete discovery concerning SF's most recent, and perhaps most brazen, effort to prevent this Court and courts in Mexico from reviewing (and terminating) the baseless criminal proceeding SF initiated against AIC and its affiliates (the "Criminal Action") in an effort to extort them. To date, SF has repeatedly sought to avoid such review of the Criminal Action, in each case necessitating relief from this Court. SF has sought to: 1) prevent AIC from accessing the criminal investigative file from the Criminal Action (the "Criminal File") and thereby from presenting it to this Court (or a jury) based on a premise SF knew to be false; 2) delay a Mexican appellate tribunal's resolution of a challenge by AIC's witnesses to the present proceeding of the arrest warrants issued against them in the Criminal Action, with bogus allegations that AIC's former general counsel forged his own signature on appellate documents (despite video evidence to the contrary); and 3) compound that delay to circumvent this Court's stay order via a frivolous petition to the Mexican Supreme Court to review its forgery claim before the lower court had even ruled on it. Its latest attempt is all the more egregious and likewise necessitates relief from this Court.

In November 2024, a Mexican federal prosecutor (the "Federal Prosecutor") asserted jurisdiction over the Criminal Action and demanded that SF's hand-picked local prosecutor turn over the Criminal File for reassessment. Apparently fearing that the Federal Prosecutor's review

1

would result in termination of the Criminal Action and the illegal arrest warrants SF obtained against AIC's witnesses here, SF quickly filed an *amparo* (a form of constitutional appeal) seeking to enjoin the transfer. Conspicuously, SF did not file its *amparo* in Mexico City—where the Criminal Action is pending; where SF, the Federal Prosecutor, SF's local prosecutor, AIC's Mexican affiliate, and Gayosso are all based; where SF alleges the misconduct took place; and consequently, where SF *should* have filed (and would have been expected to file in ordinary circumstances) its *amparo*. Instead—presumably fearing what a Mexico City court might do with its request to enjoin the Federal Prosecutor from doing away with its meritless claims in the Criminal Action—SF filed its *amparo* in a court *six states and hundreds of miles away* in the Mexican state of Zacatecas (the "Zacatecas Action"), and went to spectacular lengths to do so. SF had its legal representative, Gayosso's in-house counsel, join SF's *amparo* as a co-plaintiff and allege, as a basis for jurisdiction, that the Federal Prosecutor issued an arrest warrant against him and that a Zacatecas judge had summoned him in connection with the Federal Prosecutor's investigation. But SF's legal representative offered no evidence that the alleged arrest warrant or summons actually exist. And under Mexican law, those allegations—even if established—are insufficient to permit a *Zacatecas* court to entertain, let alone grant, *SF's completely unrelated request* to enjoin the transfer of the Criminal Action pending in Mexico City from one Mexico City-based prosecutor to another. Yet, the Zacatecas court promptly did just that.

The combination of SF's absurd choice of forum and success in that forum contrary to Mexican law strongly suggests the presence of further abuse to protect its Criminal Action from scrutiny, making documents concerning those actions directly relevant to AIC's counterclaims. AIC is therefore entitled to review all nonprivileged documents and communications concerning the Zacatecas Action, including, but not limited to, the filings in that litigation; communications

2

with judges, prosecutors, and third parties; and SF's criminal counsel's engagement letter and invoices. But SF has refused to produce any such documents—including its own filings in the Zacatecas Action—without so much as an explanation.

The Court should grant AIC's requested relief—in the form of limited, reasonable discovery—in response to SF's latest effort to perpetuate the Criminal Action.

## BACKGROUND

### A.   SF Initiated The Mexican Criminal Action In An Effort To Extort AIC

AIC has detailed SF's abuses of the Mexican criminal process in numerous prior filings and thus provides only a limited summary here. In January 2021, SF purchased Gayosso from investment vehicles indirectly owned by AIC-managed funds (the "Sellers"). Doc. No. 14 ("Countercls.") ¶ 4. For seventeen months prior to the close of the transaction, SF conducted extensive due diligence, aided by sophisticated legal, accounting, and financial advisors—including Gayosso's then-auditor, Ernst & Young, which had issued unqualified audits of Gayosso's financial statements for the six preceding years. *Id.* ¶¶ 100-01; *see generally* Doc. No. 536.

Shortly after purchasing Gayosso, SF began a campaign to extort AIC based on trumped-up allegations that AIC fraudulently understated Gayosso's liabilities during the sale process. Countercls. ¶ 26. In November 2021—despite having contractually released all claims against AIC arising from the Gayosso transaction, *see generally* Doc. No. 500—SF threatened civil and criminal action against AIC if it did not pay an amount far in excess of the Sellers' contractual liability for financial misrepresentations, *see* Countercls. ¶¶ 126-32. When AIC refused, SF sued AIC in Mexican civil court, alleging fraud and seeking an embargo over all assets owned or managed by AIC's affiliates in Mexico, including those unrelated to the Gayosso transaction. *Id.* ¶¶ 152-53, 171. The Mexican civil court denied SF's requested embargo out of hand. *Id.* ¶ 174.

In June 2022, mere days after it lost its appeal of the Mexican civil court's decision, *id.*, SF filed a criminal complaint against AIC with a prosecutor in Mexico City with documented ties to SF's criminal law firm, García González y Barradas ("GGB"), *id.* ¶¶ 176-81; *see also* Doc. No. 355 (AIC's Rule 11 Opp.) at 7-8.  Then, in October 2022, just days before companies owned by an AIC-managed fund were set to close the sale of an asset held for the benefit of that fund, SF requested that its friendly Mexico City prosecutor seek the very same embargo that Mexican civil and *amparo* courts had previously denied.  SF also requested that the prosecutor seek arrest warrants against current and former employees of AIC and its Mexican affiliate (the "Targeted Individuals").  Countercls. ¶¶ 196-207.[1]  Days later, SF's Mexico City prosecutor did just that, and that very same day a judge in Mexico City (known to rubber-stamp GGB's requests) granted SF's requests.  *See id.* ¶¶ 182-85, 191-92.

      **B.**      **SF Has Repeatedly Sought To Hamstring This Court And The Court in Mexico From Reviewing The Criminal Action, In Each Case Necessitating Relief From This Court**

Below, AIC recites only a limited summary of the Court's prior rulings sufficient to contextualize SF's latest efforts and AIC's resulting request.

          **1.**      *SF Sought To Prevent AIC From Accessing The Mexican Criminal File And Presenting It To This Court Or A Jury*

After SF filed this action, AIC requested that SF produce copies of the Criminal File, which would permit AIC to review the allegations against it and its affiliates, as well as present the file to this Court, and if necessary, a jury.  SF refused AIC's request, forcing AIC to file a motion to compel production of the Criminal File.  Doc. No. 74.  In its opposition, SF represented to this

---

[1] The Targeted Individuals include James Westra, AIC's former Boston-based general counsel, who had virtually nothing to do with negotiating the Gayosso transaction.  Countercls. ¶¶ 77-79.

4

Court that AIC was a third party to the Criminal Action and thus not entitled to access the Criminal File under Mexican law. *See* Doc. No. 99 at 9; *see also* Doc. No. 274. In support, SF produced a letter it had requested from the Mexico City prosecutor indicating that AIC was not a party to the Criminal Action, and was therefore unable to access the Criminal File. Doc. No. 148-1. This Court nonetheless granted AIC's motion to compel the Criminal File, consistent with Mexican law. Doc. No. 182.

After SF objected to that order (Doc. No. 195), AIC was forced to file an *amparo* in Mexico to access the Criminal File (and to be in a position to present it to this Court and/or a jury). The Mexican court, like this Court, granted AIC's request to access the Criminal File. Ex. 1 at PDF 4-6, 10. The Mexican *amparo* court held that, contrary to SF's claim before this Court, AIC is a party (*imputado*) to the Criminal Action. As it turns out, SF knew that all along—SF requested that AIC be a party at least two months before it filed this action.[2] *See* Doc. No. 274 at 7.

### 2. *SF Sought To Delay A Mexican Appellate Tribunal's Resolution Of AIC's Witnesses' Challenges To Their Arrest Warrants*

In December 2023, the Targeted Individuals challenged their arrest warrants on constitutional grounds before a three-judge appellate tribunal (the "Mexican Collegiate Tribunal"). *See generally* Doc. No. 404. The challenge was initially expected to be decided by the end of June 2024, but SF—fearing the loss of its leverage if the arrest warrants were terminated—took extreme action to delay the Mexican Collegiate Tribunal's resolution for as long as possible. *Id.* On June 13, 2024, 20 months after the appeal was filed and just days before the Mexican Collegiate Tribunal was projected to rule, SF (which is not a party to the proceeding) made an unsolicited submission claiming that someone had forged Mr. Westra's signature on four documents submitted

---

[2] Tellingly, even after the Mexican court's ruling, SF has maintained its objection to the Court's order, which remains pending, and continues to withhold the Criminal File from AIC.

5

in support of his own appeal. *Id.* at 2. Days later, Mr. Westra debunked that facially improbable claim with video evidence of himself signing two of the documents in question and a duly notarized and apostilled declaration asserting that he had also signed the rest. *See id.* Yet SF maintained its challenge—knowing that doing so would prevent resolution of the appeal until the court could formally reject it, a process that takes months. Considering these facts, the Court granted AIC's motion to stay the Targeted Individuals' depositions to give the Mexican Collegiate Tribunal an opportunity to untangle SF's challenge and rule on the Targeted Individuals' appeal before they were deposed. Doc. No. 418.

After the Mexican Supreme Court's denial of SF's petition, described below, the Mexican Collegiate Tribunal rejected SF's challenge to two documents out of hand, *see* Ex. 2 at PDF 4-5, limiting its review to only the two documents of which AIC has submitted video recordings of Mr. Westra signing, *see id.* at PDF 6.

### 3. *SF Sought To Further Delay Resolution Of AIC's Witnesses' Challenges To Their Arrest Warrants, Thereby Circumventing The Court's Stay*

Four days after this Court entered its stay of the Targeted Individuals' depositions, SF rushed to circumvent the Court's order by delaying resolution of *its own challenge* and thereby keep the Targeted Individuals in criminal jeopardy until after the stay had expired. *See* Doc. No. 436 (AIC Mot. To Extend P.O.) at 5. SF petitioned the Mexican Supreme Court of Justice to determine the scope of its challenge to Mr. Westra's signatures (then still pending before the Mexican Collegiate Court) under the Mexican Supreme Court's discretionary jurisdiction to review matters of critical importance to the country—akin to *certiorari* in the United States. *Id.* at 5-6. SF's petition was frivolous—how many of Mr. Westra's signatures the appellate court should review is obviously not of great national importance to Mexico. SF nonetheless proceeded knowing the Mexican Supreme Court would take months to reject SF's petition, during which time

the Mexican Collegiate Court could not rule. In light of the foregoing, AIC requested an extended stay. Doc. No. 436. "After careful review and consideration" of these extraordinary circumstances, "this Court extend[ed] the stay" of the Targeted Individuals' depositions to account for SF's further delay. Doc. No. 451.

Subsequently, just as AIC indicated to this Court that it would, the Mexican Supreme Court summarily denied SF's request. Ex. 3.

### C. Consistent With Its Prior Efforts, SF Seeks To Delay The Federal Prosecutor's Taking Control Of The Criminal Action And Reassessing Its Propriety

On November 15, 2024, the Federal Prosecutor demanded that the Mexico City prosecutor immediately turn over the Criminal File. Ex. 4. Once it has the Criminal File, the Federal Prosecutor will take over the Criminal action and reassess its propriety, including the arrest warrants against the Targeted Individuals. Mijangos Decl. ¶ 12 n.5.

As AIC recently learned, in December 2024, SF filed an *amparo* seeking to enjoin the Federal Prosecutor's demand, which SF filed after hiring new criminal counsel to represent it. *See* Ex. 5.[3] SF did not file its *amparo* in Mexico City where the Criminal Action, the Federal Prosecutor, and SF's local prosecutor (not to mention SF, Gayosso, and AIC's Mexican affiliate) are based; where SF alleges the purported misconduct occurred; and consequently where SF *should* have filed (and would have been expected to file in ordinary circumstances) its *amparo*. Instead, presumably fearing what a Mexico City court might do with its request to enjoin the Federal Prosecutor from doing away with its meritless claims in the Criminal Action, SF filed in Zacatecas, six states away from Mexico City and a fifteen-hour round-trip by car.

---

[3] A copy of SF's *amparo* was included in the Criminal File. AIC cannot access the other filings in the Zacatecas Action because the docket is not public. The filings in the docket, however, are not confidential; Mexican law does not prohibit SF from sharing the filings with AIC. Mijangos Decl. ¶¶ 21-22.

7

SF's legal representative (Gayosso's in-house counsel, Arnulfo Mejía Caballero) joined SF's *amparo* as a co-plaintiff. *See* Ex. 4 at PDF 1. He alleged that the Federal Prosecutor had issued an arrest warrant against him and a judge in Zacatecas had summoned him to appear in his court in connection with the Federal Prosecutor's investigation. *Id.* at PDF 3-4. He offered, however, no evidence in support of his claim, asserting that it was "only known by indications, and there is no full or complete knowledge of their content (grounds and motives)." *Id.* at PDF 5.[4]

SF's legal representative did not allege in the *amparo* that the purported arrest warrant and judicial summons in any way concerned the transfer of the Criminal File from SF's local prosecutor to the Federal Prosecutor. Any such arrest warrant was definitively not issued in the Criminal Action—SF indisputably controls the Criminal Action, such that SF would have had to have issued any arrest warrant against its legal representative, which it evidently did not. And SF was unable to access the Federal Prosecutor's criminal investigative file, *see id.* at PDF 7-8, so that also cannot be the basis for the allegations. Still, SF pointed to its legal representative's allegations, as true, in justifying its filing of its *amparo* in Zacatecas.

The Zacatecas court accepted SF's legal representative's bald allegations and on that basis granted SF's entirely separate request to enjoin the transfer of the Criminal File. *See* Ex. 6.

### D.    SF Refuses To Produce Documents Concerning The Zacatecas Action

AIC has already sought, and SF has already agreed to produce, documents concerning the Criminal Action (*see* RFPs Nos. 1, 18, 19, 20, 23, 44), documents and communications with

---

[4] On February 6, 2025, AIC served SF with interrogatories asking SF, among other things, to describe the basis for its belief that there are arrest warrants against and subpoenas requiring the appearance before a Zacatecas court or prosecutor of SF's legal representative—as SF and Mr. Mejía alleged in the Zacatecas Action. Pursuant to Fed. R. Civ. P. 33(b)(2), SF had 30 days to serve its answers and objections to AIC's interrogatories. SF failed to comply with the 30-day deadline. SF's failure to respond to AIC's interrogatories will be the subject of a forthcoming motion to compel.

Mexican judicial and other authorities concerning Gayosso (RFP No. 92), and the engagement letters and invoices of SF's Mexican criminal counsel (RFP No. 29). *See* Doc. No. 76-8 (SF's Resps. & Objs. To AIC's First Set of Reqs. For Prod.); Doc. No. 297-5 (SF's Resps. & Objs. To AIC's Second Set of Reqs. For Prod.). Documents and filings concerning the Zacatecas Action are responsive to AIC's requests, and SF has not contended otherwise.

On February 18, 2025, before a scheduled meet-and-confer on outstanding discovery, AIC asked to discuss "[p]roduction of documents related to the Zacatecas *amparo*, including any filings and communications with any judges, third parties, prosecutors … and also the engagement letter and invoices of your counsel." Ex. 7 (Email from M. Grealish). At the February 21, 2025 meet-and-confer, AIC repeated its request. In response, SF represented that it would consult with its Mexican counsel and respond on February 27, 2025. Ex. 8 (Email from M. Cooper). SF ignored its own deadline without so much as notice to AIC. On March 4, 2025, SF kicked the can down the road, stating, "We anticipate providing a response on this request by the end of the week." *Id*. Yet, once again, SF disregarded its deadline without notice to AIC. To date, SF has not produced the documents or explained its failure to do so, forcing AIC to file this motion instead. *See* L.R. 7.1, 37.1. SF also failed to respond to AIC's interrogatory related to the Zacatecas Action, ignoring its obligation to respond within 30 days per Federal Rule of Civil Procedure 33(b)(2). *See supra* n.4.

## LEGAL STANDARD

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" "Rule 26 is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Katz v. Liberty Power Corp.*, 2020 WL 3492469, at *1 (D. Mass. June 26, 2020) (quotation omitted). Once the moving

9

party makes a showing of relevance, the "party resisting discovery bears the burden of establishing that compliance with the request is unduly burdensome." *Aronstein v. Mass. Mut. Life Ins. Co.*, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017) (quotation omitted).

## ARGUMENT

AIC alleges that a cornerstone of SF's extortion scheme consists of leveraging its criminal counsel's connections to particular prosecutors in Mexico City, which enables SF to obtain improper results, contrary to Mexican law. The Zacatecas Action is further evidence of that. SF initiated it precisely to prevent its Mexico City prosecutor from losing control of the Criminal Action pursuant to the Federal Prosecutor's transfer request. And SF obtained an injunction, premised upon fabricated allegations, *see* Background § C, from a court that had no jurisdiction to entertain, let alone grant it, *see* Mijangos Decl. ¶¶ 17-20.

That SF would go to such considerable lengths—literally and figuratively—to prevent its hand-picked prosecutor from being replaced by a Federal Prosecutor with jurisdiction over the Criminal Action, and that it would do so via such a nonsensical path—and be successful, contrary to Mexican law—supports AIC's counterclaims for abuse of process. Indeed, the Zacatecas Action appears to be both confirmation of SF's prior misconduct and evidence of how it continues to perpetuate its groundless prosecution against AIC.

Accordingly, SF should be required to produce all nonprivileged documents and communications concerning the Zacatecas Action, including but not limited to, the filings in that litigation and communications with judges, prosecutors, and third parties. Courts routinely order parties to produce relevant documents and filings made in related litigations. *See, e.g.*, *Rounds v. Hartford*, 2021 WL 4150838, at *11 (D.S.D. Sept. 13, 2021), *adopted*, 2022 WL 703204 (D.S.D. Mar. 9, 2022) (ordering production of documents from related litigations because they "would be relevant to show similar behavior toward other claimants, rulings on similar legal issues, and

10

defendants' knowledge of wrongfulness"); *Pitkin v. Corizon Health, Inc.*, 2017 WL 6496565, at *6 (D. Or. Dec. 18, 2017) (ordering production of "the complaints, settlements, and judgments of all lawsuits filed" against the defendant).

In addition, part of understanding the Zacatecas Action is exploring SF's decision to hire new criminal counsel to manage it—particularly given that one of the central allegations in AIC's counterclaims is that SF has used Mexico-based counsel to abuse the Mexican criminal justice system in furtherance of its extortionate scheme. Courts regularly order parties to produce documents related to retention of counsel. *See, e.g., Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 607 (D. Mass. Mar. 5, 1992) ("Documents regarding the payment of fees, billing and time expended are generally subject to discovery"); *Davine v. Golub Corp.*, 2017 WL 517749, at *7 (D. Mass. Feb. 8, 2017) (noting that engagement letters and other communications encompassing the "fact, scope, and nature of legal consultation are not privileged"). Consistent with that authority, SF has already produced evidence in this action showing that it incentivized GGB to leverage the Criminal Action as a means to force AIC to satisfy its demands. *See* Doc. No. 355. AIC is now entitled to review the terms of SF's engagement with its new counsel in the Zacatecas Action, and its invoices, as well.

AIC's narrow requests are reasonable and proportionate to the needs of the case. SF has not argued (and cannot argue) that producing the requested filings would be unduly burdensome. The court filings are a discrete set of documents submitted to Mexican judicial authorities that are easily identifiable and readily accessible. And the remaining documents—covering the brief period in which SF retained its new counsel and instructed them to file the Zacatecas Action—are limited in scope and should be readily identifiable with no need for extensive review. *See, e.g., DMO Norwood LLC v. Kia America, Inc.*, 691 F. Supp. 3d 259 (D. Mass. 2023) (ordering

11

production of documents "relevant to the defendant's counterclaim" where there was "no assertion that producing the documents would impose an undue burden").

## CONCLUSION

For the reasons stated herein, AIC respectfully requests that the Court compel SF to produce the documents requested herein.

Dated: March 11, 2025

Respectfully submitted,

*/s/ Andrew J. Rossman*

Andrew J. Rossman*
Nicholas A. S. Hoy*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad*
Valerie Ramos*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com
valerieramos@quinnemanuel.com

Joseph H. Margolies*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

Peter L. Welsh (No. 643261)
Daniel V. Ward (No. 667158)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com

*Admitted Pro Hac Vice*

*Counsel for Defendant and Counterclaim-Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of March, 2025, I caused to be served a copy of the foregoing document via the CM/ECF system on all counsel of record.

*/s/ Andrew J. Rossman*
Andrew J. Rossman